**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **FREEDOM FROM RELIGION** | § | |
| **FOUNDATION, INC.** | § | |
| **Plaintiff,** | § | |
| | § | |
| **-vs-** | § | **CASE NO. 1-16: CV-00233** |
| | § | |
| **GOVERNOR GREG ABBOTT, in his** | § | |
| **official and individual capacities, and** | § | |
| **JOHN SNEED, Executive Director of the** | § | |
| **Texas State Preservation Board, in his** | § | |
| **official and individual capacities,** | § | |
| **Defendants.** | § | |

**FIRST AMENDED COMPLAINT FOR DECLARATORY,**
**INJUNCTIVE, AND COMPENSATORY RELIEF**

Plaintiff Freedom From Religion Foundation, Inc. ("FFRF") complains of Governor Greg Abbott, in his official and individual capacities, and John Sneed, Executive Director of the Texas State Preservation Board, in his official and individual capacities, as follows:

### I.      NATURE OF THE CLAIMS

1.      The Plaintiff seeks a declaration under 28 U.S.C. §2201 that the Defendants have violated the Plaintiff's Free Speech, Equal Protection and Due Process rights, and that the Defendants have violated the Establishment Clause, by removing and excluding the Plaintiff's protected speech, a display, from a public forum, because of the content and viewpoint of the Plaintiff's speech.

2.      The Defendants' actions were not content neutral or reasonable and they were also motivated by animus toward the viewpoint of Plaintiff's protected speech and the identity of the speaker.

3.      The Plaintiff also seeks a declaration that the criteria for approval of exhibits in the Texas State Capitol, facially and as applied by the Defendants, violate the constitutional rights of the Plaintiff.

4.      Plaintiff further requests the Court to grant injunctive relief under 28 U.S.C. §1343 and Fed. R. Civ. P. 65.

5.      Finally, the Plaintiff requests the Court to enter judgment against each Defendant in his individual capacity for nominal damages.

6.      The Plaintiff brings this action pursuant to 42 U.S.C. §1983 to redress the deprivation of their constitutional rights, committed under the color of state law by the Defendants, who are government officials.

7.      The Defendants are sued in both their official and individual capacities.

## II.      JURISDICTION AND VENUE

8.      This Court has federal question jurisdiction pursuant to 28 U.S.C. §1331.

9.      The Court also has the authority to order declaratory relief under 28 U.S.C. §2201.

10.     The Court further has the authority to award injunctive relief under 28 U.S.C. §1343.

11.     Venue is appropriate in the District Court for the Western District of Texas, pursuant to 28 U.S.C. §1391(e).

## III.      PARTIES

12.     The Plaintiff, Freedom From Religion Foundation, Inc. ("FFRF"), is a non-profit membership organization that advocates for the separation of state and church and educates on matters of nontheism.

13.     FFRF has more than 23,000 members, with members in every state of the United States, including nearly 1,000 members living in the State of Texas.

14.     The Defendant, Greg Abbott, is the Governor of Texas, and he also is the Chairman of the State Preservation Board.

15.     The Texas State Preservation Board, is an agency of the State of Texas established in 1987.

16.     The duties of the State Preservation Board include approval and scheduling of Capitol events and exhibits displayed in the public areas of the Capitol.

17.     The Defendant, John Sneed, is the Executive Director of the State Preservation Board.

18.     Sneed's duties include directing and coordinating the activities of State Preservation Board employees.

### IV.   PUBLIC FORUM AREAS DESIGNATED IN STATE CAPITOL

19.     Areas of the Texas State Capitol are open to the public for expression and civic engagement.

20.     The public areas of the State Capitol can be used for events, as well as communicative displays or exhibits, upon approval by the State Preservation Board.

21.     The State Preservation Board "has allowed and should continue to allow diverse viewpoints to be expressed in Capitol displays," Governor Abbott has acknowledged.

22.     The State Preservation Board consists of the Governor, Lieutenant Governor, Speaker of the House of Representatives, one senator appointed by the

Lieutenant Governor, one representative appointed by the Speaker of the House of Representatives, and one member appointed by the Governor.

23.     The State Preservation Board employs an Executive Director who serves under the sole direction of the Board.

24.     The Executive Director is authorized to employ staff necessary to administer the functions of the office.

25.     The policy-making responsibilities of the State Preservation Board are supposed to be clearly separated from the management responsibilities of the Executive Director and the staff of the Board.

26.     The management functions of the Executive Director and staff of the State Preservation Board include scheduling and approving exhibits for display within the public areas of the Capitol, upon the recommendation of a state official sponsor, *i.e.*, the Governor, Lieutenant Governor, the Speaker, a State Senator, or a State Representative.

27.     The stated criteria for exhibit approval do not limit use of the public premises to use by discrete identifiable groups or displays dedicated solely to the discussion of specified substantive subjects.

28.     The formal criteria for approval of displays, both facially and as applied in the present case, do allow for consideration of the acceptability of viewpoints expressed.

29.     The formal criteria for exhibit approval require that exhibits must be for a "public purpose," defined as something in which the public generally has a direct interest and in which the community at large is to be benefitted.

30.     Stated criteria further require that exhibits promote the public health, education, safety, morals, general welfare, security, and prosperity of all of the inhabitants or residents within the state.

31.     The Executive Director and staff of the State Preservation Board have previously approved exhibits reflecting private viewpoints, including religious viewpoints, but have treated exhibits as private speech in a public forum.

32.     The State Preservation Board, on information and belief, had not previously censored or rejected displays or exhibits based on disapproval of the speaker's message, prior to summarily removing FFRF's exhibit; even overtly religious displays have been approved by the Board based on the treatment of such displays as private speech.

33.     In 2014, for example, the State Preservation Board approved the display of a Christian nativity scene in the Capitol's Ground Floor Rotunda.

34.     The display of a Christian nativity scene in the Capitol in 2014 was the first time that an exhibit promoting a specific religion had been displayed in the Texas Capitol.

35.     The standalone nativity scene was first unveiled in the front of the Texas Capitol building and then moved for display in the basement of the Capitol for one week in December of 2014.  (See **Exhibit 1**.)

36.     The Texas Nativity Scene Project, a private organization, sponsored the nativity scene in the Capitol, looking to combat the "War on Christmas."

37.     The sponsor of the nativity scene intended by its exhibit to communicate a distinctly Christian message, as the project's spokesman, Trey Trainor, explained: "I

think very much there has been a pushback against Christmas, a war on Christmas.  This is an expression of the Christian community coming together and saying, 'we have a right to be in the public square and express our views as much as anyone else.'"

38.     Trainor is a former General Counsel to the Texas Secretary of State, but he has purportedly acted in a private capacity in promoting a Christian nativity in the State Capitol.

39.     Trainor further explained that the purpose of the nativity exhibit at the Capitol is "to bring the joy and the hope of the birth of Christ to everyone and to use the public square as a place to do that."

40.     Organizers of the nativity exhibit at the Capitol considered the Capitol to be the perfect place for the nativity scene because it's "where Texans come to express themselves," according to Trainor, who also stated that the exhibit "is a way for us to move into the public square and express what the true meaning of Christmas is."

41.     The Texas Nativity Scene Project is a private non-profit group headed by Assistant Texas Attorney General Joseph Behnke, who explains that the Group's "primary purpose is really just the reason for the season: "To keep Christ in Christmas."

42.     In his public comments, Behnke claims that he is acting as a private citizen in his leadership of the Texas Nativity Scene Project and not as a representative of the Office of the Attorney General.

43.     In addition to sponsorship by the Texas Nativity Scene Project, the display in the Texas State Capitol was co-sponsored by the Thomas More Society, an advocacy law firm specializing in the promotion of religious issues, including sponsorship of nativity scenes in at least nine state capitols, including Austin.

44.     According to the Thomas More Society, the display of nativity scenes in state capitols, including Texas, is understood to "represent classic free speech and free exercise of religion by private citizens in the public square."

45.     The Thomas More Society further considers nativity displays in state capitals to "represent constitutionally protected expression by private citizens in traditional or designated public forums, where the sole role of the government must be that of a viewpoint-neutral gatekeeper assuring open access for all citizens to have their 'say.'"

46.     The Thomas More Society further has argued that government should be neither censor nor endorser of speech, including Christmas nativity displays; according to Thomas More Society President and Chief Counsel, Tom Brejcha:  "If you can get up on your soapbox and plead for a candidate or point of view in a public forum, then equally you may get on the soapbox and proclaim the joyous, hopeful message of the Christ Child!"

47.     The fact that such Christian displays in the State Capitol are privately funded and sponsored, ostensibly without government aid or endorsement, was deemed significant to the State Preservation Board's approval of a nativity display in the Texas State Capitol.

48.     The State Preservation Board gave the green light to a nativity scene in the State Capitol after concluding that private donors made possible the display without State sponsorship, support, or endorsement.

49.     The State Preservation Board, therefore, deems exhibits like the nativity scene in the Texas Capitol to be private speech rather than speech endorsed by the Preservation Board.

50.     According to the Preservation Board, "Ours [the Board's] is a much broader property management role and we want to accommodate the public in many forms of expression."

51.     In communications to coordinate FFRF's Bill of Rights exhibit, a State Preservation Board employee noted that the 2014 Christian nativity scene had included a disclaimer of state involvement and requested, "We would like to see the FFRF post a similarly worded sign accompanying *your display*, mentioning the sponsor, *and that it was privately funded and displayed*. A true and correct copy of the communication from Robert Davis, Capitol Events and Exhibit Coordinator, is attached to this Complaint as **Exhibit 2** (emphasis added).

52.     The American Civil Liberties Union of Texas, for its part, has also viewed displays in the Texas State Capitol, like the nativity display, to constitute private speech funded by private sponsors.

53.     The ACLU has said that because such displays are privately funded, they may be allowable but "we trust that the public agency that manages the Capitol grounds will grant equal access," according to ACLU Spokesman Tom Hargis.

54.     In short, the nativity display in the State Capitol is deemed and viewed as a private expression of Christian endorsement, which would be prohibited by the Establishment Clause if it were government speech endorsing religion.

55.    Texas State officials, including the State Preservation Board, have not considered and treated displays in the State Capitol as government speech.

56.    The State Preservation Board, incidentally, also approved display of a Christian nativity scene in 2015, which was displayed without premature removal by the Board.

## V.  FFRF EXHIBIT APPROVED FOR DISPLAY

57.    Consistent with past practice and application of the criteria for approval of displays, the Executive Director of the State Preservation Board and his staff approved an exhibit for display by FFRF, said exhibit to be allowed for 5 days in December of 2015.

58.    FFRF submitted an exhibit application to the State Preservation Board on July 7, 2015, which the State Preservation Board approved after FFRF's voluntary revisions, without any editorial control or alteration of FFRF's substantive message.

59.    FFRF described its proposed display in its application as "Cutout figures celebrating the December 15 nativity of the Bill of Rights.  The figures will be self-standing and will be between 4 and 6 feet tall."

60.    FFRF's exhibit application included a recommendation by Texas Representative Donna Howard.

61.    FFRF also described its proposed exhibit, in a letter dated May 29, 2015, written to potential sponsors, as "a temporary display in the Ground Floor Rotunda that celebrates freethought and the United States as the first among nations to formally embrace the separation of state and church."

62.    FFRF further explained its proposed exhibit as an effort "to celebrate the views of Texans who are part of a religious minority or have no religion at all."

63.     FFRF sought to diversify the limited expression displayed in 2014, manifested by the stand-alone Christian nativity display in the State Capitol.

64.     The diversity that FFRF intended to communicate is reflective of the reality that more than 23% of the American population consists of those who identify as "nonreligious."

65.     The stated purpose of FFRF's display was, "To educate the public and celebrate the 224th anniversary of the ratification of the Bill of Rights on December 15, 1791. Also, to celebrate the Winter Solstice on December 22 and to educate the public about the religious and nonreligious diversity within the State."

66.     The State Preservation Board, by the Executive Director and his staff, officially approved FFRF's exhibit application on August 6, 2015 after determining that FFRF had met all of the Board's requirements for exhibits.

67.     Texas members of FFRF subsequently gathered in the Texas Capitol's Ground Floor Rotunda in December and put FFRF's display in place.

68.     FFRF's display featured Benjamin Franklin, Thomas Jefferson, George Washington, and the Statue of Liberty gathered around the Bill of Rights, which was placed in a manger.  (A true and correct copy of FFRF's displayed exhibit is attached to this Complaint as **Exhibit 3**.)

69.     Accompanying the display was an approved sign that read:  "Happy Winter Solstice/At this Season of the Winter Solstice, we honor reason and the Bill of Rights (adopted December 15, 1791)/Keep State & Church Separate/On behalf of Texas members of the Freedom From Religion Foundation."

70.     No known disruptions, incidents, controversy, or complaint ensued after FFRF's exhibit went on display in the State Capitol on December 18, 2015, except for the objection of Governor Abbott, described below.

71.     FFRF's display was at all times owned by FFRF, scheduled for a limited period of display, and FFRF was totally responsible for its message.

## VI.   CENSORSHIP OF FFRF'S EXHIBIT

72.     Despite the resulting tranquility attending FFRF's exhibit, the staff of the State Preservation Board removed FFRF's exhibit three days later, without notice or opportunity to object by FFRF.

73.     FFRF's exhibit was removed upon the authoritative demand of Governor Abbott, who objected to the viewpoint of FFRF's exhibit.

74.     Governor Abbott wrote to the Defendant Sneed on December 21, 2015, "as Chairman of the State Preservation Board," demanding that Sneed "remove [FFRF's] display from the Capitol immediately."

75.     In his letter, Governor Abbott claimed that FFRF's display failed to meet State Preservation Board criteria for approval, including because the display "does not educate," or promote public morals and the general welfare.

76.     Governor Abbott accused FFRF of "tasteless sarcasm," called its message "spiteful" and "intentionally designed to belittle and offend," and claimed that the display "undermines rather than promotes any public purpose."

77.     Governor Abbott did not explain, however, how the Christian nativity displayed in the Capitol more readily met his interpretation of the State Preservation Board's criteria.

78.   Governor Abbott also seemingly missed the point that FFRF's display, in fact, communicated a diverse message from that of the Christian nativity scene.

79.   Governor Abbott vehemently complained that "the exhibit does not depict *any* other religion, much less does it promote religious 'diversity.'"

80.   Governor Abbott then also claimed that "the exhibit promotes ignorance and falsehood," whereupon the Governor cited 17 lines of a fake quote falsely attributed to George Washington from a fabricated prayer journal.

81.   Scholars and experts who have compared the handwriting of the purported Washington quote have consistently concluded that it is a fake.

82.   Governor Abbott, in his screed to the Executive Director of the State Preservation Board, concluded that "the general public does not have a 'direct interest' in the Freedom From Religion Foundation's purpose.  That organization is plainly hostile to religion and desires to mock it."

83.   Governor Abbott further claimed that FFRF's exhibit was indecent ("it violates general standards of decency") and he compared it to a crucifix immersed in a jar of urine.

84.   Governor Abbott later expounded on his letter to the Defendant Sneed, which letter he released to the public.

85.   In a social media message, a December 22 "tweet," the Governor referred to FFRF's display as offensive and the Governor boasted that he had demanded removal of the FFRF exhibit from the Capitol.

86.   The Defendant Sneed, after receiving the Governor's demand, consulted with State Preservation Board member Charlie Geren, who advised Sneed that because

Governor Abbott wants the FFRF exhibit taken down, "I told John [Sneed] that, if I were him, I'd take it down."

87.     The Defendant Sneed then directed that the FFRF exhibit be immediately removed from display in the Capitol, without providing any notice or explanation to FFRF.

### VII.   <u>GOVERNOR ABBOTT HAS HISTORY OF ANIMUS TOWARD FFRF</u>

88.     Governor Abbott has a history of hostility directed against FFRF.

89.     In December of 2011, for example, Governor Abbott warned FFRF to stay out of Texas, stating: "Our message to the atheists is don't mess with Texas and our Nativity scenes or the Ten Commandments."

90.     Governor Abbott made his comments to Fox News and Commentary, when he was the Texas Attorney General.

91.     At that time, Governor Abbott further proclaimed: "I want the Freedom From Religion Foundation to know that our office has a history of defending religious displays in this State."

92.     Governor Abbott also stated that FFRF should be fully aware that "there is a person, a lawyer and an organization in this state that has their back, that has the law, that has the muscle and firepower to go toe-to-toe with these organizations that come from out of state trying to bully governmental bodies into tearing down things like Nativity scenes."

93.     In light of Governor Abbott's more recent demand that FFRF's display at the State Capitol be torn down, the Governor's prior comments about bullying seem ironic, but consistent with his repeated endorsements of religion over non-belief.

94.     Governor Abbott, for example, also attacked FFRF during a press conference in October 2012, during which he stated:  "We will not allow atheist groups from outside of the State of Texas to come into the State, to use menacing and misleading intimidation tactics, to try to bully schools to bow down at the altar of secular beliefs."

95.     During the press conference in October 2012, Governor Abbott contemptuously described FFRF as "an atheist group from Wisconsin, who came into the State of Texas and tried to silence these students."

96.     Governor Abbott further expressed his self-styled respect for freedom of speech, in terms that are curious and telling in the circumstances:  "We are not going to either tolerate or accept these atheist groups trying to prevent that freedom of expression here in the State of Texas."

97.     More recently, Governor Abbott came to the defense of the Brewster County Sheriff's Office, including the alleged right to display a Latin cross on Department vehicles, following a complaint by FFRF.

98.     Governor Abbott, through his spokesman John Wittman, stated in December of 2015 that:  "The Constitution demands respect for religious expression rather than hostility towards it and Governor Greg Abbott fully supports Sheriff Dodson's decision to allow his deputies to display a Cross on their patrol vehicles."

99.     Governor Abbott subsequently sent a memorandum to the Chair of the Opinion Committee within the Office of the Attorney General, favoring the display of such Latin crosses on sheriff department vehicles.

100.   Governor Abbott argued that religious expression by public officials, acting in official roles, should be allowed, including because Americans allegedly are religious people whose institutions presuppose a Supreme Being.

101.   Governor Abbott also expressed support for the City of Orange, which removed a nativity scene from City Hall after FFRF simply requested to put a banner up as well.

102.   Governor Abbott encouraged the City of Orange to continue to display a nativity scene, without allowing FFRF's banner as well, stating that "the Constitution demands accommodation of religion rather than hostility towards it."

103.   Governor Abbott has consistently advocated for displays of religion in the public sphere, while actively opposing any expression of nonreligious principles.

## VIII.   CENSORSHIP OF FFRF'S DISPLAY
## VIOLATES THE UNITED STATES CONSTITUTION

104.   The Defendants have violated the constitutional rights of the Plaintiff by summarily removing FFRF's exhibition from the Texas State Capitol, after prior approval.

105.   The Defendants engaged in unambiguous viewpoint discrimination by removing FFRF's exhibit for reasons that were not viewpoint neutral or reasonable.

106.   In silencing FFRF, the Defendants also applied standards and procedures not utilized in cases involving other Capitol displays, including by purportedly applying formal criteria that the State Preservation Board has not considered for other exhibitors.

107.   The Defendants' actions, simply put, were not content neutral, as required under the First Amendment of the United States Constitution, which requires that government regulation of expressive activity be justified independently without reference

to the ostensibly regulated speech itself; the Government may not regulate or prohibit speech based on hostility to the underlying message conveyed.

108.    The Defendants violated the Plaintiff's First Amendment rights by basing their conduct on disagreement with the message that they concluded that FFRF's display conveyed.

109.    The Defendants' actions also were viewpoint-based because they distinguished favored speech from disfavored speech on the basis of the ideas or views expressed.

110.    The Defendants also acted irrationally, arbitrarily, subjectively, and inconsistently in their application of the criteria for approval of exhibition displays in the Capitol.

111.    The Defendants' actions were not reasonable and constituted an effort to suppress expression merely because the Defendants opposed the speaker's viewpoint, in this case the viewpoint of FFRF.

112.    The Defendants' actions certainly were not narrowly tailored to serve a compelling state interest.

113.    The Defendants' censorship of FFRF's display, therefore, does not withstand strict scrutiny, or any scrutiny for that matter.

114.    The Defendants also violated the Plaintiff's First Amendment rights by excluding FFRF's display on the basis of the exhibit's nontheistic premise, which constitutes a violation of the Establishment Clause in the First Amendment to the United States Constitution.

115.    The Defendants violated the Establishment Clause by discriminating against FFRF's exhibit on the basis of its content and nontheistic viewpoint.

116.    The Defendants further violated the Establishment Clause by preferring and endorsing religion, including by favoring the display of a stand-alone Christian nativity scene in the Texas State Capitol, without any surrounding secular symbols of Christmas.

117.    The Defendants also violated FFRF's constitutional rights by singling out FFRF for disadvantageous treatment because of the viewpoint of FFRF's beliefs and expressive communications.

118.    The Defendants violated the Plaintiff's Equal Protection rights by selecting FFRF for disfavored treatment due to its status as an organization that advocates for and represents the nonreligious and based further on disapproval of FFRF's secular exhibit.

119.    The Defendants' actions violated the Plaintiff's Equal Protection rights by treating FFRF differently than other similarly situated entities, including the Texas Nativity Scene Project, without a rational or permissible basis for the disparate treatment.

120.    The Defendants' actions further violated the Plaintiff's Equal Protection rights by targeting FFRF for disadvantageous treatment due to the animus of Governor Abbott.

121.    The Defendants' actions also violated the Plaintiff's Due Process rights by removing FFRF's display without any pre-deprivation or post-deprivation procedures to protect against unconstitutional deprivations of Plaintiff's vested interest in the right to display expressive communications in the Capitol, after first approving FFRF's exhibit.

122. The Defendants further violated the Plaintiff's First Amendment rights by enforcing and applying criteria that allow for unbridled discretion and arbitrary and capricious approval or removal of exhibits in public areas of the State Capitol.

123. The State Preservation Board criteria for approval of exhibits, facially and as applied, allow for decisions to be based on the perceived acceptability of a speaker's viewpoint, thereby allowing for approval or rejection by referendum or individual subjective animus or hostility.

124. Where the State requires a permit for expressive activity in a public forum, the scheme for approval must set objective standards governing the grant or denial of approval in order to ensure that government officials do not have the power to discriminate on the content or viewpoint of speech, including by suppressing disfavored speech or disfavored speakers.

125. Here, public areas in the Texas Capitol have been opened for public use as places of expressive activity and they are therefore subject to First Amendment decision-making standards.

126. FFRF's exhibit, moreover, clearly constituted protected speech under the First Amendment.

127. FFRF's exhibit is not obscene, nor does it involve "fighting words," or other proscribable content; regulation based on Governor Abbott's personal professed sensibilities operate as an unchecked heckler's veto.

128. Contrary to Governor Abbott's polemic, moreover, FFRF's exhibit does not disparage or ridicule the Christian religion, nor express hate for any religion, nor

incite or disturb the public peace; FFRF's exhibit also is not lewd, vulgar or lacking in serious educational content.

129.    The Defendants have applied the criteria for approval of exhibits in the State Capitol on the basis of content, which regulation does not withstand strict scrutiny under either the Free Speech or Equal Protection standards of the United States Constitution.

130.    The criteria for approval of exhibits in the Texas State Capitol also is impermissibly vague, both facially and as applied, because the criteria allow for arbitrary application without any objective principles.

131.    Investing government officials with boundless discretion over access to a public forum, as this case illustrates, violates the most fundamental principles of the First Amendment.

132.    The criteria for approval of exhibits in the State Capitol violate the First Amendment, facially and as applied, in this case, precisely because the determination as to whether a display is appropriate for exhibit cannot be answered without examining the substantive content or message conveyed by the display.

133.    Finally, the criteria for approval of exhibits in the State Capitol, facially and as applied by the Defendants, is overly broad in violation of the First Amendment because the very existence of the regulation, at least as applied in this case, is substantially likely to cause speakers to refrain from engaging in protected speech or expression.

134.    In the end, the Defendants' actions have caused the Plaintiff injury by censoring and excluding its protected expression; by defeating FFRF's investment in the

exhibit removed from display in the Texas State Capitol; and by disparaging the Plaintiff on the basis of its non-belief in religion and rendering it literally and figuratively a political outsider.

135.    The Plaintiff, nonetheless, does intend to make further application to the State Preservation Board in the future to again display the exhibit at issue in the Texas State Capitol, and hence this action which is necessitated by the Defendants' continuing and foreseeable violation of Plaintiff's constitutional rights in the future.

WHEREFORE, the Plaintiff demands judgment against the Defendants as follows:

a)      Judgment declaring that the actions of each Defendant have violated the Free Speech Clause of the First Amendment to the United Stated Constitution;

b)      Judgment declaring that the actions of each Defendant have violated the Establishment Clause of the First Amendment to the United Stated Constitution;

c)      Judgment declaring that the actions of each Defendant have violated the Equal Protection Rights of the Plaintiff;

d)      Judgment declaring that the actions of each Defendant have violated the Due Process rights of the Plaintiff;

e)      Judgment declaring that the criteria to approve exhibits for display in the State Capitol, facially and/or as applied by the Defendants, violate the Free Speech Rights protected by the First Amendment to the United States Constitution;

f)      Judgment against each Defendant enjoining the Defendants from excluding the Plaintiff's exhibit at issue from future display in public areas of the Texas State Capitol;

g)      Judgment against each Defendant, in his individual capacity, for nominal damages;

h)      Judgment against each Defendant, jointly and severally, awarding the Plaintiff its reasonable costs, disbursements, and attorneys' fees, as allowed by law, including pursuant to 42 U.S.C. §1988; and

i)      Judgment awarding or ordering such further relief as the Court deems just and equitable.

Respectfully submitted,

FRITZ, BYRNE, HEAD & FITZPATRICK, PLLC
221 West 6th Street, Suite 960
Austin, Texas  78701
Telephone:  512-476-2020
Telecopier:  512-477-5267

BY:      /s/ Daniel H. Byrne
         Daniel H. Byrne
         Texas State Bar No. 03565600
         Email:  dbyrne@fbhf.com
         Lessie G. Fitzpatrick
         Texas State Bar No. 24012630
         Email:  lfitzpatrick@fbhf.com

BOARDMAN AND CLARK, LLP
1 S. Pinckney St., Suite 410
Madison, Wisconsin  53703-4256
Telephone:  608-257-9521
Telecopier:  608-283-1709

BY:      /s/ Richard L. Bolton
         Richard L. Bolton
         Wisconsin State Bar No. 1012552
         Email:  rbolton@boardmanclark.com

FREEDOM FROM RELIGION
FOUNDATION, INC.
P. O. Box 750
Madison, Wisconsin  53701
Telephone:  608-256-8900
Telecopier:  608-204-0422

BY:      /s/ Sam Grover
         Sam Grover
         Wisconsin State Bar No. 1096047
         Email:  sgrover@ffrf.org
         Patrick Elliott
         Wisconsin State Bar No. 1074300
         Email:  pelliott@ffrf.org

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing was filed electronically via the Court's CM/ECF system on this the 29th day of April, 2016, which will send notification to the following:

Anna Marie Mackin
Austin R. Nimocks
Brantley Starr
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, TX 78701
Telephone: (512) 475-4080
Telecopier: (512) 320-0667
Email: Anna.mackin@texasattorneygeneral.gov
Email: Austin.nimocks@texasattorneygeneral.gov
Email: Brantley.starr@texasattorneygeneral.gov

_/s/ Daniel H. Byrne_____
Daniel H. Byrne

Page 1 of 1



**EXHIBIT 1**



**From:** Robert Davis <Robert.Davis@tspb.state.tx.us>
**Subject: Event Approved: FFRF Display - Ground Floor Rotunda - December 2015**
**Date:** August 6, 2015 at 4:18:55 PM CDT
**To:** Sam Grover <sgrover@ffrf.org>

This is a confirmation email that the following event(s) have been processed, approved and added to the calendar; shown here - http://www.capevent.legis.state.tx.us/capevent.aspx
I will likely be checking in with you as it approaches, particularly if there are extensive logistics involved.   However in the meantime please get in touch if you have any questions.

**Bill of Rights and Winter Solstice Display**
**Capitol Ground Floor Rotunda**
Load in:  **Friday, December 18  2015  9:00am or later**
Load out:  **Wednesday, December 23 2015   by 8:00pm**

**Sam,**
**Thanks for your patience.   I have been sick following a weeklong vacation in the time we last spoke so I apologize if I've been off the grid.    Couple of attachments for you:   One is my altered and initialed application featuring the date changes we discussed.    A message that I wasn't sure if you'd responded to – it's a photo from last year's nativity scene display.   We would like to see the FFRF post a similarly worded sign accompanying your display, mentioning the sponsor, and that it was privately funded and displayed.**


Thanks!

Robert Davis
**Capitol Events & Exhibits Coordinator**
*State Preservation Board*
*512 463 3051 (phone)*
*512 463 3372 (fax)*
*Sam Houston Building 950*
*201 E. 14th Street 78701*
*PO Box 13286 Austin, TX 78711*

**EXHIBIT 2**

EXHIBIT 3

