UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **FREEDOM FROM RELIGION FOUNDATION, INC.**<br>    Plaintiff,<br><br>-vs-<br><br>**GOVERNOR GREG ABBOTT**, in his official and individual capacities, and **JOHN SNEED**, Executive Director of the Texas State Preservation Board, in his official capacity,<br>    Defendants. | CASE NO. 1-16: CV-00233 |

## DECLARATION OF SAM GROVER

I, Sam Grover, do hereby declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the following facts set forth below are true and correct to the best of my knowledge:

1. I am a staff attorney employed by the Plaintiff, Freedom From Religion Foundation, Inc. ("FFRF").

2. I make this declaration in support of FFRF's Motion for Summary Judgment.

3. FFRF is a non-profit membership organization that advocates for the separation of state and church and educates on matters of non-theism.

4. FFRF has more than 23,500 members, with members in every state of the United States, including nearly 1,000 members living in the State of Texas.

5. The number of Americans who do not identify with any religion constitutes about 23% of the U.S. public, according to the Pew Research Center.

6. In December of 2014, FFRF became aware that a Christian Nativity scene was being displayed in the Texas State Capitol. (See Exhibits 1-4, constituting true and correct copies of news accounts of the nativity scene displayed in the State Capitol in December of 2014.)

7. Media reports about the nativity scene in the Texas State Capitol indicated that this was the first time such a religious display was exhibited in the Capitol, which piqued our interest in the possibility of our own display. (*See, e.g.*, David Scott, *Nativity scene to be placed in Texas Capitol rotunda*, KXAN (Dec. 11, 2014) ("[N]o one KXAN checked with could remember such a display ever being placed in the rotunda at the Texas statehouse."); Angie Beavin, *Nativity scene on display inside Texas Capitol*, KXAN (Dec. 14, 2014) ("Such a display has never been put up in the Texas Capitol building."); Shannon Murray, *Nativity scene unveiled at Texas Capitol*, KVUE (Dec. 15, 2014) (noting that the religious display was going up "[f]or the first time").

8. The display of a nativity scene in the Texas Capitol, and in other capitols as well, concerned FFRF because of the potential for government endorsement of religion, particularly Christianity.

9. Media reports about the nativity scene at the Texas State Capitol, however, emphasized the private sponsorship of the display, including the motivation for the display to celebrate the birth of Christ. (See Exhibits 3 and 4, constituting true and correct copies of news accounts regarding the nativity scene displayed in the Texas State Capitol.)

10. The Texas Nativity Scene Project, a private organization, reportedly sponsored the nativity scene in the Texas Capitol, looking to combat the "War on Christmas." (See Exhibit 1, constituting a true and correct copy of a news account regarding the nativity scene displayed in the Texas State Capitol in December of 2014.)

11. The sponsor of the nativity scene reportedly intended by its exhibit to communicate a distinctly Christian message, according to the project's spokesperson. This is an expression of the Christian community coming together and saying, 'we have a right to be in the public square and express our views as much as anyone else.'" (See Exhibits 1, 3, and 4, constituting true and correct copies of news accounts regarding the nativity scene displayed in the Texas State Capitol.)

12. It was reported that the Texas Nativity Scene Project is a private non-profit group headed by Assistant Texas Attorney General Joseph Behnke, who stated that the group's "primary purpose is really just the reason for the season: 'To keep Christ in Christmas.'" (See Exhibit 4, constituting a true and correct copy of a news account regarding the nativity scene displayed in the Texas State Capitol in December of 2014.)

13. In his reported public comments, Behnke claimed that he was acting as a private citizen in his leadership of the Texas Nativity Scene Project and not as a representative of the Office of the Attorney General. (See Exhibit 4.)

14. In addition to sponsorship by the Texas Nativity Scene Project, the Thomas More Society, an advocacy law firm specializing in the promotion of nativity scenes in state capitols, claimed responsibility for the nativity in the Texas State Capitol. (See Exhibit 2, constituting a true and correct copy of a news account regarding the nativity scene displayed in the Texas State Capitol in December of 2014.)

15. According to the Thomas More Society, the display of nativity scenes in state capitols, including Texas, represents "constitutionally protected free speech and expression of religious faith by private citizens in a traditional public forum." (See Exhibit 2.)

16.     The fact that such a Christian display in the State Capitol was privately funded and sponsored, ostensibly without government aid or endorsement, was reportedly significant to the State Preservation Board's approval of the nativity display. (See Exhibit 1 and 3, constituting true and correct copies of news accounts regarding the nativity scene displayed in the Texas State Capitol in December of 2014.)

17.     The Thomas More Society further publically defended nativity displays in state capitals as "constitutionally protected expression by private citizens in traditional or designated public forums, where the sole role of the government must be that of a viewpoint-neutral gatekeeper assuring open access for all citizens to have their 'say.'" (See Exhibit 5, a true and correct copy of statement by the Thomas More Society entitled "Displaying The Nativity Scene In A Public Forum.")

18.     In a later communication regarding FFRF's own Bill of Rights exhibit, the Capitol Events and Exhibit Coordinator for the State Preservation Board, Robert Davis, expressly noted that the 2014 Christian nativity scene had included a disclaimer of state involvement and requested FFRF to "post a similarly worded sign accompanying your display, mentioning the sponsor, and that it was privately funded and displayed." (A true and correct copy of this communication to me from Robert Davis, Capitol Events and Exhibit Coordinator, is attached to this Declaration as Exhibit 6.)

19.     As FFRF considered its own display, therefore, FFRF perceived from public sources and from the characterizations of Texas State officials, including the State Preservation Board, that displays in the State Capitol were private speech.

20. The State Preservation Board, incidentally, also approved a stand-alone display of a Christian nativity scene in 2015, which was displayed without premature removal by the Board.

21. Given the public characterizations of the nativity scene in the Texas State Capitol as being a purely private display, FFRF began in early 2015 to investigate the procedure by which FFRF might exhibit its own display at the Texas State Capitol.

22. I personally was involved in that process, as I began communicating with Robert Davis of the Texas State Preservation Board, which I learned was the responsible body for coordinating the scheduling of display and exhibits in public areas of the Texas State Capitol.

23. FFRF ultimately submitted an exhibit application to the State Preservation Board on July 7, 2015, which the State Preservation Board approved after FFRF's voluntary revisions, without any editorial control or alteration of FFRF's substantive message. (A true and correct copy of FFRF's original exhibit application and sponsorship form is attached to this Declaration as Exhibit 7.)

24. On July 20, 2015, FFRF submitted revisions to its application after discussing the display with Representative Donna Howard, the State Official Sponsor for FFRF's display. The dates for the exhibit were later changed after discussion with Robert Davis of the State Preservation Board. (See Exhibit 8 constituting a true and correct copy of FFRF's revised application, after the dates were changes on August 4, 2015.)

25. FFRF described its proposed display in its application as "Cutout figures celebrating the December 15 nativity of the Bill of Rights. The figures will be self-standing and will be approximately life-sized." (See Exhibit 7.)

26. FFRF's exhibit application also identified Texas Representative Donna Howard as our "State Official Sponsor." (See Exhibit 7.)

27. FFRF described its proposed exhibit, in a letter dated May 29, 2015, written to potential "State Official Sponsors," as "a temporary display in the Ground Floor Rotunda that celebrates freethought and the United States as the first among nations to formally embrace the separation of state and church." (A true and correct copy of this communication from FFRF—a personalized copy of which was mailed to each member of the Texas legislature, Lieutenant Governor, and Governor— is attached to this Declaration as Exhibit 9.)

28. FFRF further explained its proposed exhibit as an effort "to celebrate the views of Texans who are part of a religious minority or have no religion at all." (See Exhibit 9.)

29. FFRF also sought to diversify the limited expression displayed in 2014, manifested by the stand-alone Christian nativity in the State Capitol.

30. The additional stated purpose of FFRF's display was to "educate the public and celebrate the 224th anniversary of the ratification of the Bill of Rights on December 15, 1791. Also, to celebrate the Winter Solstice on December 22 and to educate the public about the religious and nonreligious diversity within the State." (See Exhibit 7.)

31. The State Preservation Board, by the Executive Director and his staff, officially approved FFRF's exhibit application on August 6, 2015, after determining that FFRF had met all of the Board's requirements for exhibits.

32. Texas members of FFRF subsequently gathered in the Texas Capitol's Ground Floor Rotunda on December 18 and put FFRF's display in place. (See Exhibit 10, constituting a true and correct picture of Texas FFRF members gathered about FFRF's Bill of Rights display.)

33.     FFRF's display featured Benjamin Franklin, Thomas Jefferson, George Washington, and the Statue of Liberty gathered around the Bill of Rights, which was placed in a manger. (See Exhibit 10.)

34.     Accompanying the display was a sign that read: "Happy Winter Solstice/At this Season of the Winter Solstice, we honor reason and the Bill of Rights (adopted December 15, 1791)/Keep State & Church Separate/On behalf of Texas members of the Freedom From Religion Foundation." (See Exhibit 10.)

35.     No known disruptions, incidents, controversy, or complaint ensued after FFRF's exhibit went on display in the State Capitol on December 18, 2015, except for the objection of Governor Abbott, described below.

36.     FFRF's display was at all times owned by FFRF, scheduled for a limited period of display, and FFRF was totally responsible for its message.

37.     All of my interactions with Robert Davis at the Texas State Preservation Board, moreover, were mutually cordial, respectful, and cooperative.

38.     Similarly, all communications with the State Preservation Board regarding the actual placement and setting up of the display were friendly, helpful, and cooperative.

39.     In none of my interactions with the State Preservation Board was complaint or reservation ever expressed regarding the substance or viewpoint of FFRF's exhibit.

40.     As noted above, Mr. Davis only asked that FFRF include a disclaimer of State sponsorship, similar to a disclaimer displayed with the nativity scene.

41.     After FFRF's exhibit went on display on December 18, 2015, however, I subsequently learned that the staff of the State Preservation Board removed FFRF's exhibit, without any notice to me or anyone else at FFRF, and without opportunity to object by FFRF.

42. On December 22, 2015, FFRF learned that our exhibit had been removed from the Capitol upon the demand of Governor Abbott.

43. On or around December 22, 2015, Governor Abbott wrote to the Defendant, John Sneed, "as Chairman of the State Preservation Board," demanding that Sneed "remove [FFRF's] display from the Capitol immediately." (See Exhibit 11, a true and correct copy of the December 22, 2015 version of Governor Abbott's letter.)

44. In his letter, Governor Abbott claimed that FFRF's display failed to meet State Preservation Board criteria for approval, including because the display "does not educate," or promote public morals and the general welfare.

45. Governor Abbott accused FFRF of "tasteless sarcasm," called its message "spiteful" and "intentionally designed to belittle and offend," and claimed that the display "undermines rather than promotes any public purpose."

46. Governor Abbott did not explain, however, how the Christian nativity displayed in the Capitol more readily met his interpretation of the State Preservation Board's criteria.

47. Governor Abbott also seemingly missed the point that FFRF's display, in fact, communicated a diverse message from that of the Christian nativity scene, *i.e.*, a message that was not religious.

48. Governor Abbott instead vehemently complained that "the exhibit does not depict any other religion, much less does it promote religious 'diversity.'"

49. Governor Abbott then also claimed incorrectly that "the exhibit promotes ignorance and falsehood," whereupon the Governor cited 17 lines of a fake quote falsely attributed to George Washington from a fabricated prayer journal.

50. Scholars and experts who have compared the handwriting of the purported Washington quote have consistently concluded that it is a fake.

51. Governor Abbott, in his diatribe to the Executive Director of the State Preservation Board, concluded that "the general public does not have a 'direct interest' in the Freedom From Religion Foundation's purpose. That organization is plainly hostile to religion and desires to mock it."

52. Finally, Governor Abbott claimed that FFRF's exhibit was indecent ("it violates general standards of decency") and he compared it to a crucifix immersed in a jar of urine.

53. The Defendant Sneed, after receiving the Governor's demand, reportedly consulted with State Preservation Board member Charlie Geren, who advised Sneed that if Governor Abbott wants the FFRF exhibit taken down, then he should do so.

54. Prior to the present litigation, no one associated with the State Preservation Board, including Governor Abbott, had ever claimed that FFRF's Bill of Rights display, or the Christian nativity scene, constituted the State's own speech.

55. In fact, the application and approval for the Christian nativity scene, in both 2014 and 2015, identified the purpose of that exhibit to simply be "Citizen exercise of free speech." (See Exhibits 12 and 13, constituting true and correct copies of documents produced by the Defendants in response to Request for Production of Documents.)

56. The State Preservation Board's approval of the nativity scene followed urging by the Thomas More Society that such a display constituted protected speech in a public forum. (See Exhibit 14, constituting a true and correct copy of document produced by the Defendants relating to the nativity scene application of Thomas More Society.)

57. Significantly, the State Preservation Board apparently has never denied any application for approval of a requested display between January 1, 2013, and the present.

58. In response to a Request for Production of "all documents relating to the denial by the State Preservation Board of any application to exhibit or display in the State Capitol between January 1, 2013, and the present," the Defendants responded "that they have no such documents in their possession, custody or control." (See Exhibit 15, a true and correct copy of Defendants' responses to Plaintiff's Request for Production of Documents.)

59. The Defendants also stated that they have no documents in their possession, custody or control "relating to any exhibit or display prematurely removed by the State Preservation Board while approved for display or exhibit." (See Exhibit 15.)

60. Governor Abbott's claim that FFRF's Bill of Rights display does not educate or promote public morals and the general welfare, or represent a matter in which the general public has a "direct interest," is also belied by my review of other displays approved by the State Preservation Board without objection by Governor Abbott.

61. The State Preservation Board, for example, approved a display by the Austin Jewish Academy for the purpose of "community outreach." (See Exhibit 16, constituting a true and correct copy of a record produced by the Defendants in response to Plaintiff's Request for Production of Documents.)

62. The State Preservation Board also approved a display of student quilts on Catholic Advocacy Day. (See Exhibit 17, constituting a true and correct copy of a record produced by the Defendants in response to Plaintiff's Request for Production of Documents.)

63. An application by the Young Conservatives of Texas was also approved by the State Preservation Board "to connect college students with established organizations that

promote conservative values." (See Exhibit 18, constituting a true and correct copy of a record produced by the Defendants in response to Plaintiff's Request for Production of Documents.)

64.     Other applications approved by the State Preservation Board have a far narrower relationship to the "general welfare" and "direct interest" of the public than FFRF's display, which concerns the 23% of adult Americans who are nonreligious, the many others who value religious and nonreligious diversity, and anyone affected by the Bill of Rights. Examples include:

    a.     Approval of display "recognizing families and elementary students in District 46." (See Exhibit 19, constituting a true and correct copy of a record produced by the Defendants in response to Plaintiff's Request for Production of Documents.);

    b.     Approval of display by Leading Age Texas showcasing works of art by "older Texans all over the state." (See Exhibit 20, constituting a true and correct copy of a record produced by the Defendants in response to Plaintiff's Request for Production of Documents.);

    c.     Approval of Odyssey School Of Art "student annual exhibition." (See Exhibit 21, constituting a true and correct copy of a record produced by the Defendants in response to Plaintiff's Request for Production of Documents.);

    d.     Approval of School District 75 Art Show. (See Exhibit 22, constituting a true and correct copy of a record produced by the Defendants in response to Plaintiff's requests for production of documents.);

    e.     Approval of exhibit by Texas Chiropractic Association "to give free massages to those who work at the Capitol." (See Exhibit 23, constituting a true and

correct copy of a record produced by the Defendants in response to Plaintiff's Request for Production of Documents.);

  f. Approval of exhibit by Texas State Florists' Association to promote "public awareness of agriculture floral items and Texas grown plants." (See Exhibit 24, constituting a true and correct copy of a record produced by the Defendants in response to Plaintiff's Request for Production of Documents.);

  g. Approval of Arlington ISD art show. (See Exhibit 25, constituting a true and correct copy of a record produced by the Defendants in response to Plaintiff's Request for Production of Documents.);

  h. Approval of display by Southlake Women's Club showcasing "a piece of student artwork from District 98." (See Exhibit 26, constituting a true and correct copy of a record produced by the Defendants in response to Plaintiff's Request for Production of Documents.);

  i. Approval of calligraphy display by International Buddhist Progress Society of Austin. (See Exhibit 27, constituting a true and correct copy of a record produced by the Defendants in response to Plaintiff's Request for Production of Documents.);

  j. Approval of exhibit by Art From The Streets to "increase awareness about street art." (See Exhibit 28, constituting a true and correct copy of a record produced by the Defendants in response to Plaintiff's Request for Production of Documents.);

  k. Approval of student art exhibit by Austin Jewish Academy. (See Exhibit 29, constituting a true and correct copy of a record produced by the Defendants in response to Plaintiff's Request for Production of Documents.);

l.  Approval of display by School District 98/Southlake Women's Club to "highlight a talented high school artist from the 98th District of Texas." (See Exhibit 30, constituting a true and correct copy of a record produced by the Defendants in response to Plaintiff's Request for Production of Documents.);

m.  Approval of display by Illustrative Preservation "to promote interest in Texas (and outside our state) of statuary structures and signage." (See Exhibit 31, constituting a true and correct copy of a record produced by the Defendants in response to Plaintiff's Request for Production of Documents.);

n.  Approval of display by King Ranch Main House "to educate the public about the 100th anniversary of the King Ranch Main House." (See Exhibit 32, constituting a true and correct copy of a record produced by the Defendants in response to Plaintiff's Request for Production of Documents.);

o.  Approval of display by Texas Association of Interior Design "to educate the public that state registered interior designers are educated to protect health, safety, and welfare in the built environment." (See Exhibit 33, constituting a true and correct copy of a record produced by the Defendants in response to Plaintiff's Request for Production of Documents.); and

p.  Approval of application by Texas NORML "to educate citizens and legislature on cannabis issues." (See Exhibit 34, constituting a true and correct copy of a record produced by the Defendants in response to Plaintiff's Request for Production of Documents.)

65.    These examples are not exclusive, as my review of applications approved by the State Preservation Board since January 1, 2013, revealed no such restrictions being required by the Board as Governor Abbott cited as justification for removing FFRF's display.

66.    In contrast to the examples noted above, the stated purpose of FFRF's exhibit was "to educate the public and celebrate the 224th anniversary of the ratification of the Bill of Rights on December 15, 1791. Also, to celebrate the Winter Solstice on December 22 and to educate the public about the religious and non-religious diversity within the State." (See Exhibit 7, constituting a true and correct copy of FFRF's application for Bill of Rights display.)

67.    FFRF's Bill of Rights display seemingly had greater educational value and more direct public interest than a whole host of displays approved by the State Preservation Board, as indicated by the examples shown above.

68.    In approving FFRF's Bill of Rights display, the State Preservation Board, including Robert Davis, never questioned anything about FFRF's exhibit, but merely asked for, and received, a disclaimer of State sponsorship, fully consistent with a public forum open to "citizens exercise of free speech." (See Exhibits 12 and 13, constituting true and correct copies of Nativity Scene application produced by Defendants.)

69.    FFRF's Bill of Rights display was treated by the State Preservation Board as FFRF's own speech prior to this suit, just as the State Preservation Board considered that "the Thomas More Society is the organization responsible for this [nativity scene] exhibit," in a statement made to a reporter at the Dallas News. (See Exhibit 35, constituting a true and correct copy of communication produced by the Defendants in response to Plaintiff's Request for Production of Documents.)

Dated this __19__ day of August, 2016.

_____
Sam Grover

f:\docs\wd\26318\34\a2512954.docx