IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
16 DEC 20 PM 2: 56
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

FREEDOM FROM RELIGION
FOUNDATION, INC.,
         **Plaintiff,**

-vs-

GOVERNOR GREG ABBOTT,
CHAIRMAN OF THE TEXAS STATE
PRESERVATION BOARD, and JOHN
SNEED, EXECUTIVE DIRECTOR OF
THE TEXAS STATE PRESERVATION
BOARD;
         **Defendants.**

**CAUSE NO.:**
**A-16-CA-00233-SS**

## O R D E R

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically, Defendants Greg Abbott and John Sneed's Motion for Summary Judgment [#31] and Plaintiff Freedom From Religion Foundation, Inc.'s Response [#35] thereto, as well as Plaintiff's Motion for Summary Judgment [#33], Defendants' Response [#36] thereto, and Plaintiff's Notice of Recent Supplemental Authority [#37]. Having reviewed the case file as a whole, the Court now enters the following opinion and orders.

### Background

This is an action pursuant to 42 U.S.C. § 1983 by Plaintiff Freedom From Religion Foundation, Inc. (FFRF) against Defendants Texas Governor Greg Abbot and Executive Director of the Texas State Preservation Board (Board) John Sneed.[1] FFRF asserts Defendants violated

---

[1] FFRF initially brought suit against both Defendants in their individual and official capacities. First Am. Compl. [#15] ¶ 5. The Court dismissed FFRF's individual capacity claims as to Executive Director Sneed based on qualified immunity. Order of June 21, 2016 [#28] at 1. Thus, FFRF's claims are against Governor Abbott in his individual and official capacity and against Executive Director Sneed in his official capacity.

FFRF's constitutional rights under the First and Fourteenth Amendments by excluding FFRF's Bill of Rights exhibit from the Texas State Capitol exhibition area.

The Board allows private citizens to apply to display exhibits in one of three indoor spaces within the Capitol building: the Ground Floor Rotunda and the North and South Central Galleries. Defs.' Mot. Summ. J. [#31-1] Ex. 2 (Application for Exhibits in Capitol) at 1. Each application must be accompanied by a recommendation from the Governor, the Lieutenant Governor, or a member of the Texas Senate or the House of Representatives. 13 TEX. ADMIN. CODE § 111.13(a)(4). In addition, exhibits must have a "public purpose" or, in other words, promote "the public health, education, safety, morals, general welfare, security, and prosperity of all of the inhabitants or residents within the state, the sovereign powers of which are exercised to promote such public purpose or public business." *Id.* at § 111.13(a)(3). The Board retains final approval of the exhibit applications. TEX. GOV'T CODE §§ 443.001, 443.003(c), 443.007(a).

FFRF is a non-profit membership organization that advocates for the separation of church and state and educates on matters of nontheism. First Am. Compl. [#15] ¶ 12. On February 4, 2015, FFRF contacted the Board's Capitol Events and Exhibits Coordinator to inquire about the requirements of placing an exhibit inside the Capitol building. Defs.' Mot. Summ. J. [#31-1] Ex. 4 (February Emails between FFRF and Board). After learning the exhibit application required a sponsor, FFRF wrote a letter to all Texas Legislators on May 29, 2015, inquiring if any legislator wanted to sponsor "a temporary display in the Ground Floor Rotunda that celebrates freethought and the United States as the first among nations to formally embrace the separation of state and church." *Id.* Ex. 5 (FFRF's May Letter to Texas Legislators) at 2. Representatives Elliot Naishtat and Donna Howard, based on the description of the exhibit in

FFRF's May Letter, offered to sponsor the exhibit. *Id.* Ex. 6 (May 2015 Email from Rep. Naishtat to FFRF); *id.* [#31-2] Ex. 9 (June 2015 Email from Rep. Howard to FFRF).

So, on June 29, 2015, FFRF emailed its exhibit application (Original Application) to Rep. Naishtat's office for him to sign as a sponsor. *Id.* [#31-1] Ex. 8 (June 2015 Email from FFRF to Rep. Naishtat); *id.* [#31-2] Ex. 10 (Original Application). The Original Application described FFRF's exhibit as "depicting life-size figures celebrating the December 15th nativity of the Bill of Rights," accompanied by a 4'x7' banner that read: "At this season of the Winter Solstice, LET REASON PREVAIL. There are no gods, no devils, no angels, no heaven or hell. There is only our natural world. Religion is but myth & superstition that hardens hearts & enslaves minds." Original Application at 4. After receiving FFRF's Original Application, Rep. Naishtat's office decided to withdraw its support. *Id.* Ex. 11 (July 2015 Emails between FFRF and Rep. Naishtat) ("As I said, I spoke too soon, Rep. Naishtat is declining to be a sponsor.").

In light of this change, FFRF reached out to Rep. Howard and sent her the Original Application to sign. *Id.* Ex. 12 (July 7, 2015 Emails between FFRF and Rep. Howard). Rep. Howard's office reviewed the Original Application and wrote to FFRF, explaining Rep. Howard felt "uncomfortable with the language currently presented on the banner." *Id.* Ex. 13 (July 10, 2015 Email from Rep. Howard to FFRF). FFRF then suggested changing the language on the banner to read: "Happy Winter Solstice; At this Season of the Winter Solstice, we honor reason and the Bill of Rights (adopted December 15, 1791); Keep State & Church Separate; (smaller text) On behalf of Texas members of the Freedom From Religion Foundation." *Id.* Ex. 14 (July 15, 2015 Email from FFRF to Rep. Howard). Rep. Howard approved of this change and FFRF submitted its revised application, with Rep. Howard's signature, to the Board on July 20, 2015 (Revised Application). *Id.* Ex. 15 (July 2015 Emails between FFRF and Board); *id.* Ex. 16

3

(Revised Application). The Revised Application requested the exhibit be displayed from December 18, 2015 at 9 a.m. to December 23, 2015 at 5 p.m. Revised Application at 1. It also included "an artist's mockup and diagram of what the Bill of Rights nativity might look like," which depicted Benjamin Franklin, Thomas Jefferson, George Washington, and the Statue of Liberty gathered around a manger containing the Bill of Rights. *Id.* at 3. Finally, at the request of the Capitol Events and Exhibits Coordinator, the following statement was added to the banner: "Private display, not endorsed by the state." *Id.* Ex. 16 (Board Approval Email); *id.* Ex. 17 (Approved Banner).

The Board approved the Revised Application and FFRF's exhibit was displayed in the Ground Floor Rotunda on December 18, 2015. *Id.* Later that evening, the Capitol Events and Exhibits Coordinator, at the request of his "boss," made "an aesthetic change and move[d] the display to one of the walls within the exhibit space . . . where [the exhibit] enjoy[ed] the benefit of more light." *Id.* Ex. 23 (December Email from Board to FFRF). For four days, and without incident, FFRF's exhibit was displayed in the Ground Floor Rotunda. On December 22, 2015, however, Governor Abbott, the Chairman of the Board, sent a letter to John Sneed, the Board's Executive Director, "urg[ing him] to remove [FFRF's] display from the Capitol immediately." *Id.* Ex. 24 (Governor Abbott Letter) at 3. In his letter, Governor Abbott explained FFRF's exhibit violated the Texas Administrative Code, which authorizes "the approval only of those Capitol exhibits that promote a 'public purpose.'" *Id.* (citing 11 TEX. ADMIN. CODE § 111.13(c)(2)). After consulting with another Board member, Executive Director Sneed removed FFRF's exhibit from the Ground Floor Rotunda on December 22nd, one day before the exhibit was scheduled to be taken down. First Am. Compl. [#15] ¶¶ 86–87.

On July 21, 2016, FFRF submitted another application (2016 Application) to the Board, which was identical to the Revised Application. Defs.' Mot. Summ. J. [#31-2] Ex. 25 (2016 Application). On August 18, 2016, Executive Director Sneed indicated "any application to display the same exhibit which was removed [in 2015] will be denied for failure to satisfy the public purpose requirement." *Id.* Ex. 27 (August Letter from Sneed to Rep. Howard) at 2. FFRF then filed this action claiming Defendants violated FFRF's free speech, equal protection, and due process rights as well as its rights under the Establishment Clause. *See* First Am. Compl. [#15]. The parties filed cross-motions for summary judgment, which are now ripe for review.

## Analysis

### I. Legal Standard

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*

"Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

## II. Application

FFRF brings five claims against Defendants: (1) a freedom of speech claim under the First Amendment, (2) an equal protection claim under the Fourteenth Amendment, (3) a claim under the Establishment Clause of the First Amendment, (4) a claim under the unbridled discretion doctrine, and (5) a due process claim under the Fourteenth Amendment. Both parties

move for summary judgment on the first four claims. Defendants move for summary judgment on FFRF's claim under the Due Process Clause.[2]

The Court finds FFRF has established genuine issues of material fact with regard to its claims brought under the Freedom of Speech Clause and Establishment Clause, but not with regard to its Equal Protection Clause claim, unbridled discretion claim, and Due Process Clause claim. Thus, Defendants' Motion for Summary Judgment is DENIED with respect to FFRF's claims under the Freedom of Speech and Establishment Clauses and GRANTED with respect to FFRF's remaining claims. At the same time, FFRF has failed to prove all of its claims as a matter of law. Thus, FFRF's Motion for Summary Judgment is DENIED.

---

[2] In their motion for summary judgment, Defendants first argue all of FFRF's claims against them are waived because FFRF signed the exhibit application and thereby agreed to the Board's Policy for Exhibitions in the Capitol. Defs.' Mot. Summ. J. [#31] at 19–20. The policy, in relevant part, states:

> Exhibit holder agrees that the [Board], the State of Texas, all of its officers, employees and agents are now and hereafter relieved of any and all responsibility and liability for any and all injury, loss or damage that the exhibit holder, its agents and invitees or their property may incur as a result of or during the exhibit holder's use of the Capitol or the Capitol Extension, provided said injury, loss or damage is not the result of the negligence of a[ Board] employee. Therefore, exhibit holder on its own behalf and on behalf of its agents and invitees hereby agrees to hold harmless, indemnify and defend the [Board], the State of Texas, all of its officers, employees and agents from and against any and all costs, damages, fees, expenses, or liability of any type or nature related to the same.

*Id.* [#31-1] Ex. 3 (Policy) at 2.

There is a "strong presumption against waiver of constitutional rights." *Gonzalez v. Hidalgo Cty., Tex.*, 489 F.2d 1043, 1046 (5th Cir. 1973). Constitutional rights may be waived contractually if done so voluntarily, intelligently, and knowingly, i.e., with full awareness of the legal consequences. *See D.H. Overmyer Co., Inc. v. Frick Co.*, 405 U.S. 174, 187 (1972); *see also Brookhart v. Janis*, 384 U.S. 1, 4 (1966) ("There is a presumption against the waiver of constitutional rights, . . . and for a waiver to be effective it must be clearly established that there was 'an intentional relinquishment or abandonment of a known right or privilege.'") (citation omitted). The Court disagrees this section of the Board's Policy meets this high standard. For example, the Policy explicitly excludes from FFRF's indemnity "injury, loss, or damage [that] is not a result of the negligence of a[ Board] employee." In light of this negligence exception, to argue injury resulting from the Board's *constitutional* violations is *included* in the indemnity clause is nonsensical. Further, the record does not provide any other evidence—besides the Policy's language—FFRF voluntarily, intelligently, and knowingly waived a constitutionally protected right. *See Gonzalez*, 489 F.2d at 1046.

## A.     Freedom of Speech Claim

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. CONST. amend. I.  This clause "affords protection to symbolic or expressive conduct as well as to actual speech." *Virginia v. Black*, 538 U.S. 343, 358 (2003) (citation omitted).  These protections, "however, are not absolute, and [courts] have long recognized that the government may regulate certain categories of expression consistent with the Constitution." *See id.*  FFRF argues its Bill of Rights exhibit in the Ground Floor Rotunda constitutes private speech made within a traditional or designated public forum.  According to FFRF, Defendants' exclusion of the exhibit is content-based and viewpoint-based and thus constitutes an unconstitutional restriction on speech in traditional and designated public forums. Pl.'s Mot. Summ. J. [#33] at 13.  Defendants, on the other hand, claim FFRF's exhibit is government speech, which is not restricted by the First Amendment. Defs.' Mot. Summ. J. [#31] at 8–11.  Alternatively, even if the exhibit constitutes private speech, Defendants argue the Capitol's exhibition area is a limited or nonpublic forum, upon which the government can impose reasonable, viewpoint-neutral restrictions. *Id.* at 11.

### 1.     Government Speech

"When government speaks, it is not barred by the Free Speech Clause from determining the content of what it says." *Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*, 135 S. Ct. 2239, 2245 (2015); *Pleasant Grove City v. Summum*, 555 U.S. 467, 468 (2009) ("The Free Speech Clause restricts government regulation of private speech; it does not regulate government speech.").  To determine whether speech or expressive conduct constitutes government speech, the U.S. Supreme Court has identified three relevant factors: (1) whether the government has historically used the medium of speech at issue to speak; (2) whether a reasonable observer

would interpret the speech as conveying a message on the government's behalf; and (3) whether the government retained control and final authority over the content of the message. *Walker*, 135 S. Ct. at 2248–50; *Summum*, 555 U.S. at 470–73.

For instance, the U.S. Supreme Court in *Walker* held personalized license plates issued by the Texas Department of Motor Vehicles constituted government speech because (1) license plates "long have communicated messages from the States"; (2) license plates "'are often closely identified in the public mind with the [State],'" such that reasonable observers "interpret them as conveying some message on the [State's] behalf"; and (3) the State "effectively controlled" the content of the messages presented by license plates because it has authority to approve the license plates. 135 S. Ct. at 2248–49 (quoting *Summum*, 555 U.S. at 470, 472–73). Similarly, in *Summum*, the U.S. Supreme Court held a privately funded monument in a city park constituted government speech because (1) "[g]overnments have long used monuments to speak to the public"; (2) public parks are "closely identified in the public mind with the government unit that owns the land"; and (3) the city retained "control" by maintaining "final approval authority" over whether a monument would be installed in the park and by "set[ting] forth the criteria" used in selecting monuments for the park. 555 U.S. at 473.

Unlike this precedent, however, the exhibits in the Capitol building do not constitute government speech. First, Defendants have not presented evidence illustrating that "historically, governments have used designs and displays in statehouses to speak to the public." Defs.' Mot. Summ. J. [#31] at 10. While the Texas government undoubtedly uses some displays in the Capitol to communicate with the public, there is no evidence in the record establishing the Capitol exhibits displayed in the Ground Floor Rotunda have previously been used by the government as a platform to reach the public. If anything, the evidence shows that in the past

private citizens have used the Capitol exhibition area to display exhibits containing their own messages, not the government's. *See* Original Application at 1 (containing space for applicant to write "Purpose of exhibit."); Pl.'s Mot. Summ J. [#33-2] Exs. 12–13 (Board approved a traditional nativity scene exhibit with the stated purpose of "Citizens [sic] exercise of free speech.").

Second, a reasonable person would not find the Capitol exhibits are the voice of the government. Not only did the Capitol Events and Exhibits Coordinator request that FFRF include a statement explaining its exhibit was a "Private display, not endorsed by the state," but the record shows the Board had previously required similar disclaimers for other Capitol exhibits. Board Approval Email (attaching "a photo from last year's [traditional] nativity scene display" and instructing FFRF to "post a similarly worded sign accompanying [its] display, mentioning the sponsor, and that it was privately funded and displayed"). In contrast, the monuments in the city park in *Summum* and the license plates in *Walker* did not include express statements disassociating the government from the expressive conduct. *See Summum*, 555 U.S. at 471 ("And because property owners typically do not permit the construction of such monuments on their land, persons who observe donated monuments routinely—and reasonably—interpret them as conveying some message on the property owner's behalf."); *Walker*, 135 S. Ct. at 2249 ("Texas license plates are, essentially, government IDs. And issuers of IDs 'typically do not permit' the placement on their IDS of 'message[s] with which they do not wish to be associated.'") (citation omitted). Thus, because FFRF's exhibit expressly states it is privately funded and not endorsed by the government, reasonable citizens would not assume the exhibit "convey[ed] some message on the [government's] behalf." *Summum*, 555 U.S. at 471.

Third, it is true the Board retains final approval authority over which exhibits are displayed in the Capitol exhibition area. *See* TEX. GOV'T CODE §§ 443.001, 443.003(c), 443.007(a); 13 TEX. ADMIN. CODE § 111.13. This factor, however, does not outweigh the other two factors that support analyzing the Capitol exhibits as private speech. *See Summum*, 555 U.S. at 484 (Breyer, J., concurring) ("[C]outs must apply categories such as 'government speech' . . . with an eye toward their purposes—lest we turn 'free speech' doctrine into a jurisprudence of labels.").[3]

In sum, after applying the framework applied in *Summum* and *Walker*, the Court finds the Capitol exhibits do not constitute government speech.[4] *See Ark. Soc. of Freethinkers v. Daniels*, No. 4:09CV00925SWW, 2009 WL 4884150, at *4 (E.D. Ark. Dec. 16, 2009) (finding Winter Solstice display on Arkansas State Capitol's grounds did not constitute government speech, in part because it was "owned, possessed, maintained, and installed by a private group, not the government").

## 2. Private Speech—Forum Analysis

In the First Amendment context, courts use "'forum analysis' to evaluate government restrictions on purely private speech that occurs on government property." *Walker*, 135 S. Ct. at

---

[3] Defendants also argue the Capitol exhibits constitute government speech because "Texas law adopts Capitol exhibits as the sovereign's speech." Defs.' Mot. Summ. J. [#31] at 10. The Court rejects this argument. The Texas Administrative Code does not state the Texas government adopts Capitol exhibits as its own speech—the Code merely states "the sovereign powers" of the state "are exercised to promote . . . a public purpose or public business" in the context of approving the display of exhibits in the Capitol. 13 TEX. ADMIN. CODE § 111.13(a)(3). Further, Defendants' instruction to FFRF to include a notice on its exhibit disclaiming any state endorsement directly contradicts Defendants' sovereign speech argument.

[4] Because the Court did not consider or rely on the newspaper articles or legal conclusions referenced in the Declaration of Sam Grover in concluding the Capitol exhibits are not government speech, the Court need not address Defendants' allegations that such evidence is inadmissible. Defs.' Resp. Pl.'s Mot. Summ. J. [#36] at 3–5.

2251. There are three types of forums: (1) traditional public forums, (2) designated public forums, and (3) limited forums.[5] *Id.* at 2250–51.

### a.    Traditional Public Forum

A traditional public forum, such as a street or park, is one which "ha[s] immemorially been held in trust for the use of the public and, time out of mind, ha[s] been used for the purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Perry Ed. Ass'n. v. Perry Local Educators' Ass'n.*, 460 U.S. 37, 45–46 (1983) (internal quotations and citation omitted). "[G]overnment entities are strictly limited in their ability to regulate private speech in such 'traditional public fora.' . . . Reasonable time, place, and manner restrictions are allowed, . . . but any restriction based on the content of the speech must satisfy strict scrutiny, that is, the restriction must be narrowly tailored to serve a compelling government interest, . . . and restrictions based on viewpoint are prohibited." *Summum*, 555 U.S. at 469 (citation omitted).

### b.    Designated Public Forum

A designated public forum exists where "government property that has not traditionally been regarded as a public forum is intentionally opened up for that purpose." *Id.* at 469. "Government restrictions on speech in a designated public forum are subject to the same strict scrutiny as restrictions in a traditional public forum." *Id.* at 470.

---

[5] While some courts include a fourth type of forum, the nonpublic forum, the U.S. Supreme Court has recently treated limited forums and nonpublic forums as one category. *See Am. Freedom Def. Initiative v. King Cty., Wash.*, 136 S. Ct. 1022, 1023 (2016) (" . . . a limited public forum (also called a nonpublic forum). . . "). In any event, any distinction between the two forums is immaterial in this case because the same standard applies to both limited and nonpublic forums. *See id.*

### c.    Limited Forum

A limited forum "exists where a government has 'reserv[ed a forum] for certain groups or for the discussion of certain topics.'" *Walker*, 135 S. Ct. at 2250 (citing *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995)); *see also Summum*, 555 U.S. at 470. In a limited forum, the government's restrictions on speech need only be reasonable and viewpoint-neutral. *Summum*, 555 U.S. at 470; *Christian Legal Soc'y Ch. of the Univ. of Cal., Hastings C. of the L. v. Martinez*, 561 U.S. 661, 679 n.11 (2010) (In limited public forum, "a governmental entity may impose restrictions on speech that are reasonable and viewpoint-neutral.") (citation omitted); *Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 687 (1992) (O'Connor, J., concurring) ("[R]estrictions on speech in nonpublic fora are valid if they are 'reasonable' and 'not an effort to suppress expression merely because public officials oppose the speaker's view.'") (citation omitted).

### d.    The Capitol Exhibition Area is a Limited Forum.

Defendants argue the Capitol exhibition area constitutes a nonpublic or limited forum, and they can thus regulate the content of the expressive conduct as long as the regulations are reasonable and viewpoint-neutral. Defs.' Mot. Summ. J. [#31] at 11–16. Specifically, Defendants claim the Capitol exhibition area is not a traditional or designated forum because "the space is not 'generally open' to all who wish to exhibit, either by tradition, or by the government opening it up for that purpose" and "exhibitors must obtain a State official sponsor, and satisfy the Board's application and 'public purpose' requirements." *Id.* at 13. On the other hand, FFRF claims the Capitol exhibition area is a traditional or designated public forum because "it has not been 'limited to use by certain groups' or 'dedicated solely to the discussion of certain subjects.'" Pl.'s Resp. Defs.' Mot. Summ. J. [#35] at 6.

To start, the Court disagrees with FFRF that the Capitol exhibition area is a traditional forum. The area is not akin to a street or park "that the public since time immemorial has used for assembly and general communication." *Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747, 758 (5th Cir. 2010). In addition, the exhibition area is only open to private groups who adhere to the limitations established by the Texas Administrative Code. *See* 13 TEX. ADMIN. CODE. §§ 111.13(a), (c). It is not generally "available 'for use by the public . . . for free discussion of public questions, or for activities of a broad public purpose.'" *Capitol Square Review & Advisory Bd. v. Pinette,* 515 U.S. 753, 757 (1995) (citation omitted).

Now, the Court must determine whether FFRF has established the Capitol exhibition area is "at least a *designated* public forum, which would place a heavier burden on [Defendants] to show that its actions did not infringe [FFRF's] First Amendment rights, or is a *limited* public forum, which imposes a lower burden." *Three Expo Events, L.L.C. v. City of Dall., Tex.*, No. 3:16-CV-0513-D, 2016 WL 1595500, at *8 (N.D. Tex. Apr. 21, 2016). "The action—in this case and most others—exists at the line between designated and limited public forums." *Fairchild*, 597 F.3d at 758 (citing *Chiu v. Plano Indep. School Dist.*, 260 F.3d 330, 346 (5th Cir. 2001) ("Though the Supreme Court now clearly distinguishes designated public forums subject to strict scrutiny from limited public forums that are not, the line separating the two categories remains undefined.").

Here, FFRF does not provide evidence demonstrating Defendants intentionally opened up a designated public forum for public discourse by allowing exhibits to be displayed in the Capitol exhibition area. FFRF's evidence that the Board has allowed "hundreds of disparate displays in just the last three years," including a "nativity scene for the express purpose of exercising citizens' 'free speech rights'" does not illustrate the Texas government's desire to

designate the Capitol exhibition area as a place for public discourse. *See* Pl.'s Mot. Summ. J. [#33] at 11; *cf. Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546 (1975) (evidence that state intentionally designated auditorium as a public forum included the following statement from the dedication booklet: "It will be (the board's) endeavor to make (the auditorium) the community center; . . . where . . . organizations . . . may have a common meeting place to discuss [the] general welfare of the city . . . ."). Further, the Texas government has limited the Capitol exhibition area to certain subjects. *Compare* 13 TEX. ADMIN. CODE § 111.13(a)(3) (Exhibits must have a "public purpose," or, in other words, promote "the public health, education, safety, morals, general welfare, security, and prosperity of all of the inhabitants or residents within the state . . . . Political rallies, receptions, and campaign activities are prohibited in the public areas of the Capitol.") *with Daniels*, 2009 WL 4884150, at *5 (Capitol grounds constituted designated public forum "[b]ecause the Secretary[ of State's] written policy permitting temporary displays [was] void of any content-based requirements limiting displays to particular subjects or events . . . ."). Accordingly, the Court finds the Capitol exhibition area constitutes, at most, a limited public forum.

As noted, in a limited forum, the government may restrict speech as long as the restrictions are "reasonable in light of the purpose served by the forum" and do "not discriminate against speech on the basis of viewpoint." *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106–07 (citation omitted); *see also Summum*, 555 U.S. at 470; *Fairchild*, 597 F.3d at 758. The Court will now apply the limited forum standard to Defendants' decision to exclude FFRF's exhibit from the Capitol exhibition area for failing to meet the "public purpose" requirement.

### i. Reasonableness

The Court finds reasonable grounds existed for Defendants' exclusion of FFRF's exhibit. Texas law allows displays in the Capitol exhibition area as long as they promote a "public purpose." That is, exhibits must promote "the public health, education, safety, morals, general welfare, security, and prosperity of all of the inhabitants or residents within the state." 13 TEX. ADMIN. CODE § 111.13(a)(3). Defendants argue "the Governor, as the Board's chairman, provided the reasoned justification for rejecting FFRF's display . . . ." Defs.' Mot. Summ. J. [#31] at 13. According to Governor Abbott's letter, FFRF's exhibit violated the "public purpose" requirement because it intended to "belittle," "offend," and "mock[]" Christians and Christianity," "d[id] not educate [the public] . . . or "promote religious 'diversity,'" and "the general public d[id] not have a 'direct interest' in [FFRF's] purpose." Governor Abbott Letter at 1–2. Given that the Capitol exhibition area is a limited forum used to display exhibits that have a "public purpose," it was reasonable to believe FFRF's display, and its satirical view of the traditional nativity scene, would not benefit the community at large. *See Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 808 (1985) ("The Government's decision to restrict access to a nonpublic forum need only be *reasonable*; it need not be the most reasonable or the only reasonable limitation.").

### ii. Viewpoint Discrimination

In addition to being reasonable, government restrictions on speech in a limited forum must be viewpoint-neutral. *Rosenberger*, 515 U.S. at 830–831. There is "a distinction between, on the one hand, content discrimination—*i.e.*, discrimination against speech because of its subject matter—which may be permissible if it preserves the limited forum's purposes, and, on the other hand, viewpoint discrimination—*i.e.*, discrimination because of the speaker's specific

motivating ideology, opinion, or perspective—which is presumed impermissible when directed against speech otherwise within the forum's limitations." *Id.* Essentially, "[g]overnment discrimination among viewpoints . . . is a 'more blatant' and 'egregious form of content discrimination.'" *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2230 (2015) (citation omitted); *see also Rosenberger*, 515 U.S. at 829 ("The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction."). Finally, "[t]he existence of reasonable grounds for limiting access to a nonpublic forum . . . will not save a regulation that is in reality a facade for viewpoint-based discrimination." *Cornelius*, 473 U.S. at 811; *see id.* at 811–12 ("While we accept the validity and reasonableness of the justifications offered by [the government] for excluding [certain groups from the nonpublic forum], those justifications cannot save an exclusion that is in fact based on the desire to suppress a particular point of view.").

In this case, a genuine issue of material fact exists as to whether Defendants' decision to remove FFRF's exhibit constitutes viewpoint discrimination. Defendants point to Governor Abbott's letter, which states, "[t]he Board has allowed and should continue to allow diverse viewpoints to be expressed in the Capitol displays," to support the Board's dedication to viewpoint-neutral action. Defs.' Mot. Summ. J. [#31] at 14. In addition, Defendants claim "FFRF intended its exhibit to mock, belittle, and demean those of different beliefs, underscoring Governor Abbott's conclusion that it does not benefit 'the community at large.'" *Id.*

While the Court agrees Defendants' explanation for the exclusion of FFRF's exhibit is reasonable, the record shows this explanation came *after* the Board approved and displayed the exhibit in the Grand Floor Rotunda for days. Specifically, the Board received FFRF's application on July 15, 2015, and approved the exhibit on August 6, 2015. That means the Board

initially reviewed FFRF's Revised Application, analyzed its language and visual representations, and determined the exhibit did promote a "public purpose." Months later, on December 18, 2015, the exhibit was placed in the Grand Floor Rotunda, where it sat for at least four days. On December 22, 2015, the Governor sent his letter to Executive Director Sneed, claiming the exhibit did not promote a public purpose. It was only at this point that the Board adopted Governor Abbott's reasoning that FFRF's exhibit constituted "tasteless sarcasm," "promote[d] ignorance and falsehood," and was "intentionally designed to belittle and offend." Governor Abbott Letter at 1–2. Of course, these alleged problems with FFRF's exhibit would have been apparent to the Board as soon as it reviewed FFRF's application back in August 2015, and they could have excluded the exhibit on those grounds at that point. Therefore, because the Board initially found FFRF's exhibit had a "public purpose" and only excluded the exhibit when Governor Abbott sent his letter of criticisms, a genuine issue of material fact exists regarding whether Defendants engaged in viewpoint discrimination. *See Chiu v. Plano Indep. Sch. Dist.*, 260 F.3d 330, 351 (5th Cir. 2001) (concluding "genuine issues of material fact exist as to whether these Defendants engaged in the alleged viewpoint discrimination"); *Monteiro v. City of Elizabeth*, 436 F.3d 397, 404–06 (3d Cir. 2006) (upholding district court's determination a disputed issue of fact existed as to whether defendant's motive in barring plaintiff's speech constituted viewpoint discrimination); *Alpha Delta Chi-Delta Chapter v. Reed*, 648 F.3d 790, 804 (9th Cir. 2011) (finding evidence in the record raises a triable issue of fact regarding whether defendant engaged in viewpoint discrimination). For these reasons, the Court DENIES Defendants' Motion for Summary Judgment with respect to FFRF's claim under the Freedom of Speech Clause. And since a fact issue remains, FFRF's Motion for Summary Judgment is DENIED also with respect to its free speech claim.

## B.     Equal Protection Clause Claim

The Equal Protection Clause of the Fourteenth Amendment commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. It "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). FFRF argues Defendants' exclusion of FFRF's exhibit, while allowing display of a traditional nativity scene, treats non-religious believers differently from religious believers in violation of the Equal Protection Clause. Pl.'s Mot. Summ. J. [#33] at 20–21. FFRF specifically points to the Thomas More Society and Texas Nativity Scene Project's exhibits of Christian nativity scenes that were displayed in the Capitol exhibition area. *Id.* at 20. Defendants counter FFRF is not similarly situated to those groups because the Christian nativity scenes did not contain "a pejorative, belittling, or 'most irreverent' reference to any belief system." Defs.' Mot. Summ. J. [#31] at 18. Therefore, according to Defendants, FFRF's equal protection claim fails. *Id.* at 18–19.

The Court agrees with Defendants. FFRF presents no evidence beyond a conclusory statement that "FFRF is similarly situated" to the exhibitors of the Christian nativity scene. Pl.'s Mot. Summ. J. [#31] at 20. In addition, as Defendants point out, there are differences between the traditional Christian nativity scene exhibits and FFRF's exhibit, such as the satirical tone. Because FFRF provides no evidence and does not even attempt to describe the similarities between itself and the other groups it mentions, FFRF's claim under the Equal Protection Clause fails as a matter of law. Thus, the Court GRANTS Defendants' Motion for Summary Judgment with respect to FFRF's equal protection claim.

## C.    Establishment Clause Claim

Under the Establishment Clause, "Congress shall make no law respecting an establishment of religion." U.S. CONST. amend. I. A government's action violates the Establishment Clause if: (1) it does not have a predominantly secular purpose; (2) it does not have the purpose or effect of endorsing religion; or (3) it fosters excessive government entanglement with religion. *Lemon v. Kurtzman*, 403 U.S. 602, 612–13 (1971); *McCreary Cty. v. ACLU*, 545 U.S. 844, 901 (2005). When analyzing whether the government's action has a secular purpose, the government's "stated reasons will generally get deference." *McCreary*, 545 U.S. at 864. But the secular purpose "has to be genuine, not a sham, and not merely secondary to a religious objective." *Id.*

FFRF claims Defendants violated the Establishment Clause by allowing the display of certain religious exhibits, such as the Thomas More Society's Christian nativity scene, but excluding FFRF's secular display. Under the first element of the *Lemmon* test, the Court looks to whether Defendants' stated reason for excluding FFRF's exhibit is predominantly secular. Defendants claim the exhibit was excluded because it did not adhere to the requirement that Capitol displays promote a "public purpose." Defs.' Mot. Summ. J. [#31] at 16–17. As explained above, however, a genuine issue of material fact exists regarding whether Defendants engaged in viewpoint discrimination and excluded FFRF's exhibit with the purpose of silencing anti-religious speech. Because there is a fact issue with regard to whether Defendants' purpose was predominantly secular, the Court DENIES both Defendants and FFRF's Motions for Summary Judgment on FFRF's claim under the Establishment Clause.[6]

---

[6] Because the Court finds a fact issue exists with regard to whether Defendants' action violates the first element of the *Lemmon* test, there is no need to address the other two elements.

## D. Unbridled Discretion Claim

FFRF also argues the Board's criteria for approving exhibits—in particular, the requirement that an exhibit promote "a public purpose" as defined by the Texas Administrative Code—are facially unconstitutional because they "give unfettered and arbitrary discretion to officials." Pl.'s Mot. Summ. J. [#33] at 18–20. FFRF also claims in its First Amended Complaint that the Board's criteria are "impermissibly vague, both facially and as applied, because the criteria allow for arbitrary application without any objective principles." [#15] ¶ 130. Defendants respond the criteria are not vague or overbroad because there is no risk any punishment will chill protected speech, as required by the doctrines of vagueness and overbreadth. Defs.' Mot. Summ. J. [#31] at 16. In its response to Defendants' Motion for Summary Judgment, however, FFRF clarified it is not complaining about "a problem of vagueness and overbreadth, . . . as the Defendants misconstrue the issue; the problem is one of capriciousness and censorship." Pl.'s Resp. Defs.' Mot. Summ. J. [#35] at 11. Specifically, FFRF argues the "public purpose" criterion "imbues the Defendants with . . . unbridled discretion in approving or denying displays, in violation of the Constitution." *Id.*

It is well established "that in the area of free expression a licensing statute placing unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship," violating the First Amendment's guarantee of free speech. *City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 757 (1988); *see also Forsyth Cty., Ga. v. Nationalist Movement*, 505 U.S. 123, 130 (1992) ("[A permit scheme] may not delegate overly broad licensing discretion to a government official."). To support its argument the "public purpose" requirement gives the Board unfettered discretion to approve or deny exhibit applications, FFRF relies on five cases: *Forsyth County*, 505 U.S. 123; *Niemotko v. Maryland*,

340 U.S. 268 (1951); *Staub v. City of Baxley*, 355 U.S. 313 (1958); *Thomas v. Chicago Park District*, 534 U.S. 316 (2002); and *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750 (1988). Pl.'s Mot. Summ. J. [#33] at 18–19; Pl.'s Resp. Defs.' Mot. Summ. J. [#35] at 11–13. In these cases, courts struck down licensing or permitting standards in the context of traditional or designated public forums. *See also Child Evangelism Fellowship of MD, Inc. v. Montgomery Cty. Pub. Sch.*, 457 F.3d 376, 386 (4th Cir. 2006) ("The Supreme Court has long held that the government violates the First Amendment when it gives a public official unbounded discretion to decide which speakers may access a *traditional public forum*.") (citing cases) (emphasis added).

Unlike those cases, however, the Capitol exhibition area is a limited public forum. The unbridled discretion analysis still applies in the limited public forum context, but "[t]his does not mean that the unbridled discretion analysis is precisely the same when a limited public or nonpublic forum, rather than a traditional public forum, is involved." *Child Evangelism*, 457 F.3d at 387; *see also Ridley v. Mass. Bay Transp. Auth.*, 390 F.3d 65, 94–95 (1st Cir. 2004) (Court reviews government official's discretion "'in light of the characteristic nature and function' of that forum.") (citation omitted). "[T]hat discretionary access is a defining characteristic of the nonpublic forum suggests that more official discretion is permissible in a nonpublic forum than would be acceptable in a public forum." *Griffin v. Sec'y of Veterans Affairs*, 288 F.3d 1309, 1324 (Fed. Cir. 2002).

Because the Capitol exhibition area is a limited public forum, the Court finds the Board's "public purpose" criteria does not give the Board unbridled discretion. The Texas Administrative Code defines "public purpose" as "[t]he promotion of the public health, education, safety, morals, general welfare, security, and prosperity of all of the inhabitants or residents within the state . . . ," and describes "[t]he chief test of what constitutes a public

purpose" as "the public generally must have a direct interest in the purpose and the community at large is to be benefitted." 13 TEX. ADMIN. CODE § 111.13(a)(3). Because the "public purpose" definition and test provides the Board a reasonable framework with which to accept or deny exhibit applications in the limited forum context, the Board does not have unfettered discretion. Therefore, the Court GRANTS summary judgment with respect to FFRF's claim under the unbridled discretion doctrine.

### E.     Due Process Clause Claim

The Due Process Clause provides "a guarantee of fair procedure in connection with any deprivation of life, liberty, or property by a State." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 125 (1992). Courts determine whether a procedural due process violation has occurred in two steps: "the first asks whether there exists a liberty or property interest which has been interfered with by the State; . . . the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dept. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989).

In its First Amended Complaint, FFRF argues Defendants violated the Due Process Clause "by removing FFRF's display without any pre-deprivation or post-deprivation procedures to protect against unconstitutional deprivations of Plaintiff's vested interest in the right to display expressive communications in the Capitol, after first approving FFRF's exhibit." [#15] ¶ 121. Defendants respond "FFRF does not have a constitutionally protected property or liberty interest in placing an exhibit that mocks the birth of Christ in the Capitol, keeping such an exhibit in the Capitol, or challenging the decision to remove it." Defs.' Mot. Summ. J. [#31] at 19. FFRF does not address its due process claim in its own Motion for Summary Judgment or in its Response to Defendants' Motion for Summary Judgment.

FFRF has failed to present any evidence or legal authority supporting its alleged liberty interest in "the right to display expressive communications in the Capitol." *See* First Am. Compl. [#15] ¶ 121. And even assuming FFRF had a liberty interest, FFRF provides no evidence they did not receive minimum due process prior to deprivation of that interest. *See* Defs.' Mot. Summ. J. [#31] at 19 n.12. (FFRF was "on notice that 'all exhibits are subject to cancellation' . . . ."). Thus, the Court GRANTS Defendants' Motion for Summary Judgment on FFRF's due process claim.

## Conclusion

In sum, FFRF has established genuine issues of material fact with regard to its freedom of speech claim and claim under the Establishment Clause.[7] FFRF's equal protection claim, unbridled discretion claim, and due process claim fail as a matter of law. Therefore, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion for Summary Judgment and DENIES FFRF's Motion for Summary Judgment.

Accordingly,

IT IS ORDERED that Defendants' Motion for Summary Judgment [#31] is GRANTED IN PART and DENIED IN PART as described in this opinion;

IT IS FINALLY ORDERED Plaintiff's Motion for Summary Judgment [#33] is DENIED.

SIGNED this the ___30th___ day of December 2016.

_Sam Sparks_
SAM SPARKS
UNITED STATES DISTRICT JUDGE

---

[7] Because genuine issues of material fact exist regarding whether Defendants violated the First Amendment and/or Fourteenth Amendment, the Court declines to address Defendants' qualified immunity argument regarding the individual claims against Governor Abbott at this time.