**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **FREEDOM FROM RELIGION** | § | |
| **FOUNDATION, INC.** | § | |
| **Plaintiff,** | § | |
| | § | |
| **-vs-** | § | **CASE NO. 1-16: CV-00233** |
| | § | |
| **GOVERNOR GREG ABBOTT, in his** | § | |
| **official and individual capacities, and** | § | |
| **ROD WELSH, Executive Director of the** | § | |
| **Texas State Preservation Board, in his** | § | |
| **official capacity,** | § | |
| **Defendants.** | § | |

**PLAINTIFF'S COMBINED BRIEF IN OPPOSITION TO MOTIONS FOR**
**PROTECTIVE ORDER BY GOVERNOR ABBOTT AND JOHN SNEED**

## I.    INTRODUCTION.

The Plaintiff, Freedom From Religion Foundation ("FFRF"), opposes the Motions for

Protective Orders by Governor Abbott and John Sneed.  Both Governor Abbott and Mr. Sneed

were directly and personally involved in the actions at issue in this case.  Their involvement was

not incidental or ministerial and their personal testimony is important to the determination of

viewpoint discrimination.  Given the nature of their direct personal involvement, the importance

of their direct testimony is not available from alternative sources.  Governor Abbott and Mr.

Sneed possess unique information relevant to the forthcoming trial in this matter.  In fact, neither

Governor Abbott nor Mr. Sneed identify any specific witnesses as supposed alternatives to their

own testimony.  On the contrary, they have engaged in a bit of "hide the ball" gamesmanship by

refusing to readily identify alternative sources, while claiming these anonymous witnesses justify

a protective order.  In short, exceptional or extraordinary circumstances warrant denial of the

Motions for Protective Orders.

## II.     STATEMENT OF RELEVANT FACTS.

The Defendant, Governor Greg Abbott, seeks a protective order that would prevent the Plaintiff from taking the Governor's deposition in this matter.  Governor Abbott argues that he should not have to appear for deposition because he is a high-ranking government official. (Bolton Decl., ¶3.)  John Sneed, the former Executive Director of the Texas State Preservation Board also seeks a protective order quashing a subpoena to appear for deposition in this matter. Mr. Sneed too contends that he is immune from sitting for deposition as a former high-ranking government official.  (Bolton Decl., ¶4.)

Efforts were made at the outset to schedule the depositions of both Governor Abbott and Mr. Sneed at their convenience.  On March 27, 2017, FFRF's attorney advised defense counsel that he would like to take the depositions of Governor Abbott, John Sneed, and Robert Davis as soon as practical.  Attorney Bolton requested that defense counsel "please provide some dates in the near future that work for you and your witnesses."  (See Exhibit 1 to Bolton Decl.)  (Bolton Decl., ¶5.)  Defense counsel responded on April 3, 2017, indicating that Mr. Davis would be available for a deposition on April 24, 2017.  (That deposition, in fact, did occur this week on said date.)  (Bolton Decl., ¶6.)  Attorney Mackin also indicated that she would update Attorney Bolton "when I hear back on other dates when I hear back from my clients."  (See Exhibit 1 to Bolton Decl.)  (Bolton Decl., ¶7.)

On April 6, 2017, Attorney Bolton inquired as to whether Attorney Mackin had any word on dates for the depositions of Governor Abbott and Mr. Sneed.  (See Exhibit 2 to Bolton Decl.) (Bolton Decl., ¶8.)  Attorney Mackin subsequently responded on the afternoon of April 6, 2017, for the first time advising that she did not "believe it is proper for the Governor and the former

Executive Director to be forced to sit for deposition under these circumstances." (See Exhibit 2 to Bolton Decl.) (Bolton Decl., ¶9.)

Attorney Mackin subsequently reaffirmed that Governor Abbott would not sit for a deposition, alleging that "the Governor has no unique personal knowledge of this dispute. It was the Governor's staff -- not the Governor -- who identified the need to remove the display, who wrote the letter to the Preservation Board, and who auto-penned the Governor's signature on that letter." (See Exhibit 3 to Bolton Decl.) (Bolton Decl., ¶10.) Attorney Mackin also said that she would provide "relevant and non-privileged facts surrounding the dispute through written discovery, and the Governor's Office is even amenable to a written deposition under Rule 31(a)(4)." (See Exhibit 3.) (Bolton Decl., ¶11.)

Attorney Mackin also advised on April 18, 2017, that John Sneed would not appear for deposition, and further that because he is no longer the executive director of the State Preservation Board, she considers Mr. Sneed to be a non-party who must be subpoenaed. (See Exhibit 4 to Bolton Decl.) Quite apart from Attorney Mackin's objection to a Notice of Deposition for Mr. Sneed, she reiterated that Mr. Sneed was not subject to a deposition as a former high-ranking government official. (See Exhibit 4 to Bolton Decl.) (Bolton Decl., ¶12.)

In response to Attorney Mackin's objection to Plaintiff's Notice of Deposition for Mr. Sneed, Plaintiff forwarded a subpoena to defense counsel for Mr. Sneed's deposition. Plaintiff's counsel also inquired whether the Defendants were willing to identify the persons supposedly involved in writing Governor Abbott's letter regarding FFRF's exhibit. (See Exhibit 5 to Bolton Decl.) (Bolton Decl., ¶13.) Attorney Mackin, in response, advised that she intended to file a motion to quash the subpoena of Mr. Sneed, and therefore a witness check was not necessary. In reply to Attorney Bolton's inquiries about the persons involved in writing Governor Abbott's

letter of December 21, 2015, regarding FFRF's display, Attorney Mackin remarked that "if you'd like to make a factual inquiry, please send us your written discovery requests."  (See Exhibit 5 to Bolton Decl.)  (Bolton Decl., ¶14.)

FFRF's counsel renewed its request on April 21, 2017, that Attorney Mackin identify the alleged alternative sources of information for Governor Abbott.  (Bolton Decl., ¶15.)  Attorney Mackin has not responded to Attorney Bolton's renewed request for identification of witnesses alternative to Governor Abbott.  (Bolton Decl., ¶16.)

Attorney Mackin subsequently filed a motion for a protective order as to Governor Abbott on the evening of April 17, 2017.  In Governor Abbott's moving papers, no persons are specifically identified as alternative sources for Governor Abbott's testimony regarding his April 21, 2015, letter of displeasure.  In fact, even the possibility of alternative sources is unsupported by anything beyond Attorney Mackin's say so.  (Bolton Decl., ¶17.)

Attorney Mackin also filed a motion to quash the subpoena of John Sneed on April 20, 2017.  Attorney Mackin again did not specifically identify any alleged alternative sources for the personal knowledge and information of Mr. Sneed.  (Bolton Decl., ¶18.)

As trial counsel, Attorney Bolton considers that Governor Abbott's deposition is important in this matter to determine whether the Defendants engaged in viewpoint discrimination, which this court has identified as a critical issue.  (Bolton Decl., ¶19.)

Governor Abbott does not disavow or deny that his letter of December 21, 2015, was written at his instance, authorization and approval, including as to its content requesting that Mr. Sneed remove FFRF's display from the State Capitol. (Bolton Decl., ¶20.)  Governor Abbott also does not claim that his letter constituted a rogue or unauthorized letter; nor does he deny that the

opinions expressed in the December 21 letter reflect his views as he directed them to be included in his letter.  (Bolton Decl., ¶21.)

Indeed, Governor Abbott himself subsequently boasted on his personal Twitter account that he had "sent a letter demanding that a tasteless nontheistic foundation nativity be removed immediately from the Capitol."  (See Exhibit 6 to Bolton Decl.)  (Bolton Decl., ¶22.)  Breitbart News by Lana Shadwick, also posted an "exclusive" news story regarding Governor Abbott's demand that FFRF's display be removed from the Capitol.  (See Exhibit 7 to Bolton Decl.)  (Bolton Decl., ¶23.)  In Ms. Chadwick's article, she states that "a copy of the letter was exclusively provided to Breitbart Texas," which she attached to her article.  (See Exhibit 7 to Bolton Decl.)  (Bolton Decl., ¶24.)

Governor Abbott's obvious personal endorsement of his letter attacking FFRF's display clearly indicates that he proudly took ownership of the letter and its content, which is directly relevant to the question of viewpoint discrimination.  (Bolton Decl., ¶25.)

Further, testimony from Governor Abbott regarding his prior announced hostility to FFRF and other non-religious groups also is directly relevant to the issues in this case.  (Bolton Decl., ¶26.)  In December of 2011, for example, Governor Abbott reportedly warned FFRF to stay out of Texas, stating: "Our message to the atheists is don't mess with Texas and our Nativity scenes or the Ten Commandments."  (Bolton Decl., ¶27.)  Governor Abbott made his comments to Fox News and Commentary, when he was the Texas Attorney General.  (Bolton Decl., ¶28.)  At that time, Governor Abbott further proclaimed: "I want the Freedom From Religion Foundation to know that our office has a history of defending religious displays in this State." (Bolton Decl., ¶29.)  Governor Abbott also stated that FFRF should be fully aware that "there is a person, a lawyer and an organization in this state that has their back, that has the law, that has

the muscle and firepower to go toe-to-toe with these organizations that come from out of state trying to bully governmental bodies into tearing down things like Nativity scenes."   (Bolton Decl., ¶30.)

Governor Abbott also attacked FFRF during a press conference in October 2012, as Attorney General during which he stated:   "We will not allow atheist groups from outside of the State of Texas to come into the State, to use menacing and misleading intimidation tactics, to try to bully schools to bow down at the altar of secular beliefs."   (Bolton Decl., ¶31.)   During the press conference in October 2012, Governor Abbott described FFRF as "an atheist group from Wisconsin, who came into the State of Texas and tried to silence these students."   (Bolton Decl., ¶32.)   Ironically, Governor Abbott further professed respect for freedom of speech, in terms that are curious and telling in the present circumstances:   "We are not going to either tolerate or accept these atheist groups trying to prevent that freedom of expression here in the State of Texas."   (Bolton Decl., ¶33.)

More recently, Governor Abbott came to the defense of the Brewster County Sheriff's Office, including the alleged right to display a Latin cross on Department vehicles, following a complaint by FFRF.   (Bolton Decl., ¶34.)   Governor Abbott, through his spokesman John Wittman, stated in December of 2015 that:   "The Constitution demands respect for religious expression rather than hostility towards it and Governor Greg Abbott fully supports Sheriff Dodson's decision to allow his deputies to display a Cross on their patrol vehicles."   (Bolton Decl., ¶35.)

Governor Abbott subsequently sent a memorandum to the Chair of the Opinion Committee within the Office of the Attorney General, favoring the display of such Latin crosses on sheriff department vehicles.   (Bolton Decl., ¶36.)   Governor Abbott argued that religious

expression by public officials, acting in official roles, should be allowed, including because Americans allegedly are religious people whose institutions presuppose a Supreme Being. (Bolton Decl., ¶37.)

Governor Abbott also expressed support for the City of Orange, which removed a nativity scene from City Hall after FFRF requested to put a banner up as well.  (Bolton Decl., ¶38.) Governor Abbott encouraged the City of Orange to continue to display a nativity scene, without allowing FFRF's banner as well, stating that "the Constitution demands accommodation of religion rather than hostility towards it."  (Bolton Decl., ¶39.)

Governor Abbott also announced his support of a nativity display in the Cherokee County Courthouse.  (Bolton Decl., ¶40.)

In short, Governor Abbott has consistently advocated for displays of religion in the public sphere, while actively opposing any expression of nonreligious principles, and the Governor's deposition is necessary and proper to establish these facts and viewpoints.  (Bolton Decl., ¶41.) The Governor's personal viewpoints are very much an issue in this case and trial counsel believes that this information cannot effectively be pursued through written discovery.  (Bolton Decl., ¶42.)

In fact, experience in this case confirms the unlikely value of written discovery responses.  (Bolton Decl., ¶43.) For example, in response to allegations in FFRF's Amended Complaint relating to Governor Abbott's comments to Fox News regarding FFRF in December of 2011, the Defendants answered that they lack knowledge and information sufficient to form a belief as to the truth of the allegations.  (See Dckt. 29, Answer to ¶¶89-92 of First Amended Complaint.)  (Bolton Decl., ¶44.)  Governor Abbott also denied knowledge and information as to allegations regarding his press conference comments in October 2012.  (See Answer to ¶¶94-96

of Amended Complaint.)   (Bolton Decl., ¶45.)   Governor Abbott also denied knowledge and information sufficient to even know whether he more recently came to the defense of the Brewster County Sheriff's Office right to display a Latin cross on Department vehicles, following a complaint by FFRF.   (See Answer to ¶¶97-98 of Amended Complaint.)   (Bolton Decl., ¶46.)   Governor Abbott also denied knowledge and information as to whether he sent a memorandum to the Chair of the Opinion Committee within the Office of the Attorney General favoring the display of Latin crosses on sheriff department vehicles.   (See Answer to ¶99 of Amended Complaint.)   (Bolton Decl., ¶47.)   Governor Abbott also denied knowledge and information in his answer as to whether he expressed support for the City of Orange to continue to display a nativity scene from City Hall without allowing FFRF to display a banner as well. (See Answer to ¶¶101-102 to Amended Complaint.)   (Bolton Decl., ¶48.)

There is undeniable support for the conclusion that the Governor did, in fact, make the various statements alleged in Plaintiff's Amended Complaint, yet Governor Abbott denies knowledge and information even as to actions that he allegedly took himself.   (See Exhibit 8 to Bolton Decl.)   (Bolton Decl., ¶49.)

Governor Abbott's response to Requests for Production of Documents also has proven to be relatively fruitless.   (Bolton Decl., ¶50.)   For example, Attorney Bolton questioned the thoroughness of Defendants' responses to Requests for Productions of Documents by email to Attorney Mackin on August 11, 2016, in particular because no emails sent or received on December 21 or 22, 2015, by Governor Abbott or employees within the Governor's office, were produced -- despite knowledge that at least the draft of Governor Abbott's letter demanding removal of FFRF's exhibit was sent to Lana Shadwick at Breitbart News Network on December 21 or 22, resulting in an "exclusive" by that source.   (See Exhibit 9 to Bolton Decl.)   (Bolton

Decl., ¶51.)  In response to Attorney Bolton's concern, Attorney Mackin wrote on August 12, 2016, that "emails on State email accounts automatically delete after 30 days.  Since this case was not filed until more than 30 days after the time period you mentioned, emails from that time period would no longer have existed unless they were manually retained by the user."  (See Exhibit 9 to Bolton Decl.)  (Widespread media attention was immediately given at the time of Governor Abbott's ordered removal of FFRF's display from the State Capitol, amid threats of litigation.  FFRF's Complaint was ultimately filed on February 25, 2016, 65 days after Governor Abbott ordered removal of FFRF's display.)  (See Dckt. 1.)  (Bolton Decl., ¶52.)

In regard to the deposition of John Sneed, he also possesses unique and relevant information to this case.  In particular, Mr. Sneed apparently had direct contact with the Governor, regarding removal of FFRF's display.  According to Robert Davis, the Events and Exhibits Coordinator for the State Preservation Board, Davis was ordered on December 22, 2015, to summarily remove FFRF's display, at the direction of Mr. Sneed, who communicated directly with Governor Abbott.  (Davis' deposition was taken on April 24, 2017, but the transcript is not yet available.)  (Bolton Decl., ¶53.)  The substance of Mr. Sneed's interactions with the Governor or the Governor's office, however, were not known to Mr. Davis, who is the person generally responsible for processing applications to display exhibits in the State Capitol. (Bolton Decl., ¶54.)

According to Mr. Davis, Mr. Sneed also attended at least some meetings to consider FFRF's initial application in the summer of 2015, but Davis could not recall anything specific about Mr. Sneed's involvement in such meetings.  (Bolton Decl., ¶55.)

Mr. Davis also testified that an exhibit had never previously been removed from display in the State Capitol, to his knowledge, and Governor Abbott was not involved previously in any

9

such matters; this was unprecedented in his experience.  (Bolton Decl., ¶56.)  Mr. Davis further testified that he believed the FFRF exhibit met Preservation Board criteria when approved. (Bolton Decl., ¶57.)

Subsequently, FFRF filed another application to display its Winter Solstice/Bill of Rights display in 2016.  Mr. Davis testified that he considered the application in terms of schedule and space availability, but was not involved in substantively considering FFRF's application. (Bolton Decl., ¶58.) Nonetheless, on August 18, 2016, Mr. Sneed sent a letter advising in part that FFRF's display would not be permitted because it allegedly did not meet Preservation Board criteria for "public purpose."  (See Exhibit 10 to Bolton Decl.)  (Bolton Decl., ¶59.)  Mr. Davis was not involved in the substantive rejection of FFRF's requested display in 2016 and Mr. Sneed did not discuss the application with Mr. Davis; Mr. Sneed seemingly made the decision unilaterally in 2016.  (Bolton Decl., ¶60.)

After deposing Mr. Davis, Attorney Bolton is not aware of any alternative source for Mr. Sneed's personal knowledge and information relevant to this case, nor has Attorney Mackin identified any such alternative source.  (Bolton Decl., ¶61.)

## III.   ARGUMENT.

### A.   Applicable Standard.

Governor Abbott and Mr. Sneed imply that the deposition of a high-ranking government official can never be taken, including for the purpose of determining why the official personally directed particular action.  In fact, however, there is no such absolute rule, particularly with respect to former government officials.  "It is also clear in the context of deposing former high-ranking government officials that depositions are allowed if the party has personal knowledge of the facts in issue."  *Energy Capital Corp. v. U.S.*, 60 Fed. Cl. 315, 318 (2004), citing *Gibson v.*

*Carmody*, 1991 W.L. 161087, 1991 U.S. Dist. LEXIS 11225( S.D. NY 1991)(allowing the deposition of a former New York City police commissioner because of his personal knowledge of the issues at stake); *American Broadcasting Comp. v. U.S. Information Agency*, 599 F.Supp. 765 (D.D.C. 1994)(applying a similar standard to the former director of the United States Information Agency).

When a party claims that alternative sources of comparable information can be substituted for the testimony of a high-ranking government official, the party seeking a protective order also "must show specific facts" warranting the entry of the order and "cannot rely on speculation or conclusory statements." *Estate of Richardson v. Kanouse*, 2013 W.L. 12113222 at *2 (S.D. Cal. 2013), quoting *Tolbert-Smith v. Bodman*, 253 F.R.D. 2, 4 (D.D.C. 2008); *Dove v. Atl. Capital Corp.*, 963 F.2d 15, 19 (2nd Cir. 1992). In *Richardson*, 2013 W.L. 12113222 at *4, the court denied a motion for protective order as to a government official where "Defendants have not identified, by name, another witness who could testify to matters within Tanaka's purported knowledge." In the present case, the Defendants, particularly Governor Abbott, do not identify by name any specific alternative source to the personal knowledge of the Governor and, in fact, they have refused to identify any such witness by name except through written discovery.

In any event, the high-ranking government official is not an absolute rule, contrary to the Defendants' suggestion. As discussed in *Sherrod v. Breitbart*, 304 F.R.D. 73, 75-76 (D.D.C. 2014), courts also must recognize and value the parties' needs to develop and prepare their cases for trail. *See also Byrd v. District of Columbia*, 259 F.R.D. 1, 7 (D.D.C. 2009) ("Unless the movant [for protective order] can show that the need for the protective order is sufficient to

overcome plaintiffs' legitimate and important interests in trial preparation, high-ranking officials are subject to deposition." (quoting *Alexander v. F.D.I*, 186 F.R.D. 1, 3 (D.D.C. 1998)).

In *Sherrod*, the court first considered whether the movant, the Secretary of the Department of Agriculture, had personal knowledge directly relevant to the claims and defenses in the case. The court then also considered whether the information sought from the Secretary could be obtained elsewhere. *Id.* at 76. The court concluded that comparable information could not be obtained elsewhere, reasoning as follow:

> This situation also meets the second criterion necessary to allow the deposition of a sitting Cabinet member to go forward: the Secretary has information not available elsewhere. The Secretary alone has precise knowledge of what factors he considered and how they influenced his ultimate decision, so that information must come from him, not from third parties. This is not a case where another witness 'would seem more logically suited to clearing up lingering questions regarding' his own decisions.

The *Sherrod* court also rejected the argument that written discovery could substitute for the benefits of cross-examination, including because written questions lack the flexibility of oral examination. The court explained its decision as follows:

> Indeed, oral deposition, rather than deposition by written questions, is clearly appropriate and necessary here. Put simply, written questions lack the flexibility of oral examination, the latter of which allows the questioner to adjust on the fly and confine his questions to the relevant ones while still satisfying himself and his client that a particular line of inquiry has been exhausted.

*Id.*

The state of mind of a government official, when relevant, also distinguishes a witnesses' unique personal information from general information regarding an agency's policies and practices. In *Anderson v. County of Contra Costa*, 2017 W.L. 930315 at *4 (N.D. Cal. 2017), therefore, the court allowed the deposition of a high-ranking government official to proceed in

regard to state of mind issues, but limited the deposition in regard to generally applicable agency standards of operation.

Limits on the depositions of high-ranking government officials, in practice, are less draconian where the witness personally participated in the action at issue. *Ebbert v. Nausau County*, 2007 W.L. 674275 at *6 (E.D. N.Y. 2007). Further, the personal knowledge of a witness is given considerable weight in determining whether to permit a deposition to proceed. The court nicely explained the interplay between relevant factors in *Byrd v. District of Columbia*, 259 F.R.D. 1, at *7 (D.D.C. 2009):

> Unless the movant can show that the need for the protective order is 'sufficient to overcome plaintiffs' legitimate and important interests in trial preparation,' high-ranking officials are subject to deposition. *Alexander,* 186 F.R.D. at 1 (citing *Farnsworth v. Procter and Gamble Company*, 758 F.2d 1545, 1547 (11th Cir. 1985)). In making such determinations, courts look to whether the official has 'some personal knowledge about the matter.' *Alliance*, 2005 W.L. 1799553 at *1, 2005 U.S. Dist. LEXIS 15190 at *5 (emphasis in original). And if the testimony will be 'relevant and material' to the suit, *Davis*, 390 A.2d at 981. Additionally, the movant must 'make a specific demonstration of facts to support [its] request for the protective order and may not rely on conclusory or speculative statements concerning the need for a protective order.' *Alliance*, 2005 W.L. 1799553 at *1, 2005 U.S. Dist. LEXIS 15190 at *6. Lastly, the party seeking the deposition must make 'a showing that the information cannot be obtained elsewhere.' *Id.*; *see also Low*, 207 F.R.D. at 11 (explaining that proactive orders should be granted to prevent 'fishing for information').

> Although 'common sense seems to suggest that administration heads . . . should not be called to testify personally unless a clear showing is made that such a proceeding is essential to prevent prejudice or injustice of the party who would require it,' *Davis*, 390 A.2d at 981 (citing *Wirtz v. Local 30, Int. National Union of Operating Engineers*, 34 F.R.D. 13 (S.D. N.Y. 1963)), protective orders that completely prohibit a deposition should be granted only as an 'extraordinary measure which should be resorted to only in rare occasions.' *Jennings,* 201 F.R.D. at 275.

In *Byrd*, the court ultimately denied the Defendants' motion for a protective order with respect to the deposition of high-ranking government officials because of the witnesses' potential

personal knowledge of the facts in the case.   In addition, the court concluded that "none of Defendant's proposed alternatives would allow for full discovery of the information sought. Stanley and Albert [the proposed witnesses] likely have information that no other source could provide since only they can testify to their own motives.  Furthermore, witness testimonies may not allow for the same in-depth probing that deposition testimony and examination can provide." *Id.* at *8.

### B.    The Deposition Of Governor Abbott Should Proceed.

Extraordinary circumstances exist here to permit the deposition of Governor Abbott.  In the first place, he clearly has direct personal knowledge and involvement in the action that is at isusue in this case.   Regardless who the scrivener was of the Governor's letter directing the Preservation Board to remove FFRF's exhibit, no dispute exists that the letter was written at the direction and with the authority of Governor Abbott.   In fact, Governor Abbott boasted of his actions on his personal Twitter account and apparently authorized exclusive distribution of the letter to Breitbart News.  Governor Abbott also has an expressed personal history of antipathy toward FFRF and non-religious groups in general.  The Governor also has a widely-reported history of supporting Christian displays in public forums.   Finally, Governor Abbott also reportedly talked directly with John Sneed, the former Executive Director of the State Preservation Board, when he demanded removal of FFRF's display.

No alternative source of Governor Abbott's personal knowledge and involvement in this case is identified in support of the Governor's motion for a protective order.  On the contrary, the Defendants coyly have indicated that alternative sources exist, albeit only based on the unsupported contention of defense counsel, who refuses to identify any specific alternative

source except in response to written discovery that would be due in thirty days.  (Such written discovery, in fact, has been submitted to the Defendants on April 21, 2017.)

Alternative witnesses for Governor Abbott's personal testimony would not be meaningfully comparable, if disclosed, given the court's focus on Governor Abbott's personal viewpoint as an important factor.  Here, the Governor, without precedent, ordered the removal of an approved display in the State Capitol based upon his own personal offense.  This ordered removal follows in the context of Governor Abbott's personal history of expressed hostility to FFRF and non-religious groups in general, as well as his support for public displays of religion, which the Governor goes out of his way to support.  The interactions of the various facts cannot reasonably be ferreted out through the deposition of any alternative witness, known or unknown, as in this case.

Written alternatives to Governor Abbott's deposition also are not truly adequate.  On the contrary, written responses by the Defendants have been remarkable for the audacity of their evasion, such as the Governor's claimed lack of knowledge as to whether he has made certain public statements supporting religious displays and maligning FFRF.

Finally, in terms of interference with Governor Abbott's performance of gubernatorial duties, FFRF's counsel has always been willing to work toward the scheduling of depositions at the convenience of the Defendants.  Governor Abbott claims in support of his motion for a protective order that FFRF's counsel abruptly and unexpectedly noticed his deposition on April 10, 2017, without consultation, for fifteen days hence.  As noted above, however, but now unbeknownst to defense counsel, FFRF first requested convenient dates for depositions on March 27, 2017, to which Attorney Mackin responded that she would get back with some proposed dates.  Subsequently, Attorney Mackin advised that Governor Abbott and Mr. Sneed

would not be tended for deposition, at which time FFRF's counsel noticed their depositions in order to force the issue to some conclusion.  Governor Abbott's bold statement that FFRF scheduled without regard for convenience ignores this history, which again suggests the unreliability and the inadequacy of written discovery directed to the Governor's viewpoints.

FFRF wishes to make clear, however, that the deposition of Governor Abbott can be scheduled at his reasonable convenience; at any location or site that he chooses; at whatever time of the day suits his convenience between 12:01 a.m. and 11:59 p.m.; and the deposition can be limited in duration to three hours if the court believes that is necessary.

### C. The Deposition Of John Sneed Should Proceed.

With respect to Mr. Sneed, in the first place, consideration of his busy schedule is not at issue because of his recent retirement.  Mr. Sneed, moreover, does apparently possess personal information relevant to this matter, including his personal contacts with Governor Abbott in December of 2015 regarding removal of FFRF's display.  Regardless whether Mr. Sneed was the decision-maker, the communications he had with Governor Abbott, are not limited to those in writing are certainly relevant to this case and no other witness is known to be able to provide that information.   In addition, Mr. Sneed reportedly, according to the Events and Exhibits Coordinator for the State Preservation Board, attended at least some meetings to consider FFRF's initial application for a display, but Mr. Davis does not recall anything specific about Mr. Sneed's participation.  Mr. Davis, accordingly, is not a viable alternative source for Mr. Sneed himself.

Finally, in August of 2016, FFRF made an application to again display its Winter Solstice/Bill Rights display in the State Capitol.  Mr. Davis testified that he reviewed the application only for scheduling conflicts and that Mr. Sneed then personally determined that any

application by FFRF for display that was the same as the 2015 display would be rejected as failing to meet State Preservation Board criteria. Mr. Davis has testified that he was not consulted by Mr. Sneed before he wrote to FFRF in August of 2016 and Mr. Sneed apparently acted alone in making this decision, so again, the decision-making process is apparently uniquely that of Mr. Sneed.

Mr. Sneed's motion for a protective order accordingly should be denied. He not only does possess direct and unique personal information that is relevant to this case, his information is not available from alternative sources and the concern with the inadequacy of written discovery with respect to Governor Abbott applies as well to Mr. Sneed.

The Plaintiff is certainly prepared to accommodate the convenience of any witness: Any reasonable date; any place; any hour of the day; for a reasonable duration as the court deems appropriate.

In the end, this is not a case about routine agency or executive decision-making, in which an agency head is only incidentally or collectively involved. Governor Abbott, on his own initiative, precipitated the removal of FFRF's display from the State Capitol. His direct personal involvement, and boastful pride in doing so, is certainly relevant and important in this case. There is no reasonable alternative source for his testimony, which needs/must be tested through cross-examination. Similarly, John Sneed possesses unique personal information relevant to this case and should be subject to deposition.

## IV.    CONCLUSION.

For all of the above reasons, the Motions of Governor Abbott and Mr. Sneed for protective orders should be denied.

Dated this 27th day of April, 2017.

Respectfully submitted,

BOARDMAN AND CLARK, LLP
1 S. Pinckney St., Suite 410
Madison, Wisconsin  53703-4256
Telephone:  608-257-9521
Telecopier:  608-283-1709

BY: */s/ Richard L. Bolton*
Richard L. Bolton
Wisconsin State Bar No. 1012552
Email:  rbolton@boardmanclark.com

Daniel H. Byrne
Texas State Bar No. 03565600
Email:  dbyrne@fbhf.com
Lessie G. Fitzpatrick
Texas State Bar No. 24012630
Email:  lfitzpatrick@fbhf.com
FRITZ, BYRNE, HEAD & FITZPATRICK, LLC
221 West 6th Street, Suite 960
Austin, Texas  78701
Telephone:  (512) 476-2020
Facsimile:      (512) 477-5267


Sam Grover
Wisconsin State Bar No. 1096047
Email:  sgrover@ffrf.org
Patrick Elliott
Wisconsin State Bar No. 1074300
Email:  pelliott@ffrf.org
FREEDOM FROM RELIGION
FOUNDATION, INC.
P. O. Box 750
Madison, Wisconsin  53701
Telephone:  608-256-8900
Telecopier:  608-204-0422

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was filed electronically via the Court's CM/ECF system on this the 27th day of April, 2017, which will send notification to the following:

Anna Marie Mackin
Austin R. Nimocks
Brantley Starr
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, TX 78701
Telephone: (512) 475-4080
Telecopier: (512) 320-0667
Email: Anna.mackin@texasattorneygeneral.gov
Email: Austin.nimocks@texasattorneygeneral.gov
Email: Brantley.starr@texasattorneygeneral.gov

*/s/ Richard L. Bolton*
Richard L. Bolton

f:\docs\wd\26318\34\a2772126.docx

**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **FREEDOM FROM RELIGION** | § | |
| **FOUNDATION, INC.** | § | |
| **Plaintiff,** | § | |
| | § | |
| **-vs-** | § | **CASE NO. 1-16: CV-00233** |
| | § | |
| **GOVERNOR GREG ABBOTT, in his** | § | |
| **official and individual capacities, and** | § | |
| **ROD WELSH, Executive Director of the** | § | |
| **Texas State Preservation Board, in his** | § | |
| **official capacity,** | § | |
| **Defendants.** | § | |

**<u>DECLARATION OF RICHARD L. BOLTON</u>**

I, Richard L. Bolton, do hereby declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the following facts set forth below are true and correct to the best of my knowledge:

1.      I am one of the attorneys representing the Plaintiff, Freedom From Religion Foundation, Inc. ("FFRF"), in the above-captioned matter.

2.      I make this declaration in opposition to the pending Motions for Protective Orders by Governor Abbott and John Sneed, former Executive Director of the Texas State Preservation Board.

3.      The Defendant, Governor Greg Abbott, seeks a protective order that would prevent the Plaintiff from taking the Governor's deposition in this matter.   Governor Abbott argues that he should not have to appear for deposition because he is a high-ranking government official.

4.      John Sneed, the former Executive Director of the Texas State Preservation Board also seeks a protective order quashing a subpoena to appear for deposition in this matter.   Mr.

Sneed too contends that he is immune from sitting for deposition as a former high-ranking government official.

5.       I note at the outset that efforts were made to schedule the depositions of both Governor Abbott and Mr. Sneed at their convenience.   On March 27, 2017, I advised defense counsel that I would like to take the depositions of Governor Abbott, John Sneed, and Robert Davis as soon as practical.   I requested that defense counsel "please provide some dates in the near future that work for you and your witnesses."   (See Exhibit 1 attached hereto.)

6.       Defense counsel responded on April 3, 2017, indicating that Mr. Davis would be available for a deposition on April 24, 2017.   (That deposition, in fact, did occur this week on said date.)

7.       Attorney Mackin also indicated that she would update me "when I hear back on other dates when I hear back from my clients."   (See Exhibit 1.)

8.       On April 6, 2017, I inquired as to whether Attorney Mackin had any word on dates for the depositions of Governor Abbott and Mr. Sneed.   (See Exhibit 2 attached hereto.)

9.       Attorney Mackin subsequently responded on the afternoon of April 6, 2017, for the first time advising that she did not "believe it is proper for the Governor and the former Executive Director to be forced to sit for deposition under these circumstances."   (See Exhibit 2.)

10.       Attorney Mackin subsequently reaffirmed that Governor Abbott would not sit for a deposition, alleging that "the Governor has no unique personal knowledge of this dispute.   It was the Governor's staff -- not the Governor -- who identified the need to remove the display, who wrote the letter to the Preservation Board, and who auto-penned the Governor's signature on that letter."   (See Exhibit 3 attached hereto.)

11.     Attorney Mackin also said that she would provide "relevant and non-privileged facts surrounding the dispute through written discovery, and the Governor's Office is even amenable to a written deposition under Rule 31(a)(4)."   (See Exhibit 3.)

12.     Attorney Mackin also advised on April 18, 2017, that John Sneed would not appear for deposition, and further that because he is no longer the executive director of the State Preservation Board, she considers Mr. Sneed to be a non-party who must be subpoenaed.   (See Exhibit 4 attached hereto.)   Quite apart from Attorney Mackin's objection to a Notice of Deposition for Mr. Sneed, she reiterated that Mr. Sneed was not subject to a deposition as a former high-ranking government official.   (See Exhibit 4.)

13.     In response to Attorney Mackin's objection to Plaintiff's Notice of Deposition for Mr. Sneed, Plaintiff forwarded a subpoena to defense counsel for Mr. Sneed's deposition. Plaintiff's counsel also inquired whether the Defendants were willing to identify the persons supposedly involved in writing Governor Abbott's letter regarding FFRF's exhibit.   (See Exhibit 5.)

14.     Attorney Mackin, in response, advised that she intended to file a motion to quash the subpoena of Mr. Sneed, and therefore a witness check was not necessary.   In reply to my inquiries about the persons involved in writing Governor Abbott's letter of December 21, 2015, regarding FFRF's display, Attorney Mackin remarked that "if you'd like to make a factual inquiry, please send us your written discovery requests."   (See Exhibit 5.)

15.     FFRF's counsel again renewed its request on April 21, 2017, that Attorney Mackin identify the alleged alternative sources of information for Governor Abbott.

16.     Attorney Mackin has not responded to my renewed request for identification of witnesses alternative to Governor Abbott.

3

17.     Attorney Mackin subsequently filed a motion for a protective order as to Governor Abbott on the evening of April 17, 2017.   In Governor Abbott's moving papers, no persons are specifically identified as alternative sources for Governor Abbott's testimony regarding his April 21, 2015, letter of displeasure.   In fact, even the possibility of alternative sources is unsupported by anything beyond Attorney Mackin's say so.

18.     Attorney Mackin also filed a motion to quash the subpoena of John Sneed on April 20, 2017.   Attorney Mackin again did not specifically identify any alleged alternative sources for the personal knowledge and information of Mr. Sneed.

19.     As trial counsel, I consider that Governor Abbott's deposition is important in this matter to determine whether the Defendants engaged in viewpoint discrimination, which this court has identified as a critical issue.

20.     In particular, Governor Abbott does not disavow or deny that his letter of December 21, 2015, was written at his instance, authorization and approval, including as to its content requesting that Mr. Sneed remove FFRF's display from the State Capitol.

21.     Governor Abbott does not claim that his letter constituted a rogue or unauthorized letter; nor does he deny that the opinions expressed in the December 21 letter reflect his views as he directed them to be included in his letter.

22.     In fact, Governor Abbott himself subsequently boasted on his personal Twitter account that he had "sent a letter demanding that a tasteless nontheistic foundation nativity be removed immediately from the Capitol."   (See Exhibit 6.)

23.     Breitbart News by Lana Shadwick, also posted an "exclusive" news story regarding Governor Abbott's demand that FFRF's display be removed from the Capitol.   (See Exhibit 7 attached hereto.)

24.     In Ms. Chadwick's article, she states that "a copy of the letter was exclusively provided to Breitbart Texas," which she attached to her article.   (See Exhibit 7.)

25.     Governor Abbott's obvious personal endorsement of his letter attacking FFRF's display clearly indicates that he proudly took ownership of the letter and its content, which is directly relevant to the question of viewpoint discrimination.

26.     Further, testimony from Governor Abbott regarding his prior announced hostility to FFRF and other non-religious groups also is directly relevant to the issues in this case.

27.     In December of 2011, for example, Governor Abbott reportedly warned FFRF to stay out of Texas, stating: "Our message to the atheists is don't mess with Texas and our Nativity scenes or the Ten Commandments."

28.     Governor Abbott made his comments to Fox News and Commentary, when he was the Texas Attorney General.

29.     At that time, Governor Abbott further proclaimed: "I want the Freedom From Religion Foundation to know that our office has a history of defending religious displays in this State."

30.     Governor Abbott also stated that FFRF should be fully aware that "there is a person, a lawyer and an organization in this state that has their back, that has the law, that has the muscle and firepower to go toe-to-toe with these organizations that come from out of state trying to bully governmental bodies into tearing down things like Nativity scenes."

31.     Governor Abbott also attacked FFRF during a press conference in October 2012, as Attorney General during which he stated:   "We will not allow atheist groups from outside of the State of Texas to come into the State, to use menacing and misleading intimidation tactics, to try to bully schools to bow down at the altar of secular beliefs."

32.     During the press conference in October 2012, Governor Abbott described FFRF as "an atheist group from Wisconsin, who came into the State of Texas and tried to silence these students."

33.     Ironically, Governor Abbott further professed respect for freedom of speech, in terms that are curious and telling in the present circumstances:  "We are not going to either tolerate or accept these atheist groups trying to prevent that freedom of expression here in the State of Texas."

34.     More recently, Governor Abbott came to the defense of the Brewster County Sheriff's Office, including the alleged right to display a Latin cross on Department vehicles, following a complaint by FFRF.

35.     Governor Abbott, through his spokesman John Wittman, stated in December of 2015 that:  "The Constitution demands respect for religious expression rather than hostility towards it and Governor Greg Abbott fully supports Sheriff Dodson's decision to allow his deputies to display a Cross on their patrol vehicles."

36.     Governor Abbott subsequently sent a memorandum to the Chair of the Opinion Committee within the Office of the Attorney General, favoring the display of such Latin crosses on sheriff department vehicles.

37.     Governor Abbott argued that religious expression by public officials, acting in official roles, should be allowed, including because Americans allegedly are religious people whose institutions presuppose a Supreme Being.

38.     Governor Abbott also expressed support for the City of Orange, which removed a nativity scene from City Hall after FFRF requested to put a banner up as well.

39.     Governor Abbott encouraged the City of Orange to continue to display a nativity scene, without allowing FFRF's banner as well, stating that "the Constitution demands accommodation of religion rather than hostility towards it."

40.     Governor Abbott also announced his support of a nativity display in the Cherokee County Courthouse.

41.     In short, Governor Abbott has consistently advocated for displays of religion in the public sphere, while actively opposing any expression of nonreligious principles, and the Governor's deposition is necessary and proper to establish these facts and viewpoints.

42.     The Governor's personal viewpoints are very much an issue in this case and as trial counsel, I believe this information cannot effectively be pursued through written discovery.

43.     In fact, experience in this case confirms the unlikely value of written discovery responses.

44.     For example, in response to allegations in FFRF's Amended Complaint relating to Governor Abbott's comments to Fox News regarding FFRF in December of 2011, the Defendants answered that they lack knowledge and information sufficient to form a belief as to the truth of the allegations.   (See Dckt. 29, Answer to ¶¶89-92 of First Amended Complaint.)

45.     Governor Abbott also denied knowledge and information as to allegations regarding his press conference comments in October 2012.   (See Answer to ¶¶94-96 of Amended Complaint.)

46.     Governor Abbott also denied knowledge and information sufficient to even know whether he more recently came to the defense of the Brewster County Sheriff's Office right to display a Latin cross on Department vehicles, following a complaint by FFRF.   (See Answer to ¶¶97-98 of Amended Complaint.)

47.     Governor Abbott also denied knowledge and information as to whether he sent a memorandum to the Chair of the Opinion Committee within the Office of the Attorney General favoring the display of Latin crosses on sheriff department vehicles.  (See Answer to ¶99 of Amended Complaint.)

48.     Governor Abbott also denied knowledge and information in his answer as to whether he expressed support for the City of Orange to continue to display a nativity scene from City Hall without allowing FFRF to display a banner as well.  (See Answer to ¶¶101-102 to Amended Complaint.)

49.     There is undeniable support for the conclusion that the Governor did, in fact, make the various statements alleged in Plaintiff's Amended Complaint, yet Governor Abbott denies knowledge and information even as to actions that he allegedly took himself.  (See Exhibit 8 attached hereto.)

50.     Governor Abbott's response to Requests for Production of Documents also has proven to be relatively fruitless.

51.     For example, I questioned the thoroughness of Defendants' responses to Requests for Productions of Documents by email to Attorney Mackin on August 11, 2016, in particular because we received no emails sent or received on December 21 or 22, 2015, by Governor Abbott or employees within the Governor's office -- despite knowledge that at least the draft of Governor Abbott's letter demanding removal of FFRF's exhibit was sent to Lana Shadwick at Breitbart News Network on December 21 or 22, resulting in an "exclusive" by that source.   (See Exhibit 9 attached hereto.)

52.     In response to my concern, Attorney Mackin wrote on August 12, 2016, that "emails on State email accounts automatically delete after 30 days.   Since this case was not filed

until more than 30 days after the time period you mentioned, emails from that time period would no longer have existed unless they were manually retained by the user."   (See Exhibit 9.) (Widespread media attention was immediately given at the time of Governor Abbott's ordered removal of FFRF's display from the State Capitol, amid threats of litigation.   FFRF's Complaint was ultimately filed on February 25, 2016, 65 days after Governor Abbott ordered removal of FFRF's display.   See Dckt. 1.)

53.     In regard to the deposition of John Sneed, he also possesses unique and relevant information to this case.   In particular, Mr. Sneed apparently had direct contact with the Governor, regarding removal of FFRF's display.   According to Robert Davis, the Events and Exhibits Coordinator for the State Preservation Board, Davis was ordered on December 22, 2015, to summarily remove FFRF's display, at the direction of Mr. Sneed, who communicated directly with Governor Abbott.   (Davis' deposition was taken on April 24, 2017, but the transcript is not yet available.)

54.     The substance of Mr. Sneed's interactions with the Governor or the Governor's office, however, were not known to Mr. Davis, who is the person generally responsible for processing applications to display exhibits in the State Capitol.

55.     According to Mr. Davis, Mr. Sneed also attended at least some meetings to consider FFRF's initial application in the summer of 2015, but Davis could not recall anything specific about Mr. Sneed's involvement in such meetings.

56.     Mr. Davis also testified that an exhibit had never previously been removed from display in the State Capitol, to his knowledge, and Governor Abbott was not involved previously in any such matters; this was unprecedented in his experience.

57.     Mr. Davis further testified that he believed the FFRF exhibit met Preservation Board criteria when approved.

58.     Subsequently, FFRF filed another application to display its Winter Solstice/Bill of Rights display in 2016.   Mr. Davis testified that he considered the application in terms of schedule and space availability, but was not involved in substantively considering FFRF's application.

59.     Nonetheless, on August 18, 2016, Mr. Sneed sent a letter advising in part that FFRF's display would not be permitted because it allegedly did not meet Preservation Board criteria for "public purpose."   (See Exhibit 10 attached hereto.)

60.     Mr. Davis was not involved in the substantive rejection of FFRF's requested display in 2016 and Mr. Sneed did not discuss the application with Mr. Davis; Mr. Sneed seemingly made the decision unilaterally in 2016.

61.     After deposing Mr. Davis, I am not aware of any alternative source for Mr. Sneed's personal knowledge and information relevant to this case, nor has Attorney Mackin identified any such alternative source.

Dated this 27th day of April, 2017.


*/s/ Richard L. Bolton*
Richard L. Bolton

10

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was filed electronically via the Court's CM/ECF system on this the 27th day of April, 2017, which will send notification to the following:

Anna Marie Mackin
Austin R. Nimocks
Brantley Starr
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, TX 78701
Telephone: (512) 475-4080
Telecopier: (512) 320-0667
Email: Anna.mackin@texasattorneygeneral.gov
Email: Austin.nimocks@texasattorneygeneral.gov
Email: Brantley.starr@texasattorneygeneral.gov

*/s/ Richard L. Bolton*
Richard L. Bolton

F:\DOCS\WD\26318\34\A2771757.DOCX

11

## Richard L. Bolton

**From:** Mackin, Anna <Anna.Mackin@oag.texas.gov>
**Sent:** Monday, April 03, 2017 11:16 AM
**To:** Richard L. Bolton
**Cc:** Dan Byrne (DByrne@fbhg.law); Reed, Cherie; Clopton, Jodie
**Subject:** Re: FFRF v. Abbott, et al.

Rich,

Apologies for the delay, I have been on vacation and am out of the office until Wednesday morning. I have reached out to my clients, and Robert Davis is available for a deposition on April 24. Please let me know if that will work for you and I'll update you when I hear back on other dates when I hear back from my clients.

Thanks,

Anna

**From:** Richard L. Bolton <rbolton@boardmanclark.com>
**Sent:** Monday, March 27, 2017 4:54:37 PM
**To:** Mackin, Anna
**Cc:** Dan Byrne (DByrne@fbhg.law)
**Subject:** FFRF v. Abbott, et al.

Good Afternoon Anna: I attach FFRF Settlement  and Witness disclosure letters.  Also, I would like to take the deposition of Governor Abbott, John Sneed, and Robert Davis as soon as practical. Please provide some dates in the near future that work for you and your witnesses. Thanks. Rich



| | |
|---|---|
| **Richard L. Bolton** | **MADISON OFFICE** |
| Attorney | BOARDMAN & CLARK LLP |
| rbolton@boardmanclark.com | 1 S PINCKNEY ST STE 410 |
| Direct: 608-283-1789 | P.O. BOX 927 |
| Phone: 608-257-9521 | MADISON, WI 53701-0927 |
| Fax: 608-283-1709 | |

This is a transmission from the law firm of Boardman & Clark LLP and may contain information which is privileged, confidential, and protected by the attorney-client and/or attorney work product privileges. If you are not the addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this transmission in error, please destroy it and notify us immediately via email at rbolton@boardmanclark.com or via telephone at (608) 257-9521. The sender does not accept liability for any errors or omissions in the contents of this message which arise as a result of e-mail transmission.

**EXHIBIT 1**

## Richard L. Bolton

| | |
|---|---|
| **From:** | Mackin, Anna <Anna.Mackin@oag.texas.gov> |
| **Sent:** | Thursday, April 06, 2017 1:51 PM |
| **To:** | Richard L. Bolton |
| **Cc:** | Dan Byrne (DByrne@fbhg.law); Reed, Cherie; Clopton, Jodie |
| **Subject:** | RE: FFRF v. Abbott, et al. |

Rich,

John Sneed is no longer with the Preservation Board. And, in any event, both Director Sneed and Governor Abbott qualify as high ranking state officials for purposes of the time period in question. "[A] high-ranking government official should not—absent exceptional circumstances—be deposed or called to testify regarding the reasons for taking official action, 'including the manner and extent of his study of the record and his consultation with subordinates.'" *Lederman v. New York City Dept. of Parks and Recreation*, 731 F.3d 199, 203 (2nd Cir. 2013) (citing *United States v. Morgan*, 313 U.S. 409, 422 (1941); *Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007); *In re United States (Holder)*, 197 F.3d 310, 313–14 (8th Cir. 1999); *In re FDIC*, 58 F.3d 1055, 1060 (5th Cir. 1995); *In re United States (Kessler)*, 985 F.2d 510, 512 (11th Cir. 1993); *Franklin Sav. Ass'n v. Ryan*, 922 F.2d 209, 211 (4th Cir. 1991); *Simplex Time Recorder Co. v. Secretary of Labor*, 766 F.2d 575, 586 (D.C. Cir. 1985); *Kyle Eng'g Co. v. Kleppe*, 600 F.2d 226, 231–32 (9th Cir. 1979); *Warren Bank v. Camp*, 396 F.2d 52, 56–57 (6th Cir. 1968)).

Based on this, my clients and I do not believe it is proper for the Governor and the former Executive Director to be forced to sit for a deposition under these circumstances.

Nonetheless, we are available to proceed with Robert Davis's deposition on April 24. We'd like to do the deposition at the State Preservation Board, 201 E. 14th St. Suite 950, Austin, Texas 78701, Room 990. Please let me know if that still works, and what time you'd like to start.

I would like to depose Sam Grover and Annie Laurie Gaylor. Will you please advise me of their availability?

Thanks,
Anna

**From:** Richard L. Bolton [mailto:rbolton@boardmanclark.com]
**Sent:** Thursday, April 06, 2017 10:01 AM
**To:** Mackin, Anna <Anna.Mackin@oag.texas.gov>
**Cc:** Dan Byrne (DByrne@fbhg.law) <DByrne@fbhg.law>; Reed, Cherie <Cherie.Reed@oag.texas.gov>; Clopton, Jodie <Jodie.Clopton@oag.texas.gov>
**Subject:** RE: FFRF v. Abbott, et al.

Morning  Anna: Any word on dates for others? Also, any time on the 24th that is best for Mr. Davis? Thanks. Rich

**Richard L. Bolton**
Attorney
rbolton@boardmanclark.com
Direct: 608-283-1789
Phone: 608-257-9521

**MADISON OFFICE**
BOARDMAN & CLARK LLP
1 S PINCKNEY ST STE 410
P.O. BOX 927
MADISON, WI 53701-0927

1

**EXHIBIT 2**

## Richard L. Bolton

| | |
|---|---|
| **From:** | Mackin, Anna <Anna.Mackin@oag.texas.gov> |
| **Sent:** | Thursday, April 13, 2017 5:46 PM |
| **To:** | Richard L. Bolton |
| **Cc:** | Dan Byrne (DByrne@fbhg.law); Reed, Cherie; Clopton, Jodie |
| **Subject:** | RE: FFRF v. Abbott, et al. |

Rich,

We want to work with you to make sure you get all the discovery you need.  But we don't think a deposition of the Governor is either appropriate or necessary.   As a high-ranking government official, the Governor is protected from depositions absent a showing of extraordinary circumstances.  And we are aware of nothing in this case that would satisfy that very high bar.  To the contrary, the Governor has no unique personal knowledge of this dispute.  It was the Governor's staff—not the Governor—who identified the need to remove the display, who wrote the letter to the preservation board, and who auto-penned the Governor's signature on that letter.  We are committed to providing you the relevant and non-privileged facts surrounding the dispute through written discovery, and the Governor's Office is even amenable to a written deposition under Rule 31(a)(4).  Please let us know if you agree to this alternative.

If we cannot agree, please confirm that you would oppose our motion for a protective order regarding the Governor's deposition.

Thank you,
Anna

---

**From:** Richard L. Bolton [mailto:rbolton@boardmanclark.com]
**Sent:** Thursday, April 06, 2017 2:34 PM
**To:** Mackin, Anna <Anna.Mackin@oag.texas.gov>
**Cc:** Dan Byrne (DByrne@fbhg.law) <DByrne@fbhg.law>; Reed, Cherie <Cherie.Reed@oag.texas.gov>; Clopton, Jodie <Jodie.Clopton@oag.texas.gov>
**Subject:** RE: FFRF v. Abbott, et al.

Anna: Let's start Mr. Davis' deposition at 10:00, if that is convenient. Also, we should schedule a meet and confer to discuss your objection to producing other witnesses, before we file our motion to compel. In anticipation, I can tell you that we believe these folks had some first-hand involvement in the actions in question. If you can convince me otherwise, then I will also become a climate-change denier. Thanks. Rich

**Richard L. Bolton**
Attorney
rbolton@boardmanclark.com
Direct: 608-283-1789
Phone: 608-257-9521
Fax: 608-283-1709

**MADISON OFFICE**
BOARDMAN & CLARK LLP
1 S PINCKNEY ST STE 410
P.O. BOX 927
MADISON, WI 53701-0927

1

**EXHIBIT 3**

**Richard L. Bolton**

| | |
|---|---|
| **From:** | Mackin, Anna <Anna.Mackin@oag.texas.gov> |
| **Sent:** | Tuesday, April 18, 2017 11:10 AM |
| **To:** | Richard L. Bolton |
| **Cc:** | Dan Byrne (DByrne@fbhg.law); Clopton, Jodie; Reed, Cherie |
| **Subject:** | John Sneed |

Rich,

As you know, John Sneed is no longer a party to this case, since the individual capacity claims against him were dismissed, and the official capacity claims are now against his successor in the role of Executive Director of the State Preservation Board.

"[A] nonparty[] can only be compelled to attend a deposition if served with a subpoena pursuant to Rule 45." *Nuskey v. Lambright*, 251 F.R.D. 3, 12 (D.D.C. 2008) (citing FED. R. CIV. P. 30(a)(1); *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 30 n.16 (1984) ("Under Rules 30 and 31, a litigant may depose a third party by oral or written examination. The litigant can compel the third party to be deposed and to produce tangible evidence at the deposition by serving the third party with a subpoena pursuant to Rule 45."); *Westmoreland v. CBS, Inc.*, 770 F.2d 1168, 1175 (D.C. Cir. 1985) ("To compel a [nonparty] witness to attend a deposition under Rule 30(a), a party must obtain a subpoena under Rule 45(d).").)

Because no such subpoena has been served, please be advised that Mr. Sneed will not be appearing for a deposition on April 25.

Apart from this defect, we also object to any deposition of Mr. Sneed for the following reasons:

-It is generally improper to depose high ranking government officials—including the heads of State agencies—about matters related to their official duties, and this protection survives the individual's tenure as a State official.

-It is unlikely that Sneed's deposition will lead to the discovery of evidence relevant to the outcome of this case.

-You have made no attempt to pursue discovery through less intrusive means, as required to depose a former high-ranking state official duties. At the very least, it is appropriate to depose Robert Davis, and serve written discovery, before seeking to depose the former Executive Director himself.

-As a nonparty, Sneed has not been given a reasonable time to comply with the subpoena. *See* Fed. R. Civ. P. 45(d)(3)(A)(i).

Nevertheless, if you insist on moving forward with this deposition, we will as a gesture of good faith accept service of the subpoena on Sneed's behalf. Please be advised, however, that we intend to proceed with a motion to quash that subpoena for the grounds set forth above.

Please let me hear from you by close of business today regarding how you would like to proceed.

Thank you,
Anna

Anna Mackin | Assistant Attorney General
P.O. Box 12548, Capitol Station, Austin, Texas 78711
Direct: 512.475.4074 | Fax: 512.320.0667
anna.mackin@oag.texas.gov

1

**EXHIBIT 4**

**Richard L. Bolton**

| | |
|---|---|
| **From:** | Mackin, Anna <Anna.Mackin@oag.texas.gov> |
| **Sent:** | Tuesday, April 18, 2017 1:43 PM |
| **To:** | Richard L. Bolton |
| **Cc:** | Dan Byrne (DByrne@fbhg.law); Clopton, Jodie; Reed, Cherie |
| **Subject:** | RE: John Sneed |

Given that we will file a motion to quash, no witness check is necessary at this time. If you'd like to make a factual inquiry, please send us your written discovery requests. We will respond in due course.

Anna

**From:** Richard L. Bolton [mailto:rbolton@boardmanclark.com]
**Sent:** Tuesday, April 18, 2017 11:40 AM
**To:** Mackin, Anna <Anna.Mackin@oag.texas.gov>
**Cc:** Dan Byrne (DByrne@fbhg.law) <DByrne@fbhg.law>; Clopton, Jodie <Jodie.Clopton@oag.texas.gov>; Reed, Cherie <Cherie.Reed@oag.texas.gov>
**Subject:** RE: John Sneed

I'll send you a subpoena shortly.  Do you want a witness check at same time? Please let me know distance that Mr. Sneed will be traveling if you need appearance check simultaneous.

Also, are you willing to identify  the alleged scrivener's of the Governor's letter regarding FFRF exhibit? Rich

**Richard L. Bolton**
Attorney
rbolton@boardmanclark.com
Direct: 608-283-1789
Phone: 608-257-9521
Fax: 608-283-1709

**MADISON OFFICE**
BOARDMAN & CLARK LLP
1 S PINCKNEY ST STE 410
P.O. BOX 927
MADISON, WI 53701-0927

**From:** Mackin, Anna [mailto:Anna.Mackin@oag.texas.gov]
**Sent:** Tuesday, April 18, 2017 11:10 AM
**To:** Richard L. Bolton
**Cc:** Dan Byrne (DByrne@fbhg.law); Clopton, Jodie; Reed, Cherie
**Subject:** John Sneed

Rich,

As you know, John Sneed is no longer a party to this case, since the individual capacity claims against him were dismissed, and the official capacity claims are now against his successor in the role of Executive Director of the State Preservation Board.

"[A] nonparty[] can only be compelled to attend a deposition if served with a subpoena pursuant to Rule 45." *Nuskey v. Lambright*, 251 F.R.D. 3, 12 (D.D.C. 2008) (citing FED. R. CIV. P. 30(a)(1); *Seattle Times Co. v. Rhinehart*, 467 U.S. 20,

**EXHIBIT 5**

30 n.16 (1984) ("Under Rules 30 and 31, a litigant may depose a third party by oral or written examination. The litigant can compel the third party to be deposed and to produce tangible evidence at the deposition by serving the third party with a subpoena pursuant to Rule 45."); *Westmoreland v. CBS, Inc.*, 770 F.2d 1168, 1175 (D.C. Cir. 1985) ("To compel a [nonparty] witness to attend a deposition under Rule 30(a), a party must obtain a subpoena under Rule 45(d).").)

Because no such subpoena has been served, please be advised that Mr. Sneed will not be appearing for a deposition on April 25.

Apart from this defect, we also object to any deposition of Mr. Sneed for the following reasons:

-It is generally improper to depose high ranking government officials—including the heads of State agencies—about matters related to their official duties, and this protection survives the individual's tenure as a State official.

-It is unlikely that Sneed's deposition will lead to the discovery of evidence relevant to the outcome of this case.

-You have made no attempt to pursue discovery through less intrusive means, as required to depose a former high-ranking state official duties. At the very least, it is appropriate to depose Robert Davis, and serve written discovery, before seeking to depose the former Executive Director himself.

-As a nonparty, Sneed has not been given a reasonable time to comply with the subpoena. *See* Fed. R. Civ. P. 45(d)(3)(A)(i).

Nevertheless, if you insist on moving forward with this deposition, we will as a gesture of good faith accept service of the subpoena on Sneed's behalf. Please be advised, however, that we intend to proceed with a motion to quash that subpoena for the grounds set forth above.

Please let me hear from you by close of business today regarding how you would like to proceed.

Thank you,
Anna

Anna Mackin | Assistant Attorney General
P.O. Box 12548, Capitol Station, Austin, Texas 78711
Direct: 512.475.4074 | Fax: 512.320.0667
anna.mackin@oag.texas.gov

 **Greg Abbott** 
@GregAbbott_TX

**👤+ Follow**   ⌄

# Mocking the Capitol Nativity Scene is Offensive. I Demand Removal of Satirical 'Nativity Scene' from Capitol #tcot

**EXCLUSIVE: Texas Governor Demands Removal of Satirica...**
Texas Governor Greg Abbott sent a letter demanding that a tasteless nontheistic foundation nativity be removed immediately from the Capitol.
breitbart.com

RETWEETS
161

LIKES
204

    

**EXHIBIT 6**

SEARCH

BIG GOVERNMENT    BIG JOURNALISM    BIG HOLLYWOOD    NATIONAL SECURITY    TECH    VIDEO
BREITBART LONDON  |  BREITBART JERUSALEM  |  BREITBART TEXAS  |  BREITBART CALIFORNIA

# EXCLUSIVE: TEXAS GOVERNOR DEMANDS REMOVAL OF SATIRICAL 'NATIVITY SCENE' FROM CAPITOL

*1657*                              *6*



Freedom From Religion Website

*by* LANA SHADWICK  |  22 Dec 2015    1,987

Texas Governor Greg Abbott has sent a letter demanding that a tasteless nativity from a nontheistic foundation be removed immediately from the Texas Capitol building.

SIGN UP **FOR OUR NEWSLETTER**

*email address*          SUBMIT

Governor Abbott pinned the letter to John Sneed, the Executive Director of the State Preservation Board that charges that a Freedom From Religion Foundation nativity is a "juvenile parody [that] violates the Preservation Board's regulations and should be removed immediately."

A copy of the letter was exclusively provided to Breitbart Texas and is attached below.

**EXHIBIT 7**

*Update: Breitbart Texas spoke with Texas State Representative Charlie Geren (R-River Oaks) who said he called John Sneed, the Executive Director of the State Preservation Board and told him to take the nativity scene down today. He said the Governor wanted the nativity scene from the foundation removed. Geren, a member of the State Preservation Board, told Breitbart Texas that Sneed said the "nativity" scene will be removed from the Capitol today.*

The exhibit, located in the basement of the state's Capitol, has the bill of rights in a manger instead of a baby Jesus. It also has three founding fathers and the Statue of Liberty "worshiping one of America's founding documents as a replacement for Jesus Christ," wrote the Texas Governor.



(Photo: Freedom From Religion Website)

Abbott continues in his letter, "Christians and Christianity. The Biblical scene of the newly born Jesus Christ lying in a manger in Bethlehem lies at the very heart of the Christian faith. Subjecting an image held sacred by millions of Texans to the Foundation's tasteless sarcasm does nothing to promote morals and the general welfare."

The Governor adds, "To the contrary, the Foundation's spiteful message is intentionally designed to belittle and offend, which undermines rather than promotes any public purpose a display promoting the bill of rights might otherwise have had."

The Texas Governor states that the Board should allow diverse viewpoints to be expressed in Capitol displays, "But it has no obligation to approve displays that purposefully mock the sincere religious beliefs of others."

As reported by Breitbart Texas, the *Freedom From Religion Foundation* had threatened a lawsuit over the display of the national motto "In God We Trust" on patrol cars in Childress, Texas. The Office of the Texas Attorney General issued an opinion saying the national motto could be displayed on law enforcement division patrol vehicles.

*Lana Shadwick is a writer and legal analyst for Breitbart Texas. She has served as an associate judge and prosecutor. Follow her on Twitter @LanaShadwick2.*

*Note: This article has been updated with a statement from State Representative Charlie Geren.*

293867122 Texas Governor Greg Abbott Letter Re Freedom From Religion Foundation Nativity

December 21, 2015

John Sneed
Executive Director
State Preservation Board
201 East 14th Street, Suite 950
Austin, Texas 78701

Dear Mr. Sneed:

It has come to my attention that State Preservation Board staff approved an application by the "Freedom From Religion Foundation" to display an exhibition on the ground floor of the Capitol. The exhibit is entitled "Bill of Rights [Nativity and Winter Solstice [D]isplay." The exhibit places the bill of rights in a manger and shows three founding fathers and the Statue of Liberty worshipping one of America's founding documents as a replacement for Jesus Christ. This juvenile parody violates the Preservation Board's regulations and should be removed immediately.

Regulations governing the State Preservation Board authorize the approval only of those Capitol exhibits that promote a "public purpose." 14 TEX. ADMIN. CODE § 111.13(c)(2). The regulations speak directly to the standard for promoting a "public purpose":

The promotion of the public health, education, safety, morals, general welfare, security, and prosperity of all of the inhabitants or residents within the state, the sovereign powers of which are exercised to promote such public purpose or public business. The chief test of what constitutes a public purpose is that the public generally must have a direct interest in the purpose and the community at large is to be benefitted. This does not include activities which promote a specific viewpoint or issue and could be considered lobbying. Political rallies, receptions, and campaign activities are prohibited in the public areas of the Capitol.

Id. § 111.13(a)(6). The "Bill of Rights Nativity" violates this legal standard in three ways.

First, far from promoting morals and the general welfare, the exhibit deliberately mocks Christians and Christianity. The Biblical scene of the newly born Jesus Christ lying in a manger in Bethlehem lies at the very heart of the Christian faith. Subjecting an image held sacred by millions of Texans to the Foundation's tasteless sarcasm does nothing to promote morals and the general welfare. To the contrary, the Foundation's spiteful message is intentionally designed to belittle and offend, which undermines rather than

**READ MORE STORIES ABOUT:**

Big Government, Breitbart Texas, Faith, Freedom From Religion Foundation, Governor Greg Abbott, Greg Abbott, John Sneed, Nativity, religious liberties, religious liberty, Texas Preservation Board, War on Christianity, war on Christmas

## We Recommend

Sponsored Links by Taboola

3 Foods To Avoid In 2017

BIO X4 Supplement

15 Walmart Shoppers Captured These Photos

Auto Overload

This Pochantas Quit: Her Disneyland Secrets Will Haunt You

Trend Chaser

His Insane Backyard Pool Idea is Actually Genius (Pics)

Grizly

Man Finds Century-Old Ship, But When They Look Inside

LifeDaily.com

Veterans Hit the Jackpot in 2017 in Wisconsin

Morning Finance | LendingTree Quotes

## Hot Topics:

Faith

Hillary Emails
Police
Donald Trump
Hillary Clinton
2nd Amend.
Campaign 2016

Share This
Tweet This

# Texas City Facing Pressure Over Nativity Scene Gets Public Support From the Governor: Don't 'Cave to Atheist Demands'

1.9M
553.4K
32.4K
16.9K

Dec. 15, 2015 4:11pm Jon Street

**147**

Shares

## Email this story to a friend

| Your Name | | Your Email Address |

| Friend's Name | | Friend's Email Address |
| Your Message | | Send Email |

Texas Gov. Greg Abbott (R.) is urging the city of Orange, Texas, to keep a Nativity scene displayed outside of its city hall after town leaders decided to remove it following calls by an atheist organization for the city hang a "Happy Holidays" banner next to the crèche.

Abbott called on the city and its residents to "stand up to the demands of a select few who wish to see God thrown out of the public square," the Dallas Morning News reported.

**EXHIBIT 8**



Texas Republican Gov. Greg Abbott (AP)

Orange city manager Shawn Oubr previously told the Beaumont Enterprise newspaper that the nativity scene would be removed to avoid a possible lawsuit.

However, the atheist group said it never threatened to sue.

The governor then turned to social media, echoing his earlier call for the city to "stand up."

 **Greg Abbott**
@GregAbbott_TX

[ **Follow** ]

I urge the City of Orange to keep their nativity scene & not cave to atheist demands. #tcot #PJNET @TexasGOP trailblazersblog.dallasnews.com/2015/12/gov-gr...

1:18 PM - 15 Dec 2015

Texas City Facing Pressure Over Nativity Scene Gets Public Support From the Governor:...   Page 3 of 6

"I urge the City of Orange to keep their nativity scene & not cave to atheist demands," Abbott tweeted.

"As the U.S. Supreme Court has continually held, public acknowledgement of our religious heritage is entirely consistent with the Constitution," Abbott said in a statement. "The Constitution commands accommodation of religion rather than hostility towards it."

*Follow Jon Street (@JonStreet) on Twitter*

# 147

Shares
Share This
Tweet This

## Email this story to a friend

| Your Name | Your Email Address |

| Friend's Name | Friend's Email Address |

Your Message    Send Email

## POPULAR STORIES ON THE BLAZE

Mark Cuban Offers $10M to Charity if Trump Can Explain His 'Jibberish' Economic Plan 441 Comments



## GOVERNOR GREG ABBOTT

### MEMORANDUM

TO:    Virginia K. Hoelscher, Chair, Opinion Committee,
            Office of the Attorney General

FROM:  Jimmy Blacklock, General Counsel
            Adam W. Aston, Deputy General Counsel

RE:    **Whether the display of a cross with a thin blue line on a sheriff patrol vehicle violates the First Amendment to the U.S. Constitution (RQ-0089-KP)**

It has come to our attention that the Brewster County Sheriff has allowed his deputies to display a small cross on the windows of their patrol vehicles.  We also understand that the district attorney serving Brewster County and the surrounding counties has asked for an attorney general opinion on the permissibility of placing a cross depicted with a thin blue line on a patrol vehicle.  The Office of the Governor agrees with the district attorney that this practice is entirely consistent with the First Amendment.  We write to support the dedicated men and women of "The Thin Blue Line" who serve and protect Texas families and communities each day.

The U.S. Constitution does not prohibit local officials like the Brewster County Sheriff from publicly acknowledging the religious beliefs and religious heritage of their communities.  Nor does the Constitution prevent peace officers from publicly expressing their individual religious beliefs while on duty.  The Constitution does prohibit Congress from making a law respecting an establishment of religion.  U.S. CONST. Amend. I.  Obviously, nothing of the sort has occurred in Brewster County.

Even under the U.S. Supreme Court's expansive interpretation of the Establishment Clause's limited and unambiguous text, the Court has never held that public officials are barred from acknowledging our religious heritage.  To the contrary, the U.S. Supreme Court has long recognized the demographic and historical reality that Americans "are a religious people whose institutions presuppose a Supreme Being."  *Zorach v. Clauson*, 343 U.S. 306, 313 (1952).  Moreover, the Supreme Court has repeatedly held that the First Amendment



EXHIBIT

5

requires accommodation of religion, not hostility towards religion. "Anything less would require the 'callous indifference' [that] was never intended by the Establishment Clause." *Lynch v. Donnelly*, 465 U.S. 668, 673 (1984) (quoting *Zorach*, 343 U.S. at 314); *see also Van Orden v. Perry*, 545 U.S. 677, 699 (2005) (Breyer, J., concurring) (Requiring the government "to purge from the public sphere all that in any way partakes of the religious" would "promote the kind of social conflict the Establishment Clause seeks to avoid."). In fact, "[a] relentless and all-pervasive attempt to exclude religion from every aspect of public life could itself become inconsistent with the Constitution." *Lee v. Weisman*, 505 U.S. 577, 592 (1992).

As Attorney General Paxton explained in AG Opinion No. KP-0042, the Supreme Court's recent cases involving public displays and practices that contain a religious element instruct that an analysis of the permissibility of a display must focus on the nature of the display and our country's historical practices and understandings. Tex. Att'y Gen. Op. No. KP-0042 (2015) (citing *Van Orden*, 545 U.S. at 686, 689-91; *Lynch*, 465 U.S. at 679-80, 685-86; *Town of Greece v. Galloway*, 134 S. Ct. 1811, 1819 (2014)). When viewed in that context, it is clear that a deputy sheriff may place a cross with a thin blue line on his or her patrol vehicle without establishing a religion in violation of the First Amendment.

In addition to its religious significance, the cross has a long history in America and elsewhere as a symbol of service and sacrifice. For more than a century, crosses have been used at revered places like Normandy American Cemetery and Memorial and Arlington National Cemetery to honor the service and memorialize the ultimate sacrifice of members of the U.S. Armed Forces. When used in this manner, "a Latin cross is not merely a reaffirmation of Christian beliefs. It is a symbol often used to honor and respect those whose heroic acts, noble contributions, and patient striving help secure an honored place in history for this Nation and its people." *Salazar v. Buono*, 559 U.S. 700, 721 (2010) (plurality opinion).

The use of a cross is not limited to cemeteries and memorials; awards for valor and bravery often include a cross. *See generally* JOHN D. CLARKE, GALLANTRY MEDALS & DECORATIONS OF THE WORLD (2001) (depicting and describing military medals from three dozen countries, twenty-eight of which utilize at least one medal in the shape of a cross); *see also* PETER DUCKERS, EUROPEAN ORDERS AND DECORATIONS TO 1945 5-7 (explaining that "most" of the badges associated with European orders of chivalry, which date back to the Middle Ages, "are based on a cross shape"). In the United States, the Army's Distinguished Service Cross, the Air Force Cross, and the Navy Cross are the second highest decorations for their respective branches of service, and from 1917-42, the Medal of Honor awarded by the U.S. Navy was in the shape of a cross. *Id.* at 339-47.

2

The long history of the cross as a symbol of service and sacrifice cannot credibly be questioned.  Although the Supreme Court of the United States has not squarely answered the First Amendment question regarding a cross placed on a patrol vehicle or a similar display, *Salazar v. Buono* provides a strong indication of what the Court's answer would be.  *Salazar*, 559 U.S. at 721 (plurality opinion); *id.* at 715-16 (plurality opinion) (recognizing the secular purposes of honoring sacrifices made in war with a cross memorial); *id.* at 718-19 (plurality opinion) (explaining that the Constitution "does not require eradication of all religious symbols in the public realm.  A cross by the side of a public highway marking, for instance, the place where a state trooper perished need not be taken as a statement of governmental support for sectarian beliefs.  The Constitution does not oblige government to avoid any public acknowledgment of religion's role in society.").

The Second Circuit's 2014 decision in *American Atheists, Inc. v. Port Authority of New York and New Jersey* is also instructive.  The Second Circuit held that an artifact—a column and cross beam that resembled a Latin cross—recovered from the debris at the World Trade Center could be displayed in a national museum at Ground Zero.  *Am. Atheists, Inc. v. Port Authority of N.Y. & N.J.*, 760 F.3d 227, 232-33 (2d Cir. 2014).  The Second Circuit determined that the cross display, which the museum had named "The Cross at Ground Zero," *id.* at 232, was permitted under the First Amendment because the cross "came to be viewed . . . as a symbol of hope and healing for all persons."  *Id.* at 234.  Thus, both the actual and perceived purposes of including the cross at the museum were a secular remembrance of September 11, 2001, and its aftermath.  *Id.* at 238-242.  The effect of the cross would not be to advance or endorse religious belief, *id.* at 242-44, and the display would not serve to entangle government and religion, *id.* at 244-45.

The Brewster County deputies who have chosen to place crosses on their patrol cars have utilized the symbol of the cross in a manner that is consistent with the aforementioned history, traditions, and principles of constitutional law.  As Justice Goldberg first explained, "[t]he First Amendment does not prohibit practices which by any realistic measure create none of the dangers which it is designed to prevent and which do not so directly or substantially involve the state in religious exercises or in the favoring of religion as to have a meaningful and practical impact . . . . [T]he measure of constitutional adjudication is the ability to and willingness to distinguish between real threat and mere shadow."  *Sch. Dist. Of Abington Twp., Pa. v. Schempp*, 374 U.S. 203, 308 (1963) (Goldberg, J., concurring).

The Brewster County deputies' crosses neither establish a religion nor threaten any person's ability to worship God, or decline to worship God, in his own way.  Like those whose service to country is honored by crosses at military cemeteries, law enforcement officers risk their lives to protect us. The symbol of the cross appropriately conveys the solemn respect all Texans should have for the

3

courage and sacrifice of our peace officers.  That is an entirely appropriate public purpose, and the Constitution cannot legitimately be interpreted to prohibit it.

# THE ATTORNEY GENERAL OF TEXAS

# Ken Paxton

Thursday, December 4, 2014

## Attorney General Abbott Offers Support to Cherokee County Judge Over Challenge to Courthouse Nativity Scene

**Attorney General Abbott Offers Support to Cherokee County Judge Over Challenge to Courthouse Nativity Scene**

**AUSTIN** – Texas Attorney General Greg Abbott sent the following letter to Cherokee County Judge Chris Davis, following a demand from a national nontheistic organization to remove a nativity scene from the grounds of the courthouse:

December 4, 2014
The Honorable Chris Davis
County Judge Cherokee County
35 S. Main, 3rd Floor
Rusk, Texas 75785

Dear Judge Davis,

I have learned that a Washington D.C.-based organization called the American Humanist Association (AHA) recently sent you a letter demanding the removal of a nativity scene from the grounds of the Cherokee County Courthouse. The letter threatens to sue Cherokee County unless you "promptly remove" the nativity scene and "provide ... written assurances that no similar display will be erected in the future." You have informed my office that the County intends to keep the nativity scene in place through the Christmas season, and that the display on the courthouse grounds contains a variety of features, a number of which have no religious element. I write to offer my support if the AHA follows through on its threat to sue Cherokee County.

While the Texas Attorney General's Office cannot represent Cherokee County in court, should the need arise, my office can and will file legal briefs supporting the County's authority to retain the nativity scene display on the courthouse grounds. My office has previously taken action in support of numerous Texas communities and school children who have been forced to defend their rights against similar legal attacks.



EXHIBIT

2

Attorney General Abbott Offers Support to Cherokee County Judge Over Challenge to Co...  Page 2 of 4



[https://www.texasattorneygeneral.gov/files/epress/images/Cherokee
CountyNativityScene.jpg]

The nativity scene displayed on the grounds of the Cherokee County
courthouse square. Courtesy of KTRE-TV

In 2011, the Freedom From Religion Foundation threatened similar litigation over the
Christmas display on the grounds of the Henderson County courthouse in Athens, Texas. I
notified Henderson County that my office would support its defense of the inclusion of a
nativity scene within the display if the litigation threat was carried out, and I write today to
make the same commitment to the people of Cherokee County.

The AHA has a long history of attacking entirely constitutional public acknowledgements of
our Nation's religious heritage, and my office is prepared to offer support to Cherokee County
if the AHA follows through on its threatened lawsuit.

The Establishment Clause of the United States Constitution permits passive displays
acknowledging our Nation's religious heritage, such as the Ten Commandments monument at
the Texas Capitol or a nativity scene incorporated into a holiday display on public grounds in
December. The Supreme Court has observed that "[w]e are a religious people whose
institutions presuppose a Supreme Being." Zorach v. Clauson, 343 U.S. 306, 313 (1952).
Public acknowledgments of our Nation's religious heritage – from the highest seat of the
federal government to the public square in communities such as Rusk, Texas – routinely
serve the constitutional and appropriate purpose of "solemnizing public occasions, expressing
confidence in the future, and encouraging the recognition of what is worthy of appreciation in
society." Lynch v. Donnelly, 465 U.S. 668, 693 (1984) (O'Connor, J., concurring). And on the
contrary, lawsuits (like the one threatened by AHA) seeking to require the government "to
purge from the public sphere all that in any way partakes of the religious" are "not only
inconsistent with our national traditions, but ... also tend to promote the kind of social conflict
the Establishment Clause seeks to avoid." Van Orden v. Perry, 545 U.S. 677, 699 (2005)
(Breyer, J., concurring in the judgment).

Cherokee County is under no legal obligation to remove the nativity scene from the
courthouse grounds. Should Cherokee County choose to continue its tradition of including a
nativity scene within the County's display this Christmas season, the Texas Attorney
General's Office stands ready to provide appropriate legal support.

If you have any questions, or if we may be of additional assistance, please do not hesitate to contact me. Thank you for your service to the people of Cherokee County and the State of Texas.

Sincerely,

Greg Abbott
Attorney General of Texas


[#]         [#]         [#]         [#]         [#]         [#]        [#]    7 [#]

# Similar Press Releases

Texas Attorney General Ken Paxton's Remarks: Wednesday, February 18, 2015 [/oagnews/release.php?id=4950]

Attorney General Paxton: Judge's Order Blocking Obama a Victory for the Rule of Law [/oagnews/release.php?id=4946]

Attorney General Abbott Reiterates Opposition to Red River Land Grab; Demands Real Answers from Bureau of Land Management [/oagnews/release.php?id=4822]

Attorney General Abbott Statement on the National Guard Being Deployed to the Border [/oagnews/release.php?id=4784]

Attorney General Abbott Strongly Supports Immediate Deployment of State Resources to Target Influx of Illegal Border Crossings [/oagnews/release.php?id=4762]

Attorney General Abbott Requests Immediate Border Security Resources [/oagnews/release.php?id=4758]

Texas Attorney General's Office Wins National Award for Legal Excellence [/oagnews/release.php?id=4752]

Attorney General Abbott Questions BLM's Authority to Seize Private Property along Red River in Texas [/oagnews/release.php?id=4718]

Attorney General Abbott Honors Fort Hood Victims [/oagnews/release.php?id=4708]


ADDITIONAL LINKS


**ACCESSIBILITY [/AGENCY/SITE-POLICIES#ACCESS]**

Reply      Reply To All      Forward      Send To Me      View Images      Print

 **Email**

| | | |
|---|---|---|
| **From:** | Mackin, Anna | **Sent:** 8/12/2016 12:23:15 PM |
| **To:** | Richard L. Bolton | |
| **CC:** | Martinez, Tamera ; Head, Melissa | |
| **Subject:** RE: FFRF/Abbott | | |



Attachments may contain viruses that are harmful to your computer. Attachments may not display correctly.

 image001.jpg (0Kb)

Message

Rich,

Emails on State email accounts automatically delete after 30 days. Since this case was not filed until more than 30 days after the time period you mentioned, emails from that time period would no longer have existed unless they were manually retained by the user.

Thanks,
Anna

**From:** Richard L. Bolton [mailto:rbolton@boardmanclark.com]
**Sent:** Thursday, August 11, 2016 5:16 PM
**To:** Mackin, Anna <Anna.Mackin@texasattorneygeneral.gov>
**Subject:** FFRF/Abbott

Anna: In reviewing documents produced by Governor Abbott, we notice some omission of documents that we would expect to see. In particular, we did not receive any e-mails sent or received on December 21 or 22, 2015, by Governor Abbott or employees within the Governor's Office.

We know that at least a draft of Governor Abbott's letter demanding removal of FFRF's exhibit was sent to Lana Shadwick at Breitbart News Network, on December 21 or 22, resulting in an "exclusive" by that source. Such communications would be responsive to Plaintiff's Requests Nos. 4, 7, 8, and 10. Can you check on this? Thanks. Rich

 Image removed by sender.
Boardman &

| | |
|---|---|
| **Richard L. Bolton** | **MADISON OFFICE** |
| Attorney | BOARDMAN & CLARK LLP |
| rbolton@boardmanclark.com | 1 S PINCKNEY ST STE 410 |
| Direct: 608-283-1789 | P.O. BOX 927 |
| Phone: 608-257-9521 | MADISON, WI 53701-0927 |
| Fax: 608-283-1709 | |

**EXHIBIT 9**



**STATE PRESERVATION BOARD**
The Honorable Greg Abbott, Governor, Chairman
The Honorable Dan Patrick, Lieutenant Governor, Co-Vice Chairman
The Honorable Joe Straus, Speaker of the House, Co-Vice Chairman
The Honorable Kelly Hancock, Texas Senate
The Honorable Charlie Geren, Texas House of Representatives
Iris H. Moore, Citizen Board Member
John Sneed, Executive Director

August 18, 2016

Mr. Scott M. Daigle, Chief of Staff
Representative Donna Howard
Room E1.420
P.O. Box 2910
Austin, Texas 78768

Dear Mr. Daigle:

Thank you for inquiring about the availability of the Texas Capitol's South Central Gallery for the exhibition during November and December of this year. In particular, you asked about the FFRF's exhibition celebrating the Winter Solstice and the anniversary of the ratification of the Bill of Rights. The State Preservation Board welcomes diverse viewpoints to the Capitol, and in that spirit, I write in hopes of accommodating your request for a Winter Solstice and Bill of Rights exhibition.

As you know, there are three areas in the Capitol where exhibitions may be displayed: the Ground Floor Rotunda (Capitol Building, basement level), the South Central Gallery, and the North Central Gallery. The South Central Gallery is unavailable during the requested months of November and December due to ongoing renovation projects in the Capitol. In particular, furniture and other large items will be stored in this area while over 100 office moves take place, and offices undergo maintenance, updates, and repairs.

The Capitol Ground Floor Rotunda and North Central Gallery, however, have limited availability during November and December. Should your office choose to recommend an exhibit for display in the Capitol Ground Floor Rotunda or the North Central Gallery, please bear in mind that all Capitol exhibitions must promote a public purpose. Applications for Capitol exhibitions that do not promote a public purpose will be rejected.

As the Governor, who is Chairman of the State Preservation Board, explained in a letter to me last December, the "nativity" exhibit that the FFRF sponsored last year does not promote a

**EXHIBIT 10**

Mr. Scott M. Daigle                                                                                  Page 2
8/18/16

public purpose. In particular, Governor Abbott explained that the exhibit purposefully mocked Christians and Christianity by crudely satirizing one of the most sacred symbols of the Christian faith.

Thus, in addition to the space availability constraints discussed above, please be aware that any application to display the same exhibit which was removed last year will be denied for failure to satisfy the public purpose requirement. On the other hand, an exhibit that celebrates the Bill of Rights and the Winter Solstice without mocking the sincerely held religious beliefs of other Texans would be welcome in the exhibition areas of the Capitol. Such an exhibit would be approved, provided the limited exhibition space available can accommodate it.

Our position on this matter has not changed since the Governor wrote to me last December, calling for the removal of the FFRF's pejorative exhibit. As the Governor reiterated there, and as we have maintained throughout FFRF's lawsuit against us, the Board welcomes all viewpoints and messages to the Texas Capitol. It simply insists that those viewpoints be expressed in a respectful manner befitting the halls of State government. I invite your office and the FFRF to submit an application to celebrate the anniversary of the ratification of the Bill of Rights and the Winter Solstice—or any other events you wish. I ask that, in doing so, all involved please bear in mind the importance of preserving an atmosphere of decorum and mutual respect appropriate for the seat of government.

Sincerely,

John Sneed
Executive Director
State Preservation Board

cc Annie Laurie Gaylor, FFRF