UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **FREEDOM FROM RELIGION FOUNDATION, INC.** § | | |
| Plaintiff, § | | |
| § | | |
| -vs- § | CASE NO. 1-16: CV-00233 | |
| § | | |
| **GOVERNOR GREG ABBOTT**, in his § | | |
| official and individual capacities, and § | | |
| **ROD WELSH**, Executive Director of the § | | |
| Texas State Preservation Board, in his § | | |
| official capacity, § | | |
| Defendants. § | | |

## PLAINTIFF'S BRIEF OPPOSING MOTION FOR JUDGMENT ON THE PLEADINGS

**I.   The Court Properly Considered Governor Abbott's Qualified Immunity Defense On Summary Judgment.**

Governor Abbott's Motion for Judgment on the Pleadings ignores that the court has already converted his prior motion for qualified immunity to a motion for summary judgment and has considered materials beyond the four corners of the Amended Complaint. The court's consideration of the qualified immunity issue on an expedited summary judgment schedule, moreover, was within the court's discretion to do. Finally, the Court properly concluded that the issue of qualified immunity hinges on the disputed factual question of viewpoint discrimination, thereby precluding summary judgment. Governor Abbott's attempt to roll back the clock, therefore, should be denied.

Rule 12(d) specifically provides that if on a motion under Rule 12(b)(6) or 12(c), matters outside of the pleadings are presented to and not excluded by the court, then the motion must be treated as one for summary judgment under Rule 56. In this case, the Defendants first moved to dismiss the Plaintiff's Amended Complaint for failure to state a claim under Rule 12(b)(6) and

argued also in that motion for qualified immunity. The court subsequently granted qualified immunity as to personal capacity claims against the Defendant, John Sneed, Executive Director of the Texas State Preservation Board, but otherwise directed the parties to proceed promptly to file summary judgment motions. The parties then filed cross motions for summary judgment, including Governor Abbott, who renewed his argument for qualified immunity. Finally, the court ruled on the cross motions for summary judgment, but concluded that Governor Abbott's motion for qualified immunity hinged upon disputed issues of fact that could not be determined on summary judgment.

Based on this procedural history, Governor Abbott's Motion For Judgment On The Pleadings necessarily must be treated as a motion for summary judgment under Rule 12(d), which the court has already decided. Governor Abbott's renewed motion at this time for judgment on the pleadings as to qualified immunity should be denied because the court has already addressed the issue with reference to submissions beyond the pleadings. *See also Darlak v. Bobear*, 814 F.2d 1055, 1064 (5th Cir. 1987).

Governor Abbott incorrectly argues that he is absolutely entitled to a final ruling on his qualified immunity defense in order to trigger his right to an immediate appeal. In fact, the court's summary judgment was itself a collateral order sufficient to trigger the Governor's appeal rights. The Fifth Circuit Court of Appeals described the rules applicable to appellate review of qualified immunity determinations in *Johnson v. Johnson*, 385 F.3d 503, 523-24 (5th Cir. 2004):

> Although a public official claiming qualified immunity can as a general matter immediately appeal a denial of summary judgment, *see Mitchell v. Forsyth*, 472 U.S. 511, 524-30, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), we lack interlocutory jurisdiction to review the district court's conclusion that the plaintiff has created a genuine issue of fact as to some matter. *See Johnson v. Jones*, 515 U.S. 304, 313, 319-20, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995). Johnson points out that the district court's order denying

summary judgment specifically stated that genuine disputes of material fact existed that precluded a ruling on the immunity defense.

> As the Supreme Court explained in *Behrens v. Pelletier*, 516 U.S. 299, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996), *Johnson* does not mean that there is no interlocutory appellate jurisdiction whenever the district court's order denying summary judgment states that fact questions remain. Rather, *Johnson* means only that the district court's ruling cannot be appealed to the extent that the official seeks to challenge the district court's determinations regarding the sufficiency of the summary-judgment record. *Id.* at 313, 116 S.Ct. 834. *Johnson* permits [a defendant official] to claim on appeal that all of the conduct which the District Court deemed sufficiently supported for purposes of summary judgment met the *Harlow* standard of `objective legal reasonableness.'' *Id.* Yet while the appeal will not be dismissed, we are nonetheless required to limit our review along the lines described in *Johnson* and *Behrens*. That is, we may not consider any of the defendants' arguments that challenge the district court's assessment that certain facts are sufficiently supported in the summary-judgment record.

The Fifth Circuit's more recent decision in *Heaney v. Roberts*, 846 F.3d 795 (5th Cir. 2017), is also particularly germaine to the present case. *Heaney* is similar to the present case in that the district court denied the defendant's qualified immunity motion because a genuine issue of fact existed regarding whether the defendant engaged in viewpoint discrimination. The Court of Appeals first explained its appellate jurisdiction in such a situation:

> While not a final decision, 'the denial of a motion for summary judgment based upon qualified immunity is a collateral order capable of immediate review.' *Kinney v. Weaver*, 367 F.3d 337, 346 (5th Cir. 2004) (en banc). We have explained that when a 'district court denies an official's motion for summary judgment predicated upon qualified immunity, the district court can be thought of as making two distinct determinations, even if only implicitly.' *Id.* The court is first deciding that 'a certain course of conduct would, as a matter of law, be objectively unreasonable in light of clearly established law.' *Id.* 'Second, the court decides that a genuine issue of fact exists regarding whether the defendant(s) did, in fact, engage in such conduct.' *Id.* We do not have jurisdiction to review the second type of determination. *Id.* Instead, 'we review the complaint and record to determine whether, assuming that all of [the plaintiff's] factual assertions are true, those facts are materially sufficient to establish that defendants acted in an objectively unreasonable manner.' *Wagner v. Bay City*, 227 F.3d 316, 320 (5th Cir. 2000).

In *Heaney*, the plaintiff alleged that his First Amendment rights were violated when he was prohibited from speaking at a city council meeting. In reaching its decision, the Court first addressed the status of the law as it applied to limited public forums:

> The constitutional right at issue is the First Amendment right to be free from viewpoint discrimination in a limited public forum. *See Chiu v. Plano Indep. Sch. Dist.*, 260 F.3d 330, 346 (5th Cir. 2001) (per curiam) (explaining that limited public forums 'describe forums opened for public expression of particular kinds or by particular groups'). It is beyond debate that the law prohibits viewpoint discrimination in a limited public forum. *See, e.g., Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106, 121 S.Ct. 2093, 150 L.Ed. 151 (2001). The government can restrict or regulate speech in a limited public forum 'as long as the regulation (1) does not discriminate against speech on the basis of viewpoint and (2) is reasonable in light of the purpose served by the forum.' *Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747, 758 (5th Cir. 2010) (*quoting Chiu*, 260 F.3d at 346).

*Id.* at 802.

The district court in *Heaney* had denied summary judgment because a factual dispute existed as to whether the defendant's conduct was viewpoint-based. Viewpoint discrimination exists, according to the Fifth Circuit, "when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction," citing *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829, 115 S.Ct. 2510, 132 L.Ed.2d 700 (1995). Based on this state of the law, the Fifth Circuit concluded that the law was clearly established for purposes of personal capacity liability, but the Court also agreed that the question of viewpoint discrimination, in fact, was appropriately not determined on the basis of summary judgment:

> The district court declined to grant summary judgment in favor of Roberts because the 'pivotal question' --whether Roberts acted on an improper motive --is a factual dispute that should be resolved by a jury. Due to that question of fact, the district court was unable to determine whether Roberts is entitled to qualified immunity. Assuming that there was viewpoint discrimination, the court found that Roberts did violate clearly established law and that the violation was objectively unreasonable.

4

> Specifically, the district court stated: 'It is beyond cavil that a reasonable government official in Roberts' position would have known that it would be impermissible under the First Amendment to prevent Heaney from speaking and to eject him from the meeting based on the message he was conveying.'
>
> We agree. If Roberts acted with improper motive, he violated Heaney's clearly established First Amendment right to be free from viewpoint discrimination in a limited public forum.

*Id.* at 802-03.

As in the *Heaney* case, the court here also properly concluded that the issue of viewpoint discriminations constituted a disputed issue of material fact.

## II. Governor Abbott's Motion Should Be Denied Even If Considered Solely On The Pleadings.

Governor Abbott's Motion For Judgment On The Pleadings should be denied even if one ignores the summary judgment record. The standard for dismissal under Rule 12(c) is the same as that for dismissal for failure to state a claim under Rule 12(b)(6). *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004). To survive a motion to dismiss, therefore, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In making this evaluation, the court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012).

The Supreme Court's decision in *Iqbal* and *Twombly* "did not alter the long-standing requirement that when evaluating a motion to dismiss under Rule 12(b)(6) [and Rule 12(c)], a court must accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff." *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011).

"With respect to any well-pleaded allegations, a court should assume the veracity and then determine whether they plausibly give rise to an entitlement to relief." *Jabary v. City of Allen*, 547 Fed. Appx. 600, 604 (5th Cir. 2013).

Here, the Plaintiff's detailed Complaint clearly is sufficient to support a plausible inference that Governor Abbott engaged in viewpoint discrimination. Governor Abbott's unreasonably construes *Iqbal* to essentially require a plaintiff to allege the existence of a signed confession by a defendant, but *Iqbal* does not require such an absurd standard of pleading. The Defendant's reading of the Plaintiff's Amended Complaint is not reasonable, nor does it treat the Plaintiff's allegations as true and draw reasonable inferences in the Plaintiff's favor.

Governor Abbott also ignores the most recent decision by the Supreme Court addressing the issue of viewpoint neutrality. In *Reed v. Town of Gilbert, Arizona*, 135 S.Ct. 2218, 192 L.Ed.2d 236 (2015), the Supreme Court applied a test for resolving conflicts between speech rights and governmental interests, whereby speech restrictions are first sorted by whether they are content-based or content-neutral. Content-based restrictions are subject to strict scrutiny, which requires the government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest. The principal inquiry under *Reed* in determining content-neutrality is whether the government has adopted a regulation of speech without reference to the content of the regulated speech. Content-neutral for purposes of First Amendment scrutiny exists when the rule is not related to the subject or topic of the speech. Also, in determining whether the regulation of speech is content-based or content-neutral, the court must look to the purpose behind the regulation: typically, government regulation of expressive activity is content-neutral as long as it is justified without reference to the content of the regulated speech.

The Supreme Court's ruling in *Reed* can be seen as a significant shift in the interpretation of public speech legislation.  Prior to *Reed*, the Court determined content neutrality by whether the government adopted regulation of speech because of disagreement with the message it conveys. *Ward v. Rock Against Racism*, 491 U.S. 781, 109 Supp. Ct. 2746, 105 Lawyer Ed. 2nd 661 (1989).  The *Reed* Court rejected this approach, however, concluding that the government's purpose is only relevant if the regulation is facially content-neutral.  Under the *Reed* framework, therefore, the government's intent only matters if a statute or rule regulating speech is facially neutral. The government's intent is irrelevant when government censorship blatantly distinguishes between different forms of constitutionally protected speech, offering a different set of rules for each.

The Supreme Court further concluded in *Reed* that government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed.  Government regulation of speech that distinguishes between permitted and prohibited speech based on the subject matter, function or purpose of the speech is content-based on its face.

Applying the *Reed* standard to the present case, Governor Abbott's letter to the State Preservation Board demanding the removal of the Plaintiff's Bill of Rights display by itself evinces a lack of content neutrality on its face.

Governor Abbott unpersuasively argues that the standard for viewpoint discrimination cannot be that "loose" when considering a limited public form.  In fact, however, recent decisions have clearly recognized and applied the *Reed* standard in such public forums.  In *Drageo v. City of Charlottesville, Virginia*, 2016 WL 6834025 (W.D. VA 2016), for example, the court considered whether a prohibition on "defamatory" group characterizations constituted a

content-neutral rule. The court concluded that such a rule clearly violated the *Reed* standard and underscored the threat and existence of viewpoint discrimination. (A true and correct copy of the *Drageo* decision is attached to this brief for the convenience of the court.)

Governor Abbott is clearly not entitled to judgment dismissing Plaintiff's personal capacity claim against him. In the first place, the law was clearly established by December of 2015 to the effect that prohibiting speech in a public forum, including a limited public forum, based upon content is prohibited by the First Amendment. The law to this effect was clearly established, including as the Fifth Circuit again recently recognized *Heaney*, 846 F.3d at 803. To the extent that Governor Abbott's personal motivation is at issue, moreover, this court correctly held that a disputed issue of material fact exists which precludes an ultimate determination at this time of Governor Abbott's qualified immunity defense.

Whether one treats Governor Abbott's Motion under the Rule 56 Summary Judgment Standard, therefore, or simply considers his defense strictly from a pleading perspective under Rule 12(c), the Governor is not entitled to judgment dismissing Plaintiff's personal capacity claims against him.

## **CONCLUSION**

For all the above reasons, the Court should deny Govern Abbott's Motion For Judgment On The Pleadings.

Dated this 15th day of May, 2017.

        Respectfully submitted,

        BOARDMAN AND CLARK, LLP
        1 S. Pinckney St., Suite 410
        Madison, Wisconsin  53703-4256
        Telephone:  608-257-9521
        Telecopier:  608-283-1709

        BY: */s/ Richard L. Bolton*
        Richard L. Bolton
        Wisconsin State Bar No. 1012552
        Email:  rbolton@boardmanclark.com

        Daniel H. Byrne
        Texas State Bar No. 03565600
        Email:  dbyrne@fbhf.com
        Lessie G. Fitzpatrick
        Texas State Bar No. 24012630
        Email:  lfitzpatrick@fbhf.com
        FRITZ, BYRNE, HEAD & FITZPATRICK, LLC
        221 West 6th Street, Suite 960
        Austin, Texas  78701
        Telephone:  (512) 476-2020
        Facsimile:      (512) 477-5267


        Sam Grover
        Wisconsin State Bar No. 1096047
        Email:  sgrover@ffrf.org
        Patrick Elliott
        Wisconsin State Bar No. 1074300
        Email:  pelliott@ffrf.org
        FREEDOM FROM RELIGION
        FOUNDATION, INC.
        P. O. Box 750
        Madison, Wisconsin  53701
        Telephone:  608-256-8900
        Telecopier:  608-204-0422

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing was filed electronically via the Court's CM/ECF system on this the 15th day of May, 2017, which will send notification to the following:

Anna Marie Mackin
Austin R. Nimocks
Brantley Starr
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, TX 78701
Telephone: (512) 475-4080
Telecopier: (512) 320-0667
Email: Anna.mackin@texasattorneygeneral.gov
Email: Austin.nimocks@texasattorneygeneral.gov
Email: Brantley.starr@texasattorneygeneral.gov

*/s/ Richard L. Bolton*
Richard L. Bolton

f:\docs\wd\26318\34\a2787015.docx