<pre>
 1                  UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF TEXAS
 2                        AUSTIN DIVISION

 3   FREEDOM FROM RELIGION      ) Docket No. A 16-CA-233 SS
     FOUNDATION, INC.           )
 4                              )
     vs.                        ) Austin, Texas
 5                              )
     GOVERNOR GREG ABBOTT,      )
 6   CHAIRMAN OF THE STATE      )
     PRESERVATION BOARD, ET AL  ) June 6, 2017
 7

 8                  TRANSCRIPT OF MOTION HEARING
                  BEFORE THE HONORABLE SAM SPARKS
 9

10   APPEARANCES:

11   For the Plaintiff:        Mr. Rich Bolton
                               Boardman and Clark
12                             1 South Pinckney Street, Suite 410
                               P.O. Box 927
13                             Madison, Wisconsin 53701

14

15   For the Defendant:        Ms. Angela V. Colmenero
                               Mr. Arthur C. D'Andrea
16                             Ms. Anne Marie Mackin
                               Office Of The Attorney General
17                             P.O. Box 12548, Capitol Station
                               Austin, Texas 78711
18

19   Court Reporter:           Ms. Lily Iva Reznik, CRR, RMR
                               501 West 5th Street, Suite 4153
20                             Austin, Texas 78701
                               (512)391-8792
21

22

23

24

25   Proceedings reported by computerized stenography, transcript
     produced by computer.
</pre>

| | | |
|---|---|---|
| 08:53:36 | 1 | THE COURT:  16-CV-233, Freedom From Religion Foundation |
| 08:53:40 | 2 | vs. Abbott, Et Al. |
| 08:53:42 | 3 | If you'll make your announcements, please |
| 08:53:46 | 4 | Plaintiff appears by attorney Rich Bolton. |
| 08:53:48 | 5 | THE COURT:  Mr. Bolton, welcome. |
| 08:53:50 | 6 | MR. D'ANDREA:  Your Honor, I'm Arthur D'Andrea for the |
| 08:53:50 | 7 | defendant, Angela Colmenero and Anne Mackin. |
| 08:53:59 | 8 | THE COURT:  And, I'm sorry, your name? |
| 08:54:00 | 9 | MR. D'ANDREA:  Arthur D'Andrea, your Honor. |
| 08:54:03 | 10 | THE COURT:  Okay.  All right. |
| 08:54:10 | 11 | I have several motions here that intertwine each other. |
| 08:54:13 | 12 | Abbott's proposed motion for protective order, Sneed's motion to |
| 08:54:19 | 13 | quash and protective order, plaintiff's correction motion for |
| 08:54:26 | 14 | extension of time to file response, I assume, is over.  Okay.  So |
| 08:54:31 | 15 | that's moot.  Opposed motion to extend scheduling order |
| 08:54:40 | 16 | deadlines, we'll have to hear that.  And Abbott's motion for |
| 08:54:44 | 17 | judgment on the pleadings, we will hear that.  And the unopposed |
| 08:54:48 | 18 | motion for extension of time.  See, you finally got an unopposed |
| 08:54:51 | 19 | motion, and you agreed on that.  An extension to file responses. |
| 08:54:57 | 20 | This district's favorite order by four-to-one, motions for |
| 08:55:03 | 21 | extension of time. |
| 08:55:06 | 22 | Okay.  So we'll start off with Abbott's judgment on the |
| 08:55:13 | 23 | pleadings. |
| 08:55:19 | 24 | MR. D'ANDREA:  Thank you, your Honor. |
| 08:55:22 | 25 | We're seeking a protective order against the deposition |

08:55:24   1   of the governor and Director Sneed.

08:55:26   2         THE COURT:  Well, they're all intertwined.

08:55:28   3         MR. D'ANDREA:  They are.  As well as a ruling on the

08:55:30   4   qualified immunity motion that we filed.

08:55:32   5         THE COURT:  So let me ask you this.  Let me combine

08:55:35   6   this a little bit.

08:55:39   7         If Abbott -- as it was contended in the first two

08:55:43   8   hearings that that was a long time ago and you've had discovery.

08:55:46   9   If Abbott walked through the capitol and saw that display on the

08:55:57   10   next to last day, one day, it would remain with an hour.  It had

08:56:03   11   to be approved or it wouldn't be there, and he ordered it

08:56:09   12   removed.  You explain to me, one, why they can't take his

08:56:14   13   deposition and, two, how I can -- if I don't order his

08:56:22   14   deposition, how I can issue any opinion on qualified immunity

08:56:26   15   until I hear evidence in a trial.

08:56:29   16         MR. D'ANDREA:  Okay.  Yes, your Honor.

08:56:30   17         I'll start with your hypothetical and I would grant

08:56:35   18   that --

08:56:35   19         THE COURT:  Well, it's not a hypothetical.  That's the

08:56:37   20   pleadings that I have on the motions to dismiss.  I don't know

08:56:43   21   that it's true, I don't know that it's factual, but that's what I

08:56:47   22   have in pleadings.  And y'all have been -- well, you've been

08:56:51   23   fooling around for a long time to nothing.  But now, you're

08:56:55   24   getting close to trial, and the state wants any way to appeal it

08:56:59   25   to the Fifth Circuit to avoid a trial.

08:57:04  1        But I don't have any evidence whatsoever as to actually

08:57:08  2   what happened, and that would require the deposition, the sworn

08:57:12  3   testimony either by affidavit -- and you can't give an affidavit

08:57:15  4   when you refuse a deposition -- two affidavits or two

08:57:23  5   depositions.  I can't imagine after 54 years of experience that

08:57:27  6   the depositions could last more than an hour, maybe 70 minutes.

08:57:34  7   And I have sworn testimony from those two material witnesses.

08:57:38  8        MR. D'ANDREA:  Yes, your Honor.

08:57:39  9        The only time that you depose a high-ranking official

08:57:42  10  is if you can show extraordinary circumstances --

08:57:43  11       THE COURT:  I'm familiar with the law, sir.  And I've

08:57:45  12  ordered depositions on a factual basis when the motions are

08:57:50  13  pending to take the case out many times.  So how did they get the

08:57:57  14  testimony of Abbott and how does he get out of a subpoena in

08:58:02  15  trial?

08:58:03  16       MR. D'ANDREA:  We are happy to file an affidavit with

08:58:05  17  this court that says what we've already disclosed to counsel,

08:58:08  18  which is that Governor Abbott did not identify the need to remove

08:58:11  19  that -- to remove the exhibit.  He did not draft that letter and

08:58:14  20  that the letter was autopinned by staff.  We're happy to file

08:58:19  21  that affidavit.  With that affidavit, we don't see how they can

08:58:21  22  meet the extraordinary circumstances required to depose Governor

08:58:24  23  Abbott, who has no unique knowledge of the facts of this case.

08:58:28  24       THE COURT:  These are just part, just part, counsel, of

08:58:35  25  the motions I'm hearing today.  Where is that affidavit?

08:58:39   1          MR. D'ANDREA:  Your Honor, we've disclosed it in an

08:58:40   2   e-mail.  We're happy to file the affidavit.

08:58:43   3          THE COURT:  Where -- my staff took hours to get ready

08:58:48   4   for this case.  I took hours to get ready for this case.  I've

08:58:52   5   reviewed all those pleadings.  And now, you come in and tell me

08:58:55   6   that there's an affidavit that might solve some of these

08:58:59   7   questions?

08:59:00   8          MR. D'ANDREA:  I don't think there was a fact dispute.

08:59:02   9   We disclosed to counsel over e-mail the facts of this when we

08:59:05  10   were negotiating over -- when we were --

08:59:08  11          THE COURT:  He's not attached these motions, counsel.

08:59:14  12   What if they told you about that?  You know -- all right.

08:59:25  13          You propose an affidavit, and you're telling me that

08:59:27  14   the affidavit under oath will be that it was not as alleged:

08:59:33  15   Abbott didn't come through, see it, wanted it down, told Mr.

08:59:37  16   Sneed to get it down.  He called the committee, they took it

08:59:43  17   down.  That's what's before me on the motion to dismiss.  That's

08:59:50  18   what's before me now.

08:59:51  19          So give me your best argument as to how I could make a

08:59:55  20   determination based on an affidavit that has a sustained

09:00:06  21   cross-examination.

09:00:09  22          MR. D'ANDREA:  Your Honor, the cases cited in our

09:00:11  23   motion stand for the proposition that you can grant qualified

09:00:13  24   immunity when all they have is bare allegations of malice and

09:00:17  25   there's nothing -- they have to do more than just allege that the

| | | |
|---|---|---|
| 09:00:21 | 1 | governor acted with some kind of intent or malice to them.  And |
| 09:00:25 | 2 | they haven't -- they have not produced -- they've had plenty of |
| 09:00:28 | 3 | discovery.  They've produced no objective evidence of that sort |
| 09:00:31 | 4 | of malice.  And we have told them -- |
| 09:00:33 | 5 | THE COURT:  They've fought you on having the two people |
| 09:00:37 | 6 | that know, you don't want to give the deposition to.  First off, |
| 09:00:42 | 7 | Sneed's not in the hierarchy to be protected.  Abbott is.  And I |
| 09:00:50 | 8 | have protected elected officials, for all these years, when their |
| 09:01:00 | 9 | actual testimony could not be dispositive of the case.  That's |
| 09:01:04 | 10 | not the case here, it appears from the pleadings I have, and I'll |
| 09:01:07 | 11 | hear from them.  Just give me your best. |
| 09:01:09 | 12 | MR. D'ANDREA:  Your Honor, we have offered the deputy |
| 09:01:11 | 13 | chief of staff in a 30(b)(6) at a deposition.  With that and the |
| 09:01:16 | 14 | fact that we've told them that the governor -- |
| 09:01:19 | 15 | THE COURT:  Now, who -- 30(b)(6), is that Sneed? |
| 09:01:23 | 16 | MR. D'ANDREA:  No.  That's the deputy chief of staff at |
| 09:01:25 | 17 | the governor's office. |
| 09:01:25 | 18 | THE COURT:  And who chaired the committee that okayed |
| 09:01:28 | 19 | it?  Sneed, correct? |
| 09:01:31 | 20 | MR. D'ANDREA:  Correct. |
| 09:01:31 | 21 | THE COURT:  Yeah.  Tell me why he should be protected. |
| 09:01:35 | 22 | MR. D'ANDREA:  Sneed is a different case, I'll grant |
| 09:01:38 | 23 | you that, but Sneed has already been dismissed on qualified |
| 09:01:40 | 24 | immunity.  Robert Davis -- they've already taken the deposition |
| 09:01:43 | 25 | of Robert Davis, who knows the facts on the ground.  He was the |

09:01:47  1  one of the preservation board who actually did all of this.  And

09:01:49  2  they have not identified any need to depose anyone above Robert

09:01:53  3  Davis.  It's just an absence of -- I mean, they still have to

09:01:56  4  show what facts they need.

09:01:58  5           THE COURT:  Do you remember why I took Sneed out on

09:02:02  6  qualified immunity?

09:02:06  7           MR. D'ANDREA:  Yes, your Honor.

09:02:06  8           THE COURT:  Tell me.  It's because he was alleged to

09:02:12  9  have been following orders of the governor, and you couldn't find

09:02:17  10  any case that said he would be acting unreasonable by following

09:02:23  11  the orders of the governor, and that's why he's out on qualified

09:02:26  12  immunity.  But that takes the sworn testimony of two people.  You

09:02:33  13  didn't make those allegations; you just said he was instructed or

09:02:36  14  whatnot.

09:02:41  15           I tell you what, save the rest of your argument.  Let

09:02:44  16  me hear what he admits that you've given him in discovery.

09:02:48  17           MR. D'ANDREA:  Yes, your Honor.  Thank you.

09:02:53  18           MR. BOLTON:  So which argument do you -- which motion

09:02:59  19  do you want me to address, your Honor?

09:03:00  20           THE COURT:  I've only got one question right now, and

09:03:04  21  that is -- because they're all related to the deposition.

09:03:08  22           MR. BOLTON:  I understand.

09:03:08  23           THE COURT:  What evidence do I have -- they're now

09:03:14  24  ready to proffer affidavits.  What evidence do I have that I

09:03:20  25  could even determine qualified immunity before trial?  I have

| | | |
|---|---|---|
| 09:03:24 | 1 | none right now.  But what evidence would I have to have? |
| 09:03:31 | 2 | MR. BOLTON:  In order to justify qualified immunity? |
| 09:03:34 | 3 | THE COURT:  What evidence do you have that defeats it? |
| 09:03:38 | 4 | You can do that. |
| 09:03:39 | 5 | MR. BOLTON:  The evidence that we would be seeking from |
| 09:03:41 | 6 | the governor would relate to, as you said, the circumstances in |
| 09:03:45 | 7 | which he ordered the removal, his motivations, the issues of how |
| 09:03:53 | 8 | he determined what constitutes offensiveness. |
| 09:03:56 | 9 | THE COURT:  You got a letter prepared by somebody. |
| 09:03:58 | 10 | MR. BOLTON:  I'm sorry, your Honor? |
| 09:03:59 | 11 | THE COURT:  You got a letter by somebody in his office |
| 09:04:01 | 12 | that told you, who, by the way, wasn't there. |
| 09:04:06 | 13 | MR. BOLTON:  And in my opinion, your Honor, the letter |
| 09:04:08 | 14 | is sufficient to establish viewpoint discrimination but -- and |
| 09:04:15 | 15 | I'm not trying to reargue the summary judgment motion, but in |
| 09:04:19 | 16 | your Honor's decision on summary judgment motion, you indicated |
| 09:04:22 | 17 | that you wanted more, and so, that's the process that we |
| 09:04:28 | 18 | undertook. |
| 09:04:29 | 19 | My personal view, based on the law, is that the letter |
| 09:04:32 | 20 | itself is sufficient to establish viewpoint discrimination. |
| 09:04:36 | 21 | THE COURT:  Well, then, you don't need the depositions |
| 09:04:39 | 22 | of anybody. |
| 09:04:41 | 23 | MR. BOLTON:  Well, your Honor didn't agree with me |
| 09:04:44 | 24 | on -- |
| 09:04:44 | 25 | THE COURT:  You backed yourself into a corner there. |

| | | |
|---|---|---|
| 09:04:47 | 1 | That issue's gone.  Now, it may come up on appeal or something |
| 09:04:52 | 2 | along that.  I don't think -- but you're obviously not satisfied |
| 09:04:59 | 3 | with that letter, so you want the depositions.  Tell me what you |
| 09:05:05 | 4 | expect in the depositions. |
| 09:05:08 | 5 | MR. BOLTON:  I expect to ask the governor questions |
| 09:05:11 | 6 | relating to how he -- since he hasn't previously been involved in |
| 09:05:16 | 7 | applying those standards, how he applied the standards to |
| 09:05:19 | 8 | determine the decision to remove, how he determines the question |
| 09:05:25 | 9 | of offensiveness, because that seemed to be the decisive issue |
| 09:05:28 | 10 | and that it was -- that he considered it to be offensive; and in |
| 09:05:32 | 11 | terms of how that determination is made by the governor, |
| 09:05:37 | 12 | including in context of a history in which there's a history of |
| 09:05:44 | 13 | hostility to the FFRF, as well as a history of promotion and |
| 09:05:52 | 14 | endorsement of religious displays in public -- in public forums. |
| 09:05:57 | 15 | And on those issues alone, your Honor, whether or not |
| 09:06:01 | 16 | the governor, for instance, had done certain things in the past |
| 09:06:06 | 17 | both in terms of what he said about FFRF and promotion, in |
| 09:06:10 | 18 | response to those simple factual allegations the governor said X |
| 09:06:17 | 19 | on X date, in answer to the complaint, we got, lacks knowledge |
| 09:06:24 | 20 | and information sufficient to form an opinion. |
| 09:06:27 | 21 | So -- |
| 09:06:28 | 22 | THE COURT:  What now?  Last night, what did you get? |
| 09:06:32 | 23 | MR. BOLTON:  I'm sorry? |
| 09:06:33 | 24 | THE COURT:  What did you get last night? |
| 09:06:35 | 25 | MR. BOLTON:  I didn't -- I'm not aware that I got |

09:06:39  1  anything last night.

09:06:40  2          THE COURT:  How, I thought you said last night you got

09:06:42  3  something insufficient to form an opinion.  Read back

09:06:42  4  counsel's --

09:07:13  5          MR. BOLTON:  If I said last night, I didn't mean to.

09:07:13  6          (Counsel's last comments read back.)

09:07:17  7          MR. BOLTON:  No.  And I didn't mean to say last night.

09:07:17  8          In the answers to the complaint at the time that it was

09:07:20  9  filed, we got a response that they couldn't even answer that --

09:07:23  10  those types of allegations.  So in response -- in response to

09:07:28  11  written discovery, including any documents relating to the

09:07:34  12  history of this, the governor's office said that they don't

09:07:38  13  maintain any sort of e-mail communications after 60 days.  So we

09:07:44  14  got nothing there.

09:07:48  15          In response to a 30(b)(6) notice, then, we were told

09:07:54  16  last month then -- by the way, in terms of who they were to

09:07:59  17  identify as the 30(b)(6) witness, I was never given any

09:08:04  18  identification, but what we were told was that they couldn't even

09:08:07  19  sit for a 30(b)(6) deposition until the middle of July.

09:08:11  20          In response to written interrogatories asking, well,

09:08:14  21  who are these other people, then, that supposedly can provide

09:08:18  22  alternative testimony?  In response to that interrogatory, two

09:08:22  23  weeks ago today, we got an answer that they would not even

09:08:26  24  provide that information until after your Honor ruled on the

09:08:29  25  motion for judgment on the pleadings.  So we've been able to get

09:08:33  1  nothing from them.  But I think in terms of the background, the

09:08:38  2  context, the judge's -- or the governor's -- how he determines

09:08:43  3  whether something is offensive and that, in fact, it is the

09:08:47  4  content of the exhibit that, in fact, was the motivating factor.

09:08:52  5       THE COURT:  Whether he thought it was offensive or not,

09:08:56  6  you've got to show that he instructed them to remove it, right?

09:09:03  7       MR. BOLTON:  Yes, your Honor.

09:09:03  8       THE COURT:  So I'm not concerned about your history at

09:09:06  9  all.  If I give you a deposition of Governor Abbott, it's going

09:09:11  10  to be less than an hour long, and it's going to be on one issue:

09:09:15  11  What he saw, what he did, period.

09:09:17  12       MR. BOLTON:  Say that again, your Honor.

09:09:18  13       THE COURT:  What he saw and what he did.  What when he

09:09:25  14  saw, and what he did.  Those are the only issues that I think are

09:09:28  15  important, and I need that on qualified immunity.  I can't make

09:09:32  16  that determination on the governor without knowing what he did.

09:09:39  17  Because I need to know if what he did was unreasonable, and

09:09:43  18  that's the issue on qualified immunity.  Really, separate and

09:09:46  19  apart from your case.  But the pleadings of the defendant have

09:09:54  20  raised it, i.e., late after this case just sat around collecting

09:10:02  21  dust, but still before trial.

09:10:09  22       So what other than what you've just said, you want the

09:10:16  23  history of alleged discrimination against the Foundation.  Your

09:10:28  24  client's in the best position to provide that, by the way.  And

09:10:35  25  the exact testimony of the one witness who allegedly started the

| | | |
|---|---|---|
| 09:10:42 | 1 | removal.  What else? |
| 09:10:45 | 2 | MR. BOLTON:  I still think, your Honor, at least in |
| 09:10:50 | 3 | construing the Court's summary judgment decision, that we need to |
| 09:10:55 | 4 | question the governor regarding how he's applying those standards |
| 09:11:00 | 5 | and, in fact, that his application of those standards -- |
| 09:11:03 | 6 | THE COURT:  Well, he's a member of the committee, but |
| 09:11:06 | 7 | Sneed's the chairman.  Don't you think he's the one that you're |
| 09:11:09 | 8 | going to need to ask that? |
| 09:11:11 | 9 | MR. BOLTON:  Say that again, your Honor. |
| 09:11:14 | 10 | THE COURT:  Abbott may be a member of the committee, |
| 09:11:18 | 11 | may not be, but I assume the governor is probably a member.  But |
| 09:11:22 | 12 | Sneed is the chairman.  He's the one that -- the governor's not |
| 09:11:26 | 13 | in their meetings when they authorize people to put stuff up in |
| 09:11:32 | 14 | the capitol.  That's done through Sneed's committee. |
| 09:11:37 | 15 | MR. BOLTON:  But that's what makes the situation unique |
| 09:11:39 | 16 | in that has not been his role in terms of intervening in these |
| 09:11:42 | 17 | types of matter before.  And this is a very unique situation and |
| 09:11:47 | 18 | I think we need to probe why, in fact -- what it was that |
| 09:11:51 | 19 | motivated him in this particular case to -- he has not been |
| 09:11:55 | 20 | involved in any prior or subsequent determination to approve a |
| 09:12:04 | 21 | display or an event or ordered anything removed. |
| 09:12:09 | 22 | THE COURT:  Are you saying that as a fact? |
| 09:12:12 | 23 | MR. BOLTON:  I am saying that as a fact. |
| 09:12:14 | 24 | THE COURT:  That's why it's not material, counsel. |
| 09:12:18 | 25 | It's only material what he did because it was authorized to be |

| | | |
|---|---|---|
| 09:12:26 | 1 | there, and if he directed it to be removed, then that's a real |
| 09:12:32 | 2 | issue on qualified immunity.  If he didn't, then he's probably |
| 09:12:39 | 3 | entitled to qualified immunity.  And I have no evidence on that |
| 09:12:43 | 4 | issue right now, in all of these papers or -- does he have to be |
| 09:12:52 | 5 | innocent and just didn't like the portrayal of Washington?  He |
| 09:12:58 | 6 | didn't think Washington's face looked right, would it make any |
| 09:13:04 | 7 | difference? |
| 09:13:04 | 8 | MR. BOLTON:  In my opinion, your Honor, his -- the |
| 09:13:08 | 9 | reason that he gave in his letter constitutes, on its face, |
| 09:13:12 | 10 | viewpoint discrimination.  In the absence of, you know, it's a |
| 09:13:17 | 11 | limited public forum, there's nothing that, on its face, |
| 09:13:24 | 12 | disqualifies the exhibit.  It's not -- it's protected speech. |
| 09:13:31 | 13 | It's not speech that -- it's not fighting words that are likely |
| 09:13:37 | 14 | to incite a public disturbance.  It's not obscene or defamatory. |
| 09:13:46 | 15 | THE COURT:  I've so ruled.  You're just reminding me |
| 09:13:49 | 16 | what I've ruled?  I've ruled that when they put it out and they |
| 09:13:56 | 17 | authorized it to be put out and it was put out three of the four |
| 09:13:59 | 18 | days that it was permitted, that it was authorized speech, |
| 09:14:05 | 19 | limited but there.  So that hurdle doesn't have anything to do |
| 09:14:10 | 20 | with what we're talking about today. |
| 09:14:11 | 21 | We're talking about today why it was removed, and you |
| 09:14:17 | 22 | think that the history against Freedom From Religion Foundation |
| 09:14:28 | 23 | or other foundations is going to be important.  Can you prove a |
| 09:14:34 | 24 | removal ever before? |
| 09:14:38 | 25 | MR. BOLTON:  Can I prove? |

09:14:40  1        THE COURT:  A removal ever before in the capitol?

09:14:45  2        MR. BOLTON:  I don't believe there ever has been a

09:14:48  3   removal before.

09:14:49  4        THE COURT:  Okay.  You may sit down.

09:14:55  5        MR. D'ANDREA:  Your Honor, at a deposition, the

09:15:02  6   governor would have no knowledge to answer the questions that

09:15:05  7   were just listed here.

09:15:06  8        THE COURT:  I wouldn't -- the deposition of a governor

09:15:12  9   will be limited, as I've indicated, as to what he had to do with

09:15:18  10  it before he walked through the rotunda, what he saw in the

09:15:23  11  rotunda, and what he did after he saw.  That's what I would allow

09:15:33  12  the deposition to be.

09:15:35  13       MR. D'ANDREA:  Exhibit B of our motion for protective

09:15:37  14  order is an e-mail where we disclosed to opposing counsel that

09:15:40  15  the governor has no unique personal knowledge.  It was the

09:15:44  16  governor's staff, not governor, who identified the need to remove

09:15:47  17  the display.  It was the governor's staff who wrote the letter to

09:15:49  18  the preservation board.  And it was the governor's staff who had

09:15:52  19  the letter autopinned.

09:15:53  20       THE COURT:  Big deal.  You think if I was a trial

09:15:58  21  lawyer, I would go to trial with that when I could find out

09:16:02  22  exactly what happened from the witness?

09:16:05  23       MR. D'ANDREA:  Your Honor, it's not an ordinary

09:16:07  24  witness.  We can't just depose -- given those facts, there are no

09:16:10  25  extraordinary circumstances that they've shown to be able to

| 09:16:12 | 1 | depose a high-ranking official who is not involved in this |
| 09:16:16 | 2 | personally. |
| 09:16:17 | 3 | THE COURT:  Well, then, I can't rule on qualified |
| 09:16:20 | 4 | immunity and you can't appeal it to the circuit, and it's coming |
| 09:16:24 | 5 | up for trial and we'll see if the jury believes it.  But short of |
| 09:16:31 | 6 | that, I may instruct it out.  And it would sure be error if I was |
| 09:16:37 | 7 | sitting on the Fifth Circuit -- and I've turned that position |
| 09:16:40 | 8 | down some time ago.  But I would certainly question you if I was |
| 09:16:45 | 9 | on the circuit as why that judge didn't permit the one person |
| 09:16:52 | 10 | that makes this actionable to be deposed in a 30-minute |
| 09:16:57 | 11 | deposition. |
| 09:16:59 | 12 | MR. D'ANDREA:  Your Honor, this court can rule on |
| 09:17:01 | 13 | qualified immunity for the reasons we've put in our motion. |
| 09:17:03 | 14 | THE COURT:  I'm not going to. |
| 09:17:04 | 15 | MR. D'ANDREA:  The Court hasn't ruled on qualified |
| 09:17:06 | 16 | immunity yet. |
| 09:17:07 | 17 | THE COURT:  I've told you exactly the problem with |
| 09:17:09 | 18 | qualified immunity after I've read your motions. |
| 09:17:12 | 19 | MR. D'ANDREA:  Your Honor, then we would ask the Court |
| 09:17:14 | 20 | to deny our motion for qualified immunity, which it hasn't done |
| 09:17:17 | 21 | yet so that we -- you're right, so that we may appeal to the |
| 09:17:19 | 22 | Fifth Circuit.  The governor's entitled to both that denial of |
| 09:17:21 | 23 | qualified immunity and the appeal before the governor can be |
| 09:17:24 | 24 | subject to something like a deposition.  That is what -- that's |
| 09:17:27 | 25 | what the right allows the governor.  I'm not trying to hide the |

09:17:30 1  ball about that.  You're right, that is what we're seeking.

09:17:32 2           THE COURT:  Well, I know.  I'm not just been around a

09:17:38 3  few years.  I know what the law is and I know what it is, and I

09:17:40 4  can't rule on qualified immunity.  So you'll have to mandamus me,

09:17:47 5  and I doubt seriously if you will because, then, I will put the

09:17:51 6  question of the reason I have done it is that I cannot make a

09:17:56 7  determination based on evidence because the motion to dismiss and

09:18:01 8  the motion -- and the motion for judgment as a matter of law on

09:18:08 9  the pleadings does not answer the basic question of the issue of

09:18:13 10  qualified immunity.

09:18:14 11           MR. D'ANDREA:  Your Honor, it sounds like that's a

09:18:16 12  denial then.  Qualified immunity is a right to not sit for the

09:18:19 13  deposition.  And if the Court says, well, there's fact questions

09:18:22 14  and you must sit for the deposition, that sounds like a denial.

09:18:25 15           THE COURT:  Qualified immunity is not a right not to

09:18:27 16  sit in a deposition.  I get qualified immunity on law enforcement

09:18:33 17  officers, on sheriffs, on mayors frequently, but they -- that

09:18:38 18  doesn't mean they're not deposed when there's a case remaining.

09:18:45 19           MR. D'ANDREA:  Your Honor, I mean, you're right,

09:18:48 20  qualified immunity can come in steps but we have -- we moved for

09:18:51 21  qualified immunity, this court put it off, which could be read as

09:18:54 22  let's get some document discovery to clarify this case.  We've

09:18:58 23  had some document discovery.  Now, plaintiffs have immediately

09:19:00 24  come and tried to depose the governor, and the governor has never

09:19:03 25  gotten the ruling on qualified immunity from the Court.  The

09:19:06  1  governor is entitled to at least one denial or grant of qualified

09:19:08  2  immunity from which we can appeal to the Fifth Circuit before we

09:19:11  3  go to depositions and then trial.

09:19:13  4       THE COURT:  Well, then you've got a motion pending.

09:19:15  5  And I'm telling you that just on the pleadings, just on the

09:19:23  6  pleadings, give me your best argument how I can find qualified

09:19:30  7  immunity.  How can I find the governor acted unreasonably?  Just

09:19:34  8  on the pleadings.

09:19:35  9       MR. D'ANDREA:  The governor acted reasonably because

09:19:37  10 look at the letter and on its face --

09:19:39  11      THE COURT:  No, no, no.  You're asking for judgment on

09:19:41  12 the pleadings.

09:19:43  13      MR. D'ANDREA:  Yes.

09:19:44  14      THE COURT:  Okay.  Tell me where in the pleadings I can

09:19:47  15 find the issue of that the governor acted reasonably?

09:19:53  16      MR. D'ANDREA:  It's in Iqbal.  There's nothing but bare

09:19:56  17 allegations of discrimination in their complaint.  They don't

09:19:59  18 have -- they don't plead any objective facts that suggests this

09:20:03  19 is some kind of -- that the governor was out to get them.

09:20:06  20 There's no evidence that there was -- they don't plead anything

09:20:09  21 about past exhibits that were insulting that were allowed to stay

09:20:13  22 up.

09:20:14  23      THE COURT:  That's immaterial.

09:20:16  24      MR. D'ANDREA:  There's none of that in there.  It's

09:20:18  25 just sort of bare allegation that they're asking the Court to

09:20:20  1   take, and Iqbal doesn't allow that, especially when there's other

09:20:23  2   inferences that can be made.  And on that alone and the other

09:20:26  3   reason we cite is the clearly established law standard.  There's

09:20:30  4   no clearly established law here, and that alone should entitle

09:20:34  5   the governor to qualified immunity.

09:20:36  6          Putting aside whatever happens with official capacity

09:20:39  7   claims, qualified immunity here seems fairly straightforward

09:20:42  8   because the law is so murky in this situation.

09:20:46  9          THE COURT:  I was going to ask you for your best case

09:20:47  10  on why -- how a judge can determine qualified immunity without a

09:21:02  11  factual basis, even if it's an alleged factual basis in

09:21:08  12  pleadings.  Then you go through and you have your shot on summary

09:21:14  13  judgment after you have evidence.  And then, a qualified immunity

09:21:22  14  is a defense in the law itself.

09:21:23  15         And I'm just telling you, counsel -- I can't tell you

09:21:25  16  any more -- when I go through all of this, I'm looking to see

09:21:30  17  what the governor did or didn't do when he walked through the

09:21:34  18  rotunda, he looked at that, and then, what occurred for the staff

09:21:45  19  to go out and remove it when it had, what, 26 hours left,

09:21:51  20  something like that, after they had authorized it to be there.

09:21:55  21  That's what I'm looking for, and I don't think you're going to

09:21:57  22  find many cases with those factual allegations, either.

09:22:01  23         MR. D'ANDREA:  And I think that points to qualified

09:22:02  24  immunity.  But the FDIC case shows that it is not uncommon for

09:22:08  25  the governor's office to intervene after an agency has made a

09:22:11   1   decision -- a tentative decision because they think that the

09:22:14   2   agency misapplied the law.  There's nothing unusual about that.

09:22:17   3   And the FDIC case out of the Fifth Circuit shows that there's --

09:22:20   4   you can't assume malice just because there's some kind of change

09:22:23   5   of course like that.

09:22:25   6            And we've already disclosed the governor did not walk

09:22:29   7   through the rotunda and see anything.  This was initiated by

09:22:32   8   staff.  That's already in the record.  There's nothing to be

09:22:34   9   gained from deposing the governor on this.

09:22:36   10            THE COURT:  All right.  Where in the record -- where in

09:22:38   11   all these papers do I find that?

09:22:40   12            MR. D'ANDREA:  Exhibit B to our protective order is

09:22:43   13   what we have, your Honor, is where we -- Exhibit B to Greg

09:22:47   14   Abbott's motion for protective order is an e-mail on April 13th

09:22:51   15   that discloses this to opposing counsel.

09:22:54   16            THE COURT:  This is an e-mail where you tell them what

09:22:57   17   you can prove?  Is that what it is?

09:22:59   18            MR. D'ANDREA:  This is during the course of negotiation

09:23:01   19   -- right out of the bat, they asked for a deposition of Governor

09:23:05   20   Abbott in his official capacity.  We said no and we explained to

09:23:10   21   them they need to show extraordinary circumstances, and they

09:23:13   22   can't because -- and then, we explained to them that staff --

09:23:16   23   this was originated by staff, staff wrote the letter, staff

09:23:19   24   autopinned it and --

09:23:20   25            THE COURT:  So how --

09:23:22  1          MR. D'ANDREA:  And we offered a 30(b)(6) of staff.

09:23:24  2          THE COURT:  How would you prove extraordinary

09:23:31  3  circumstances when you can't get any evidence?

09:23:33  4          MR. D'ANDREA:  You can get lots of evidence.  You just

09:23:35  5  can't depose an official like that.  Our briefs are full of cases

09:23:38  6  that say you can't put an official on the stand to get this sort

09:23:41  7  of thing.  If there were otherwise, your Honor, every First

09:23:45  8  Amendment case would be nearly impossible to get qualified

09:23:47  9  immunity on without a deposition because all they would have to

09:23:49  10  do is allege malice, and then, you would be able to put someone

09:23:52  11  on the stand.  That's not how it works.

09:23:54  12          Those cases show you need objective evidence of malice,

09:23:56  13  and it's not that hard to get.  There's e-mails.  It could be

09:23:59  14  based on past practices.  There's the letter itself.  There's all

09:24:04  15  sorts of ways to do that through objective evidence, and that's

09:24:06  16  what the law requires.  It's extraordinarily rare to put someone

09:24:10  17  like the governor on the stand and ask what his personal opinions

09:24:13  18  are of stuff.  That's not how you're supposed to get at that.

09:24:17  19          THE COURT:  All right.  So you want me to do e-mail

09:24:33  20  attached to your motion B -- Exhibit B?

09:24:36  21          MR. D'ANDREA:  Yes, your Honor.

09:24:37  22          THE COURT:  And that's sufficient to answer the

09:24:41  23  questions that I raised today.  Is that right?

09:24:44  24          MR. D'ANDREA:  Your Honor, if --

09:24:45  25          THE COURT:  No, no, no.  That's your representation to

09:24:48  1  me.

09:24:48  2        MR. D'ANDREA:  I think it is sufficient to shift the

09:24:50  3  burden to counsel to show the extraordinary circumstances the law

09:24:54  4  requires before you can put the governor on the stand.  And

09:24:57  5  counsel has not pointed to anything that merits a deposition of a

09:25:01  6  high-ranking official, in light of what is in Exhibit B.

09:25:05  7        THE COURT:  You don't think that it's extraordinary for

09:25:11  8  a person to apply with the representative to put this thing up,

09:25:19  9  it goes through the committee, they give permission to put it up,

09:25:23  10  they put it up, it stays day one, it stays day two, and at the

09:25:30  11  end of day three, which is the next to last day, it would have

09:25:32  12  been removed the next day, that it's ordered removed?  You don't

09:25:38  13  think that's unusual circumstance?

09:25:40  14        MR. D'ANDREA:  The unusual circumstances have to do

09:25:43  15  with the governor, himself.  I mean, the governor, himself,

09:25:45  16  never walked through the rotunda, like most people during the off

09:25:48  17  session.  It's fairly dead.  It's in the middle of winter

09:25:52  18  holidays.  So no.  The exceptional circumstances have to --

09:25:56  19  directly at the governor:  What's exceptional about his

09:25:58  20  involvement in this merits pulling him away from his work and

09:26:01  21  having him testify on the stand?  And they have shown nothing

09:26:04  22  extraordinary in that, and we've actually rebutted it by

09:26:07  23  communications with counsel.

09:26:11  24        THE COURT:  So that the governor, would it be his

09:26:14  25  conduct if his aide told him what it was and how terrible it was

| | | |
|---|---|---|
| 09:26:19 | 1 | and he instructed -- all right.  We're just going around in a |
| 09:26:24 | 2 | circle.  All right. |
| 09:26:30 | 3 | MR. D'ANDREA:  Your Honor, we believe it can be done. |
| 09:26:33 | 4 | THE COURT:  I know how it can be done.  I'm going to |
| 09:26:35 | 5 | let them take Sneed's deposition.  And Sneed will be able to |
| 09:26:40 | 6 | testify what occurred in the committee and why it was removed, |
| 09:26:48 | 7 | and then, I can base a determination on qualified immunity.  The |
| 09:26:53 | 8 | deposition of Sneed will not last but two hours, and that's the |
| 09:26:59 | 9 | only subject that is to be in.  You can ask, if it's germane, |
| 09:27:08 | 10 | anything unusual that happened getting the approval.  You can ask |
| 09:27:14 | 11 | what occurred and what happened, the information obtained from |
| 09:27:21 | 12 | anybody, and the reason that the committee authorized the removal |
| 09:27:28 | 13 | and the time it took.  All right.  You can do that. |
| 09:27:33 | 14 | You ought to be able to do that in two hours, don't you |
| 09:27:35 | 15 | think, counsel? |
| 09:27:37 | 16 | MR. BOLTON:  I can do that, your Honor. |
| 09:27:37 | 17 | THE COURT:  All right.  So I'll overrule that.  And |
| 09:27:39 | 18 | I'll reserve on the governor until I see some real meat, and that |
| 09:27:47 | 19 | is what this case is about, if there's any case at all. |
| 09:27:53 | 20 | The scheduling order deadlines, what do you need those |
| 09:27:59 | 21 | extended for?  You've got a motion. |
| 09:28:08 | 22 | MR. BOLTON:  Pardon me, your Honor? |
| 09:28:09 | 23 | THE COURT:  I said that you have an opposed motion to |
| 09:28:11 | 24 | extend scheduling order deadlines. |
| 09:28:14 | 25 | MR. BOLTON:  Yes. |

| | | |
|---|---|---|
| 09:28:14 | 1 | THE COURT:  So tell me what else you want other than |
| 09:28:23 | 2 | what we've talked about. |
| 09:28:26 | 3 | MR. BOLTON:  The only other thing, your Honor, is that |
| 09:28:28 | 4 | we do have a pending date for the 30(b)(6) deposition at the |
| 09:28:34 | 5 | governor's office for July 18th, and we would like to proceed |
| 09:28:38 | 6 | with that, as well. |
| 09:28:40 | 7 | THE COURT:  I'm not interfering with that.  Doesn't |
| 09:28:44 | 8 | have anything to do with any motion I've got here.  Y'all have an |
| 09:28:50 | 9 | agreement for that, don't you? |
| 09:28:52 | 10 | MR. BOLTON:  We do have an agreement. |
| 09:28:54 | 11 | THE COURT:  Yeah, well, the scheduling order, except |
| 09:29:00 | 12 | for dispositive motions, docket call and trial is your motion. |
| 09:29:06 | 13 | Y'all can agree to anything.  If you can't agree, then you come |
| 09:29:10 | 14 | to me.  But y'all have got that agreed to. |
| 09:29:12 | 15 | What else? |
| 09:29:14 | 16 | MR. BOLTON:  Well, at the time we filed the motion, we |
| 09:29:16 | 17 | did not have that. |
| 09:29:16 | 18 | THE COURT:  Okay.  All right.  Well, I'll dismiss that |
| 09:29:19 | 19 | as moot now. |
| 09:29:21 | 20 | MR. BOLTON:  Okay. |
| 09:29:21 | 21 | THE COURT:  Anything else other than this Sneed |
| 09:29:23 | 22 | deposition? |
| 09:29:24 | 23 | MR. BOLTON:  No, your Honor. |
| 09:29:25 | 24 | THE COURT:  All right.  Counsel, do you want any more |
| 09:29:27 | 25 | limitations on Mr. Sneed's deposition? |

09:29:30    1            MR. D'ANDREA:  No, your Honor.  Thank you.

09:29:31    2            THE COURT:  You've got that down.  Just the

09:29:34    3   communication.  What happened, I think, to get the approval and

09:29:44    4   what happened to do the approval.  You've got an assistant

09:29:49    5   standing up there.

09:29:50    6            MR. D'ANDREA:  Thank you, your Honor.

09:30:01    7            Your Honor, my co-counsel asked that if we could, could

09:30:05    8   it be limited to what happened in 2015, when the exhibit was

09:30:08    9   removed, and not to -- I assume you're discussing later meetings,

09:30:13   10   which is after the lawsuit was pending?

09:30:14   11            THE COURT:  I think clearly if you read the transcript,

09:30:16   12   what I've said.

09:30:17   13            MR. D'ANDREA:  Thank you.

09:30:18   14            THE COURT:  Just that area as to how it was put up

09:30:22   15   appropriately with the committee's approval and they put all of

09:30:29   16   the qualifications.  I don't think that's an issue one way or the

09:30:32   17   other, but that could be part of the deposition if he wants to

09:30:34   18   waste a couple of hours.  The other is what happened, how he was

09:30:41   19   notified, what he did, and how it was removed.

09:30:45   20            MR. D'ANDREA:  Thank you, your Honor.

09:30:46   21            THE COURT:  All right.  Now, so I'll keep the opposed

09:30:56   22   motion for protective order until -- and I want that deposition

09:31:02   23   pretty quick.  Of course, we don't know Mr. Sneed's availability.

09:31:09   24   Is he still employed?

09:31:13   25            MR. D'ANDREA:  No, your Honor.

09:31:15  1           MS. MACKIN:  I can speak to this.

09:31:16  2           THE COURT:  Yes, ma'am.  You can do it from there, if

09:31:18  3  you want.

09:31:18  4           MS. MACKIN:  Thank you, your Honor.

09:31:20  5           It's my understanding that Mr. Sneed's accepted a

09:31:23  6  position in Washington D.C.  That's where he resides now.

09:31:29  7           THE COURT:  Okay.  Well, if he can't come down and

09:31:38  8  accommodate you, y'all can go up there where they issue subpoenas

09:31:48  9  there just like we do here.  But I'm sure Mr. Sneed will be

09:31:51  10 cooperative.  May want to get out of Washington right now.

09:31:57  11          Okay.  Let's see, this is June.  I want that done

09:32:02  12 before the end of June.  So I will overrule -- limitedly overrule

09:32:15  13 Sneed's motion, grant you the extension of time.  Y'all have any

09:32:24  14 response to that?

09:32:25  15          MS. MACKIN:  We would like to ask that the extension be

09:32:28  16 expressly limited to the deposition the Court has ordered and not

09:32:32  17 for any other purpose.

09:32:37  18          MR. BOLTON:  In terms of the --

09:32:40  19          THE COURT:  Do you have any other discovery other than

09:32:43  20 Sneed and your hopefully Abbott other than the one that you've

09:32:51  21 got scheduled?

09:32:52  22          MR. BOLTON:  No, your Honor.

09:32:53  23          THE COURT:  All right.  Then I'll limit it and if you

09:32:56  24 need something, well, come back.  Because I don't know what the

09:32:59  25 delay has been on delaying that deposition because it might

09:33:04  1   produce any discovery.  But, believe me, counsel, this case is

09:33:12  2   going to be limited to what occurred in a 24-hour period.

09:33:16  3              MR. BOLTON:  With regard to the 30(b)(6)?

09:33:18  4              THE COURT:  No, no, no.

09:33:19  5              MR. BOLTON:  Okay.

09:33:20  6              THE COURT:  30(b)(6) is y'all's.  Just follow the

09:33:23  7   federal rules.  I'm talking about if you go to trial, that's what

09:33:27  8   it's going to be limited to:  How it got there and how it got

09:33:29  9   off.  So a lot of the discovery that you might want to take is

09:33:35  10  not going to be material.  Plus the fact you've had plenty of

09:33:38  11  time to do it.  Because September is going to be here before you

09:33:45  12  know.

09:34:11  13             Okay.  So, for the record, I'm withholding any judgment

09:34:15  14  on the motion for protective order.  I'm withholding the motion

09:34:19  15  for judgment on behalf of Governor Abbott on the pleadings.  And

09:34:25  16  I'm granting all the others, Mr. Sneed's motion to quash, limited

09:34:32  17  to a -- if y'all are going to go off to Washington, can't get

09:34:39  18  anything done -- limited to three hours and limited to the

09:34:50  19  committee's participation from the application to the removal.

09:35:06  20  And all other motions will be taken care of.

09:35:09  21             And as soon as that deposition is taken, I'd like the

09:35:16  22  lawyers just to send me a letter, with a copy to each other, with

09:35:19  23  your positions so that I could then make a determination on these

09:35:23  24  pending motions.

09:35:25  25             All right.  Counsel, thank you for coming in.  But I

09:35:35   1   don't thank you for making me and my staff review this pile of

09:35:38   2   materials without what you can tell me in the courtroom.  But

09:35:46   3   you're not the first.  We're in recess until 10:00.

           4                    (End of proceedings.)

           5

           6

           7

           8

           9

          10

          11

          12

          13

          14

          15

          16

          17

          18

          19

          20

          21

          22

          23

          24

          25

1                        * * * * * *

2

3

4    UNITED STATES DISTRICT COURT )

5    WESTERN DISTRICT OF TEXAS    )

6

7        I, LILY I. REZNIK, Certified Realtime Reporter, Registered

8    Merit Reporter, in my capacity as Official Court Reporter of the

9    United States District Court, Western District of Texas, do

10   certify that the foregoing is a correct transcript from the

11   record of proceedings in the above-entitled matter.

12       I certify that the transcript fees and format comply with

13   those prescribed by the Court and Judicial Conference of the

14   United States.

15       WITNESS MY OFFICIAL HAND this the 27th day of June, 2017.

16

17

18                              /s/Lily I. Reznik
                                LILY I. REZNIK, CRR, RMR
19                              Official Court Reporter
                                United States District Court
20                              Austin Division
                                501 W. 5th Street, Suite 4153
21                              Austin, Texas 78701
                                (512)391-8792
22                              Certification No. 4481
                                Expires:  12-31-18
23

24

25