IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION



FILED

17 OCT 13 PM 2:58

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

FREEDOM FROM RELIGION
FOUNDATION, INC.,
           **Plaintiff,**

-vs-

GOVERNOR GREG ABBOTT, in his
official and individual capacities, and ROD
WELSH, Executive Director of the Texas
State Preservation Board, in his official
capacity,
           **Defendants.**

CAUSE NO.:
A-16-CA-00233-SS

## O R D E R

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause,

and specifically, Defendant Governor Greg Abbott (Governor Abbott)'s Motion for Judgment on

the Pleadings [#49], Plaintiff Freedom From Religion Foundation (FFRF)'s Response [#58] in

opposition, and Governor Abbott's Reply [#59] in support; Defendants Governor Abbott and

Rod Welsh (collectively, Defendants)'s Second Motion for Summary Judgment [#66], FFRF's

Response [#71] in opposition, and Defendants' Reply [#73] in support; FFRF's Motion for

Partial Summary Judgment [#65], Defendants' Response [#69] in opposition, and FFRF's Reply

[#72] in support; as well as Governor Abbott's Motion for Protective Order [#41], and FFRF's

Response [#51] in opposition. Having reviewed the documents, the arguments of counsel, the

relevant law, and the case file as a whole, the Court now enters the following opinion and orders.

## Background

This is an action brought pursuant to 42 U.S.C. § 1983 by FFRF against Governor Abbott and Executive Director of the Texas State Preservation Board (Preservation Board) Rod Welsh.[1] The Preservation Board allows private citizens to apply to display exhibits in one of three indoor spaces within the Texas Capitol building: the Ground Floor Rotunda and the North and South Central Galleries. Defs.' Mot. Summ. J. [#31-1] Ex. 2 (Application for Exhibits in Capitol) at 32–33.[2] Each application must be accompanied by a recommendation from the Governor, the Lieutenant Governor, or a member of the Texas Senate or the House of Representatives. 13 TEX. ADMIN. CODE § 111.13(a)(4). In addition, exhibits must have a "public purpose" or, in other words, promote "the public health, education, safety, morals, general welfare, security, and prosperity of all of the inhabitants or residents within the state, the sovereign powers of which are exercised to promote such public purpose or public business." *Id.* § 111.13(a)(3). The Preservation Board retains final approval over the exhibit applications. TEX. GOV'T CODE §§ 443.001, 443.003(c), 443.007(a).

FFRF is a non-profit membership organization that advocates for the separation of church and state and educates on matters of nontheism. First Am. Compl. [#15] ¶ 12. On February 4, 2015, FFRF contacted the Preservation Board's Capitol Events and Exhibits Coordinator to inquire about the requirements of placing an exhibit inside the Capitol building. Defs.' Mot. Summ. J. [#31-1] Ex. 4 (February Emails between FFRF and Preservation Board). After

---

[1] FFRF initially brought suit against Governor Abbott and then Executive Director John Sneed (Executive Director Sneed) in their individual and official capacities. First Am. Compl. [#15] ¶ 5. The Court dismissed FFRF's individual capacity claims as to Executive Director Sneed based on qualified immunity. Order of June 21, 2016 [#28] at 1. Subsequently, Rod Welsh replaced Sneed as Executive Director of the Preservation Board. Def.'s Mot. J. Pleadings [#49] at 1 n.1. Thus, FFRF's remaining claims are against Governor Abbott in his individual and official capacities and against Executive Director Rod Welsh in his official capacity.

[2] For ease of reference, the Court's opinion will cite to docket filings according to their CM/ECF page numbers.

learning the exhibit application required a sponsor, FFRF wrote a letter to all Texas Legislators inquiring if any legislator wanted to sponsor "a temporary display in the Ground Floor Rotunda that celebrates freethought and the United States as the first among nations to formally embrace the separation of state and church." *Id*. Ex. 5 (FFRF's May Letter) at 41. Representatives Elliot Naishtat and Donna Howard, based on the description of the exhibit in FFRF's May Letter, offered to sponsor the exhibit. *Id*. Ex. 6 (May 2015 Email from Rep. Naishtat to FFRF); *id*. [#31-2] Ex. 9 (June 2015 Email from Rep. Howard to FFRF).

On June 29, 2015, FFRF emailed its exhibit application (Original Application) to Rep. Naishtat's office for his signature as a sponsor. *Id*. [#31-1] Ex. 8 (June 2015 Email from FFRF to Rep. Naishtat); *id*. [#31-2] Ex. 10 (Original Application). The Original Application described FFRF's exhibit as "depicting life-size figures celebrating the December 15th nativity of the Bill of Rights," accompanied by a 4'x7' banner that read: "At this season of the Winter Solstice, LET REASON PREVAIL. There are no gods, no devils, no angels, no heaven or hell. There is only our natural world. Religion is but myth & superstition that hardens hearts & enslaves minds." Original Application at 9. After receiving FFRF's Original Application, Rep. Naishtat's office decided to withdraw its support. *Id*. [#31-2] Ex. 11 (July 2015 Emails between FFRF and Rep. Naishtat) ("As I said, I spoke too soon, Rep. Naishtat is declining to be a sponsor.").

In light of this change, FFRF reached out to Rep. Howard and sent her the Original Application to sign. *Id*. [#31-2] Ex. 12 (July 7, 2015 Emails between FFRF and Rep. Howard). Rep. Howard's office reviewed the Original Application and wrote to FFRF, explaining Rep. Howard felt "uncomfortable with the language currently presented on the banner." *Id*. [#31-2] Ex. 13 (July 10, 2015 Email from Rep. Howard to FFRF). FFRF then suggested changing the language on the banner to read: "Happy Winter Solstice; At this Season of the Winter Solstice,

we honor reason and the Bill of Rights (adopted December 15, 1791); Keep State & Church Separate; (smaller text) On behalf of Texas members of the Freedom From Religion Foundation." *Id.* [#31-2] Ex. 14 (July 15, 2015 Email from FFRF to Rep. Howard). Rep. Howard approved of this change and FFRF submitted its revised application, with Rep. Howard's signature, to the Preservation Board on July 20, 2015 (Revised Application). *Id.* [#31-2] Ex. 15 (July 2015 Emails between FFRF and Preservation Board); *id.* [#31-2] Ex. 16 (Revised Application).

The Revised Application requested the exhibit be displayed from December 18, 2015 at 9 a.m. to December 23, 2015 at 5 p.m. Revised Application at 22. It also included "an artist's mockup and diagram of what the Bill of Rights nativity might look like," which depicted Benjamin Franklin, Thomas Jefferson, George Washington, and the Statue of Liberty gathered around a manger containing the Bill of Rights. *Id.* at 24. Finally, at the request of the Capitol Events and Exhibits Coordinator, the following statement was added to the banner: "Private display, not endorsed by the state." *Id.* [#31-2] Ex. 16 (Preservation Board Approval Email); *id.* Ex. 17 (Approved Banner).

The FFRF exhibit was placed on display in the Capitol's Grand Floor Rotunda on December 18. *Id.* [#31-2] Ex. 23 (Dec. 18 Email from Preservation Board to FFRF). That same day, John Sneed, then the Preservation Board's Executive Director, received a phone call from the Office of the Governor expressing concerns about the FFRF exhibit and informing Sneed he could expect further correspondence on the matter. Pl.'s Second Mot. Summ. J. [#65-1] Ex. 3 (Sneed Dep.) at 69–70. Several days later, on December 22, 2015, Governor Abbott, the Chairman of the Preservation Board, sent a letter to Executive Director Sneed "urg[ing him] to remove [FFRF's] display from the Capitol immediately." *Id.* [#65-1] Ex. 5 (Governor Abbott

Letter) at 181.[3] In his letter, Governor Abbott explained FFRF's exhibit—which celebrates the Bill of Rights—violated a Texas Administrative Code provision authorizing "the approval only of those Capitol exhibits that promote a 'public purpose.'" *Id.* (citing 11 TEX. ADMIN. CODE § 111.13(c)(2)). Governor Abbott then tweeted from his personal Twitter account that "Mocking the Capitol Nativity Scene is Offensive. I Demand Removal of Satirical 'Nativity Scene' from the Capitol #tcot." *Id.* [#65-1] Ex. 7 (Governor Abbott Tweet). Unsurprisingly, Executive Director Sneed "took the action that was requested and recommended" by Governor Abbott and removed FFRF's exhibit from the Ground Floor Rotunda on December 22, one day before the exhibit was scheduled to be taken down. Sneed Dep. at 10.[4]

On July 21, 2016, FFRF submitted another application (2016 Application) to the Preservation Board, which was identical to the Revised Application. Defs.' Mot. Summ. J. [#31-2] Ex. 25 (2016 Application). On August 18, 2016, Executive Director Sneed indicated "any application to display the same exhibit which was removed [in 2015] will be denied for failure to satisfy the public purpose requirement." *Id.* [#31-2] Ex. 27 (August Letter from Sneed to Rep. Howard) at 2. FFRF then filed this action claiming Defendants violated FFRF's free speech, equal protection, and due process rights, as well as its rights under the Establishment Clause. *See* First Am. Compl. [#15].

In its December 20, 2016 order addressing the parties' cross motions for summary judgment, the Court dismissed FFRF's equal protection and due process claims, as well as its facial First Amendment challenge, but found disputed issues of material fact precluded summary

---

[3] It is uncontroverted that Governor Abbott was consulted regarding the contents of the letter issued in his name and approved the issuance of the letter sent to then Executive Director Sneed. Pl.'s Second Mot. Summ. J. [#65-1] Ex. 3 (Clay Dep.) at 31; Def.'s Letter Br. [#64-1] Ex. A (Clay Decl.) ¶¶ 5–6.

[4] *See also* Sneed Dep. at 114 ("What I did was follow the request of my superior.").

judgment on FFRF's as-applied First Amendment claims. Order of Dec. 20, 2016 [#38]. Governor Abbott subsequently filed motions for a protective order and for judgment on the pleadings, and both FFRF and the Defendants have filed cross motions for summary judgment. These pending motions are now ripe for review.

**Analysis**

## I.      Summary Judgment Standard

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence establishing the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson*

*Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*

"Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

## II.   Application

The Court first disposes of Defendants' renewed argument FFRF contractually waived its constitutional rights when it agreed to abide by the Preservation Board's Policy for Exhibitions. Because the Court finds FFRF has not waived its constitutional claims, the Court next assesses whether summary judgment is appropriate as to FFRF's claims under the Freedom of Speech Clause and the Establishment Clause. The Court then proceeds to consider Governor Abbott's claim he is entitled to qualified immunity from the claims against him in his individual capacity. Finally, the Court addresses Governor Abbott's argument he is entitled to a protective order preventing his deposition because he is a high-ranking government official.

## A. Waiver

As a preliminary matter, Defendants have renewed their argument FFRF waived its right to assert constitutional claims when it signed the exhibit application and thereby agreed to the Preservation Board's Policy for Exhibitions (the Policy) in the Capitol. Defs.' Second Mot. Summ. J. [#66] at 15–17. The Policy, in relevant part, states:

> Exhibit holder agrees that the [Preservation Board], the State of Texas, all of its officers, employees and agents are now and hereafter relieved of any and all responsibility and liability for any and all injury, loss or damage that the exhibit holder, its agents and invitees or their property may incur as a result of or during the exhibit holder's use of the Capitol or the Capitol Extension, provided said injury, loss or damage is not the result of the negligence of a [Preservation Board] employee. Therefore, exhibit holder on its own behalf and on behalf of its agents and invitees hereby agrees to hold harmless, indemnify and defend the [Preservation Board], the State of Texas, all of its officers, employees and agents from and against any and all costs, damages, fees, expenses, or liability of any type or nature related to the same.

Defs.' Mot. Summ. J. [#31-1] Ex. 3 (Policy) at 36.

There is a "strong presumption against waiver of constitutional rights." *Gonzalez v. Hidalgo Cty., Tex.*, 489 F.2d 1043, 1046 (5th Cir. 1973). Constitutional rights may be waived contractually if done so "voluntarily, knowingly, and intelligently," i.e., with full awareness of the legal consequences. *See Porter v. Ascension Parish Sch. Bd.*, 393 F.3d 608, 624 (5th Cir. 2004); *see also Brookhart v. Janis*, 384 U.S. 1, 4 (1966) ("There is a presumption against the waiver of constitutional rights, . . . and for a waiver to be effective it must be clearly established that there was 'an intentional relinquishment or abandonment of a known right or privilege.'") (citation omitted); *see also Sambo's Rests., Inc. v. City of Ann Arbor*, 663 F.2d 686 (6th Cir. 1981) ("In the First Amendment context the evidence must be 'clear and compelling' that such rights were waived." (citing *Curtis Publ'g Co. v. Butts*, 388 U.S. 130, 145 (1967)).

The Court remains unconvinced that the Policy meets this high standard. *See* Order of Dec. 20, 2016 [#38] at 7. The language of the Policy does not address constitutional claims. Nor did the parties negotiate or discuss the terms of the Policy prior to execution—the exhibit agreement is a stock form. Moreover, as the Court observed in its previous order:

> The Policy explicitly excludes from FFRF's indemnity "injury, loss, or damage [that] is not a result of the negligence of a [Preservation Board] employee." In light of this negligence exception, to argue injury resulting from the Preservation Board's *constitutional* violations is *included* in the indemnity clause is nonsensical.

*Id.* [#38] at 7. Defendants suggest FFRF has necessarily effected a voluntary, intelligent, and knowing waiver of its constitutional rights because it had a staff attorney execute the exhibit agreement on behalf of FFRF. Defs.' Second Mot. Summ. J. [#66] at 17. But review by a staff attorney does not transform the language of the policy. Because neither the language of the Policy nor the behavior of the parties indicates FFRF intentionally relinquished its constitutional rights, the Court declines to find FFRF waived those rights when it submitted its exhibit application.

**Freedom of Speech Claim**

### 1. Speech Restrictions in a Limited Public Forum Must Be Reasonable and Viewpoint Neutral.

In a limited public forum,[5] the government may restrict speech as long as the restrictions are (1) "reasonable in light of the purpose served by the forum" and (2) do "not discriminate against speech on the basis of viewpoint." *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106–07 (2001) (citation omitted); *see also Pleasant Grove City, Utah, v. Summum*, 555 U.S. 460, 470 (2009); *Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d, 747, 758 (5th Cir. 2010). This

---

[5] *See* Order of Dec. 20, 2016 [#38] at 13–15 (holding Capitol Exhibition Area constitutes a limited public forum).

Court's previous summary judgment order found reasonable grounds existed for Defendants' exclusion of FFRF's exhibit. Order of Dec. 20, 2016 [#38] at 16. However, the Court also found a genuine issue of material fact existed as to whether Defendants' decision to remove FFRF's exhibit constitutes viewpoint discrimination. *Id.* at 16–18. Both parties have now filed renewed motions for summary judgment asking the Court to decide the issue of viewpoint discrimination as a matter of law.

### 1. Defendants' Removal of FFRF's Exhibit Constitutes Viewpoint Discrimination as a Matter of Law.

Government restrictions on speech in a limited forum must be viewpoint neutral. *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829–31 (1995). Viewpoint discrimination—*i.e.*, "discrimination because of the speaker's specific motivating ideology, opinion, or perspective"—is presumed impermissible when directed against speech otherwise within a forum's limitations. *Id.*; *see also Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2230 (2015). The Supreme Court has emphasized First Amendment jurisprudence "use[s] the term 'viewpoint discrimination' in a broad sense." *See Matal v. Tam*, 137 S. Ct. 1744, 1763 (2017) ("We have said time and time again that the public expression of ideas may not be prohibited merely because the ideas are themselves offensive to some of their hearers." (internal quotation marks omitted)).[6] Moreover, "[t]he existence of reasonable grounds for limiting access to a nonpublic forum . . . will not save a regulation that is in reality a facade for viewpoint-based discrimination." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 811 (1985); *see also id.* at 811–12 ("While we accept the validity and reasonableness of the justifications offered by [the government] for excluding [certain groups from the nonpublic forum], those

---

[6] *Matal* was decided in June 2017, roughly six months after the Court issued its first summary judgment order in this case. *Compare Matal*, 137 S. Ct. 1744 (2017) (decision issued June 19, 2017), *with* Order of Dec. 20, 2016 [#38].

justifications cannot save an exclusion that is in fact based on the desire to suppress a particular point of view.").

According to Defendants, the record demonstrates FFRF's exhibit was only removed because its "mocking" and "satirical" tone did not serve a public purpose. Defs.' Second Mot. Summ. J. [#66] at 8. For example, in his August 18, 2016 letter to FFRF, then Executive Director Sneed stated "an exhibit that celebrates the Bill of Rights and the Winter Solstice without mocking the sincerely held religious beliefs of other Texans would be welcome in the exhibition areas of the Capitol . . . [and] approved." August Letter from Sneed to Rep. Howard at 57. Similarly, in its 30(b)(6) deposition, the Office of the Governor explained "a display or exhibit which mocks any particular viewpoint is contrary to the general welfare because the general welfare is served by a diverse set of viewpoints." Clay Dep. at 32. The gist of Defendants' argument is that they removed the exhibit because of its offensive tone, rather than on the basis of its nontheistic viewpoint, and that while the latter constitutes viewpoint discrimination, the former does not. Defs.' Second Mot. Summ. J. [#66] at 7. The Court finds it is unnecessary to decide whether Defendants removed the exhibit for its satiric tone or for its nontheistic point of view, because under the Supreme Court's recent decision in *Matal v. Tam*, either motive constitutes impermissible viewpoint discrimination.

In *Matal*, the Supreme Court held a prohibition on registration of trademarks offensive to any group, institution, or belief constituted viewpoint discrimination as a matter of law. *See Matal*, 137 S. Ct. at 1753–54, 1763–1764 (invalidating Lanham Act's disparagement clause). *Matal* takes significant pains to emphasize "the public expression of ideas may not be prohibited merely because the ideas are themselves offensive to some of their hearers." *Id.* at 1763 (internal quotation marks omitted). In the Court's view, denying registration to offensive marks

constituted viewpoint discrimination because "[g]iving offense is a viewpoint." *Id.* Here, Defendants have justified removal of FFRF's exhibit by arguing the exhibit's satirical tone rendered it offensive to some portion of the population. That is viewpoint discrimination.

Defendants contend removal of the exhibit for its satirical tone cannot constitute viewpoint discrimination because the exhibit's tone ostensibly violated the Preservation Board's public purpose requirement. Defs.' Second Mot. Summ. J. [#66] at 8. To the contrary, however, reasonable grounds for restricting access to a limited public forum do not preclude finding a particular decision to limit access to the forum constitutes viewpoint discrimination. *Cf. Cornelius*, 473 U.S. at 811 ("The existence of reasonable grounds for limiting access to a nonpublic forum . . . will not save a regulation that is in reality a façade for viewpoint-based discrimination."); *see also Rosenberger*, 515 U.S. 819, 829–31 (1995) (holding viewpoint restrictions in limited public forums impermissible). The public purpose requirement cannot insulate conduct otherwise constituting viewpoint discrimination from constitutional scrutiny.

Defendants' assertion that "*Matal* in no way suggested that the standard it applied to the Lanham Act's disparagement ban was the same as the standard that applies to restrictions on limited public fora" is similarly unconvincing. Defs.' Resp. Pl.'s Second Mot. Summ. J. [#69] at 7.[7] *Matal* drew an express parallel between the government's ban on registration of disparaging trademarks and the government's ability to control speech in limited public fora, before emphasizing "even in such cases [where government has created a limited public forum for private speech], what we have termed viewpoint discrimination is forbidden." 137 S. Ct. at 1763;

---

[7] In fact, Defendants appear to suggest *Matal*'s treatment of viewpoint discrimination is inapposite because trademarks are an area of special First Amendment scrutiny. *See* Defs.' Resp. Pl.'s Second Mot. Summ. J. [#69] at 7. In reality, the opposite is true: *Matal* struck down the disparagement clause on the basis of viewpoint discrimination *in spite of* the fact the case involved trademarks. *See Matal*, 137 S. Ct. at 1764–65 ("[T]he disparagement clause cannot withstand even *Central Hudson* review . . . . If affixing the commercial label permits the suppression of any speech that may lead to political or social 'volatility,' free speech would be endangered.").

*see also id.* at 1768 (Kennedy, J., concurring) ("It is telling that the Court's precedents have recognized just one narrow situation in which viewpoint discrimination is permissible: where the government itself is speaking or recruiting others to speak on its behalf."); *Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*, 135 S. Ct. 2239, 2256 (2015) (Alito, J., dissenting) ("[W]hat Texas did here was to reject one of the messages that members of a private group wanted to post on some of these little billboards because the State thought that many of its citizens would find the message offensive. That is blatant viewpoint discrimination.").[8]

In conclusion, because the ostensibly mocking tone of the FFRF exhibit is Defendants' sole stated reason for removing the exhibit from the Ground Floor Rotunda, the Court finds Defendants have engaged in viewpoint discrimination as a matter of law. The Court therefore GRANTS Plaintiff's Motion for Partial Summary Judgment and DENIES Defendants' Second Motion for Summary Judgment with respect to FFRF's freedom of speech claim.

### B. Establishment Clause Claim

Defendants have renewed their argument FFRF's Establishment Clause claim fails as a matter of law. In its previous order denying summary judgment on this claim, the Court held "a genuine issue of material fact exists regarding whether Defendants engaged in viewpoint discrimination and excluded FFRF's exhibit with the purpose of silencing anti-religious speech." Order of Dec. 20, 2016 [#38] at 20. Defendants again insist there is no genuine issue of material fact with respect to whether Defendant's purpose in excluding the exhibit was secular or instead for the purpose of silencing anti-religious speech. However, Defendants have pointed to no

---

[8] Defendants also argue, somewhat inexplicably, that *Matal* is distinguishable because "[u]nlike the 'disparagement' ban at issue in *Matal*, the public purpose requirement here is expressly content-based." Defs.' Resp. Pl.'s Second Mot. Summ. J. [#69] at 7. This Court has already dismissed FFRF's facial challenge to the public purpose requirement, Order of Dec. 20, 2016 [#38] at 21–23, and FFRF's remaining freedom of speech claim is an as-applied challenge arguing Defendants have used an otherwise valid regulation as a "façade for viewpoint based discrimination." *Cornelius*, 473 U.S. at 811. Consequently, it is irrelevant whether the public purpose requirement is content-based or not.

change in the evidentiary status quo which would alter the Court's prior conclusion. Therefore, for the reasons stated in the Court's previous order, the Court DENIES Defendants' Motion for Summary Judgment with respect to FFRF's Establishment Clause claim.

### C. Governor Abbott's Claim of Qualified Immunity

There are two steps in assessing whether an official should be granted qualified immunity. First, the Court must decide whether the challenged conduct, viewed in the light most favorable to the plaintiff, constitutes a violation of a federal right. *See Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (en banc); *Heaney v. Roberts*, 846 F.3d 795, 801 (5th Cir. 2017). Second, the Court must assess whether the right at issue was clearly established at the time of the defendant's alleged misconduct. *Heaney*, 846 F.3d at 801; *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In order for a right to be "clearly established" for purposes of qualified immunity, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Kinney*, 367 F.3d at 349–50 (internal quotation marks omitted). Courts should "not require a case directly on point," so long as existing precedent "place[s] the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011); *see also Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (emphasizing circuits should not define "clearly established law" in a manner requiring qualified immunity unless facts of past cases were materially similar to the conduct being challenged). Once a defendant pleads qualified immunity, the burden shifts to the plaintiff to negate the defense. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

The Court will first assess whether Governor Abbott should be granted qualified immunity on FFRF's freedom of speech claim. It will then turn to Governor Abbott's assertion of qualified immunity on FFRF's Establishment Clause claim.

## 1. Freedom of Speech Claim

Though the Court has determined Defendants violated FFRF's rights under the Freedom of Speech Clause, the Court's conclusion Defendants engaged in viewpoint discrimination relied in part upon the Supreme Court's recent decision in *Matal v. Tam.* 137 S. Ct. 1744 (2017). *Matal* was decided in June 2017, subsequent to the events in question here. However, in determining whether Governor Abbott is entitled to qualified immunity, the Court is restricted to considering law clearly established *at the time of the alleged wrong. See Cutler v. Stephen F. Austin State Univ.*, 767 F.3d 462, 471 (5th Cir. 2014) (emphasizing the official must have "fair warning" the challenged conduct is prohibited by existing precedent). Therefore, the Court's qualified immunity analysis below must assess Governor Abbott's conduct in light of First Amendment precedent as it existed in December 2015 and without taking *Matal* into account.

### a. The Facts Alleged by FFRF Make Out a Violation of a Constitutional Right.

First, the Court must decide whether the challenged conduct, viewed in the light most favorable to the plaintiff, constitutes a violation of a federal right. *See Heaney*, 846 F.3d at 801; *Kinney*, 367 F.3d at 350. FFRF alleges Governor Abbott engaged in unconstitutional viewpoint discrimination in a limited public forum by using the "public purpose" requirement as a pretext for removing FFRF's exhibit from the Grand Floor Rotunda.[14] *See* Pl.'s Resp. Defs.' Second Mot. Summ. J. [#71] at 2. In turn, Defendants argue the removal of FFRF's exhibit was reasonable and did not constitute viewpoint discrimination because "FFRF intended its exhibit to

---

[14] In its previous summary judgment order, the Court found FFRF's exhibit constituted private speech and the Grand Floor Rotunda constitutes a limited public forum. Order of Dec. 20, 2016 [#38] at 8–15. The parties' current summary judgment motions do not contest these determinations, and the Court does not reexamine them here.

mock, belittle, and demean those of different beliefs," thereby violating the public purpose requirement. Defs.' Mot. Summ. J. [#31] at 14; *see also* Defs.' Second Mot. Summ J. [#66] at 1.

As the Court explained in its previous summary judgment order, the record shows the Preservation Board initially reviewed FFRF's Revised Application, analyzed its language and visual representations, and determined the exhibit did promote a "public purpose."[15] Months later, on December 18, 2015, the exhibit was placed in the Grand Floor Rotunda, where it sat for at least four days. *See* Dec. 18 Email from Preservation Board to FFRF; Sneed Dep. at 10. The day before the exhibit was scheduled to be removed, Governor Abbott sent his letter to Executive Director Sneed claiming the exhibit did not promote a public purpose and tweeted from his personal Twitter account that "Mocking the Capitol Nativity Scene is Offensive. I Demand Removal of Satirical 'Nativity Scene' from the Capitol #tcot."[16] Governor Abbott Letter at 179–180; Governor Abbott Tweet. Only at this point did then Executive Director Sneed "follow the request of [his] superior" and remove FFRF's exhibit. Sneed Dep. at 114.

Of course, the exhibit's alleged failure to promote a public purpose would have been apparent to the Preservation Board as soon as it reviewed FFRF's application in August 2015.[17] Instead, the Preservation Board found the exhibit met all applicable requirements and approved its display in the Ground Floor Rotunda. *See* Pl.'s Second Mot. Summ. J. [#31-1] Exhibit 4

---

[15] *See* Pl.'s Second Mot. Summ. J. [#65-1] Ex. 3 (Davis Dep.) at 160 ("We had meetings about the FFRF application . . . [and] at some point soon after, John Sneed told me, 'Good to go. We can approve that one.'").

[16] *Cf.* Pl.'s Resp. Gov. Abbott Mot. Protective Order [#51] Ex. 8 (Prior Governor Abbott Tweet) ("I urge the City of Orange to keep their nativity scene & not cave to atheist demands.").

[17] Defendants claim the nature of the exhibit was unclear on the face of the application. Having reviewed the applications submitted to the Preservation Board, the Court disagrees. Both the Original and Revised Applications made by FFRF included a full-page artist's mockup of the exhibit. Original Application; Revised Application. The Court finds it unlikely then Executive Director Sneed failed to give any attention to a full-page illustration in a five-page application, especially given his scrutiny of the Original Application. Sneed Dep. at 87–88. Moreover, the description of the exhibit in both applications plainly stated the exhibit would consist of "cutout figures celebrating . . . [a] Bill of Rights nativity." Original Application; Revised Application.

(Davis Dep.) at 160. Then Executive Director Sneed has testified he was comfortable with the display until he received Governor Abbott's letter. *See* Sneed Dep. at 91, 96–97, 128–29.

The Preservation Board's initial conclusion the exhibit promoted a public purpose calls into question whether Governor Abbott's removal request was motivated by the exhibit's failure to promote a public purpose or by the exhibit's viewpoint.[18] This is particularly so in light of Governor Abbott's past statements regarding atheistic organizations in general and FFRF in particular. *See* Pl.'s Resp. Gov. Abbott's Mot. Protective Order [#51] (Decl. of Richard Bolton) ¶ 27 ("Our message to atheists is don't mess with Texas and our Nativity scenes or the Ten Commandments."); *id.* ¶ 29 ("I want the Freedom From Religion Foundation to know that our office has a history of defending religious displays in this State."); *id.* ¶ 30 ("[T[here is a person, a lawyer and an organization . . . that has the muscle and firepower to go toe-to-toe with these organizations that come from out of state trying to bully governmental bodies into tearing down things like Nativity scenes.").

The Court concludes a genuine issue of material fact exists regarding whether Governor Abbott's letter requesting removal of the exhibit was motivated by the exhibit's viewpoint.[19] However, viewed in the light most favorable to FFRF, *Kinney*, 367 F.3d at 350, the Court finds the alleged conduct would amount to impermissible viewpoint discrimination in contravention of the First Amendment.

---

[18] Then Executive Director Sneed testified that over the course of his eight-year tenure as Executive Director of the Preservation Board he had never previously received a letter from Governor Abbott (or anyone else on the Board) requesting a display be removed for violating the public purpose requirement. Sneed Dep. at 54, 61.

[19] Governor Abbott is correct that *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), "swept away" the subjective component of qualified immunity analysis. Def.'s Mot. J. Pleadings [#49] at 14. However, "although evidence of improper motive is irrelevant on the issue of qualified immunity, it may be an essential component of the plaintiff's affirmative case." *Crawford-El v. Britton*, 523 U.S. 574, 589 (1998). Accordingly, even though qualified immunity presents a question of law to be determined by the court, *Harlow* does not place a heightened burden on plaintiffs to prove improper motive at the summary judgment stage. *See Heaney*, 846 F.3d at 802 n.3.

### b. The Right was Clearly Established.

Second, the Court must assess whether the right at issue was clearly established at the time of the defendant's alleged misconduct. *Heaney*, 846 F.3d at 801; *Cutler*, 767 F.3d at 471. It is "beyond debate" the law prohibits viewpoint discrimination in a limited public forum. *Heaney*, 846 F.3d at 801 ("If [defendant] acted with improper motive, he violated [plaintiff's] clearly established First Amendment right to be free from viewpoint discrimination in a limited public forum.");[22] *see also Good News Club*, 533 U.S. at 106 ("When the State establishes a limited public forum . . . restriction[s] must not discriminate against speech on the basis of viewpoint); *Rosenberger*, 515 U.S. at 829–831 (reiterating the State is "forbidd[en] . . . to exercise viewpoint discrimination, even when the limited public forum is one of its own creation"). In spite of the settled state of the law on this point, Governor Abbott contends he did not have fair notice regarding the First Amendment's prohibition of viewpoint discrimination in limited public forums because previous cases have not involved "exhibit areas within the State Capitol, set aside for private exhibits . . . that promote a 'public purpose.'" Def.'s Mot. J. Pleadings [#49] at 10.

The public purpose requirement does not obscure the clearly established nature of FFRF's right to be free from viewpoint discrimination in a limited purpose public forum. While this Court will "accept the validity and reasonableness of the justifications offered by [the government] for excluding [certain groups from the nonpublic forum], those justifications cannot save an exclusion that is in fact based on the desire to suppress a particular point of view." *Cornelius*, 473 U.S. at 811–12. Though Governor Abbott argues the absence of a factually

---

[22] Governor Abbott suggests *Heaney* is of no use here because it was decided after Defendants removed FFRF's exhibit. Though Governor Abbott is correct FFRF can only defeat qualified immunity by relying on law that was "clearly established at the time of the wrong," *Anderson v. Creighton*, 483 U.S. 635, 650 (1987), *Heaney* remains relevant to the extent it recognizes the right to be free from viewpoint discrimination was *already* clearly established at the time of Defendants' challenged conduct.

analogous precedent precludes finding a clearly established right in these circumstances, the Court determines First Amendment law, in this context, to be sufficiently clear to put reasonable officials on notice that viewpoint discrimination in a limited public forum is unlawful. *See Hope*, 536 U.S. at 741 ("[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances."); *Kinney*, 367 F.3d at 371; *Cutler*, 767 F.3d at 471 ("The court does not need to have 'a case directly on point.'" (citing *al-Kidd*, 563 U.S. at 741); *cf. Morgan*, 659 F.3d at 379 (acknowledging rule against viewpoint discrimination is "axiomatic" but declining to find clearly established right where circuit split existed with respect to constitutionality of viewpoint discrimination in public schools (internal quotation marks omitted)).

In conclusion, if Governor Abbott request to remove the exhibit was motivated by the exhibit's viewpoint, Governor Abbott violated FFRF's clearly established First Amendment right to be free from viewpoint discrimination in a limited public forum. Because there is a disputed issue of material fact as to whether Governor Abbott violated clearly established law by engaging in viewpoint discrimination, summary judgment on Governor Abbott's claim of qualified immunity is inappropriate. *See Heaney*, 846 F.3d at 802 n.3 ("When qualified immunity depends on disputed issues of fact, those issues must be determined by the jury." (internal quotation marks omitted)). Therefore, with respect to Governor Abbott's assertion of qualified immunity from FFRF's freedom of speech claim, the Court DENIES Governor Abbott's Motion for Judgment on the Pleadings and DENIES Defendants' Second Motion for Summary Judgment.

## 2. Establishment Clause Claim

Because Governor Abbott has pled qualified immunity, the burden has shifted to FFRF to negate the defense with respect to FFRF's Establishment Clause claim. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008); *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012). Here, FFRF has failed to address Governor Abbott's assertion of qualified immunity with respect to the Establishment Clause claim. In light of the opacity of Establishment Clause jurisprudence[23] and FFRF's complete failure to carry its burden on this issue, the Court GRANTS Governor Abbott's Motion for Judgment on the Pleadings and GRANTS Defendants' Motion for Summary Judgment on the issue of Governor Abbott's qualified immunity from FFRF's Establishment Clause claim.

## D. Governor Abbott's Motion for a Protective Order

Rule 26(c) of the Federal Rules of Civil Procedure grants district courts discretion to issue protective orders limiting the extent and manner of discovery. FED. R. CIV. P. 26(c). Courts may, for good cause, issue a protective order to protect a party or person from annoyance, embarrassment, oppression, or undue expense. *Id.* Rule 26(c) generally allows courts wide latitude in structuring protective orders. For example, the court may forbid the disclosure or discovery; specify the terms of the disclosure or discovery; or limit the scope of disclosure or discovery to certain matters. *See id.*

Under normal circumstances, the party seeking the protective order bears the burden of establishing good cause. *See Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*, 901 F.2d 404, 435 (5th Cir. 1990). However, when a party seeks to depose a high-ranking government official, "exceptional circumstances" must exist before an involuntary deposition will be permitted. *See*

---

[23] *See, e.g., Lloyd v. Birkman*, No. 1:13-CV-505-DAE, 2016 WL 1306650, at *7 (W.D. Tex. April 1, 2016) ("There is widespread judicial recognition of the law [regarding the Establishment Clause] as the thorniest of constitutional thickets, and qualified immunity is frequently granted in this area due to the ambiguity of the law." (internal quotation marks omitted)).

*In re FDIC*, 58 F.3d 1055, 1060 (5th Cir. 1995) (explaining "high ranking government officials have greater duties and time constraints than other witnesses" (quoting *In re United States*, 985 F.2d 510, 512 (11th Cir. 1993) (per curiam))); *see also U.S. v. Morgan*, 313 U.S. 409, 421–22 (1941).

Once the court has determined the government official qualifies as "high-ranking," the burden shifts to the party seeking to depose the high-ranking official to demonstrate extraordinary circumstances. *Thomas v. Cate*, 715 F. Supp. 2d 1012, 1048 (E.D. Cal. 2010). Courts will generally only consider subjecting a high ranking government official to a deposition if the official has first-hand knowledge related to the claims being litigated and other persons cannot provide the necessary information. *See Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007); *Hernandez v. Tex. Dept. of Aging & Disability Servs.*, No. A-11-CV-856 LY, 2011 WL 6300852, at *2 (W.D. Tex. Dec. 16, 2011); *Thomas*, 715 F. Supp. 2d at 1049. Further, in evaluating whether extraordinary circumstances exist the court should consider "the high-ranking status of the deponents, the potential burden that the deposition would impose upon them, [and] the substantive reasons for taking the deposition." *FDIC*, 58, F.3d at 1060; *see also id.* at 1062 (suggesting it may be proper to allow depositions of high-level officials where there has been a strong showing of bad faith or improper behavior).

Neither party disputes that Governor Abbott qualifies as a high-ranking government official. Therefore, the burden is on FFRF to demonstrate (1) Governor Abbott has first-hand knowledge related to the claims being litigated and unobtainable from other sources, and (2) that exceptional circumstances exist meriting the deposition of Governor Abbott.

FFRF has met its burden of demonstrating Governor Abbott has first-hand knowledge of the claims being litigated which is unobtainable from other sources. FFRF has brought claims

against Governor Abbott in his individual capacity arguing Governor Abbott engaged in viewpoint discrimination when he requested removal of FFRF's exhibit from the Capitol. As the Court has explained above, there is a genuine issue of material fact as to whether Governor Abbott acted with improper motive in requesting the removal of FFRF's exhibit from the Capitol. In this context, Governor Abbott has first-hand knowledge of his own motives in requesting removal of FFRF's exhibit, and there is no alternative source from which FFRF could acquire this knowledge. *See Sherrod v. Breitbart*, 304 F.R.D. 73, 76 (D.D.C. 2014) (allowing deposition of Secretary of Agriculture where the Secretary's decision to request plaintiff's resignation was "a central issue" in plaintiff's defamation case and where "[t]he Secretary alone has precise knowledge of what factors he considered and how they influenced his ultimate decision, so that information must come from him, not from third parties").

FFRF has also met its burden of demonstrating exceptional circumstances exist meriting the deposition of Governor Abbott. In evaluating the propriety of a protective order preventing the deposition of a high ranking government official, the Court considers the high-ranking status of the deponent, the potential burden the deposition would impose upon them, and the substantive reasons for taking the deposition. *FDIC*, 58, F.3d at 1060. Turning to the first factor, Governor Abbott's status as the top-ranking executive official in the State of Texas undoubtedly weighs against allowing a deposition. With respect to the second factor, allowing a deposition of Governor Abbott would also inevitably impose some burden on the Governor. However, the magnitude of this burden would depend upon the length of the deposition, and this Court retains substantial discretion under Rule 26(c) to dictate the length and scope of any deposition of Governor Abbott. *See* FED. R. CIV. P. 26(c).

Finally, with respect to the third factor, the substantive reasons for taking the deposition weigh in favor of allowing the deposition to proceed. This is not a case in which plaintiff has sought general information underlying an executive agency's decisionmaking process. Here, Governor Abbott is a party to this litigation in his individual capacity, and his motive in requesting removal of FFRF's exhibit is central to FFRF's claims against him. *Compare Sherrod*, 304 F.R.D. at 76 (allowing deposition of Secretary of Agriculture where the Secretary's motive in requesting resignation of plaintiff was central to plaintiff's defamation claim), *with FDIC*, 58 F.3d at 1061–62 (suggesting FDIC directors should not be subject to depositions on their decisionmaking process in sale of real estate unless plaintiff could make strong showing of bad faith), *and Thomas*, 715 F. Supp. 2d at 1048–49 (denying plaintiff's request to depose governor where plaintiff sought information regarding general process of reviewing parole applications).[24] Weighing all three factors together, the Court concludes FFRF has carried its burden of demonstrating exceptional circumstances exist meriting the opportunity to depose Governor Abbott.

However, this Court retains discretion under Rule 26(c) to issue a protective order dictating the terms of that deposition. As Governor of the State of Texas, Governor Abbott has substantial responsibilities which require his attention and would render any extended deposition a significant inconvenience. In light of these responsibilities, the Court finds good cause exists for issuance of a protective order limiting the deposition of Governor Abbott to one hour and restricting the scope of inquiry to Governor Abbott's motive in requesting removal of FFRF's

---

[24] The Court cautions that conclusory allegations of bad faith are insufficient to demonstrate the necessity of deposing a high-ranking government official. *See FDIC*, 58 F.3d at 1062 (declaring high ranking officials should not be deposed regarding their decisionmaking calculus unless plaintiff can make a strong showing of bad faith or improper behavior); *U.S. v. Sensient Colors*, 649 F. Supp. 2d 309, 323 (D.N.J. 2009) (holding bald assertions of bad faith are insufficient to require agency officials to submit to depositions, but allowing deposition where plaintiff alleged specific facts demonstrating bad faith). However, in this case FFRF has pled specific facts sufficient to support its allegation that Governor Abbott acted with improper motive in requesting removal of FFRF's exhibit.

exhibit from the Capitol. Therefore, the Court GRANTS Governor Abbott's Motion for a Protective Order as described in this opinion.

### Conclusion

In sum, the Court finds that FFRF's freedom of speech claim succeeds as a matter of law and that FFRF has established a genuine issue of material fact with regard to its claim under the Establishment Clause. Furthermore, the Court finds Defendant Abbott has established qualified immunity with respect to FFRF's Establishment Clause claim, but not with respect to FFRF's freedom of speech claim. Therefore, the remaining claims consist of an Establishment Clause claim against Governor Abbott and Executive Director Walsh in their official capacities, as well as a freedom of speech claim against Governor Abbott in his individual capacity.

Accordingly,

IT IS ORDERED that Defendant's Motion for Judgment on the Pleadings [#49] is GRANTED IN PART and DENIED IN PART as described in this opinion; and

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment [#66] is GRANTED IN PART and DENIED IN PART as described in this opinion;

IT IS FURTHER ORDERED that Plaintiff's Motion for Partial Summary Judgment [#65] is GRANTED as described in this opinion; and

IT IS FINALLY ORDERED Defendant's Motion for a Protective Order [#41] is GRANTED as described in this opinion.

SIGNED this the ___*13th*___ day of October 2017.

_Bamsparks_

SAM SPARKS
UNITED STATES DISTRICT JUDGE