```
 1                 UNITED STATES DISTRICT COURT
                   WESTERN DISTRICT OF TEXAS
 2                       AUSTIN DIVISION

 3   FREEDOM FROM RELIGION       ) Docket No. A 16-CA-233 SS
     FOUNDATION, INC.            )
 4                               )
     vs.                         ) Austin, Texas
 5                               )
     GOVERNOR GREG ABBOTT,       )
 6   CHAIRMAN OF THE STATE       )
     PRESERVATION BOARD, ET AL   ) June 20, 2016
 7
                    TRANSCRIPT OF MOTION HEARING
 8              BEFORE THE HONORABLE SAM SPARKS

 9   APPEARANCES:

10   For the Plaintiff:          Mr. Rich Bolton
                                 Boardman and Clark
11                               1 South Pinckney Street, Suite 410
                                 P.O. Box 927
12                               Madison, Wisconsin 53701

13                               Mr. Dale Roberts
                                 Fritz, Byrne, Head & Fitzpatrick
14                               221 West 6th Street, Suite 960
                                 Austin, Texas 78701
15

16   For the Defendant:          Ms. Angela V. Colmenero
                                 Ms. Anne Marie Mackin
17                               Office of the Attorney General
                                 P.O. Box 12548, Capitol Station
18                               Austin, Texas 78711

19                               Mr. Adam Aston
                                 Jackson Walker
20                               100 Congress Avenue, Suite 1100
                                 Austin, Texas 78701
21

22   Court Reporter:             Ms. Lily Iva Reznik, CRR, RMR
                                 501 West 5th Street, Suite 4153
23                               Austin, Texas 78701
                                 (512)391-8792
24

25   Proceedings reported by computerized stenography, transcript
     produced by computer.
```

14:04:28    1          THE COURT:  Okay.  The Court calls 16-CA-233, <u>Freedom</u>

14:04:34    2   <u>From Religion Foundation, Incorporated vs. Greg Abbott, Governor,</u>

14:04:39    3   et cetera.

14:04:39    4          I'll take announcements.

14:04:44    5          MR. ROBERTS:  Dale Roberts with Fritz, Byrne, Head &

14:04:48    6   Fitzpatrick on behalf of plaintiff, along with Richard Bolton.

14:04:53    7          THE COURT:  All right.

14:04:56    8          MS. MACKIN:  Ann Marie Mackin with the Texas Office of

14:04:58    9   Attorney General on behalf of the Defendants Governor Greg Abbott

14:05:02   10   and Executive Director of the State Preservation Board John

14:05:05   11   Sneed.  With me is Angela Colmenero, also with our office.

14:05:11   12          MR. ASTON:  Adam Aston with the governor's office.

14:05:13   13          THE COURT:  Welcome, all of you.

14:05:17   14          We're here on the defendants' motion to dismiss

14:05:19   15   primarily.  So, Ms. Mackin.

14:05:27   16          MS. MACKIN:  Afternoon, your Honor.

14:05:29   17          This case is about displays in the Texas state capitol.

14:05:33   18   These displays are submitted by private parties.  They must be

14:05:38   19   sponsored by either the governor, lieutenant governor, the

14:05:42   20   speaker of the house, a state senator, or --

14:05:44   21          THE COURT:  And this one was, so let's go on to

14:05:47   22   something I haven't read.

14:05:48   23          MS. MACKIN:  Sure, your Honor.

14:05:51   24          Well, the plaintiff bases the entire case on the

14:05:55   25   assumption that these displays on the Texas capitol are purely

14:05:59   1   private speech.  This is case dispositive in this instance and

14:06:04   2   this contention is incorrect.

14:06:05   3                THE COURT:  Would it be private speech if somebody was

14:06:08   4   handing it out on the capitol grounds to people coming, crossing

14:06:12   5   Congress?

14:06:12   6                MS. MACKIN:  Certainly.  However, in the context of the

14:06:16   7   two areas that are set aside for display in the capitol for

14:06:21   8   exhibits with a public purpose, these limited resources have been

14:06:27   9   taken by the state, and under the Administrative Code, it's

14:06:32   10  specified that the sovereign power of the state is extended to

14:06:36   11  promote a public purpose within these two specific areas within

14:06:41   12  the capitol.

14:06:42   13               So these areas are not -- they're not open to the

14:06:46   14  public for any type of display that an exhibitor wishes to put

14:06:53   15  forward.

14:06:53   16               THE COURT:  Well, didn't you expressly consent to that

14:06:59   17  and allow the display to be put up for a public purpose in the

14:07:06   18  same policy that the plaintiff agreed to and that the

14:07:11   19  preservation board agreed to it?

14:07:14   20               MS. MACKIN:  Well, your Honor, the exhibit at issue

14:07:17   21  here --

14:07:17   22               THE COURT:  Yes?

14:07:19   23               MS. MACKIN:  Yes.

14:07:19   24               THE COURT:  Okay.

14:07:20   25               MS. MACKIN:  Yes.  It was permitted to go on to display

14:07:22  1   in the Texas capitol.

14:07:25  2              THE COURT:  For just four days.

14:07:26  3              MS. MACKIN:  I believe that's right.  Yes.

14:07:28  4              THE COURT:  This lawsuit's here because of four days.

14:07:31  5   Two days passed and two days didn't.  Sometimes I think how you

14:07:41  6   can mix up to get such a lawsuit, the expenditure of public

14:07:52  7   funds, the expenditure of private funds.

14:07:56  8              All right.  So we have an application duly made.

14:08:02  9   Everybody knows the rules.  The preservation board gives consent.

14:08:10  10  They come down, they set up their display, and the governor

14:08:19  11  didn't like it and unilaterally orders it down.  Now pick up your

14:08:26  12  argument.

14:08:27  13             MS. MACKIN:  Well, your Honor, the governor, first of

14:08:29  14  all, functions as chairman of the State Preservation Board.

14:08:32  15             THE COURT:  I understand that.  But I notice that he

14:08:34  16  wrote the letter to the preservation board as the governor.

14:08:40  17             MS. MACKIN:  Yes, your Honor.  He also mentioned,

14:08:42  18  however, that he was writing as chairman of the State

14:08:46  19  Preservation Board and he --

14:08:48  20             THE COURT:  He didn't say he was the board, did he?

14:08:52  21             MS. MACKIN:  No.

14:08:52  22             THE COURT:  He said he was the executive.  By law, he

14:08:58  23  is the executive of the board.  Did he just come out of the

14:09:02  24  meeting with the board and decide, well, we all agree that has to

14:09:08  25  be taken down, it's not for public purpose?

| | | |
|---|---|---|
| 14:09:11 | 1 | MS. MACKIN:  Well, your Honor, what I think is -- |
| 14:09:12 | 2 | THE COURT:  Is that a "No"? |
| 14:09:14 | 3 | MS. MACKIN:  No. |
| 14:09:17 | 4 | But what I think is important here is the fact that |
| 14:09:25 | 5 | because these exhibits are subject to the government speech |
| 14:09:30 | 6 | analysis as it was articulated in Summum and in Walker, there is |
| 14:09:34 | 7 | no -- |
| 14:09:34 | 8 | THE COURT:  It wasn't in Walker.  In Walker -- I'm |
| 14:09:36 | 9 | familiar with Walker. |
| 14:09:38 | 10 | MS. MACKIN:  Yes, your Honor. |
| 14:09:38 | 11 | THE COURT:  In Walker, the state had two hearings of |
| 14:09:43 | 12 | which they took public intake and people testified, and they |
| 14:09:49 | 13 | determined that the issuing of those plates would not be a good |
| 14:09:57 | 14 | public function because it would be government speech.  So that |
| 14:10:05 | 15 | wasn't any issuance of that.  It's another -- at least that has |
| 14:10:14 | 16 | some materiality rather than 48 hours.  So it's not like Walker. |
| 14:10:21 | 17 | MS. MACKIN:  Well, Walker is instructive insofar as the |
| 14:10:25 | 18 | way it applies the factors in assessing whether or not expressive |
| 14:10:30 | 19 | conduct is evaluated either as purely private speech or under the |
| 14:10:35 | 20 | government speech analysis.  And so -- |
| 14:10:38 | 21 | THE COURT:  We can agree that the display is private |
| 14:10:40 | 22 | speech outside the floor of the capitol. |
| 14:10:46 | 23 | MS. MACKIN:  Sure. |
| 14:10:46 | 24 | THE COURT:  So it changes when it comes into the |
| 14:10:51 | 25 | capitol? |

14:10:52  1          MS. MACKIN:  In this case, it does, yes, because of the

14:10:57  2   three factors articulated in Summum and, also, in Walker albeit

14:11:02  3   in a different factual --

14:11:03  4          THE COURT:  Notwithstanding the consent and authority

14:11:05  5   of the state?

14:11:07  6          MS. MACKIN:  Sure.  But the state -- to the extent that

14:11:10  7   the state enjoys its own First Amendment right when speaking for

14:11:13  8   itself, it similarly enjoys the right to change that expressive

14:11:19  9   conduct.

14:11:20  10          THE COURT:  Well, the policy allows you to take it down

14:11:22  11   at any time.  Well, let me rephrase that.  Allows the board to

14:11:29  12   take it down.

14:11:30  13          MS. MACKIN:  And that policy is not put at issue in

14:11:33  14   this case.

14:11:33  15          THE COURT:  Well, indirectly it is.  There wouldn't be

14:11:37  16   any lawsuit if it wasn't.  If they could take it down at any time

14:11:43  17   and they agree with it, it's like in the professional basketball,

14:11:50  18   no harm, no foul.

14:11:54  19          What is the difference -- is there a difference between

14:11:59  20   a board looking at an application and determining it qualifies,

14:12:07  21   it has a public purpose and allowing them up for four days, just

14:12:12  22   four days, and then, the governor without a board meeting says,

14:12:21  23   take it down, it's --

14:12:25  24          MS. MACKIN:  Well, there may be a difference in

14:12:27  25   procedure, but there is not a legally dispositive difference in

| | | |
|---|---|---|
| 14:12:32 | 1 | this case.  I think it would almost be akin to, for example, a -- |
| 14:12:38 | 2 | the Court often hears motions for injunctive relief, and at that |
| 14:12:43 | 3 | stage, you determine whether or not something is going to go on |
| 14:12:45 | 4 | for a little while or be stopped.  And that decision, as the |
| 14:12:50 | 5 | injunction proceeding continues, it can ultimately reach a |
| 14:12:54 | 6 | different result on whether the conduct at issue is allowed or |
| 14:12:58 | 7 | not. |
| 14:12:58 | 8 | THE COURT:  Yes.  That's true.  And injunctions have to |
| 14:13:01 | 9 | do with contracts.  And the state also takes the position that |
| 14:13:07 | 10 | there was a contract involved and that the contractual terms are |
| 14:13:17 | 11 | indemnity, although it's from the third party, which doesn't seem |
| 14:13:21 | 12 | to be applicable here, and it seems to be that -- of course, they |
| 14:13:34 | 13 | could take it down at all times.  They could take it down.  They, |
| 14:13:40 | 14 | the board, could take it down. |
| 14:13:45 | 15 | Let's attack it a different way.  We agree that it's |
| 14:13:51 | 16 | private constitutional speech out the window and on the grounds. |
| 14:13:56 | 17 | MS. MACKIN:  Yes. |
| 14:13:56 | 18 | THE COURT:  So -- |
| 14:13:58 | 19 | MS. MACKIN:  Well, on someone's front yard, yes.  On |
| 14:14:04 | 20 | the grounds of the state capitol. |
| 14:14:06 | 21 | THE COURT:  Right. |
| 14:14:06 | 22 | MS. MACKIN:  There's a little -- |
| 14:14:07 | 23 | THE COURT:  Where the public is crossing the street at |
| 14:14:10 | 24 | Congress and these folks have this picture and they hand out -- |
| 14:14:18 | 25 | do you take the position the state would stop them on the |

| | | |
|---|---|---|
| 14:14:22 | 1 | sidewalks going up to the capitol? |
| 14:14:24 | 2 | MS. MACKIN:  No.  Certainly not. |
| 14:14:26 | 3 | THE COURT:  Of course not. |
| 14:14:28 | 4 | MS. MACKIN:  Okay. |
| 14:14:29 | 5 | THE COURT:  But you -- but the governor can. |
| 14:14:37 | 6 | MS. MACKIN:  Well, this is a vastly different |

14:14:40  7  situation.  I mean, this is speech that is installed in a limited

14:14:46  8  -- limited areas, two exhibit areas in the capitol that is

14:14:49  9  subject to approval by an elected official, that is subject under

14:14:56  10  the agreement to use the government property to install the

14:15:00  11  display.

14:15:00  12  THE COURT:  All of which was when they installed in

14:15:06  13  order, representative made the approval.  The board, the

14:15:15  14  correspondence, they accepted the policy and they built their

14:15:23  15  nativity.  Bad choice of words for the season, an intentional

14:15:31  16  choice of words, unfortunate choice of words, makes for a

14:15:38  17  lawsuit.  I'm not saying anybody's got clean hands here.

14:15:46  18  But what troubles me is without notice, you close the

14:15:53  19  exhibit that you approved two days earlier because the governor

14:16:00  20  doesn't like it and says close it.

14:16:04  21  MS. MACKIN:  Well, if this were private speech, no one

14:16:07  22  could do that and no one can test that.  If this were private

14:16:11  23  speech on my front lawn, if I put up a yard sign that said, vote

14:16:17  24  for whomever.

14:16:19  25  THE COURT:  So tell me, when did it become private

| | | |
|---|---|---|
| 14:16:25 | 1 | speech again? |
| 14:16:26 | 2 | MS. MACKIN:  It's not. |
| 14:16:29 | 3 | THE COURT:  So it's not government speech. |
| 14:16:31 | 4 | MS. MACKIN:  It is government speech. |
| 14:16:33 | 5 | THE COURT:  How possibly could it be? |
| 14:16:35 | 6 | MS. MACKIN:  It is government speech because -- |
| 14:16:37 | 7 | THE COURT:  Did you read my opinion and the Supreme |

14:16:41  8  Court opinion in Wallace?

14:16:43  9           MS. MACKIN:  Yes.

14:16:43  10          THE COURT:  How could it possibly be government's?

14:16:46  11          MS. MACKIN:  Well, the three factor -- so the first

14:16:47  12  factor history is one only needs to walk through the halls in the

14:16:53  13  Texas capitol to see displays that the architect of the capitol

14:16:58  14  and the preservation board install in the capitol, and these are

14:17:01  15  generally talking about state history, renovations to the

14:17:06  16  capitol, government programs, government speech.  And so,

14:17:14  17  understandably, because the halls of the Texas capitol are not

14:17:17  18  open to all comers, you can't just go into the capitol and

14:17:23  19  install --

14:17:24  20          THE COURT:  Oh, I have that in the gun cases.  Let's

14:17:28  21  don't get too much into this.

14:17:31  22          MS. MACKIN:  Sure.

14:17:32  23          THE COURT:  When did it become government speech?

14:17:35  24          MS. MACKIN:   It became government speech the moment

14:17:37  25  that the foundation sought to place it in the exhibit space

14:17:43  1   within the Texas capitol.

14:17:48  2          THE COURT:  So everything that's posted in the capitol

14:17:54  3   becomes government speech?

14:17:56  4          MS. MACKIN:  Not always.  Not everything.  But in this

14:18:00  5   context where not only do you have a --

14:18:04  6          THE COURT:  Where is the magic?  Where is the light

14:18:08  7   that changed this to government speech?  Not for a moment did I

14:18:12  8   think it was government speech.  It is in that in-between area.

14:18:18  9   It's their private speech.  Is it a constitutional right?  Let's

14:18:23  10  start with that.  That's how I'm going to start with them.

14:18:28  11         MS. MACKIN:  Private speech is a constitutional right.

14:18:30  12  Most certainly.  But the standard for unfettered exercise of that

14:18:36  13  is when it is purely private speech on private property.  And

14:18:41  14  then we have this continuum that goes from traditional public

14:18:44  15  forums to designated to limited to nonpublic to government

14:18:48  16  speech.

14:18:52  17         THE COURT:  I have a little trouble with that.  Of

14:18:54  18  course, there's always the middle ground where you have trouble

14:18:57  19  with it.  But when it goes from constitutional protected speech

14:19:10  20  to not protected at all because you go through a wall, it's the

14:19:19  21  same speech.  It's either constitutional or it isn't.  Let's look

14:19:23  22  at it this way.  What if the board had refused to give authority

14:19:31  23  to the plaintiff to put it up and they filed the lawsuit?  What

14:19:36  24  kind of speech would you call that now?

14:19:39  25         MS. MACKIN:  Well, it never became government speech

14:19:41  1  because it was never adopted for display in the capitol.

14:19:46  2          THE COURT:  It was a constitutional right, you say?

14:19:48  3          MS. MACKIN:  But private individuals do not have a

14:19:50  4  constitutional right to direct the -- to direct the messages that

14:19:55  5  the government chooses to associate itself with.

14:19:59  6          THE COURT:  Well, that's a pretty conclusive right,

14:20:01  7  isn't it?  So everything that the government doesn't choose that

14:20:07  8  is right is not government speech, and everything that the

14:20:17  9  government chooses to be government speech is government speech?

14:20:20 10  We wouldn't need all those opinions all over the circuit and the

14:20:24 11  Supreme Court trying to determine which is which, would we?  And

14:20:28 12  giving me a headache when I've got 390 really lawsuits.

14:20:32 13          MS. MACKIN:  Well, I think that that emphasizes the

14:20:34 14  fact that these are very context-specific determinations.

14:20:42 15          THE COURT:  And one person makes the determination.

14:20:47 16  Okay.  Let me hear from the plaintiff.

14:20:57 17          MR. BOLTON:  Good afternoon, your Honor.

14:20:59 18          Obviously, well, from the briefing that's been done and

14:21:06 19  from the discussion that your Honor has had already with counsel,

14:21:12 20  the premise of the defendants' position here is basically a

14:21:16 21  repudiation of the public forum doctrine altogether.  Their

14:21:22 22  position implicitly is that any time the government goes to

14:21:26 23  any --

14:21:27 24          THE COURT:  Let's talk about yours.  Let's don't talk

14:21:30 25  about their rights.  Let's talk about yours.

14:21:33  1          You were granted the authority to put up your thing for

14:21:40  2  four days subject to it being withdrawn.  The capitol

14:21:50  3  preservation board had an absolute right under the authority that

14:21:55  4  you got your permission to to stop it at any time.  So why are we

14:22:00  5  here?

14:22:02  6          MR. BOLTON:  That authority, though, does not take

14:22:04  7  precedence over the First Amendment.  So certainly --

14:22:09  8          THE COURT:  Well, it becomes -- the state says it's at

14:22:15  9  that time because you're there, it's now government speech.

14:22:23  10  That's what the state said.

14:22:25  11          MR. BOLTON:  Well, I agree it's not government speech.

14:22:29  12  The notion -- I mean, the premises of that argument, then, is

14:22:34  13  that at any time that we decide either before or after, since

14:22:41  14  we're dealing with a situation after where it had already been

14:22:45  15  allowed, the argument that we can withdraw that permission at any

14:22:50  16  time based on viewpoint, I think --

14:22:54  17          THE COURT:  There are no -- I read it two or three

14:22:57  18  times.  There are no conditions.  There's no thing about

14:22:59  19  viewpoint.  Don't like it, didn't like the color.  I don't like

14:23:03  20  where they put it, I don't like a lot of things.  You put it

14:23:07  21  there with the knowledge they could take it away, didn't you?

14:23:12  22          MR. BOLTON:  The --

14:23:15  23          THE COURT:  Answer.  Is that a "Yes"?

14:23:17  24          MR. BOLTON:  Pardon?

14:23:18  25          THE COURT:  Is that a "Yes"?

14:23:19   1            MR. BOLTON:  I don't believe it is a "Yes."  It's not a

14:23:21   2   "Yes" in the sense that the permission can be withdrawn in

14:23:30   3   violation of the establishment clause because --

14:23:31   4            THE COURT:  All right.  Let's take it another way.  You

14:23:36   5   make your application, they turn you down.

14:23:43   6            MR. BOLTON:  Yes, your Honor.

14:23:45   7            THE COURT:  They say, you know, it's Christmas.  Have a

14:23:49   8   lot of people celebrating Christmas.  You come in December the

14:23:53   9   22nd, you want to put this display out.  We think it's

14:23:59  10   inappropriate at this time, bingo, no.  You come over here, say,

14:24:08  11   I've got constitutional protected speech and they won't put it

14:24:13  12   out in a public forum that's for all the people.  Are you going

14:24:18  13   to win that?

14:24:19  14            MR. BOLTON:  In a public forum, obviously reasonable

14:24:23  15   time, space and manner limitations are appropriate, but even in

14:24:27  16   that situation, they cannot be either on their face or as

14:24:33  17   applied, applied in a content or a viewpoint discriminatory

14:24:39  18   fashion.

14:24:41  19            So I don't think there's any question here that this

14:24:43  20   sort of permitting or licensing that's at issue here, number one,

14:24:49  21   it does not --

14:24:50  22            THE COURT:  Well, it is.  That's how you got in.

14:24:53  23            MR. BOLTON:  I'm sorry?

14:24:54  24            THE COURT:  That's how you got in.

14:24:55  25            MR. BOLTON:  I understand.  But that was how they got

| | | |
|---|---|---|
| 14:24:58 | 1 | in in Pinette, also, in the Supreme Court position.  It is -- the |
| 14:25:01 | 2 | fact of having that sort of licensing or permitting process does |
| 14:25:05 | 3 | not foreclose the creation of a public forum. |
| 14:25:12 | 4 | THE COURT:  Can anybody with constitutionally protected |
| 14:25:18 | 5 | speech demand to put something on the floor of the capitol? |
| 14:25:27 | 6 | MR. BOLTON:  It depends on -- |
| 14:25:28 | 7 | THE COURT:  "Yes" or "No"? |
| 14:25:30 | 8 | MR. BOLTON:  Pardon me? |
| 14:25:31 | 9 | THE COURT:  "Yes" or "No"? |
| 14:25:33 | 10 | MR. BOLTON:  I can't answer that question "Yes" or |
| 14:25:36 | 11 | "No." |
| 14:25:36 | 12 | THE COURT:  We should return to Aryan Brotherhood and |
| 14:25:43 | 13 | here is a great statue of a white supremacist and we want it on |
| 14:25:50 | 14 | the tundra of the capitol. |
| 14:25:56 | 15 | MR. BOLTON:  Well, that's the Pinette case, your Honor, |
| 14:26:00 | 16 | and in that case, the Supreme Court said that the answer was that |
| 14:26:04 | 17 | it needed to be permitted.  And in Pinette, they specifically -- |
| 14:26:09 | 18 | THE COURT:  So you don't need permission at all.  You |
| 14:26:12 | 19 | just -- |
| 14:26:13 | 20 | MR. BOLTON:  Yes, they did, your Honor.  They had -- |
| 14:26:16 | 21 | THE COURT:  No, no.  I'm talking about you. |
| 14:26:17 | 22 | MR. BOLTON:  Oh, I'm sorry. |
| 14:26:18 | 23 | THE COURT:  About Freedom From Religion Foundation, you |
| 14:26:21 | 24 | could have just gone on there and put your thing up. |
| 14:26:26 | 25 | MR. BOLTON:  Again, the answer to that would be -- I |

14:26:29  1  actually think the answer is yes as that space was being utilized

14:26:38  2  in this case.  The question of whether they had to at least get

14:26:41  3  permission or not depends on whether or not it's a traditional

14:26:44  4  public forum, a dedicated public forum, or a limited public

14:26:48  5  forum.  And all three of those prohibit viewpoint discrimination.

14:26:55  6  But in the case of a dedicated public forum.

14:26:58  7         THE COURT:  Well, you know, are you telling me that you

14:27:03  8  think the rotunda is a dedicated public forum?  The only thing

14:27:07  9  I've ever seen in it in 76 years -- and I go through it

14:27:12  10 frequently -- is governors' pictures.  They're on the wall there.

14:27:17  11        MR. BOLTON:  Well, the reason I would say in this case

14:27:19  12 that that space that we're talking about could be construed as a

14:27:23  13 dedicated public forum is because at least as it was being -- the

14:27:31  14 policy and practices of the preservation board, they were not

14:27:35  15 regulating either the discrete subject matter or the speakers

14:27:40  16 that could display there.  And generally if you've opened up a

14:27:46  17 space to the public and you have not specified that it's going to

14:27:50  18 be limited to, you know, this agenda or that but it's --

14:27:55  19        THE COURT:  That's why I ruled years ago, Erwin Center

14:27:58  20 was a public forum, not the university's.  I understand that.

14:28:01  21        MR. BOLTON:  So whether or not FFRF, the Freedom From

14:28:06  22 Religion Foundation needed to at least go through, you know, the

14:28:10  23 application process depends on whether or not it's a dedicated or

14:28:14  24 limited public forum.

14:28:16  25        At a minimum, it's a limited public forum in which case

14:28:20  1  they would have to go through the process, but that process and

14:28:24  2  the procedures still needs to be content-neutral, even with a

14:28:29  3  limited public forum.  And the fact that you have to go through a

14:28:33  4  process to regulate time, space and manner does not foreclose

14:28:39  5  that from being a public forum; otherwise, the very nature of a

14:28:44  6  public forum would become inconsistent with it being a public

14:28:50  7  forum.

14:28:50  8          If you say you've limited it to certain subject matter

14:28:54  9  or speakers, or you have to go through a licensing or permit

14:28:57  10  process, if you say that that by definition precludes it from

14:29:04  11  being a limited public forum, those are the things that tend to

14:29:09  12  define a limited public forum.

14:29:12  13          So what the argument would be is that these things that

14:29:16  14  constitute -- define it as a limited public forum actually then

14:29:22  15  disqualify it from being a public forum.  And there's nothing in

14:29:25  16  the Supreme Court precedent that would say that, for instance,

14:29:28  17  that Walker somehow effected that transformation of the law that

14:29:36  18  basically any government -- or that any speech on government

14:29:40  19  property where you go through an approval process is, therefore,

14:29:45  20  not private speech.  There's nothing in Walker that holds that.

14:29:51  21          In fact, in Summum, which they rely upon, and Pinette

14:29:56  22  and other cases would suggest that that's exact absolutely not

14:29:59  23  the case, that this is a limited -- at least a limited public

14:30:02  24  forum in which what the governor did here --

14:30:06  25          THE COURT:  Well, I don't think there's any question.

14:30:08   1          MR. BOLTON:  Pardon me?

14:30:09   2          THE COURT:  I said, I don't think there's any question

14:30:10   3   about that.  They admit it's either limited or private.  I don't

14:30:18   4   see how they're going to establish a capitol space private.

14:30:27   5          So your argument, as I understand it, is the process --

14:30:31   6   you're just good guys and you went through the process.  You had

14:30:34   7   a constitutional right to put it up and case over.  They didn't

14:30:39   8   have any right to take it down.

14:30:44   9          MR. BOLTON:  Certainly the reason that they took it

14:30:45  10   down in this case, they did not -- was not a permissible reason.

14:30:50  11          THE COURT:  Well, that will have to be determined later

14:30:52  12   after it's down.

14:30:54  13          MR. BOLTON:  But I'll agree with you.  That is -- I

14:30:57  14   mean, it's not a complicated position.  It's not a complicated

14:31:01  15   case.

14:31:02  16          THE COURT:  What about the governor's reasons he says

14:31:07  17   his opinion as governor should have been expounded, I guess, when

14:31:14  18   the board died.  Because he's just overruling the board, isn't

14:31:23  19   he?

14:31:27  20          MR. BOLTON:  At one level, he's acting as part of the

14:31:30  21   board and he's certainly directing the Defendant Sneed to --

14:31:34  22          THE COURT:  Well, the board's already approved for the

14:31:37  23   four days.  Okay.  The governor is taking two of those days away.

14:31:41  24   He's overruling the board, isn't he?

14:31:43  25          MR. BOLTON:  He is.

| 14:31:44 | 1 | THE COURT:  All right. |

14:31:44  1                 THE COURT:  All right.

14:31:45  2                 MR. BOLTON:  I would refer to him as some cases have

14:31:47  3   referred to as a classic case of the cat's paw.  Basically, I

14:31:52  4   mean, he didn't give the directive to the subordinates to go take

14:31:57  5   it down, but it was his paw that directed and accomplished it.

14:32:10  6                 THE COURT:  He indicated that it was degrading of

14:32:22  7   people's religion under the circumstances.  Christmas, they had a

14:32:37  8   -- I don't know if they had one or not.  The paper said they had

14:32:41  9   a nativity scene -- traditional Christian nativity scene in 2014.

14:32:47  10  So this was in some sort of response to it, I guess.  The word

14:33:00  11  "nativity" is intentional, so why isn't it degrading?

14:33:04  12                MR. BOLTON:  Why is it degrading?

14:33:05  13                THE COURT:  Yes.  Why is it -- intellectual rather than

14:33:10  14  showing a point, why do you pick the word "nativity" in that

14:33:15  15  scene?

14:33:18  16                MR. BOLTON:  In the display -- in the other display

14:33:21  17  that was allowed?

14:33:22  18                THE COURT:  And taken up.

14:33:24  19                MR. BOLTON:  Pardon me?

14:33:25  20                THE COURT:  And taken up, yeah.  In your display that

14:33:28  21  you put there, you deliberately used the word "nativity."  Why

14:33:38  22  wasn't that sarcastic, degrading, as the governor says in his

14:33:42  23  letter, and, therefore, not for a public purpose but for an

14:33:46  24  insulting purpose?

14:33:48  25                MR. BOLTON:  Well, I don't believe that that is

14:33:50  1  degrading.  I don't think it's disparaging.  I think if you look

14:33:56  2  at this display, if anything, it is showing a reverence --

14:34:02  3  comparative reverence for the Bill of Rights.

14:34:06  4           THE COURT:  You know, I couldn't agree with you more.

14:34:08  5  I looked at it and wondered what in the world was it till I

14:34:11  6  looked down there and saw the word "nativity."  A deliberate word

14:34:17  7  out of context for that very purpose at the time of two of the

14:34:23  8  major religions celebrating their faith.

14:34:31  9           MR. BOLTON:  I don't -- I don't find it to be

14:34:37 10  degrading.  And this is the -- and this is part of the problem

14:34:42 11  here is that as the governor and the board is applying these,

14:34:45 12  it's entirely subjective as to whether something is --

14:34:49 13           THE COURT:  Well, let me ask you this.  If a group --

14:34:57 14  I'm not particularly fond of cats.  I'm allergic to them.  What

14:35:02 15  if let's kill all the cats with sledgehammers wants to put up a

14:35:12 16  sledgehammer to kill the cats, or capture them maybe, something

14:35:20 17  totally degrading has a purpose -- a lot of people think that

14:35:25 18  would probably be good for the public not to have a lot of feral

14:35:31 19  cats around -- can the capitol, a forum of the capitol, can they

14:35:35 20  keep out something that is degrading to religions?

14:35:39 21           MR. BOLTON:  Again, it --

14:35:41 22           THE COURT:  No, no.  That's a "Yes" or "No" question.

14:35:43 23           MR. BOLTON:  I think in a public forum, I think the

14:35:46 24  answer is no.  And what I would say is this:  It comes down to

14:35:50 25  whether or not the specific speech that you're looking at is

14:35:54   1   protected or not.  And generally speech that someone might

14:35:58   2   consider sacrilegious, blasphemous, satire, those are protected

14:36:02   3   speech.  The Supreme Court has said the type of speech that is

14:36:06   4   not protected would be -- the closest in this case would probably

14:36:11   5   be speech that incites lawlessness or disorder.  And certainly

14:36:14   6   there's certainly nothing about this display that incites.

14:36:18   7           THE COURT:  Well, that's your opinion.  Apparently the

14:36:21   8   governor doesn't hold it.

14:36:23   9           What about the part of the briefing that the state's

14:36:35   10   always been very careful as to what goes on in the rotunda?  The

14:36:42   11   implication is, a lot of the things that are requested are turned

14:36:45   12   down.  That would make it the public place, maybe a semipublic

14:36:57   13   place because they're reserving a discretion to put it down

14:37:02   14   unless it serves a public purpose.  That's their position,

14:37:08   15   anyway.

14:37:09   16           MR. BOLTON:  Well.

14:37:10   17           THE COURT:  So what in your -- would be something they

14:37:16   18   could turn down?  Let's raise another Hitler, they could turn

14:37:23   19   that down, I expect, couldn't you?

14:37:28   20           MR. BOLTON:  I think if the standard was applied -- and

14:37:30   21   first of all, I don't believe that they were actually applying it

14:37:37   22   in that manner, but if they were, then I think that the standard

14:37:42   23   that they've articulated to regulate that forum and the Supreme

14:37:49   24   Court in other courts have regularly held that that type of

14:37:53   25   standard would basically give the decisionmaker unfettered

| | | |
|---|---|---|
| 14:37:56 | 1 | discretion.  And you cannot have a public forum that is -- in |
| 14:38:01 | 2 | which that level of discretion in which, you know, the personal |
| 14:38:11 | 3 | likes, dislikes, offenses, or preferences can determine what |
| 14:38:18 | 4 | speech is going to go into it. |
| 14:38:20 | 5 | As soon as the content of the speech as the Supreme |
| 14:38:24 | 6 | Court recently held in the Reed decision, when you look to the |
| 14:38:28 | 7 | content of the speech, then you're no longer dealing with |
| 14:38:31 | 8 | viewpoint neutrality. |
| 14:38:33 | 9 | THE COURT:  So that rotunda is going to get really |
| 14:38:41 | 10 | crowded, isn't it? |
| 14:38:43 | 11 | MR. BOLTON:  Pardon me? |
| 14:38:43 | 12 | THE COURT:  Have you ever been to the rotunda of the |
| 14:38:45 | 13 | capitol? |
| 14:38:46 | 14 | MR. BOLTON:  Have I been? |
| 14:38:46 | 15 | THE COURT:  Yeah. |
| 14:38:47 | 16 | MR. BOLTON:  You know what, I apologize, I have not |
| 14:38:48 | 17 | been to the -- |
| 14:38:49 | 18 | THE COURT:  I figured you had, but that's not |
| 14:38:52 | 19 | important.  It's not very big.  It's very lovely.  The only bad |
| 14:38:56 | 20 | part of it is, there's a crack in the floor where a workman fell |
| 14:38:59 | 21 | when they were rebuilding it.  But you can't put much there. |
| 14:39:05 | 22 | It's got four entrances and exits and doesn't hold a lot of |
| 14:39:15 | 23 | people. |
| 14:39:16 | 24 | So what limitation does the state have from if it's a |
| 14:39:22 | 25 | public forum? |

14:39:24  1        MR. BOLTON:  The state can engage in reasonable time,

14:39:27  2   space and manner regulation as long as that regulation is not

14:39:31  3   governed by viewpoint discrimination.

14:39:33  4        THE COURT:  That's in the middle, isn't it?

14:39:35  5        MR. BOLTON:  Pardon me?

14:39:36  6        THE COURT:  That's in the middle.  It's not a complete

14:39:39  7   public forum where everybody can be there.  There are

14:39:43  8   limitations.

14:39:45  9        MR. BOLTON:  But even the forum in the middle of that

14:39:53  10  spectrum, it cannot be governed by viewpoint discrimination.

14:39:58  11       THE COURT:  So anybody can go in there, walk past the

14:40:01  12  guards, walk past the people that work in the capitol, and start

14:40:04  13  giving a speech there.

14:40:10  14       MR. BOLTON:  Well, again, it depends on whether or not

14:40:16  15  that space is a limited, in the middle of the spectrum, or

14:40:20  16  whether it's been treated as a tradition.

14:40:22  17       THE COURT:  I sort of doubt of it being limited.  You

14:40:25  18  believe it's a limited forum, don't you?

14:40:27  19       MR. BOLTON:  But we've had exactly that problem and it

14:40:30  20  arises in a lot of state capitols where the question is whether

14:40:36  21  or not -- for instance, in Wisconsin, that issue was very much in

14:40:41  22  the news because basically people who were objecting to

14:40:46  23  legislation were ticketed by the capitol police because the

14:40:54  24  capitol, they had adopted a policy that to make any sort of

14:40:59  25  objection at all, you had to get a permit and they said that --

14:41:02    1              THE COURT:  We have the same thing here with the city,
14:41:04    2  but that's not really applicable here.
14:41:10    3              Anything else that you want to say?
14:41:14    4              MR. BOLTON:  Say that again, your Honor.
14:41:15    5              THE COURT:  Would you like to say anything else?
14:41:19    6              MR. BOLTON:  No.
14:41:20    7              THE COURT:  Okay.
14:41:21    8              MR. BOLTON:  Thank you very much, your Honor.  I would
14:41:23    9  make one point.
14:41:24   10              Judge Barbara Crabb from up in the Western District,
14:41:29   11  she swore me in for the bar admission here, and she said who are
14:41:33   12  you going to be in front of, and I said Judge Sparks, and that
14:41:37   13  generated some instant recognition and she said to be sure and
14:41:40   14  send you her best regards.
14:41:42   15              THE COURT:  Well, thank you.
14:41:45   16              I do want to hear one argument.  It seems to me that
14:41:50   17  one of the things that is easily snatched out of is the dismissal
14:41:57   18  of Sneed on qualified immunity.  I think anybody would be
14:42:10   19  unreasonable to defy the governor if I put him in the context of
14:42:17   20  a police officer who's been given an order or city ordinance
14:42:22   21  that's wrong and he acts in compliance with that, I'd be letting
14:42:28   22  him out, you know, in any personal capacity.  So you want to
14:42:34   23  argue that point anywhere?
14:42:35   24              MR. BOLTON:  You know, the premise of that is that if
14:42:38   25  somebody higher up in the chain of command tells me to do

14:42:42  1   something that violates fully established constitutional rights,

14:42:48  2   that as long as I'm following orders, that I'm shielded, and I

14:42:53  3   don't think that is the premise of qualified immunity.  The

14:42:57  4   question is not whether or not I was acting at the direction of

14:43:01  5   someone else, but whether or not I had the -- at least the

14:43:04  6   authority to say no and whether or not the law was fully

14:43:06  7   established that's being raised.

14:43:10  8            THE COURT:  Well, I don't know of any law that's going

14:43:12  9   to embrace this situation.  Again, I wouldn't have invited y'all

14:43:16  10  here.

14:43:16  11           But I find that he's not acting unreasonably when he is

14:43:23  12  following the head of the committee that he's on, who happens to

14:43:32  13  be the governor and closing the -- I just didn't think that was a

14:43:40  14  real tough issue, and I will be dismissing Mr. Sneed in his

14:43:47  15  personal capacity.

14:43:50  16           MR. BOLTON:  Anything further from me, your Honor?

14:43:52  17           THE COURT:  No.  You're doing fine.  Thanks.  I like

14:43:54  18  your tie, by the way.

14:43:56  19           MR. BOLTON:  Thank you very much.

14:44:02  20           THE COURT:  You see you've already won part.

14:44:06  21           MS. MACKIN:  I just wanted to flag a couple of

14:44:09  22  additional things for the Court's consideration.

14:44:13  23           What I think can sometimes get lost in this body of law

14:44:17  24  is the idea that this is not just a one-way rachet.  It's not

14:44:24  25  just a dichotomy between purely private speech where you can say

| | | |
|---|---|---|
| 14:44:29 | 1 | pretty much anything you want and -- |
| 14:44:31 | 2 | THE COURT:  It's in the middle. |
| 14:44:33 | 3 | MS. MACKIN:  And those are nuanced analyses.  There's a |
| 14:44:37 | 4 | nonpublic forum analysis, which if the Court is disinclined to |
| 14:44:42 | 5 | conclude that this is government speech, at the very least, |
| 14:44:46 | 6 | because these exhibits are -- there's only two spots where you |
| 14:44:51 | 7 | can put them.  They're not open to anybody for this type of |
| 14:44:57 | 8 | conduct that -- but it's actually subject to the nonpublic forum |
| 14:45:01 | 9 | analysis, which does allow for consideration of content but not |
| 14:45:06 | 10 | viewpoint. |
| 14:45:09 | 11 | So if it's not government speech, at the very least, |
| 14:45:13 | 12 | this is a nonpublic forum where we can exclude speech about |
| 14:45:17 | 13 | hitting cats in the head with sledgehammers or a speech that |
| 14:45:21 | 14 | appropriates sincerely held religious views and presents them in |
| 14:45:26 | 15 | a way that is offensive to some people. |
| 14:45:34 | 16 | THE COURT:  Okay.  You said something that can't be in |
| 14:45:37 | 17 | the papers and, of course, counsel haven't been able to go over |
| 14:45:42 | 18 | there.  If you get a chance, you ought to go to the capitol. |
| 14:45:46 | 19 | It's really a beautiful building.  That's not in the papers what |
| 14:45:53 | 20 | limited access the state gives to others.  I happen to know |
| 14:46:00 | 21 | because I've lived here a long time. |
| 14:46:03 | 22 | And that's why it's very difficult in Rule 12 motions |
| 14:46:08 | 23 | created by the Supreme Court, which means that it takes three to |
| 14:46:14 | 24 | four months before you can get issue in these cases that they |
| 14:46:20 | 25 | have become semi-summary judgments.  I don't want a summary |

14:46:27   1   judgment.  If I was going to put you to trial on this issue, it

14:46:32   2   would be in February of 2018.  I'm booked until then.  My docket

14:46:37   3   is full until then.

14:46:40   4          So I want y'all to proceed with summary judgments to

14:46:45   5   make the record however you wish it, and I'll -- I'm going to

14:46:59   6   give each of you 60 days to file motions for summary judgment and

14:47:04   7   30 days thereafter to respond, if you wish, to the other summary

14:47:14   8   judgments.  And then, I will make a determination which you can

14:47:20   9   then take it to the Fifth Circuit and beyond.  You know, I'm just

14:47:26   10  an elevator man.  But I don't know that you need 60 days, but I

14:47:34   11  also know every time I give a lawyer 30 days, they ask for a

14:47:37   12  little bit more.  So 60 is the limit.

14:47:40   13         Both of you file -- I'll give you an order on it.  Both

14:47:44   14  of you file at a certain date and then, respond in 30 days, and

14:47:48   15  then, we'll get it up.  The only substantive decision I'm going

14:47:55   16  to make is -- and I'll make it here so I'm not going to give you

14:47:58   17  an opinion on it.  Just an order.  I don't think there's any

14:48:02   18  question that Mr. Sneed under the pleadings is entitled to

14:48:07   19  qualified immunity.

14:48:09   20         And I thank you both for having patience and good

14:48:13   21  senses of humor.  This unfortunately is so typical of a busy

14:48:19   22  court to have this kind of question come up.  It's important.  I

14:48:23   23  understand that.  But it takes a lot of time away from the other

14:48:29   24  cases that are more traditionally litigation.

14:48:36   25         MS. MACKIN:  Your Honor, if I just may ask.

14:48:37  1          THE COURT:  Time that I just don't have.  Yeah.

14:48:40  2          MS. MACKIN:  We have a reply in support of a motion to

14:48:41  3    dismiss for which we obtained an extension and it was --

14:48:43  4          THE COURT:  Just forget it.

14:48:45  5          MS. MACKIN:  Okay.

14:48:46  6          THE COURT:  Forget it.  I'll promise not to read it if

14:48:48  7    you won't file it.

14:48:50  8          MS. MACKIN:  We're agreed.

14:48:52  9          THE COURT:  Okay.  I'm in recess.

         10          (End of proceedings.)

         11

         12

         13

         14

         15

         16

         17

         18

         19

         20

         21

         22

         23

         24

         25

```
1                          * * * * * *

2

3

4    UNITED STATES DISTRICT COURT)

5    WESTERN DISTRICT OF TEXAS    )

6

7       I, LILY I. REZNIK, Certified Realtime Reporter, Registered

8    Merit Reporter, in my capacity as Official Court Reporter of the

9    United States District Court, Western District of Texas, do

10   certify that the foregoing is a correct transcript from the

11   record of proceedings in the above-entitled matter.

12      I certify that the transcript fees and format comply with

13   those prescribed by the Court and Judicial Conference of the

14   United States.

15      WITNESS MY OFFICIAL HAND this the 29th day of November, 2017.

16

17

18                              /s/Lily I. Reznik
                                LILY I. REZNIK, CRR, RMR
19                              Official Court Reporter
                                United States District Court
20                              Austin Division
                                501 W. 5th Street, Suite 4153
21                              Austin, Texas 78701
                                (512)391-8792
22                              Certification No. 4481
                                Expires:  12-31-18
23

24

25
```