# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

April 3, 2020

Lyle W. Cayce
Clerk

No. 18-50610

FREEDOM FROM RELIGION FOUNDATION, INCORPORATED,

Plaintiff - Appellee Cross - Appellant

v.

GREG ABBOTT GOVERNOR OF THE STATE OF TEXAS, Chairman of the
State Preservation Board; ROD WELSH, Executive Director of Texas State
Preservation Board,

Defendants - Appellants Cross - Appellees

Appeals from the United States District Court
for the Western District of Texas

Before DAVIS, GRAVES, and HIGGINSON, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:

Texas Governor Greg Abbott and Texas State Preservation Board
Executive Director Rod Welsh appeal a district court judgment declaring that
they violated the First Amendment rights of Freedom From Religion
Foundation, Incorporated ("FFRF"). However, appellants do not challenge the
merits of the district court's finding that they violated FFRF's First
Amendment rights by engaging in viewpoint discrimination. Rather, they
argue, based on principles of sovereign immunity, that the district court lacked
jurisdiction to enter retrospective relief against them. They further argue that

No. 18-50610

there is no longer jurisdiction to enter prospective relief because the controversy is not ongoing. FFRF cross-appeals the district court's failure to grant prospective injunctive relief and the district court's summary judgment dismissal of FFRF's unbridled discretion First Amendment claims against Governor Abbott and Mr. Welsh.

We find that the district court had jurisdiction to entertain this suit. FFRF sought prospective relief, and there was, and still is, a live controversy between the parties. However, the district court did not have jurisdiction to enter a retrospective declaratory judgment. Therefore, we VACATE the judgment and REMAND to the district court to consider FFRF's request for injunctive relief and enter appropriate prospective relief for FFRF. Additionally, we REVERSE the district court's grant of summary judgment on FFRF's unbridled discretion claims, clarify the appropriate application of the unbridled discretion doctrine in the context of a limited public forum, and REMAND for the district court to apply that standard in the first instance.

I

The Texas State Preservation Board ("the Board") is a state agency that preserves and maintains the Texas Capitol and its grounds. TEX. GOV'T CODE § 443.007(a)(1). Governor Abbott is the chairman of the Board, which allows private citizens to display exhibits within the Texas Capitol building. TEX. GOV'T CODE § 443.004(a); TEX. ADMIN. CODE § 111.13. Each exhibit application must be sponsored by the Governor, the Lieutenant Governor, a member of the Texas Senate, or a member of the Texas House of Representatives. TEX. ADMIN. CODE § 111.13. Each exhibit must also serve a "public purpose," defined as:

> The promotion of the public health, education, safety, morals, general welfare, security, and prosperity of all of the inhabitants or residents within the state, the sovereign powers of which are exercised to promote such public purpose or public business. The chief test of what constitutes a public purpose is that the public

No. 18-50610

generally must have a direct interest in the purpose and the community at large is to be benefitted. This does not include activities which promote a specific viewpoint or issue and could be considered lobbying. Political rallies, receptions, and campaign activities are prohibited in the public areas of the Capitol.

*Id.*

FFRF is a non-profit organization that advocates for the separation of church and state and educates on matters of nontheism. On July 20, 2015, after FFRF learned that a Christian nativity scene had been approved by the Board and displayed in the Texas State Capitol, FFRF submitted an application to the Board regarding a Bill of Rights nativity exhibit. The application requested that the exhibit be displayed in the Texas Capitol building from December 18, 2015 to December 23, 2015. The application was sponsored by Texas Representative Donna Howard, and it included the following "artist's mockup and diagram" of the proposed display, which depicts Benjamin Franklin, Thomas Jefferson, George Washington, and the Statute of Liberty gathered around a manger containing the Bill of Rights.

No. 18-50610



The display was to be accompanied by a banner reading, "Happy Winter Solstice / At this Season of the Winter Solstice, we honor reason and the Bill of Rights (adopted December 15, 1791) / Keep State & Church Separate / On Behalf of Texas Members of the Freedom From Religion Foundation." According to the application, the exhibit had several purposes: "[t]o educate the public," to "celebrate the 224th anniversary of the ratification of the Bill of Rights," "to celebrate the Winter Solstice on December 22," and "to educate the public about the religious and nonreligious diversity within the State." The Board approved the application, and, at the request of the Capitol Events and Exhibits Coordinator, the following language was added to the banner: "Private display, not endorsed by the state."

FFRF's exhibit was displayed in the Texas Capitol building from December 18, 2015 to December 22, 2015. The day before the display was to be taken down, Governor Abbott sent a letter to then Executive Director of the Board John Sneed urging him to "remove this display from the Capitol

4

No. 18-50610

immediately." The letter explained that the exhibit was inappropriate for display because "[s]ubjecting an image held sacred by millions of Texans to the Foundation's tasteless sarcasm does nothing to promote the morals and the general welfare," "the exhibit promotes ignorance and falsehood insofar as it suggests that George Washington, Benjamin Franklin, and Thomas Jefferson worshipped (or would worship) the bill of rights in the place of Jesus," and "it is hard to imagine how the general public *ever* could have a direct interest in mocking others' religious beliefs." Mr. Sneed removed the exhibit that same day.

On July 21, 2016, FFRF submitted another exhibit application that was identical to the previous application. On August 8, 2016, Mr. Sneed stated that "any application to display the same exhibit which was removed last year will be denied for failure to satisfy the public purpose requirement." Citing to the letter from Governor Abbott, Mr. Sneed explained that the exhibit does not promote a public purpose because "the exhibit purposefully mocked Christians and Christianity by crudely satirizing one of the most sacred symbols of the Christian faith."

In February 2016, FFRF filed a complaint against Governor Abbott and Mr. Welsh in their individual and official capacities, alleging: (1) a free-speech claim under the First Amendment; (2) an equal protection claim under the Fourteenth Amendment; (3) a claim under the Establishment Clause of the First Amendment; (4) a claim of unbridled discretion under the First Amendment; and (5) a due process claim under the Fourteenth Amendment.[1] FFRF sought declaratory and injunctive relief, including a declaration "that the criteria to approve exhibits for display in the State Capitol, facially and/or as applied by the Defendants, violate" the First Amendment and an injunction

---

[1] The complaint was amended in May 2016.

No. 18-50610

preventing "the Defendants from excluding the Plaintiff's exhibit at issue from future display."

On June 21, 2016, the district court dismissed the claims against Mr. Welsh in his individual capacity on qualified immunity grounds. On December 20, 2016, the district court granted Governor Abbott and Mr. Welsh summary judgment on FFRF's equal protection, due process, and unbridled discretion claims. On October 13, 2017, the district court granted FFRF summary judgment on its viewpoint discrimination First Amendment claims against Governor Abbott and Mr. Welsh in their official capacities and dismissed the Establishment Clause claim against Governor Abbott in his individual capacity on qualified immunity grounds. The district court found that there remained a material dispute of fact as to FFRF's Establishment Clause claims against Governor Abbott and Mr. Welsh in their official capacities and FFRF's viewpoint discrimination First Amendment claim against Governor Abbott in his individual capacity.

On May 11, 2018, the parties filed a joint stipulation of voluntary dismissal as to the remaining claims. The court dismissed the remaining claims on May 14, 2018 and entered a final judgment on June 19, 2018. In relevant part, the final judgment stated:

> IT IS ORDERED, ADJUDGED, and DECREED that judgment is granted in favor of FFRF on FFRF's First Amendment freedom of speech claim; and
>
> IT IS FURTHER DECLARED that Defendants violated FFRF's First Amendment rights and engaged in viewpoint discrimination as a matter of law when the FFRF's exhibit was removed from the Texas Capitol building under the circumstances of this case.

The parties timely appealed and cross-appealed.

No. 18-50610

II

"We review questions of federal jurisdiction de novo." *Envtl. Conservation Org. v. City of Dallas*, 529 F.3d 519, 524 (5th Cir. 2009). This includes questions of sovereign immunity, *Moore v. La. Bd. of Elementary & Secondary Educ.*, 743 F.3d 959, 963 (5th Cir. 2014), and mootness, *Envtl. Conservation Org.*, 529 F.3d at 524. We also review the district court's summary judgment dismissal de novo, employing the same standard used by the district court. *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

III

We begin by addressing jurisdiction. Governor Abbott and Mr. Welsh argue that the district court's declaratory judgment is retrospective and therefore barred by sovereign immunity. They further argue that there is no longer jurisdiction to enter prospective relief because the controversy is not ongoing. FFRF argues that the declaratory judgment "operates effectively as prospective relief against ongoing misconduct" and is therefore not barred by sovereign immunity. FFRF also cross-appeals the district court's failure to grant prospective injunctive relief.

"State sovereign immunity is a fundamental aspect of the sovereignty that the states enjoyed before the ratification of the Constitution and the Eleventh Amendment, and it was preserved intact by the Constitution." *Meyers ex rel. Benzing v. Texas*, 410 F.3d 236, 240 (5th Cir. 2005). In most cases, Eleventh Amendment sovereign immunity deprives federal courts of jurisdiction to hear private suits against states. *Warnock v. Pecos Cty.*, 88 F.3d 341, 343 (5th Cir. 1996). However, the Supreme Court has recognized several exceptions to Eleventh Amendment immunity. A state may waive its sovereign

7

No. 18-50610

immunity "at its pleasure," and, in some circumstances, "Congress may abrogate it by appropriate legislation." *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253–54 (2011).

The Supreme Court's holding in *Ex parte Young*, 209 U.S. 123 (1908), provides a third exception. Under *Ex parte Young*, a litigant may sue a state official in his official capacity as long as the lawsuit seeks prospective relief to redress an ongoing violation of federal law. *NiGen Biotech, L.L.C. v. Paxon*, 804 F.3d 389, 394–95 (5th Cir. 2015). The applicability of this exception has been "tailored to conform as precisely as possible to those specific situations in which it is 'necessary to permit the federal courts to vindicate federal rights and hold state officials responsible to the supreme authority of the United States.'" *Papasan v. Allain*, 478 U.S. 265, 277 (1986) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 105 (1984)). Therefore, in order to fall within the *Ex parte Young* exception, a suit must: (1) be brought against state officers who are acting in their official capacities; (2) seek prospective relief to redress ongoing conduct; and (3) allege a violation of federal, not state, law. *NiGen Biotech, L.L.C.*, 804 F.3d at 394–95.

FFRF's suit falls within the *Ex Parte Young* exception to sovereign immunity. FFRF sued Governor Abbott and Mr. Welsh in their official capacities. FFRF alleged violations of the federal Constitution. And FFRF sought prospective declaratory and injunctive relief, including a declaration "that the criteria to approve exhibits for display in the State Capitol, facially and/or as applied by the Defendants, *violate*" the First Amendment and an injunction preventing "the Defendants from excluding the Plaintiff's exhibit at issue *from future display*" (emphasis added).

Moreover, FFRF established an ongoing violation of federal law. Governor Abbott and Mr. Welsh do not contest that Mr. Sneed's letter to FFRF, stating that "any application to display the same exhibit which was removed

8

No. 18-50610

last year will be denied for failure to satisfy the public purpose requirement," initially established the ongoing nature of the violation. Rather, they contend that the Supreme Court's decision in *Matel v. Tam*, 137 S. Ct. 1744 (2017), constituted a sea change in the law, obligating plaintiffs to provide new evidence illustrating the ongoing nature of the violation.

Even assuming that a sea change in the law would obligate FFRF to re-establish the ongoing nature of the violation, *Matel* did not constitute such a change. In *Matel*, the Court explained, "[w]e have said *time and again* that 'the public expression of ideas may not be prohibited merely because the ideas are themselves offensive to some of their hearers.'" *Id.* at 1763 (emphasis added) (quoting *Street v. New York*, 394 U.S. 576, 592 (1969)). For this proposition, in addition to *Street*, the Court cited eleven previous Supreme Court decisions. *Id. Matel* clarified the contours of the First Amendment; it did not constitute a sea change in the law.

Governor Abbott and Mr. Welsh can also be understood as arguing that *Matel* has mooted the case. Because it is now clear that speech cannot be prohibited on the basis of offensiveness, they assert that the complained-of conduct will not recur. "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982)). "A defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Already, LLC*, 568 U.S. at 91 (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000)).

Governor Abbott and Mr. Welsh have only presented arguments through counsel that their behavior will change post-*Matel*. Importantly, they have not

No. 18-50610

retracted their previous statement to FFRF that future applications for the relevant display will be denied. While we presume that counsel's representations on behalf of Governor Abbott and Mr. Welsh are made in good faith, our precedent requires that we view attempts to obtain a vacatur of relief "with a jaundiced eye." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 325 (5th Cir. 2009). Therefore, we find that the district court had jurisdiction to entertain the suit, and the controversy is ongoing.

The district court did not, however, have jurisdiction to award FFRF purely retrospective relief. *Papasan*, 478 U.S. at 278. In order to determine whether relief is permitted under the *Ex parte Young* exception, the court should look to the "substance rather than to the form of the relief sought," and consider the policies underlying the decision in *Ex parte Young*. *Id.* at 279. The backwards-looking, past-tense declaratory judgment issued by the district court is "tantamount to an award of damages for a past violation of law, even though styled as something else." *Id.* at 278; *see also Green v. Mansour*, 474 U.S. 64, 68–69 (1985) (finding that the Eleventh Amendment barred a claim for declaratory relief once the claim for injunctive relief was rendered moot). While it is true that the declaratory judgment could have some future effect by clarifying the contours of the First Amendment and deterring similar actions by the state, "compensatory or deterrence interests are insufficient to overcome the dictates of the Eleventh Amendment." *Green*, 474 U.S. at 68.

Therefore, we VACATE the judgment and REMAND for the district court to enter appropriate *prospective* relief for FFRF. FFRF argues that in addition to declaratory relief, it is entitled to injunctive relief. The district court never explicitly addressed FFRF's request. Because the issuing of injunctive relief "involv[es] some exercise of discretion by the district court . . ., we deem it advisable for the matter to be decided by the district court in the first instance" on remand. *Am. Bank & Trust Co. of Opelousas v. Dent*, 982 F.2d

10

No. 18-50610

917, 922 (5th Cir. 1993); *Peaches Entm't Corp. v. Entm't Repertoire Assocs., Inc.*, 62 F.3d 690, 693 (5th Cir. 1995) ("We review the trial court's granting or denial of permanent injunction for abuse of discretion.").

IV

FFRF also appeals the district court's summary judgment dismissal of its First Amendment unbridled discretion claims. FFRF argues that the Board's public purpose requirement violates the First Amendment on its face because it delegates overly broad discretion to government officials. Governor Abbott and Mr. Welsh contend that the district court did not err in finding that the definition of "public purpose" "provides the Board with a reasonable framework with which to accept or deny exhibit applications in the limited public forum context."

The First Amendment prohibits laws that "abridge[e] the freedom of speech." U.S. CONST. amend. I. However, "the government need not permit all forms of speech on property that it owns and controls." *Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 678 (1992). Rather, the Supreme Court "has adopted a forum analysis as a means of determining when the Government's interest in limiting the use of its property to its intended purpose outweighs the interest of those wishing to use the property for other purposes." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 800 (1985).

There are two broad categories of forums: (1) traditional and designated public forums and (2) limited public forums and nonpublic forums. *See Chiu v. Plano Indep. Sch. Dist.*, 260 F.3d 330, 344–47 (5th Cir. 2001); *see also Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 135 S. Ct. 2239, 2250–51 (2015); *Three Expo Events, L.L.C. v. City of Dallas*, 182 F.Supp.3d 614, 624 n.11 (N.D. Tex. 2016). Traditional public forums are places such as sidewalks, streets, and parks that have traditionally been devoted to assembly or debate. *Chiu*, 260 F.3d at 344. Designated public forums are places that the

11

No. 18-50610

government has designated for the same widespread use as traditional public forums. *Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747, 758 (5th Cir. 2010). Regulations on speech in traditional and designated public forums are subject to strict scrutiny review—they must be narrowly tailored to serve a compelling state interest. *Id.* Limited public forums are places that the government has opened for public expression of particular kinds or by particular groups. *Chiu*, 260 F.3d at 346. Nonpublic forums are forums that are not open for public communication by tradition or designation. *Id.* at 347. The government can restrict speech in a limited public forum or nonpublic forum as long as the restriction is (1) reasonable in light of the purpose served by the forum and (2) does not discriminate against speech on the basis of viewpoint. *Id.* at 346–47.

The Supreme Court has dealt with a number of facial challenges to prior restraints on speech. "Facial invalidation is, manifestly, strong medicine." *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 580 (1998) (internal quotation marks omitted). Nevertheless, the Court has long held that "law[s] subjecting the exercise of First Amendment freedoms to the prior restraint of a license, without narrow, objective, and definite standards to guide the licensing authority, [are] unconstitutional." *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 150–51 (1969). "[T]he constitution requires . . . neutral criteria to [e]nsure that the licensing decision is not based on the content or viewpoint of the speech being considered." *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 760 (1988). Closely related to viewpoint discrimination, this is often referred to as the unbridled discretion doctrine. *See id.* at 758.

Unbridled discretion runs afoul of the First Amendment because it risks self-censorship and creates proof problems in as-applied challenges. *Id.* at 757–59. "[T]he mere existence of the licensor's unfettered discretion, coupled with the power of prior restraint, intimidates parties into censoring their own

No. 18-50610

speech, even if the discretion and power are never actually abused." *Id.* at 757. Moreover, even where self-censorship is avoided, "the absence of express standards makes it difficult to distinguish, 'as applied,' between a licensor's legitimate denial of a permit and its illegitimate abuse of censorial power." *Id.* at 758. Any "eventual relief may be 'too little and too late.'" *Id.*

Under the unbridled discretion doctrine, the Supreme Court has struck down prior restraints such as: (1) a licensing scheme limiting public demonstrations on city streets to only those that benefit "public welfare, peace, safety, health, decency, good order, morals or convenience," *Shuttlesworth*, 394 U.S. at 149–50, (2) an ordinance authorizing the mayor to evaluate applications for the installation of news racks on public property without any stated criteria, *City of Lakewood*, 486 U.S. at 753, 769, and (3) a permitting scheme for parades, assemblies, and demonstrations that required payment of a fee based on the expenses incident to the maintenance of "public order," *Forsyth Cty. v. Nationalist Movement*, 505 U.S. 123, 126–27, 132–33 (1992).

The Supreme Court has not explicitly elaborated the unbridled discretion doctrine in a limited public forum or a nonpublic forum case. Nor do the parties identify that we have. Among out sister circuits, however, "there is broad agreement that, even in limited and nonpublic forums, investing governmental officials with boundless discretion over access to the forum violates the First Amendment." *Child Evangelism Fellowship of MD, Inc. v. Montgomery Cty. Pub. Sch.*, 457 F.3d 376, 386 (4th Cir. 2006); *see also Amidon v. Student Assoc. of the State Univ. of NY at Albany*, 508 F.3d 94, 102–05 (2d. Cir. 2007); *Child Evangelism Fellowship of SC v. Anderson Sch. Dist. Five*, 470 F.3d 1062, 1069–70 (4th Cir. 2006) (striking down fee waiver policy based on "the district's best interest"); *Am. Civil Liberties Union v. Mote*, 423 F.3d 438, 445–46 (4th Cir. 2005); *Southworth v. Bd. of Regents*, 307 F.3d 566, 575–80 (7th Cir. 2002); *DeBoer v. Vill. of Oak Park*, 267 F.3d 558, 572–74 (7th Cir.

No. 18-50610

2001) (striking down policy requiring events to "benefit[] the public as a whole"); *Roach v. Stouffer*, 560 F.3d 860, 869–70 (8th Cir. 2009); *Lewis v. Wilson*, 253 F.3d 1077, 1078–81 (8th Cir. 2001) (striking down policy allowing denial of custom license plates contrary to "public policy"); *Kaahumanu v. Hawaii*, 682 F.3d 789, 805–07 (9th Cir. 2012); *Atlanta Journal & Constitution v. City of Atlanta Dept. of Aviation*, 322 F.3d 1298, 1310–11 (11th Cir. 2003); *Sentinel Commc'ns Co. v. Watts*, 936 F.2d 1189, 1196–1200; (11th Cir. 1991); *Griffin v. Sec'y of Veterans Affairs*, 288 F.3d 1309, 1321–25 (Fed. Cir. 2002); *Preminger v. Sec'y of Veterans Affairs*, 517 F.3d 1299, 1308–10 (Fed. Cir. 2008). Indeed, the dangers associated with unbridled discretion are no less present in limited public forums, and Governor Abbott and Mr. Welsh do not argue to the contrary.

That is not to say, however, that the unbridled discretion analysis will be the same for all forum categories. The considerations underlying the adoption of a forum-specific analysis in the as-applied context are pertinent to the facial, unbridled discretion context. In the as-applied context, we have explained that:

> [i]f, simply by opening a facility for limited public discourse, the government were to designate a public forum, the regulation of which would be subject to strict scrutiny, the government might elect not to open such property for any public discourse. That result would conflict with the broad First Amendment policy of encouraging public discourse on issues of community interest.

*Chiu*, 260 F.3d at 347 (citing *Ark. Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 681 (1998)). Similarly, where space, time, or other constraints necessitate a pre-approval scheme, if, simply by opening a facility for limited public discourse, the government subjected itself to the same unbridled discretion analysis that applies in the traditional public forum context, it may elect not to open such property for any public discourse.

No. 18-50610

The district court agreed. First, relying primarily on the Fourth Circuit's opinion in *Child Evangelism Fellowship of Maryland*, it concluded that the unbridled discretion doctrine applies to limited public forums. *See* 457 F.3d at 387. Then, citing the Federal Circuit's *Griffin* opinion, it explained that because discretionary access is a defining characteristic of a limited public forum, the government should be afforded more discretion to use prior restraints on speech in limited public forums than in traditional public forums. *See* 288 F.3d at 1324. The district court then concluded that "the 'public purpose' definition and test provides the Board a reasonable framework with which to accept or deny exhibition applications in the limited public forum context."

To the extent the district court only considered the reasonableness of the public purpose test, this approach falls short, as the Fourth Circuit persuasively explained in *Child Evangelism of Maryland*. There, the court considered whether a school district's take-home flyer program violated the unbridled discretion doctrine. 457 F.3d at 378. The policy implementing the program required that flyers be sponsored or endorsed by one of five groups and approved by the school district. *Id.* at 379–80. The school district also retained the power to withdraw approval if it determined that a flyer "would undermine the intent of [the policy] . . . or could reasonably be predicted to cause substantial disruption of, or material interference with, school activities." *Id.* at 380. Under the policy, the plaintiffs were denied the ability to distribute flyers informing parents about their "Good News Club" meetings, at which children would sing songs, play games, learn Bible stories, and pray after school hours. *Id.* at 378–79.

The Fourth Circuit found that it need not determine what type of forum the take-home flyer program was because, even assuming the program was a nonpublic forum, the district court had erred in determining that it was subject

No. 18-50610

only to a test of reasonableness. *Id.* at 383–84. Relying on a number of Supreme Court cases, the court noted that restrictions on speech in limited public forums and nonpublic forums must be both reasonable *and* viewpoint neutral. *Id.* at 384 (citing *Cornelius*, 473 U.S. at 806; *Perry Educ. Ass'n v. Perry Local Educators Ass'n*, 460 U.S. 37, 46 (1983); *Finley*, 524 U.S. at 615 n.10). The court held that "viewpoint neutrality require[s] not just that a government refrain from explicit viewpoint discrimination, but also that it provide adequate safeguards to protect against the improper exclusion of viewpoints." *Id.* at 384. Ultimately, the court struck down the take-home flyer program policy, finding that it "utterly fail[ed] to provide adequate protection for viewpoint neutrality." *Id.* at 389.

Other circuits agree that the possibility of viewpoint discrimination is key to deciding unbridled discretion claims in the context of limited or nonpublic forums. *See, e.g.*, *Southworth*, 307 F.3d at 575–80; *Lewis*, 253 F.3d at 1080; *Roach*, 560 F.3d at 869; *Kaahumanu*, 682 F.3d at 806; *see also Atlanta Journal & Constitution*, 322 F.3d at 1311. To the extent that the Federal Circuit's opinion in *Griffin* introduced uncertainty on this point, the Federal Circuit recently clarified that application of the unbridled discretion doctrine in the nonpublic forum context requires the court to consider reasonableness *and* whether the regulation could be used to engage in "undetectable viewpoint discrimination." *Preminger*, 517 F.3d at 1303.

We agree that a reasonableness test would be insufficient. Consistent with Supreme Court guidance on limited public forums and nonpublic forums, *Cornelius*, 473 U.S. at 806; *Perry Educ. Ass'n*, 460 U.S. at 46, and adhering to our precedent, *Chiu*, 260 F.3d at 349–50 (citing *Hobbs v. Hawkins*, 968 F.2d 471, 481 (5th Cir. 1992)), we hold that prior restraints on speech in limited public forums must contain neutral criteria sufficient to prevent (1) censorship that is unreasonable in light of the purpose served by the forum *and* (2)

16

No. 18-50610

viewpoint-based censorship. Because the district court only considered whether the public purpose criteria at issue in this case was reasonable, we REVERSE and REMAND for the district court to apply the correct unbridled discretion analysis in the first instance.[2]

## V

The judgment of the district court is VACATED, and the district court's grant of summary judgment on FFRF's unbridled discretion claims is REVERSED. The case is REMANDED for the district court to consider FFRF's request for injunctive relief, enter appropriate prospective relief for FFRF, and apply the standards articulated herein to FFRF's unbridled discretion claims.

---

[2] In doing so, the district court "must consider the [government]'s authoritative construction[]" of the standard. *Forsyth Cty.*, 505 U.S. at 131. However, "the doctrine forbidding unbridled discretion disallows" a presumption that the government will "act in good faith and adhere to standards absent from the ordinance's face." *City of Lakewood*, 486 U.S. at 770.

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

No. 18-50610

---

D.C. Docket No. 1:16-CV-233

United States Court of Appeals
Fifth Circuit

**FILED**

April 3, 2020

Lyle W. Cayce
Clerk

FREEDOM FROM RELIGION FOUNDATION, INCORPORATED,

　　　　Plaintiff - Appellee Cross - Appellant

v.

GREG ABBOTT GOVERNOR OF THE STATE OF TEXAS, Chairman of the State Preservation Board; ROD WELSH, Executive Director of Texas State Preservation Board,

　　　　Defendants - Appellants Cross - Appellees

Appeals from the United States District Court for the
Western District of Texas

Before DAVIS, GRAVES, and HIGGINSON, Circuit Judges.

### J U D G M E N T

This cause was considered on the record on appeal and was argued by counsel.

It is ordered and adjudged that the judgment of the District Court is vacated and reversed, and the cause is remanded to the District Court for further proceedings in accordance with the opinion of this Court.

IT IS FURTHER ORDERED that each party to bear it's own costs on appeal.

Certified as a true copy and issued
as the mandate on Jun 01, 2020

Attest: *Lyle W. Cayce*
Clerk, U.S. Court of Appeals, Fifth Circuit

# *United States Court of Appeals*
### FIFTH CIRCUIT
### OFFICE OF THE CLERK

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE,**
**Suite 115**
**NEW ORLEANS, LA 70130**

June 01, 2020

Ms. Jeannette Clack
Western District of Texas, Austin
United States District Court
501 W. 5th Street
Austin, TX 78701-0000

     No. 18-50610    Freedom From Religion Fdn Inc. v. Greg
                      Abbott, et al
                      USDC No. 1:16-CV-233

Dear Ms. Clack,

Enclosed is a copy of the judgment issued as the mandate and a
copy of the court's opinion.

                      Sincerely,

                      LYLE W. CAYCE, Clerk

                      By: _____
                      Mary Frances Yeager, Deputy Clerk
                      504-310-7686

cc:  Mr. Richard L. Bolton
     Mr. Samuel Troxell Grover
     Mr. Kyle Douglas Hawkins
     Ms. Lanora Christine Pettit