UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| FREEDOM FROM RELIGION | § | |
| FOUNDATION, INC. | § | |
|     Plaintiff, | § | |
| | § | |
| -vs- | § | CASE NO. 1-16: CV-00233 |
| | § | |
| GOVERNOR GREG ABBOTT, | § | |
| And ROD WELSH, Executive Director of the | § | |
| Texas State Preservation Board, | § | |
|     Defendants. | § | |

## PLAINTIFF'S BRIEF REGARDING COURT OF APPEALS MANDATE UPON REMAND

**I.    FFRF is Entitled to Prospective Relief on its First Amendment Freedom of Speech Claim.**

The mandate from the Fifth Circuit Court of Appeals directs "the district court to enter appropriate *prospective* relief for FFRF."  The Court of Appeals reached its conclusion based upon the Defendants' violation of FFRFs' freedom of speech rights under the First Amendment, which violation is continuing.  The Court of Appeals decision is now the controlling law of the case.

The mandate rule, a corollary of the law-of-the-case doctrine, requires the district court to effect the Court of Appeals' mandate.  *Gen Universal Systems, Inc. vs. HAL, Inc.*, 500 F.3d. 444, 453 (5th Cir. 2004).  A district court on remand does not reexamine an issue of fact or law that has already been decided on appeal.  *United States vs. Teel*, 691 F.3d. 578, 582 (5th Cir. 2012).  The mandate rule also forecloses relitigation of issues expressly or impliedly decided by the appellate court, as well as issues decided by the district court but foregone on appeal.  *United States vs. Lee*, 358 F.3d. 315, 321 (5th Cir. 2004).

In accordance with the Court of Appeals' mandate, FFRF submits the Proposed Order accompanying this brief requesting appropriate prospective relief, including declaratory and injunctive relief.  (Exhibit A.)

FFRF is entitled, in the first instance, to prospective declaratory relief that the Defendants violate FFRF's First Amendment rights and engage in viewpoint discrimination as a matter of law, in violation of 42 USC § 1983, by excluding FFRF's Bill of Rights and Winter Solstice exhibit from display in the Texas State Capitol building. *Freedom From Religion Foundation, Inc. vs. Abbott*, 955 F.3d. 417, 426 (5th Cir. 2020).  The declaratory relief previously ordered by this court was deemed incomplete by the Court of Appeals solely because it did not address the ongoing and continuing violation of FFRF's First Amendment Rights by the Defendants. *Id*.  Accordingly, FFRF proposes similar, but unambiguously prospective, declaratory relief in the Proposed Order.

In addition, prospective declaratory relief is warranted in this case where the Defendants apply a subjective and unconstrained standard of acceptability to FFRF's exhibit.  According to the former Executive Director of the State Preservation Board, the rules for approving displays "are fairly broad and subject to interpretation.  I have an interpretation.  Anyone else can have a different interpretation.  In this case, the individual who is elected by the people of the State of Texas [Governor Abbott], who has run statewide for 5 or 6 times, maybe 7, who probably has visited every county in the State of Texas, he knows the people of Texas and their beliefs and their sensitivities far more than I do. Far more.  And that was major thought process of mine.  This man, he – he knows Texas."  (Sneed Depo., DKT. 65-1 at 49: 10-22.)  Such a free-wheeling approach to the approval of exhibits in the State Capitol building requires the prospective declaration that viewpoint discrimination based upon the message or perceived message of an exhibit violates FFRF's First Amendment speech rights.

FFRF further requests that the court order the Defendants to allow FFRFs' exhibit to be displayed in the Texas State Capitol building without regard to its message or perceived message. Such relief is appropriate and narrowly designed to end a continuing violation of the law. *See Nelson vs. University of Texas at Dallas*, 535 F.3d. 318, 324 (5th Cir. 2008). Here, FFRFs' exhibit was improperly removed by the Defendants in violation of FFRF's First Amendment rights. Ordering the Defendants to now allow FFRFs' exhibit without regard to its message or perceived message is an appropriate remedy for the Defendants' continuing violation of FFRF's First Amendment Rights.

FFRF also requests prospective injunctive relief prohibiting the Defendants from excluding, removing, or denying FFRF's right to display its exhibit in the Texas State Capitol building. FFRF is entitled to an injunction in this case as prospective relief to end Defendants' continuing denial of FFRF's constitutional rights.

In the case of First Amendment transgressions, injunctive relief is the norm, rather than the exception. The courts apply a four-part test in determining whether to grant a permanent injunction. The party seeking an injunction must show: (1) success on the merits; (2) that the failure to grant the injunction will result in irreparable injury; (3) that the injury outweighs any damage that the injunction will cause the opposing party; and (4) that the injunction will not disserve the public interest. *See Bode vs. Kenner City*, 303 F.Supp.3d 44, 507 (E.D. La. 2018).

FFRF obviously meets the first element necessary to warrant a permanent injunction, *i.e.*, FFRF prevailed on the merits. As for the second element, the Supreme Court has held that the loss of First Amendment rights *per se* constitutes irreparable harm, which the Court of Appeals also recognized in *Opulent Life Church vs. City of Holly Springs, Mississippi*, 697 F.3d 279, 295 (5th Cir. 2012). "Loss of First Amendment freedoms, even for minimal periods of time, constitutes

irreparable injury." *Ingebretsen vs. Jackson Pub. Sch. Dist.*, 88 F.3d. 274, 280 (5th Cir. 1996). Thus, failure to enjoin the Defendants from continuing to deny FFRF its First Amendment rights will result in irreparable injury as a matter of law and, as the Court of Appeals recognized, the Defendants have declared their refusal to allow FFRF's display in the future.

As to the third element, in *Opulent Life Church*, 697 F.3d at 297, the Court of Appeals warned that a defendant "would need to present powerful evidence of harm to its interests to prevent the Plaintiff from meeting this requirement." In opposition to FFRF's prior motion for injunctive relief in this case, Governor Abbott presented no such evidence of harm to its interests that would outweigh the injury to FFRF. FFRF's proposed relief, moreover, is narrowly drawn to prevent future view-point discrimination.

Finally, as to the fourth permanent injunction element, in *Opulent Life Church*, the Court of Appeals held that "injunctions protecting First Amendment freedoms are always in the public interest." *Id.* at 298. *See also Ingebretsen vs. Jackson Pub. Sch. Dist.*, 88 F.3d 274, 280 (5th Cir. 1996) (determining that because the statute challenged in that case was unconstitutional, "the public interest was not disserved by an injunction preventing its implementation").

FFRF is entitled to injunctive relief in this First Amendment case as a matter of course. The Defendants, for their part, did not previously object to FFRF's entitlement to injunctive relief *per se*; instead, the Defendants objected on the basis of the court's merits determination, which they ultimately did not challenge on appeal. The Defendants also objected to the scope of FFRF's requested injunction, including as to purported time and space constraints. In reply, FFRF agreed that the scope of injunctive relief be limited "to generally applicable scheduling and space considerations." Because the content of FFRF's exhibit was the only basis for otherwise excluding the exhibit from display in the Texas State Capitol, the scope of FFRF's requested injunction was,

and is, otherwise appropriate, *i.e.,* that the Defendants be enjoined from excluding, denying or removing FFRF's exhibit from the Texas State Capitol in the future based upon its message or perceived message.

FFRF is entitled to the requested relief herein in order to end the Defendants' continuing violation of FFRF's First Amendment free speech rights.  The continuing violation of FFRF's constitutional rights, as well as FFRF's entitlement to prospective relief, is the law of the case under the mandate rule applicable to remanded cases from the Court of Appeals.  The relief requested by FFRF, moreover, is narrowly tailored to ending the Defendants' violation of FFRFs' rights.  FFRF accordingly requests the court to order such appropriate relief as directed by the Court of Appeals.

## II.    The State Preservation Board's "Public Purpose" Standard Impermissibly Allows for the Exercise of Unbridled Discretion.

The Court of Appeals reversed the grant of summary judgment dismissing FFRF's unbridled discretion claim and remanded to this court to apply standards articulated by the Court of Appeals.  The Court held "that prior restraints on speech in limited public forms must contain neutral criteria sufficient to prevent (1) censorship that is unreasonable in light of the purpose served by the form and (2) viewpoint-based censorship."  Application of this criteria by the district court should yield an unavoidable conclusion: The State Preservation Board's "public purpose" standard impermissibly allows for the exercise of unbridled discretion.

It is a fundamental First Amendment principle that prior restraints on speech bear a heavy presumption against constitutional validity. *FW/PBS, Inc. vs. City of Dallas*, 493 U.S. 215, 225 (1990). Thus, a regulation that "makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official—as by requiring a permit or license

which may be granted or withheld in the discretion of such official—is an unconstitutional censorship or prior restraint." *Shuttlesworth vs. City of Birmingham*, 394 U.S. 147, 151 (1969).

To avoid granting officials an unconstitutional amount of discretion, a law subjecting speech to the prior restraint of a permit—or other form of government approval as a precondition to speech—must set forth "narrow, objective, and definite standards to guide the licensing authority." *Id.* at 150–51. As the Fifth Circuit noted in this case, "the possibility of viewpoint discrimination is key to deciding unbridled discretion claims in the context of limited or nonpublic forums," *Freedom From Religion Found., Inc. vs. Abbott*, 955 F.3d 417, 429 (5th Cir. Apr. 3, 2020) (collecting cases), and thus, application of the unbridled discretion doctrine in the context of this case requires the court to consider "whether the regulation could be used to engage in 'undetectable viewpoint discrimination.'" *Id.* (citing *Preminger vs. Sec'y of Veterans Affairs*, 517 F.3d 1299, 1303 (Fed. Cir. 2008)).

The State Preservation Board's "public purpose" standard for approving or denying display applications lacks the requisite objective and definite guidelines necessary to prevent undetectable viewpoint discrimination. Standards that include only abstract language, such as requirements that exhibits may not "have a harmful effect upon the health or welfare of the general public" or "be detrimental to the welfare of the general public or to the aesthetic quality of the community" confer unconstitutional discretion. *Epona vs. County of Ventura*, 876 F.3d 1214, 1223 (9th Cir. 2017); *see also Shuttlesworth*, 394 U.S. at 151 ("There can be no doubt that the Birmingham ordinance, as it was written, conferred upon the City Commission virtually unbridled and absolute power . . . . For in deciding whether or not to withhold a permit, the members of the Commission were to be guided only by their own ideas of 'public welfare, peace, safety, health, decency, good order, morals or convenience.'") *Lewis vs. Wilson*, 253 F.3d 1077, 1080 (8th Cir. 2001) (striking down Missouri

regulation as providing unfettered discretion when state had authority to restrict personalized license plates bearing messages "contrary to public policy").

The Fifth Circuit has steadfastly adhered to the prohibition on prior restraints that lack specific and objective limiting standards, and which otherwise give the state unbridled discretion, inviting viewpoint discrimination. In *Texas Division, Sons of Confederate Veterans, Inc. vs. Vandergriff*, the Court concluded that abstract standards such as offensiveness impermissibly give the state unbridled discretion that allows for viewpoint discrimination. 759 F.3d 388, 398–99 (5th Cir. 2014) (*overruled on other grounds by Walker vs. Texas Divs., Sons of Confederate Veterans, Inc.*, 576 U.S. 200 (2015)). The Fifth Circuit's decision, moreover, was consistent and in lockstep with many other courts holding that standards which lack objective criteria present a "very real and substantial" danger that a defendant will exclude speech solely because of its viewpoint. *See United Food & Commercial Workers Union, Local 1099 vs. Southeast Ohio Regional Transit Authority*, 163 F.3d 341, 361–62 (6th Cir. 1998) (holding policy prohibiting "controversial" advertisements presented danger of viewpoint discrimination); *McCauley vs. Univs. of the Virgin Islands*, 618 F.3d 232, 248–49 (3rd Cir. 2010) (offensiveness standard impermissibly could be applied to cover any speech that offends someone); *Aubrey vs. City of Cincinnati*, 815 F.Supp. 1100, 1104 (S.D. Ohio 1993) (banner policy allowing only banners in "good taste" left too much discretion in decisionmaker without any standards); and *Montenegro vs. New Hampshire Division of Motor Vehicles*, 93 A.3d 290, 298 (N.H. 2014) ("offensive to good taste" standard is not susceptible of objective definition, thereby giving officials unbridled discretion to deny a vanity plate because it offends particular officials' subjective idea of what is "good taste").

The State Preservation Board's "public purpose" standard is precisely the type of unconstrained and indefinite standard that is constitutionally prohibited. Defendants argue that this

standard is sufficiently definite and objective so as to be "workable and manageable," but they provide no explanation as to how such a standard is narrow, objective, and definite. Merely saying it is so does not constitute a meaningful rebuttal argument. And while the principal evil the unbridled discretion doctrine is meant to address is *undetectable* viewpoint discrimination, in this case the record is replete with evidence of *actual* viewpoint discrimination when applying the public purpose requirement.

The record reveals that the "public purpose" requirement is entirely subjective and political as applied by the Defendants. The definition of a "public purpose" includes that "the public generally must have a direct interest in the purpose and the community at large is to be benefitted." 13 TEX. ADMIN. CODE § 111.13(a)(3). The requirement that "the public" have a direct interest in an applicant's speech and that "the community at large" will benefit has been interpreted by the Board and Governor Abbott as a proxy for excluding unpopular opinions. This interpretation of the requirement leads to both of the "two major First Amendment risks associated with unbridled licensing schemes" that necessitate courts "entertain[ing] an immediate facial attack on the law": "self-censorship by speakers" in order to "avoid being denied a license to speak" and "the difficulty of effectively detecting, reviewing, and correcting content-based censorship 'as applied.'" *City of Lakewood vs. Plain Dealer Pub Co.*, 486 U.S. 750, 759 (1988).

Governor Abbott demonstrated how he applies the "public purpose" requirement *in general* when he wrote his letter requesting the removal of FFRF's display. He wrote specifically, "it is hard to imagine how the general public *ever* could have a direct interest in mocking others' religious beliefs." (Gov. Abbott letter to State Preservation Bd., Dkt. 31-2 at 48 (emphasis in original.)  In other words, in the Governor's view, a display that mocks a religious belief will

*always* fail the "public purpose" requirement, not just when the standard is applied to FFRF's display.

Equally concerning is the evidence that Governor Abbott and the State Preservation Board have interpreted the public purpose requirement, with its "community at large" language, as a catch-all for censoring any speech that they believe would not meet with the approval of the majority of Texans. John Sneed, Director of the State Preservation Board at the time, testified that he removed FFRF's display from the capitol due to his deference to Governor Abbott, who he believed has "a better understanding of what the people of Texas think, what they believe than I do." (Sneed Depo., Dkt. 65-1 at 120:15–17.)   Sneed deferred to Governor Abbott's personal assessment despite the Board having initially approved the display and despite the Board having received zero complaints from the public about FFRF's display. (Davis Depo., Dkt. 52-1 at 56:15–21.)

Similarly, when asked about another aspect of the "public purpose" requirement, the requirement that displays promote "education," Sneed indicated that this too was a subjective test that takes into consideration how each display "affects people in different ways . . . one person gets one thing out of an exhibit and, you know, the person standing next to him gets something else out of it." (Sneed Depo., Dkt. 65-1 at 121:19–122:1.) Sneed also testified that the State Preservation Board's approval process involves an evaluation of whether a display involves "sensitive" speech. (Dkt. 65-1 at 127:10–19.) Indeed, Sneed attributed his "success at the preservation board," and his "long tenure," to his development of "a keen sense of what is a sensitive issue." (Dkt. 65-1 at 127:21–128:9.)

Robert Davis, the Board's Events and Exhibits Coordinator, who is primarily responsible for coordinating with display applicants, further testified that many applicants have self-censored

before formally applying, based on conversations with him about display requirements. (*See* Davis Depo., Dkt 52-1 at 89:2–12. ("[U]sually . . . the person who is inquiring will receive information from me about [ ] our rules up front . . . [and] the potential applicant will decide at that point if they want to pursue it further. So a lot of times by the time they actually get to completing an application and [ ] obtaining sponsorship, [ ] the writing is on the wall.")).

The record demonstrates that the State Preservation Board's public purpose requirement serves as a tool for discouraging speakers with unpopular viewpoints from applying, and discouraging any applicant from including "sensitive" speech in their applications. While speech on non-sensitive issues is routinely approved, when a "sensitive" topic is involved, approval is contingent on the subjective approval of a willing Official State Sponsor, the Board's subjective approval, and in FFRF's case, a third barrier in the Governor's individual approval.

The arbitrariness of the Defendants' application scheme is highlighted by the fact that the State Preservation Board, in the first instance, approved FFRF's display without any objection. Only after Governor Abbott assumed the bully pulpit did Executive Sneed retract the State Preservation Board's approval of FFRF's display, based on its supposed offensiveness. The Board's dramatic about-face, under pressure from Governor Abbott, demonstrates the subjective nature of the standard on which the Defendants purport to rely. *See Texas Divs., Sons of Confederate Veterans, Inc.*, 759 F.3d at 399 (noting how that display's similar "tortured procedural history"—an initial government approval, followed by reconsideration without a "valid procedural basis," and then ultimately a denial—"demonstrates that the subjective standard of offensiveness led to viewpoint discrimination").

Defendants' application scheme, and the "public purpose" requirement in particular, encourages the exact type of "self-censorship by speakers" that the unbridled discretion doctrine

is designed to avoid. *City of Lakewood*, 486 U.S. at 759. Only by redressing the "public purpose" infirmity can this court alleviate the risk that potential applicants, including FFRF, will not self-censor their speech to avoid rejection at the three levels described above: State Official Sponsor, State Preservation Board, and Governor Abbott. Additionally, because the "public purpose" requirement is subjective and indefinite, courts will continue to run up against "the difficulty of effectively detecting, reviewing, and correcting" viewpoint discrimination as applied. *Id.* The "public purpose" standard is unconstitutional and the Defendants' stated intent to continue denying FFRF's exhibit by this empty standard is palpable.

FFRF accordingly is entitled to relief declaring to be unconstitutional the requirement of 13 Tex. Admin. Code § 111.13, that exhibits must be for a public purpose as defined in subsection (a)(3) of that section. The public purpose standard lacks sufficient neutral criteria to prevent unreasonable censorship or viewpoint-based censorship. "Public purpose" is insufficiently narrow, objective, and definite to properly constrain government officials when evaluating exhibit applications. *Shuttlesworth*, 394 U.S. at 150-51.

## III. Conclusion.

The Freedom From Religion Foundation requests the court to enter the attached Proposed Judgment for the reasons stated herein.

Dated this 9th day of July, 2020.

Respectfully submitted,

BOARDMAN AND CLARK, LLP
1 S. Pinckney St., Suite 410
Madison, Wisconsin  53703-4256
Telephone:  608-257-9521
Telecopier:  608-283-1709

BY: */s/ Richard L. Bolton*
Richard L. Bolton
Wisconsin State Bar No. 1012552
Email:  rbolton@boardmanclark.com

Sam Grover
Wisconsin State Bar No. 1096047
Email:  sgrover@ffrf.org
Patrick Elliott
Wisconsin State Bar No. 1074300
Email:  pelliott@ffrf.org
FREEDOM FROM RELIGION
FOUNDATION, INC.
P. O. Box 750
Madison, Wisconsin  53701
Telephone:  608-256-8900
Telecopier:  608-204-0422

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing was filed electronically via the Court's

CM/ECF system on this the 9th day of July, 2020, which will send notification to the following:

> Anne Marie Mackin
> Email: Anna.mackin@oag.texas.gov
> Office of the Attorney General
> P.O. Box 12548, Capitol Station
> Austin, TX 78701
> Telephone: (512) 463-2798
> Telecopier: (512) 320-0667

> */s/ Richard L. Bolton*
> Richard L. Bolton