IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| FREEDOM FROM RELIGION FOUNDATION, INC.,<br>*Plaintiff,*<br><br>v.<br><br>GOVERNOR GREG ABBOTT AND ROD WELSH, EXECUTIVE DIRECTOR OF TEXAS STATE PRESERVATION BOARD,<br>*Defendants.* | § § § § § § § § § § § | No. 1:16-CV-00233-SS |

### BUSINESS RECORDS DECLARATION
### PURSUANT TO TEX. CIV. PRAC. & REM. CODE § 132.001(F) & TEX. R. EVID. 902(10)

1. My name is Ann Vay, and I am an employee of the following governmental agency: State Preservation Board. I am executing this declaration as part of my assigned duties and responsibilities.

2. I am familiar with the manner in which records are created and maintained by the State Preservation Board by virtue of my duties and responsibilities.

3. Attached hereto are 7 pages of records. These are the original records or the exact duplicates of the original records.

4. The records were made at or near the time of each act, event, opinion, or diagnosis set forth.

5. The records were made by, or from information transmitted by, persons with knowledge of matters set forth.

EXHIBIT 1

6. The records were kept in the course of regularly conducted business activity.

7. It is the regular practice of the business activity to make the records.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Travis County, State of Texas, on the 8th day of July, 2020.

*Ann Vay*
Ann Vay
2020.07.08 16:08:57 -05'00'

Ann Vay, Declarant

The State Preservation Board (SPB) adopts amendments to §111.13 relating to Exhibitions in the Capitol and Capitol Extension with changes to the proposed text as published in the May 22, 2020, *Texas Register*. (45 Tex. Reg. 3408-3409).

*Explanation and Justification for Rules*

The amendments to §111.13 are designed to make clear that all future exhibits in the exhibit areas of the Capitol and Capitol Extension will be adopted as government speech. The amendments change the heading's use of the term "exhibition" to "exhibit" to reflect the word usage throughout the amended rule; other similar typographical changes are made for consistent usage. They are not intended to be substantive changes unless described herein. The definition of State Official Sponsor (§111.13(a)(4)) provides that a qualified elected official may sponsor an exhibit proposed by his or her constituents, and that he or she is responsible for ensuring that the exhibit complies with all applicable requirements. Section 111.13(b) is added to explicitly adopt exhibits displayed in the exhibit areas of the Capitol and Capitol Extension as government speech and to require that any such exhibit identify the State Official Sponsor and indicate the Board's approval. Because any exhibit will become government speech for the duration of its display, the current fee to obtain access to the exhibit areas of the Capitol and Capitol Extension is removed from what is now §111.13(c). Exhibitors retain ownership of their exhibit and are responsible for costs of assembling, displaying, and removing the exhibit as well as (if necessary) providing additional security for an exhibit. The criteria for consideration (§111.13(d)) are amended to make explicit that because all displays constitute the government's speech, the Board retains discretion to reject any exhibit. To be considered, all content of the exhibit (including any text) must be clearly disclosed to the Board, and the State Official Sponsor must make a written statement that he or she has reviewed that content and concluded that it is consistent with the applicable requirements and suitable for adoption as government speech. Consistent with the adoption of exhibits as government speech, the Board retains discretion to make any changes it deems appropriate to any exhibit. Finally, the amendments clarify that the scheduling and duration of the display of an exhibit (§111.13(e)) are at the discretion of the Board.

The rule is adopted with a change from what was proposed in that some of the proposed language for the subsection (a)(3) definition of "public purpose" was removed, specifically the language that reads "exhibits that are inconsistent with the historic presence of the Capitol and Capitol Extension, including exhibits which are sensationalistic, gruesome or obscene. It also does not include activities which depict subjects of a contemporary political controversy." In addition, the proposed deletion of the term "activities" from that definition was not adopted.

The amendments incorporate the Board's consideration of the comments received in writing and during public hearing.  The change made at adoption in §111.13(a)(3) affect no new subject matter or additional parties than those who were previously given notice though the publication of the proposed rule; therefore, the rule will not be republished in the Texas Register for additional comment.

*Comments and Board Response:*

The Board received 220 written comments regarding the proposed rule amendments on the following issues.

Many comments stated that speech at the Capitol should remain "unencumbered and uncensored." Texas Home School Coalition Association (THSC) voiced this concern and suggests the amendments as written, with the added language to the definition of public purpose, would impact home schooling negatively, perhaps affecting their annual event at Capitol Days. The Board disagrees that the amendments will have this effect.  Nevertheless, the Board adopts the proposed amendments to §111.13(a)(3) with much of the

proposed new language removed.  As adopted, the definition of public purpose remains unchanged, except to remove the word "morals" and to add the words "and Capitol Extension" at the end of the sentence.

Certain comments, THSC, Texas Right to Life (TRL), and the ACLU (American Civil Liberties Union), took issue with the proposed additional language regarding public purpose, which follows: "*This does not include exhibits that are inconsistent with the historic presence of the Capitol and Capitol Extension, including exhibits which are sensationalistic, gruesome or obscene. It also does not include activities which depict subjects of a contemporary political controversy*." Commenters suggested that this language is vague and overly restrictive and questioned who would determine whether a proposed exhibit met one of the disqualifying criteria, suggesting the criteria are too subjective. Commenters also expressed concern about how the meaning of the criteria could change over time. The Board understands this interpretation and intends for the definition to be clear and easy for the Board to apply consistently. Therefore, the Board removes from the adopted rule amendments certain language of (§111.13 (a)(3)) that was the subject of that concern.

In that same vein, the Board has removed the word "morals" from the definition.  Certain comments suggested that removing the word "morals" from the public purpose definition takes away the public's ability to decide what is "moral." The Board respectfully disagrees.  As adopted, the effect of the rule is to clarify that all exhibits displayed through the exhibit program will be adopted as government speech while on display. The public purpose requirement merely clarifies what exhibits the Board will consider adopting as government speech in the three particular exhibit spaces in the Capitol and Capitol Extension.

TRL and others commented against the amendments contending that they might unconstitutionally limit free speech, including the speech of pro-life groups. Included within the free-speech comments received were concerns that the Board would shut down displays that may offend or make some people uncomfortable; severely restrict the content allowed for exhibits on display at the Texas Capitol; and infringe on the ability for people to openly discuss and debate things that fall under political controversy. The Board recognizes the sacrosanct nature of First Amendment rights and respectfully disagrees. The practice of allowing exhibits in the exhibit spaces in the Capitol and Capitol Extension has historically been limited, has never permitted many forms of commercial or political activity, and has most often been used to allow Texans—particularly schoolchildren—to display artwork for the enjoyment of their fellow Texans. The Board has for many years limited the space available space for such exhibits to three spaces in the Capitol and Capitol Extension, and even that space may be reduced such as during building renovations. The rule makes clear who is responsible for these displays. The amendments, which apply equally to all exhibits, do not impact Texans' ability to exercise their First Amendment rights. Nevertheless, in an abundance of caution and because of the importance of ensuring the rule cannot be misinterpreted as having any impact on Texans' fundamental rights, as indicated above, the Board has adopted the rule with changes, to leave out much of the language that was proposed in §111.13 (a)(3).

Comment was also received expressing the sentiment that no exhibit should be censored from the Capitol, and that limiting exhibits censors public dialogue.  The Board respectfully disagrees. Texas is a diverse state, and those who pass through the Capitol have many differing views. In keeping with the historic significance of the Capitol and the solemnity of the work conducted inside, it is the Board's view that all exhibits displayed on behalf of the government in these highly trafficked areas should be subject to reasonable regulation that is equitably applied.

A frequent concern commenters expressed was that the amendments violate free speech under the First Amendment. As stated above, the amendments apply to all exhibits equally and only clarify rules and restrictions that the Board is charged with enforcing. The SPB is an agency established to, among other things, "preserve, maintain, and restore the Capitol, the General Land Office Building, their contents, and their grounds." TEX. GOV'T CODE §§443.001, 443.007(a)(1). The Board must "approve all changes to

the buildings and their grounds," and "may adopt rules concerning the buildings, their contents, and their grounds." *Id.* §443.007(a)(4); (b). While the Board has profound respect for the right to free expression in our society, this statutory authority is focused on maintaining these buildings as the seat of State government and maintaining the Capitol, in particular, as an appropriate environment for the functions of the Legislature to be carried out. The Board supports the rights of all Texans to visit the Capitol, to engage with lawmakers, and to have robust, fulsome debate about important matters of policy both inside and outside the Capitol building. Continuing to set aside the three exhibit spaces in the Capitol for only those exhibits that meet the specified criteria has no impact on the scope of public debate or efforts of Texans to influence their elected representatives.

Finally, comments from the public and the ACLU stated that exhibits should be the people's speech and not that of the State. The Board understands the concern with the term "government speech"; however, it rejects the notion that government speech prohibits free speech. The right to express ideas and discuss differing opinions is unquestioned in our State. The Capitol belongs to all Texans, but not every Texan will agree as to what should be displayed in the Capitol. To ensure the exhibit spaces are not a "free for all" or a distraction from the important work that takes place in the Capitol and Capitol Extension, the State is regulating those spaces under the government speech doctrine. An individual passing through the Capitol will likely and reasonably identify with the State the contents displayed in the exhibit spaces. The halls of the Capitol buildings play an important role in defining the identity that a State projects to its own residents and to the outside world. The State has authority to directly control the selection and content of exhibits, in several ways. First, applications have not ever been considered unless accompanied by a signature of sponsorship from a State official. 13 TEX. ADMIN. CODE §111.13(a)(4). After recommendation from a qualified sponsor, if an exhibit is approved, the exhibitor signs a liability release and acknowledges the State's unilateral authority to make changes to the exhibit. The law also makes clear that the placement of exhibits of a public purpose within the Capitol is an exercise of the State's sovereign powers. The Supreme Court has held that a government entity has the right to speak for itself and is entitled to say what it wishes, and to select the views that it wants to express.

A public hearing was requested by both TRL and THSC and was held, via webinar teleconference, on June 23, 2020. Three people representing themselves and three groups—TRL, THSC, and Protect Texas Fragile Kids (PTFK)—attended to provide comment. TRL requested that the amendments be entirely withdrawn, stating that as written, the amendments set a dangerous policy. TRL focused its comments on the definition of public purpose, specifically the two sentences the Board has removed at adoption. THSC restated its position that Texas home school families were not in favor of the proposed amendments to the public purpose definition, stating that the language was vague and would impact free speech. Additionally, THSC stated concern that all exhibits would now be considered government speech. PTFK commented that the proposed definition of public purpose was onerous and could limit beneficial and educational exhibits. PTFK expressed concern that the definition, as written, could keep grassroots organizations out of the Capitol, and that all exhibits would be considered government speech. Additional concern was expressed that the amendments as proposed were ripe for misuse or abuse in the future. The Board has responded to similar concerns expressed by other parties as described above.

*Statutory Authority:*

These amendments are adopted under Texas Government Code §443.007, which authorizes the SPB to adopt rules concerning the buildings, their contents, and their grounds; and Texas Government Code §443.018, which authorizes the SPB to adopt rules that regulate the actions of visitors in the Capitol or on the grounds of the Capitol including rules that prohibit persons from attaching signs, banners, or other displays to a part of the Capitol or to a structure, including a fence, on the grounds of the Capitol except as approved by the SPB.  No other statutes, articles, or codes are affected by the proposed amendments.

§111.13. Exhibits in the Capitol and Capitol Extension

(a) Definitions. The following words and terms, when used in this section, shall have the following meanings, unless the context clearly indicates otherwise.

  (1) Exhibit--Any display of artwork, including paintings, sculptures, arts and crafts; photographs; public service and general interest presentations; and historical displays.

  (2) Public areas of the Capitol and Capitol Extension--The hallways, entrances, vestibules, stairways, light courts, rotundas, and other areas adjacent to or near the rotunda.

  (3) Public purpose--The promotion of the public health, education, safety, general welfare, security, and prosperity of all the inhabitants or residents within the state, the sovereign powers of which are exercised to promote such public purpose or public business. The chief test of what constitutes a public purpose is that the public generally must have a direct interest in the purpose and the community at large is to be benefitted. This does not include activities which promote a specific viewpoint or issue and could be considered lobbying. Political rallies, receptions, and campaign activities are prohibited in the public areas of the Capitol and Capitol Extension.

  (4) State Official Sponsor--The Governor, the Lieutenant Governor, the Speaker of the Texas House of Representatives, a Texas Senator, or member of the Texas House of Representatives may sponsor exhibits proposed by his or her constituents. The State Official Sponsor is responsible for determining that an exhibit meets all applicable rules. Potential exhibitors are advised to consult with their proposed Sponsor regarding whether additional rules apply.

(b) Any exhibit approved and scheduled pursuant to this section by the office of the State Preservation Board is hereby adopted as government speech, and shall be accompanied by a statement identifying the State Official Sponsor and indicating the approval of the office of the State Preservation Board.

(c) Fees and Costs. No fee is required from persons or entities that use the Capitol and Capitol Extension for an exhibit. However, the State Preservation Board may require any exhibitor to cover the direct and indirect costs to the state of the exhibit, including the costs of labor, materials, and utilities directly or indirectly attributable to the exhibit, including costs of assembling, displaying and removing exhibits.

(d) Criteria for Exhibit Consideration.

  (1) Exhibits may be approved and scheduled by the office of the State Preservation Board.

  (2) Exhibits will not be considered for display unless they serve a public purpose as defined in subsection (a)(3) of this section.

  (3) To be considered, a request must be accompanied by:

    (A) a detailed description of the exhibit, including dimensions of the space required, how the exhibit will be displayed, and every word to be conveyed by the exhibit;

    (B) a clear photograph of the entire exhibit, preferably as it will be displayed, or a scale drawing if a photograph is not available;

    (C) a brief statement of the purpose of the exhibit; and

    (D) statement of a State Official Sponsor as described in subsection (a)(4) of this section that the exhibit meets the criteria and is appropriate for adoption as government speech.

(4) Incomplete requests will not be considered.

(5) Exhibits must be tastefully exhibited. The office of the State Preservation Board reserves the right to require the exhibitor to make any changes to the exhibit.

(6) Exhibit space will be assigned at the discretion of the office of the State Preservation Board, considering factors such as the size, scope, and design of the exhibit. Exhibits will not be approved for display in the Capitol rotunda in order to maintain its historic presence.

(7) To be considered for display, an exhibit must be freestanding. Art and photographic exhibits must be secured to tripods, backdrops, or freestanding displays. Exhibits may not:

   (A) hang from or attach to walls or railings;

   (B) obstruct entrances;

   (C) interrupt traffic flow through the building;

   (D) damage walls, woodwork, or floors;

   (E) obstruct the view or access to fire-fighting equipment or fire alarm pull stations; or

   (F) involve the use of any flammable, hazardous, or odorous chemicals or materials, torches, or other open-flame illuminating devices or fires.

(8) Exhibits will not be considered for display as government speech in the Capitol and Capitol Extension if they:

   (A) feature one individual's artwork for the purpose of commercially advertising that person's artwork;

   (B) promote a commercial enterprise;

   (C) have no public purpose; or

   (D) have an illegal purpose.

(9) If other than routine security provided by Capitol police is needed for the exhibit, the exhibitor will bear such costs. The State of Texas, the State Preservation Board, or any employee of the State Preservation Board shall not be held liable in case of damage or loss to an exhibit while it is on display in the Capitol and Capitol Extension.

(e) Scheduling exhibits.

(1) Because exhibits in the Capitol and Capitol Extension are government speech, the State Preservation Board retains discretion regarding how long to display an exhibit. Exhibits typically are displayed for up to 5 working days.

(2) The office of the State Preservation Board may shorten or extend the display time for exhibits.

(3) No more than one exhibit will be approved for display on the same day in a designated area of the Capitol and Capitol Extension.

(4) A written request using State Preservation Board forms to display an exhibit must be received by the office of the State Preservation Board no later than two weeks prior to the first day of the time being requested.

The SPB hereby certifies that the amendments as adopted have been reviewed by legal counsel and found to be a valid exercise of the agency's legal authority.

| | |
|---|---|
| **From:** | TexReg@sos.texas.gov |
| **To:** | Ann Vay |
| **Subject:** | TEXAS REGISTER ACKNOWLEDGMENT OF RECEIPT |
| **Date:** | Tuesday, June 30, 2020 3:23:36 PM |

ACKNOWLEDGMENT OF RECEIPT

Please note that this email acknowledges receipt of your filing only.
If we find that the document or submission form does not conform to statutory filing requirements or our administrative rules, we may refuse to accept it for filing and publication.
If we refuse your filing, we will notify you.

TRD Number:           202002687
For Issue of:         07/17/2020

Submission Date:      2020-06-30 15:09 PM
Receipt Date:         2020-06-30 15:23 PM

Adopted Rulemaking Submission

Agency Name:          State Preservation Board
Agency Code:          0369
Liaison:              Ann Vay
Title Number:         13
Part:                 7
Chapter Number:       111
Chapter Name:         RULES AND REGULATIONS OF THE BOARD
TAC Section Numbers:  13

Proposed Action TRD Numbe202001851
Proposed Action Issue Dat05/22/2020
Action Code: Amendment

Final Action: With Changes

Effective 20 Days After Filing

File Name:            TxRegTAC11113.docx