# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| FREEDOM FROM RELIGION | § | |
| FOUNDATION, INC., | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | No. 1:16-cv-00233-SS |
| | § | |
| GOVERNOR GREG ABBOTT AND ROD | § | |
| WELSH, EXECUTIVE DIRECTOR OF THE | § | |
| TEXAS STATE PRESERVATION BOARD, | § | |
| in their official capacities, | § | |
| *Defendants.* | § | |

## RESPONSE TO PLAINTIFF'S BRIEF ON REMAND

On order of this Court, Dkts. 105, 109, 114, Defendants Greg Abbott, in his official capacity as Governor, and Rod Welsh, in his official capacity as Executive Director of the Texas State Preservation Board, ("Defendants") respectfully respond to FFRF's Brief on Remand, Dkt. 110.

## INTRODUCTION

Defendants' Brief on Remand, Dkt. 111, explains two independently sufficient reasons why this Court no longer has Article III jurisdiction over this case. First, this case is moot because—after public notice, comment, and hearing—the State Preservation Board has closed the Capitol exhibit spaces as a limited public forum, setting them aside for government speech. Dkt. 111-1; 45 Tex. Reg. 4968–70 (2020) (to be codified as an amendment to 13 Tex. Admin. Code § 111.13). Second, FFRF cannot show any ongoing violation of federal law as required to invoke the *Ex parte Young* exception to sovereign immunity.

FFRF's Brief on Remand does not change this result, because it rests entirely upon the legally unsupportable premise that "FFRF's entitlement to prospective relief[] is the law of the case under the mandate rule," Dkt. 110 at 5. This gravely misunderstands the mandate rule, the law-of-the case doctrine, and settled principles of equity—all of which require courts to consider changed circumstances before entering prospective injunctive relief. In its cursory review of the injunctive-relief test and unbridled-discretion doctrine in a limited public forum, FFRF does not even attempt to address the relevant inquiry—the extent to which injunctive relief is "appropriate" under the circumstances *now* before the Court. *Freedom From Religion Found. v. Abbott*, 955 F.3d 417, 424 (5th Cir. 2020) ("*FFRF*").

This case should be dismissed.

## ARGUMENT AND AUTHORITY

I. **The Mandate Rule Compels Consideration of the Changed Circumstances of This Case, Under Which Dismissal is the Only Possible Result.**

The Court of Appeals did not specify any particular prospective injunctive relief for FFRF, or even hold that such relief would certainly be available on remand. Instead, it held that retrospective relief was impermissible and remanded for further proceedings, instructing that this Court enter such prospective injunctive relief as is "appropriate." *FFRF*, 955 F.3d at 421. As Defendants have briefed, no prospective injunctive relief is appropriate because (1) this case is now moot, and (2) there is no ongoing violation of federal law, as required to overcome *Ex parte Young*. Dkt. 111. Thus, to do anything other than dismiss would exceed both the Court's jurisdiction and the Court of Appeals' mandate. *Id.*

2

But FFRF reads the mandate rule differently, arguing that "FFRF's entitlement to prospective relief[] is the law of the case under the mandate rule," Dkt. 110 at 5. This is wrong, because the mandate rule and the law-of-the-case doctrine upon which it is based do not require courts to blind themselves to present circumstances. Instead, the opposite is true. Because changed circumstances defeat this Court's jurisdiction, dismissal is the only result available.

### A. Absent a continuing legal and factual basis, courts lack equitable power to enter prospective injunctive relief.

As Defendants' Brief on Remand discussed, the Court of Appeals found an ongoing violation of federal law based in significant part upon the conclusion that the pre-2020 version of the Capitol exhibit program created a limited public forum. The Court was also swayed by then-Executive Director Sneed's indication—prior to *Matal*—that a future application to display FFRF's 2015 exhibit in the limited public forum in the Capitol exhibit spaces would be rejected. Dkt. 111 at 24. Now, however, that forum has been closed. In light of this change to the relevant law, FFRF cannot now obtain prospective injunctive relief based on facts as they existed in 2015—or even when this Court issued judgment in 2018.

It is a centuries-old equitable principle that "[a] continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need[.]" *United States v. Swift & Co.*, 286 U.S. 106, 114-15 (1932). Thus, courts lack authority to issue injunctive relief where the basis for such relief—even if previously extant—is no longer present.

3

*Pennsylvania v. Wheeling & Belmont Bridge Co.*, 54 U.S. (13 How.) 518, 577 (1851), was one early recognition of this principle. There, the Supreme Court entered an injunction ordering removal of a bridge because it illegally obstructed navigation. Congress then enacted a law authorizing the bridge. *Pennsylvania v. Wheeling & Belmont Bridge Co.*, 59 U.S. (18 How.) 421, 422 (1856) ("*Wheeling Bridge*"). Once the new law was passed, the Court denied the movant's subsequent request for an order to remove the bridge because "there [wa]s no longer any interference with the enjoyment of the public right inconsistent with law." *Id.* at 427, 432. Thus, *Wheeling Bridge* recognized that because an injunction "is executory, a continuing decree . . . [i]f, in the meantime, since the decree, th[e] right has been modified by the competent authority . . . it is quite plain the decree of the court cannot be enforced." *Id.* at 431-32.[1]

"The principles of the *Wheeling Bridge* case have repeatedly been followed" by the Supreme Court and "by lower federal and state courts." *Sys. Fed'n No. 91, Ry. Emps.' Dep't v. Wright*, 364 U.S. 642, 650-52 (1961). *See, e.g., id.*; *Cobell v. Norton*, 392 F.3d 461, 467 (D.C. Cir. 2004) (vacating injunction because prospective relief is always "subject to the continuing supervisory jurisdiction of the court" and should be "altered" when change to law relieves executive of duties imposed by injunction) (quoting *Miller v. French*, 530 U.S. 327, 347 (2000)) (additional citation omitted); *Biodiversity Assocs. v. Cables*, 357 F.3d 1152, 1169-70 (10th Cir.

---

[1] *See also, e.g., ePlus, Inc. v. Lawson Software*, 789 F.3d 1349, 1354 (Fed. Cir. 2015) ("Because the [Wheeling] [B]ridge was no longer unlawful, the Court had to set aside the previous order rather than enforce it.") (citing *Wheeling Bridge*, 59 U.S. (18 How.) at 431-32).

2004) (injunction arising from settlement agreement "must give way" once inconsistent with new legislation). And these courts agree that "*Wheeling Bridge* [] stands for the proposition that when [the government] changes the law underlying a judgment awarding prospective injunctive relief, the judgment becomes void to the extent that it is inconsistent with the amended law." *Imprisoned Citizens Union v. Ridge*, 169 F.3d 178, 184 (3d Cir. 1999); *accord Ruiz v. United States*, 243 F.3d 941, 946 (5th Cir. 2001) (applying *Wheeling Bridge* in somewhat different context).

It is therefore beyond cavil that that "[m]odification of an injunction is appropriate when the legal or factual circumstances justifying the injunction have changed." *Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 190 (5th Cir. 2008) (quoting *ICEE Distribs., Inc. v. J&J Snack Foods Corp.*, 445 F.3d 841, 850 (5th Cir. 2006)). "The parties have no power to require of the court continuing enforcement of rights the statute no longer gives." *Sys. Fed'n No. 91, Ry. Emps.' Dep't*, 364 U.S. at 650-52.

### B. The mandate rule emphasizes that, after any issues remanded are no longer within the court's jurisdiction, dismissal is the only appropriate result.

FFRF's argument that its "entitlement to prospective relief[] is the law of the case under the mandate rule," Dkt. 110 at 5, ignores the fundamental equitable principle discussed in the previous part and badly misunderstands the mandate rule.

"The mandate rule, which is a corollary or specific application of the law of the case doctrine, prohibits a district court on remand from reexamining an issue of law or fact previously decided on appeal *and not resubmitted to the trial court on remand*." *United States v. Pineiro*, 470 F.3d 200, 205 (5th Cir. 2006) (emphasis added). "[U]nlike

5

res judicata, the law of the case doctrine applies only to issues that were actually decided, rather than all questions in the case that might have been decided, but were not." *Alpha/Omega Ins. Servs., Inc. v. Prudential Ins. Co. of Am.*, 272 F.3d 276, 279 (5th Cir. 2001) (citation omitted). Thus, "[t]he doctrine of law of the case comes into play only with respect to issues previously determined. . . . On remand, the Circuit Court may consider and decide any matters left open by the mandate of th[e] [appellate] court." *Quern v. Jordan*, 440 U.S. 332, 348 (1979).

The mandate in this case *expressly* left open the determination of what prospective injunctive relief would be "appropriate." *FFRF*, 955 F.3d at 421. And it certainly did not forbid the Court from considering changed circumstances in making this determination. *See id.* Nor could it have done so—the law-of-the-case doctrine provides no basis to depart from the settled principle that, "[w]here legislative action has undermined the basis upon which relief has previously been granted, a court *must* consider whether the original finding of wrongdoing continues to justify the court's intervention." *Salazar v. Buono*, 559 U.S. 700, 718 (2010) (emphasis added) (citing *Wright*, 364 U.S. at 648-49; *Wheeling Bridge*, 59 U.S. at 430-32).

Indeed, "[a] court that invokes equity's power to remedy a constitutional violation by an injunction . . . must remain open to a showing . . . that the injunction should be altered to ensure that the rights and interests of the parties are given all due and necessary protection." *Brown v. Plata*, 563 U.S. 493, 542-43 (2011). Thus, it is axiomatic that "[a] district court on remand is bound to consider any change either in fact or in the law which has supervened since the original judgment was entered."

*Meat Cutters, Loc. 300 v. McCulloch*, No. 68-1380, 1973 U.S. Dist. LEXIS 12710, at *3 (E.D. La. July 13, 1973).

"There is a fundamental difference . . . between the granting of retrospective relief and the granting of prospective relief." *Amado v. Microsoft*, 517 F.3d 1353, 1360 (Fed. Cir. 2008). The Fifth Circuit recognized as much on appeal. *FFRF*, 955 F.3d at 421 (holding that, "based on principles of sovereign immunity . . . the district court did not have jurisdiction to enter a retrospective declaratory judgment" against Defendants). Because of this "fundamental difference" between retrospective and prospective injunctive relief, the mandate rule "does not preclude the district court from modifying, or dissolving, [an] injunction if it determines that it is no longer equitable." *Amado*, 517 F.3d at 1360.

Nor does the mandate rule require "the imposition of an injunction . . . in the first instance" simply because the court of appeals orders a district court to consider the propriety of an injunction on remand. *Planned Parenthood Ark. & E. Okla. v. Jegley*, No. 4:15-cv-784-KGB, 2018 U.S. Dist. LEXIS 101353, at *6-7 (E.D. Ark. June 18, 2018). In such cases, "the mandate rule does not bar courts from consideration of the status of the injunction, given the unique nature of injunctive relief and the equitable considerations that inform it." *Id.* (citing *Americans United For Separation of Church & State v. Prison Fellowship Ministries*, 555 F. Supp. 2d 988, 991 (S.D. Iowa 2008)); *see also, e.g.*, *Retractable Techs., Inc. v. Becton, Dickinson & Co.*, No. 2:07-cv-250-LED-RSP, 2013 U.S. Dist. LEXIS 110245, at *7 (E.D. Tex. Aug. 6, 2013) (quoting *Amado*, 517 F.3d at 1358) (stating that "'district courts possess broad

equitable authority to modify injunctions,' and [] the mandate rule d[oes] bar retroactive revisiting of the injunctive relief but not prospective modification").

Fifth Circuit precedent from the First Amendment context expressly contemplates that, where injunctive relief is sought, changed circumstances should be addressed by the district court in the first instance in fashioning injunctive relief. For example, in *DeBremaecker v. Short*, 433 F.2d 733 (5th Cir. 1970) (per curiam), plaintiffs sought a preliminary injunction to prohibit "the harassment, intimidation and arrest of the [plaintiffs]. . . while engaged in the peaceful activity of distributing handbills at public places in the City of Houston by the Houston Police Department." *Id.* at 733. The day before "oral argument [in the Fifth Circuit], the Houston City Council passed a comprehensive ordinance regulating, among other things, the distribution of noncommercial handbills." *Id.* "In view of this change of circumstance and the necessarily forward looking nature of any injunctive relief that may be finally granted," the court determined to "remand the entire matter back to the district court for a prompt determination on the merits." *Id.* The Court of Appeals found that this was the proper way to "grant whatever relief may be necessary to secure the [plaintiffs'] rights." *Id.*

The Fifth Circuit issued a similar mandate here by requiring this Court "to consider FFRF's request for injunctive relief" and enter prospective relief as "appropriate." *FFRF*, 955 F.3d at 421.

## C. Because changed circumstances divest the Court of jurisdiction, the mandate rule leaves nothing for the Court to do but dismiss this case.

As Defendants have briefed, changed circumstances have divested this Court of jurisdiction to order any prospective injunctive relief. Nothing in FFRF's brief changes this result, because it ignores these changed circumstances. FFRF requests that this Court order the "Bill of Rights and Winter Solstice exhibit to be displayed in the Texas State Capitol building, without regard for its message or perceived message." Dkt. 110-1 ¶ 4. But with the Capitol exhibit spaces set aside for government speech, and no longer any sort of public forum, FFRF has no right to such relief under the Free Speech Clause. *See, e.g.*, *Matal v. Tam*, 137 S. Ct. 1744, 1757 (2017) ("[T]he Free Speech Clause does not regulate government speech.") (quoting *Pleasant Grove City v. Summum*, 555 U.S. 460, 467 (2009)); *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45–46 (1983) ("a state is not required to indefinitely retain the open character of [a limited public forum]"); *U.S. Postal Serv. v. Council of Greenburgh Civic Ass'ns*, 453 U.S. 114, 129 (1981) ("[T]he First Amendment does not guarantee access to property simply because it is owned or controlled by the government."); *see also* Dkt. 111 at 9–17.

FFRF's unbridled discretion argument is similarly foreclosed. FFRF demands a declaration that the pre-2020 "'public purpose' standard, codified in 13 Tex. Admin. Code § 111.13(a)(3), is prospectively unenforceable as an unconstitutional prior restraint lacking objective and definite standards to guide state officials in their decision making." Dkt. 110-1 ¶ 6. But the public purpose standard that FFRF demands be enjoined no longer exists. Moreover, the Fifth Circuit was abundantly

clear that its "clarif[ication]" of "the appropriate application of the unbridled discretion doctrine" was expressly limited to "the context of a limited public forum." *FFRF*, 955 F.3d at 421. Since there is no longer a limited public forum, there is no place for the Court to implement this clarified standard.

Despite repeatedly asserting that there is a continuing violation of federal law, FFRF cites no other evidence to support this assertion besides the Court of Appeals' finding. Dkt. 110 at 2. And that finding was not informed by closure of the forum, which was only fully effected after this case was remanded to this Court. *See, e.g.*, 45 Tex. Reg. 4968–70 (2020) (to be codified as an amendment to 13 Tex. Admin. Code § 111.13). It is unsurprising, then, that FFRF offers no authority for the proposition that it is entitled, on remand, to prospective injunctive relief now that changed circumstances have destroyed Article III jurisdiction. *See* Dkt. 110.

"The reach of [the law-of-the-case doctrine and the mandate rule] extends only to matters decided expressly or by necessary implication." *DeJoria v. Maghreb Petroleum Exploration, S.A.*, 935 F.3d 381, 394 (5th Cir. 2019). The Fifth Circuit obviously did not decide the mootness implications of the Board's rule amendment closing the forum—after all, that amendment had not yet happened when the mandate issued. *Cf. Fisher v. Univ. of Tex.*, 758 F.3d 633, 640 (5th Cir. 2014) (noting that the mandate rule can be overcome by "changes in jurisdictional facts"). Defendants have flagged the newfound mootness problem at their earliest opportunity, giving this Court the first chance to dismiss for want of Article III jurisdiction in light of the recent rule amendment. *See Kontrick v. Ryan*, 540 U.S.

443, 455 (2004) ("A litigant generally may raise a court's lack of subject-matter jurisdiction at any time in the same civil action . . . .").

The fact that the law of the case doctrine is a prudential rule rather than a jurisdictional one further emphasizes this result. Indeed, the doctrine "merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power." *Messenger v. Anderson*, 225 U.S. 436, 444 (1912); *see also, e.g., Af-Cap Inc. v. Republic of Congo*, 383 F.3d 361, 367 n.6 (5th Cir. 2004) ("[T]he law of the case is a discretionary, not jurisdictional, doctrine" that courts "invoke [an] exception to . . . because of post-decision changes in evidentiary facts or in the applicable law.") (citations omitted).

Changed circumstances have eliminated the jurisdictional basis for this case, and FFRF cannot pervert the law of the case doctrine to overcome Article III's fundamental requirements.

## II.   Even if the Court Retained Jurisdiction, the Proposed Order Would be Improper.

Even if FFRF could somehow overcome the limits on this Court's jurisdiction (and it cannot), the requested relief that FFRF seeks would not be "appropriate." *FFRF*, 955 F.3d at 421. "There is a well-established principle that a 'general injunction which in essence orders a defendant to obey the law is not permitted.'" *Versata Software, Inc. v. Internet Brands, Inc.*, No. 2:08-CV-313-WCB, 2012 WL 3075712, at *3 (E.D. Tex. July 30, 2012) (quoting *Meyer v. Brown & Root Const. Co.*, 661 F.2d 369, 373 (5th Cir.1981)). Instead, under Federal Rule of Civil Procedure 65,

11

this Court must "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1)(C).

FFRF fails to meet that standard. For example, its proposed injunction requires that defendants "allow FFRF's Bill of Rights and Winter Solstice exhibit to be displayed in the Texas State Capitol building, without regard for its message or perceived message." Dkt. 110-1 ¶ 4. But FFRF does not explain what that means. Does FFRF want to display a precise duplicate of what was removed in 2015? When? For how long? Are defendants required to give FFRF priority over other individuals who wish to display exhibits in the now-non-existent program? On what basis?

This is characteristic of FFRF's consistent pattern of behavior in this case. As defendants have explained, since 2015, FFRF has not completed an application to place any exhibit in the Capitol. It did not participate in the public notice, comment, and hearing process concerning the changes to the rule governing Capitol exhibits. *See* 45 Tex. Reg. 4968–70 (2020) (to be codified as an amendment to 13 Tex. Admin. Code § 111.13). And—both in 2018 and today—it has continued to fail to propose to the Court any concrete remedy to its alleged injury. Indeed, one of the reasons this Court declined to order injunctive relief in 2018 is that FFRF failed to adequately explain what it wanted. Dkt. No. 97 at 6 (noting that the court lacked "any pleadings one way or the other" about the form of a requested injunction). Instead of curing that error now, FFRF instead offers what is, at best, an obey-the-law injunction. Such relief is impermissible and should be denied. *Meyer*, 661 F.2d at 373.

## CONCLUSION

For the foregoing reasons and those already briefed, this Court should find that no prospective injunctive relief is appropriate and dismiss this case.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

RYAN L. BANGERT
Deputy First Assistant Attorney General

DARREN L. MCCARTY
Deputy Attorney General for Civil Litigation

THOMAS A. ALBRIGHT
Chief for General Litigation Division

*/s/Anne Marie Mackin*
ANNE MARIE MACKIN
Texas Bar No. 24078898
BENJAMIN S. WALTON
Texas Bar No. 24075241
Assistant Attorneys General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2798 | FAX: (512) 320-0667
anna.mackin@oag.texas.gov
benjamin.walton@oag.texas.gov

ATTORNEYS FOR DEFENDANTS

**CERTIFICATE OF SERVICE**

I certify that on July 22, 2020, the foregoing instrument was filed electronically

via the Court's CM/ECF system, causing electronic service upon all counsel of record.

*/s/ Anne Marie Mackin*
ANNE MARIE MACKIN
Assistant Attorney General