# United States Court of Appeals
# for the Fifth Circuit

**FILED**
February 22, 2023
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: _____ Jay Vicha
DEPUTY

————————

No. 21-50469

————————

United States Court of Appeals
Fifth Circuit

**FILED**

January 27, 2023

Lyle W. Cayce
Clerk

FREEDOM FROM RELIGION FOUNDATION, INC.,

*Plaintiff—Appellee,*

*versus*

GREG ABBOTT, *Governor of the State of Texas*, CHAIRMAN OF THE STATE PRESERVATION BOARD; ROD WELSH, *Executive Director of Texas State Preservation Board*,

*Defendants—Appellants.*

————————————————————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:16-CV-233

————————————————————

Before RICHMAN, *Chief Judge,* and HIGGINBOTHAM and ELROD, *Circuit Judges.*

## J U D G M E N T

This cause was considered on the record on appeal and was argued by counsel.

IT IS ORDERED and ADJUDGED that the judgment of the District Court is VACATED and REMANDED to the District Court for further proceedings in accordance with the opinion of this Court.

Certified as a true copy and issued
as the mandate on Feb 22, 2023

Attest: *Lyle W. Cayce*
Clerk, U.S. Court of Appeals, Fifth Circuit

No. 21-50469

IT IS FURTHER ORDERED that each party bear its own costs on appeal.

# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 27, 2023

Lyle W. Cayce
Clerk

No. 21-50469

---

Freedom From Religion Foundation, Inc.,

*Plaintiff—Appellee,*

*versus*

Greg Abbott, *Governor of the State of Texas*, *Chairman of the State Preservation Board*; Rod Welsh, *Executive Director of the State Preservation Board*,

*Defendants—Appellants.*

---

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:16-CV-233

---

Before Richman, *Chief Judge,* and Higginbotham and Elrod, *Circuit Judges.*

Jennifer Walker Elrod, *Circuit Judge*:

This case concerns the Texas State Preservation Board—an often un-noticed state agency charged with preserving and maintaining the Texas Capitol and its grounds. In 1987, the Board issued a regulation known as the Capitol Exhibit Rule. Under that rule, members of the public could submit an exhibit for display in the Capitol, provided the submission met certain unde-manding requirements and be sponsored by a qualifying state official.

No. 21-50469

In 2015, Governor Greg Abbott directed John Sneed—then the executive director of the Preservation Board—to remove an exhibit submitted by Appellant Freedom from Religion Foundation.  It is not seriously disputed that the Foundation's exhibit satisfied the requirements for display or that the Board's removal of the exhibit violated the First Amendment restrictions concerning speech communicated in a limited public forum.  But in 2020, the Board amended the Capitol Exhibit Rule, significantly increasing its discretion to accept or reject exhibits, and declaring that any accepted exhibit constitutes "government speech."  Finally, last year, the Board repealed the Rule altogether.  Even so, the district court entered judgment for the Foundation, declaring the Defendants' exclusion of the Foundation's exhibit to be unlawful, and ordering them to display the exhibit in the Texas Capitol.

The questions presented are whether the Preservation Board closed what previously was a limited public forum, and if so, whether that closure moots the Foundation's claim that it is being excluded from participation in that forum.  Notwithstanding the Defendants' wrongful prior exclusion of the Foundation's exhibit, we answer both questions in the affirmative.  Because the Foundation's injury is premised on exclusion from expressing its message in a public forum, and because the public forum no longer exists, the permanent injunctive relief ordered by the district court cannot remain.

We therefore must VACATE the injunction entered by the district court.  However, the order and declaratory judgment—declaring that the Defendants violate the First Amendment by excluding the Foundation's exhibit from a limited public forum—shall remain.  And we also note that our holding does not preclude the Foundation from showing that it is entitled to attorney fees as the prevailing party under 42 U.S.C. § 1988, given that the Board repealed the Capitol Exhibit Rule in apparent response to the Foundation's lawsuit.

No. 21-50469

# I

As introduced above, this case concerns the State Preservation Board and the Capitol Exhibit Rule. The Board is composed of the Governor, who serves as Chairman, Lieutenant Governor, Speaker of the Texas House of Representatives, a Senator appointed by the Lieutenant Governor, a Member appointed by the Speaker, and a "representative of the general public" appointed by the Governor. Tex. Gov't Code §§ 443.003–.004. In addition, the Board may appoint an executive director to direct the Board's day-to-day operations. *Id.* § 443.0051.

The Capitol Exhibit Rule was mostly unchanged from its inception in 1987 until it was amended in 2020. At the time this lawsuit was filed, an application to display an exhibit in the Capitol was required to satisfy two primary conditions.[1] First, the exhibit had to be "for a public purpose." 13 Tex. Admin. Code § 111.13(c)(2) (2012). A "public purpose" meant "[t]he promotion of the public health, education, safety, morals, general welfare, security, and prosperity of all of the inhabitants or residents within the state." *Id.* § 111.13(a)(3). And second, the exhibit had to be recommended by "a state official sponsor," *id.* § 111.13(c)(1), which included the Governor, Lieutenant Governor, or a Texas Senator or Member of the Texas House of Representatives. *Id.* § 111.13(a)(4). Acceptance by the Board was mandatory if the proposed exhibit met these requirements. *Id.* § 111.13(c)(1) (providing that qualifying exhibits "shall be approved and scheduled by the office of the State Preservation Board").

---

[1] The regulation also included several other administrative requirements, like that a "detailed description" of the exhibit accompany the submission. 13 Tex. Admin. Code § 111.13(c)(3)(A) (2012). And the regulation also included uncontroversial restrictions, like that the exhibit not "promote a commercial enterprise." *Id.* § 111.13(c)(9)(B). These administrative requirements and restrictions are not at issue here.

No. 21-50469

Such was the state of the law when the events at issue began. In December of 2014, the Foundation learned that a Christian nativity scene had been accepted for display in the Capitol. Finding the exhibit to be contrary to its stated mission concerning the separation of church and state, the Foundation applied to display what it calls a "Bill of Rights" nativity scene. The display consists of four cutout figures—the Statue of Liberty, George Washington, Thomas Jefferson, and Benjamin Franklin—standing over a manger containing the Bill of Rights. The exhibit would also display a banner in front of the figures, bearing the following text: "Happy Winter Solstice / At this Season of the Winter Solstice, we honor reason and the Bill of Rights (adopted December 15, 1791) / Keep State & Church Separate / On Behalf of Texas Members of the Freedom From Religion Foundation."[2] The proposal was accompanied by the recommendation of a state representative and its stated purpose was to "educate the public and celebrate the 224th anniversary and the ratification of the Bill of Rights . . . and to educate the public about the religious and nonreligious diversity within the State."

The requirements of the Capitol Exhibit Rule apparently satisfied, the Preservation Board approved the exhibit for display from December 18, 2015, to December 23. However, on December 22, the Governor directed the Executive Director to remove the display.[3] According to the Governor, the display "deliberately mock[ed] Christians and Christianity," did "nothing to promote morals and the general welfare," and lacked any legitimate

---

[2] As originally proposed, the banner read: "At this Season of the Winter Solstice, LET REASON PREVAIL. There are no gods, no devils, no angels, no heaven or hell. There is only the natural world. Religion is but myth & superstition that hardens hearts & enslaves minds." The Foundation amended its first proposal to the language shown above.

[3] Mr. Sneed was the executive director at the time at issue. He later left the Preservation Board to serve in the United States Department of Energy, and was succeeded by Rod Welsh, who was then automatically substituted as a defendant. Fed. R. Civ. P. 25(d).

No. 21-50469

educational purpose.  As such, he contended, the exhibit failed to satisfy the public-purpose requirement.  13 Tex. Admin. Code § 111.13(c)(2) (2012).  The Executive Director removed the display the same day.[4]

The Foundation proceeded to sue the Governor and Executive Director in February of 2016.  The operative complaint alleges five claims: (1) a free-speech claim under the First Amendment; (2) an equal-protection claim under the Fourteenth Amendment; (3) a claim under the Establishment Clause of the First Amendment; (4) a due-process claim under the Fourteenth Amendment; and (5) a claim based on the First Amendment, arguing that the Capitol Exhibit Rule violates the unbridled-discretion doctrine.  Only the free-speech claim is at issue here.[5]

The parties filed cross-motions for summary judgment on that claim.  The State defended against the Foundation's free-speech claim with two arguments: (1) that the exhibits accepted for display in the Capitol are government speech and thus not subject to the First Amendment; and (2) that the Capitol was a limited public forum, and that the Board's public-purpose requirement was a viewpoint-neutral restriction on speech.  The district court entered judgment for the Foundation, rejecting the argument that the chosen exhibits are government speech, finding that, under the Capitol Exhibit Rule, the Capitol was a limited public forum, and concluding that the public-purpose requirement was not viewpoint neutral.  As relief, the district court declared the Defendants' removal of the Foundation's exhibit to be unlawful,

---

[4] The Foundation also applied in July of 2016 to display the same exhibit, and the Board denied the application for substantially the same reasons as before.

[5] The equal-protection, Establishment-Clause, and due-process claims have since been dismissed either by agreement or in prior proceedings.  In addition, the district court granted summary judgment to the Defendants on the Foundation's unbridled-discretion claim, and the Foundation did not appeal that order.

No. 21-50469

but did not enter injunctive relief ordering the Defendants to accept future applications by the Foundation to display the same exhibit. Both parties appealed. The State did not challenge the merits of the finding that its exclusion of the Foundation's exhibit violated the First Amendment, instead arguing that the district court lacked jurisdiction to enter the judgment. The Foundation contended that the district court should have ordered injunctive relief.

We vacated the judgment of the district court, with two relevant holdings. *Freedom from Religion Foundation v. Abbott*, 955 F.3d 417 (5th Cir. 2020). First, we explained that the State was immune from the declaratory judgment because it was purely retrospective. *Id.* at 424–26. Second, we instructed the district court to consider the Foundation's request for injunctive relief and to enter "appropriate" prospective relief. *Id.* at 426. What appeared to be a straightforward remand, however, was complicated by subsequent amendments to the Capitol Exhibit Rule. One month after we decided the parties' appeal, the Preservation Board proposed several amendments to the relevant regulations. 45 Tex. Reg. 3406 (May 22, 2020). After notice and comment, the Board adopted the amendments with slight modifications. 45 Tex. Reg. 4968 (July 17, 2020).

Several aspects of the amendments relate to the issues presented here. First, the Board described all accepted displays as government speech, and required that a statement indicating the State's approval accompany the display: "Any exhibit approved and scheduled pursuant to this section by the office of the State Preservation Board is hereby adopted as government speech, and shall be accompanied by a statement identifying the State Official Sponsor and indicating the approval of the office of the State Preservation Board." 13 Tex. Admin. Code § 111.13(b) (2021). Second, the Board made acceptance of a display permissive, rather than mandatory: "Exhibits may be approved and scheduled by the office of the State Preservation Board." *Id.* § 111.13(d)(1). Third, the Board increased its authority to review exhibits,

No. 21-50469

asserting "the right to require the exhibitor to make any changes to the exhibit," *id.* § 111.13(d)(5), whereas previously that right was limited to "aesthetic changes." *Id.* § 111.13(c)(5) (2012). Fourth, the Board removed the term "morals" from the list of criteria that define whether an exhibit serves a public purpose. *Id.* § 111.13(a)(3) (2021).

Before the district court, the State argued that the amendments to the Capitol Exhibit Rule changed the nature of the display program, closing what was previously a limited public forum and endorsing all subsequent exhibits as government speech. As such, the State contended, the Foundation's free-speech claim was moot because the underlying injury—exclusion from participation in a public forum—no longer existed. The district court rejected the State's argument, concluding that, even under the amended Capitol Exhibit Rule, the Capitol was a limited public forum, that, as before, the criteria for accepting an exhibit were not viewpoint neutral, and that the free-speech claim was therefore not moot. The district court entered judgment for the Foundation and ordered two forms of relief. First, the district court enjoined the Defendants "from excluding the Foundation's Exhibit from display in the designated exhibit area of the Texas Capitol Building and the Capitol Extension." *Freedom from Religion Foundation v. Abbott*, 537 F. Supp. 3d 910, 922 (W.D. Tex. 2021). And second, the district court declared that the Defendants "violate the Foundation's First Amendment rights and engage in viewpoint discrimination as a matter of law when they exclude the Foundation's Exhibit based on the perceived offensiveness of its message." *Id.*

The State appealed. In briefing and at oral argument, the State more or less presented the same arguments it made to the district court. That is, it argued that the amendments to the Capitol Exhibit Rule closed the public forum, and that the Foundation's free-speech claim was moot. But following the close of briefing, the Preservation Board amended the Rule again. Specifically, the Board proposed to repeal the regulation altogether. 46 Tex. Reg.

9146 (Dec. 31, 2021). That proposal was finalized in April of 2022. 47 Tex. Reg. 1993 (April 15, 2022). The regulation that once supported the Capitol Exhibit Rule, 13 Texas Administrative Code § 111.13, no longer exists.

Meanwhile, and despite the presence of the district court's injunction, the Foundation has not applied to display its Bill of Rights nativity exhibit in the Capitol. Indeed, the Foundation has not applied at all since its submissions in 2015 and 2016. Nonetheless, the Foundation continues to seek affirmance, including in its post-argument submissions. It therefore falls to us to assess whether the district court was correct to enter judgment for the Foundation and order the Defendants to display the former's exhibit.

## II

The dispositive issue is whether the case is moot in light of the amendment and repeal of the Capitol Exhibit Rule. As recognized before, we review "questions of federal jurisdiction de novo," and that class of issues "includes questions of sovereign immunity . . . and mootness." *Freedom from Religion Foundation*, 955 F.3d at 423 (citations and quotation marks omitted).

## A

Article III restricts our jurisdiction to cases and controversies. We are therefore permitted "to adjudicate only live disputes." *Hinkley v. Envoy Air, Inc.*, 968 F.3d 544, 548 (5th Cir. 2020). And a dispute is no longer live when "the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (citation and quotation marks omitted). In that event, the case has become moot. In addition, a live controversy must maintain through each stage of the litigation. *See Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990) (explaining that jurisdiction must "subsist[] through all stages of federal judicial proceedings"). As we have previously said, "'[t]here must be a case or controversy through all stages of a case' — not just when a suit comes *into* existence but *throughout* its existence." *Yarls*

*v. Bunton*, 905 F.3d 905, 909 (5th Cir. 2018) (quoting *KP v. LeBlanc*, 729 F.3d 427, 438 (5th Cir. 2013)). For these reasons, "any set of circumstances that eliminates actual controversy after the commencement of a lawsuit renders that action moot." *DeOtte v. Nevada*, 20 F.4th 1055, 1064 (5th Cir. 2021) (quoting *Center for Individual Freedom v. Carmouche*, 449 F.3d 655, 651 (5th Cir. 2006)).

The mootness issue often arises where, as here, a statute or regulation is amended or repealed after plaintiffs bring a lawsuit challenging the legality of that statute or regulation. In that case, mootness is the default. *See Houston Chronicle Publishing Co. v. League City*, 488 F.3d 613, 619 (5th Cir. 2007) ("It goes without saying that disputes concerning repealed legislation are generally moot."); *Fantasy Ranch Inc. v. City of Arlington*, 459 F.3d 546, 564 (5th Cir. 2006) ("[S]tatutory changes that discontinue a challenged practice are 'usually enough to render a case moot, even if the legislature possesses the power to reenact the statute after the lawsuit is dismissed.'") (quoting *Valero Terrestrial Corp. v. Paige*, 211 F.3d 112, 116 (4th Cir. 2000)); *McCorvey v. Hill*, 385 F.3d 846, 849 (5th Cir. 2004) ("Suits regarding the constitutionality of statutes become moot once the statute is repealed."); *accord, e.g.*, *Board of Trustees of Glazing Health & Welfare v. Chambers*, 941 F.3d 1195, 1199 (9th Cir. 2019) ("[I]n determining whether a case is moot, we should presume that the repeal, amendment, or expiration of legislation will render an action challenging the legislation moot."); *Ozinga v. Price*, 855 F.3d 730, 734 (7th Cir. 2017) ("When a plaintiff's complaint is focused on a particular statute, regulation, or rule and seeks only prospective relief, the case becomes moot when the government repeals, revises, or replaces the challenged law and thereby removes the complained-of defect."). Indeed, the Supreme Court recently applied this principle in *New York State Rifle & Pistol Association v. City of New York*, dismissing the plaintiffs' case as moot after the City of New York amended the challenged rule. 140 S. Ct. 1525, 1526 (2020).

No. 21-50469

According to these binding principles, we must conclude that this case is moot because the Foundation's asserted injury was tied to the existence of the Capitol Exhibit Rule. That is, the Foundation argues that it was wrongfully excluded from displaying its exhibit in a limited public forum. And its injury necessarily parallels its requested relief. That is, the Foundation requests an injunction ordering the Defendants to display its exhibit in the forum. But the Board has closed the forum, ending the formal process whereby members of the public were entitled to apply to the Preservation Board for permission to display their exhibit in the Capitol.

What is more, the Foundation conceded that the State could close the public forum by doing exactly what it has done here. That is, it conceded that "[t]o close the forum the State could simply . . . stop accepting applications for exhibits. . . . This would immediately change the nature of the Capitol exhibits area." And so although the Foundation complains that its application was denied based on its exhibit's viewpoint, the application process no longer exists. We are therefore forced to conclude that there is no longer a live controversy between the parties, given that the basis of the controversy, the Capitol Exhibit Rule, was repealed.

Consider the case through the lens of the Foundation's free-speech claim. It is not seriously disputed that the State treated the Foundation unequally by refusing to display the exhibit at issue. But "the First Amendment does not tell us which way to cure . . . unequal treatment." *Barr v. American Ass'n of Political Consultants, Inc.*, 140 S. Ct. 2335, 2355 (2020) (quoting *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011)). In general, a governmental entity has two options to remedy unequal treatment; it can either "extend[] the benefits or burdens to the exempted class" or "nullify[] the benefits or burdens for all." *Id.* at 2354 (citing *Heckler v. Mathews*, 465 U.S. 728, 740 (1984)). Instead of levelling up, and allowing the Foundation to participate in the limited public forum, the State elected to level down and close the

forum altogether. In other words, the Preservation Board simply "discontinue[d]" the "challenged practice." *Fantasy Ranch*, 459 F.3d at 564 (quoting *Valero*, 211 F.3d at 116). As such, a live controversy no longer exists, and the case is thus moot. *Hinkley*, 968 F.3d at 548.

B

However, it is an exception to mootness that "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.*, 528 U.S. 167, 189 (2000) (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)). And in fact, the Foundation's central defense against mootness is to assert the voluntary-cessation exception. We must therefore consider whether the exception prevents this case from being moot.

In general, a defendant's voluntary conduct moots a case only if "it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Sossamon v. Texas*, 560 F.3d 316, 325 (5th Cir. 2009), *affirmed*, 563 U.S. 277 (2011). But governmental entities bear a "'lighter burden' . . . in proving that the challenged conduct will not recur once the suit is dismissed as moot." *Stauffer v. Gearhart*, 741 F.3d 574, 582 (5th Cir. 2014) (quoting *Sossamon*, 560 F.3d at 325). That is so because we presume that state actors, as public representatives, act in good faith. *See, e.g.*, *Amawi v. Paxton*, 956 F.3d 816, 821 (5th Cir. 2020) (citing *Fantasy Ranch*, 459 F.3d at 564; *Sossamon*, 560 F.3d at 325). For this reason, and "[w]ithout evidence to the contrary, we assume that formally announced changes to official governmental policy are not mere litigation posturing." *Sossamon*, 560 F.3d at 325. Among other things, the government's ability to reimplement the statute or regulation at issue is insufficient to prove the voluntary-cessation exception. *See, e.g.*, *Fantasy Ranch*, 459 F.3d at 564 (explaining that a case is moot "even

if the legislature possesses the power to reenact the statute after the lawsuit is dismissed"); *accord National Black Police Ass'n v. District of Columbia,* 108 F.3d 346, 349 (D.C. Cir. 1997) ("[T]he mere power to reenact a challenged law is not a sufficient basis on which a court can conclude that a reasonable expectation of recurrence exists.").

We conclude that the voluntary-cessation exception to mootness does not apply here because nothing in the record suggests that the Board will re-implement the Capitol Exhibit Rule.  More specifically, nothing in the record suggests that the Board will continue to accept exhibit applications from the public—but will reject an application from the Foundation based on the exhibit's viewpoint.  The parties quarrel over who bears the burden of proof in the context of a governmental defendant.  But it makes no difference in this instance whether the State must satisfy a "lighter burden," *Sossamon*, 560 F.3d at 325, or if the Foundation must show that the regulation will be put back in place.  Either way, the evidence shows that the regulation has been formally repealed, with no indication that the Preservation Board intends to reconsider that decision.

The Foundation counters that the Preservation Board may still display exhibits in the Capitol, just without any formal display program.  For its part, the State does not dispute this assertion.  And in fact, the Preservation Board clarified that is has authority to display exhibits of its own accord.  *See* 46 Tex. Reg. at 9146 ("[T]he agency does not need the [Capitol Exhibit] rule in order to serve its intended purpose of providing for the display of government speech on the Capitol grounds that educates, informs, and unites.").  Based on this evidence, the Foundation argues that the State's wrongful conduct is reasonably likely to recur, and thus that the case is not moot.

This argument fails because the Foundation's evidence does not support its conclusion.  True, it seems clear that the Preservation Board intends

to display exhibits in the Capitol at some point in the future. But there is no indication that any new display program will be wrongful in the same way that the prior program was wrongful. Recall that the Foundation's central complaint as to the previous program is that the Preservation Board accepted applications from members of the public—but rejected its application based on the viewpoint of its exhibit. Now, the program for soliciting exhibits from the public has been eliminated. And so even if the Preservation Board displays exhibits in the Capitol of its own accord, its doing so would not reimplement the practice to which the Foundation objects.

The Foundation also points to the Supreme Court's recent decision in *Shurtleff v. City of Boston*, 142 S. Ct. 1583 (2022), arguing that governmental defendants can violate the First Amendment even without written guidelines. That is true, so far as it goes. If the Board adopted an unwritten policy of accepting exhibits from members of the public and, in determining which exhibits to accept, discriminated on the basis of an exhibit's viewpoint, such a policy would almost certainly violate the First Amendment. Likewise, the Foundation is in no way precluded from filing a new lawsuit challenging the constitutionality of such a policy, should one be established. But the problem for the Foundation is that it can only speculate as to what the Preservation Board's new policy will be as it relates to displaying exhibits in the Capitol. And speculation is insufficient to satisfy the voluntary-cessation exception. *See Amawi*, 956 F.3d at 821 (explaining that the case was moot because it was "remote, and indeed unrealistically speculative, that the[] defendants will ever again expose the plaintiffs to the claimed injury that prompted the lawsuit"); *Sossamon*, 560 F.3d at 325 (recognizing that the plaintiff's allegations were "too speculative to avoid mooting the case").[6]

---

[6] The Foundation argues that the amendment and subsequent repeal of the Capitol Exhibit Rule are merely "litigation posturing," and show that the Preservation Board will

No. 21-50469

*Shurtleff* thus does not support the Foundation's position. If anything, it cuts in the opposite direction because that case expressly recognizes that a governmental entity can convert a limited public forum into a forum for government speech. In *Shurtleff*, the City of Boston allowed members of the public to raise a flag on the flagpoles outside the Boston City Hall. The City had no written policy on this subject, but generally told the public that it sought to "accommodate all applicants." 142 S. Ct. at 1592; *see id.* at 1593 (describing the City's "come-one-come-all attitude"). However, it denied a request to fly a Christian flag.

The Supreme Court rejected the City's argument that the flag-flying policy was government speech, but made clear that "nothing prevents Boston from changing its policies going forward." *Shurtleff*, 142 S. Ct. at 1593. The Court also suggested that the City might clarify, as other cities did, that "flagpoles are not intended to serve as a forum for free expression by the public" and that flags approved for flying are selected "as an expression of the City's official sentiments." *Id.* The upshot is that a governmental entity is certainly entitled to close a limited public forum and instead speak only on its own behalf. *See also Perry Education Ass'n v. Perry Local Educators Ass'n*, 460 U.S. 37, 46 (1983) (reiterating that "a state is not required to indefinitely retain the open character of [a] facility"). Indeed, the Foundation "does not disagree that the State has the power to . . . close the limited public forum if it so chooses." That is precisely what the Preservation Board has done here.

---

revert to its wrongful conduct if this case is dismissed as moot. But the evidence before us cannot bear that claim. After the Board amended the regulation, it invited the Foundation to reapply to display its exhibit. As noted above, the Foundation failed to do so. And so we have no way of knowing whether the State would have rejected that subsequent application. Likewise, nothing in the record suggests that the Board has accepted exhibits from members of the public since the regulation was repealed, let alone that the Foundation applied to display its exhibit, and was denied. There is thus no evidence that the Board is using the regulation changes to continue the same wrongful conduct.

No. 21-50469

It no longer wished for the Capitol to be used as a limited public forum and so repealed the regulation providing for that forum. The possibility that the Board might use the Capitol to speak on its own behalf does not prevent this case from being moot.[7]

## C

Finally, the State stresses that the Foundation's requests for attorney fees do not restore what was previously a live controversy. That is correct. *E.g.*, *Lewis*, 494 U.S. at 480 ("[An] interest in attorney's fees is, of course, insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim.") (citation omitted). But we reiterate that our holding does not prevent the district court from awarding attorney fees. "[A] determination of mootness neither precludes nor is precluded by an award of attorneys' fees. The attorneys' fees question turns instead on a wholly independent consideration: whether plaintiff is a prevailing party." *Staley v. Harris County*, 485 F.3d 305, 314 (5th Cir. 2007) (quoting *Doe v.*

---

[7] The Foundation also cites *Speech First, Inc. v. Fenves*, 979 F.3d 319 (5th Cir. 2020), for the proposition that the State must issue a "controlling statement of future intention" to prove that it will no longer display exhibits submitted by members of the public. But the facts in *Fenves* are clearly distinguishable from the ones at issue here. In *Fenves*, the policies at issue were speech codes promulgated by the University of Texas. After legal challenges to the codes, the University proposed changes to the codes, for approval by the Board of Regents. We explained that the case was not moot, *inter alia*, because the president's representation that the University did not intend to reimplement the challenged policies, without more, was insufficient to moot the case. *Id.* at 328–29. Here, by contrast, the Preservation Board has finalized the repeal of the Capitol Exhibit Rule. And unlike in *Fenves*, the Board's action was subject to formal notice and comment. In these circumstances, no statement of future intention is necessary. And what is more, *Fenves* arose in the distinct context of "voluntary cessation by a public university." 979 F.3d at 328; *see id.* ("This is not the first appeal in which a public university has had a sudden change of heart, during litigation, about the overbreadth and vagueness of its speech code, and then advocated mootness under a relaxed standard."). That fact-specific context does not apply here.

No. 21-50469

*Marshall,* 622 F.2d 118, 120 (5th Cir. 1980)).  We express no opinion on the issue of which side is the prevailing party, as that question is not before us.

III

Having determined that the case is moot, we must now consider what relief should issue.  To recap, the district court rendered judgment for the Foundation on the latter's free-speech claim.  In so doing, the court: (1) declared that the Defendants violate the First Amendment when they exclude the Foundation's exhibit based on its viewpoint; and (2) enjoined the Defendants from excluding the exhibit from display in the Capitol.

Where a case becomes moot while on appeal, the historical rule "was to vacate the judgment" below.  *Staley*, 485 F.3d at 310 (citing *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39 (1950)).  But the Supreme Court tempered that rule in *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. 18 (1994).  There, the Court explained that the analysis generally requires "the party seeking relief from the status quo" of the judgment to demonstrate "equitable entitlement to the extraordinary remedy of vacatur."  That inquiry, the Court explained, is consistent with the equitable tradition to "dispose[] of moot cases in the manner most consonant to justice in view of the nature and character of the conditions which have caused the case to become moot."  *Id.* at 26 (quoting *Izumi v. U.S. Phillips Corp.*, 510 U.S. 27, 40 (1993) (Stevens, J., dissenting)).

The Court identified two equitable considerations as particularly relevant to the vacatur analysis.  First, a court must consider "whether the party seeking relief from the judgment below caused the mootness by voluntary action."  *Bancorp*, 513 U.S. at 24.  And second, "[a]s always when federal courts contemplate equitable relief, [the] holding must also take account of the public interest."  *Id.* at 26.  In *Bancorp* and in subsequent cases, the Court has identified at least two equitable factors that bear on the public interest: (1) the

No. 21-50469

value that judicial precedents give "to the legal community as a whole," *id.* (citation and quotation marks omitted); and (2) "federalism concern[s]" relating to the "premature adjudication" of a constitutional challenge to a state law. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 75, 79 (1997).

We have never understood those factors to be exhaustive. Rather, our precedents demonstrate that vacatur "depends on the equities of the case," *Staley*, 485 F.3d at 312 (quoting *Russman v. Board of Education*, 260 F.3d 114, 121 (2d Cir. 2001)), and that there is no "hard and fast rule . . . in fashioning a remedy for mootness." *Id.* Among other things, we have also considered if the action mooting the dispute is "temporary," *id.*, as well as whether the party seeking vacatur is "subject to a money judgment or any injunctive relief as a result of the district court's judgment," *Hall v. Louisiana*, 884 F.3d 546, 553 (5th Cir. 2018).

Here, equitable considerations weigh both in support of vacatur, and against. On the one hand, it appears that the Defendants were at least somewhat responsible for the action that mooted this case—the repeal of the Capitol Exhibit Rule. The State denies this conclusion, noting that the Preservation Board is the entity that repealed the regulation, and arguing that the Governor cannot direct the Board's actions because he constitutes only one of six board members. And it also observes that the executive director has no vote on the Board at all.

The State may be correct about the formal limitations of the Governor's power, but equity looks beyond superficial distinctions such as these. *See, e.g.*, *Young v. Higbee*, 324 U.S. 204, 209 (1945) ("Equity looks to the substance and not merely to the form."). The Governor plainly wields significant influence over the Preservation Board's activities, as evidenced by the executive director's prompt response to the Governor's request to remove the Foundation's exhibit. No stretch of the imagination is required to

suppose that the Governor was, at least in part, a moving force behind the repeal of the Capitol Exhibit Rule—an action that directly accorded with his previously expressed policy preferences.

Also, like all judicial precedents, the district court's judgment is valuable "to the legal community as a whole." *Bancorp*, 513 U.S. at 26. And this precedent is particularly valuable because it might bear on future state policies respecting a similar subject, and any related disputes. *See Staley*, 485 F.3d at 313–14 ("Indeed, the preservation of the district court judgment serves the judicial and community interests by discouraging relitigation of the identical issues by the same parties under the same circumstances.").

On the other hand, the judgment subjects the Defendants to permanent injunctive relief, despite the Preservation Board's unconditional repeal of the Capitol Exhibit Rule. *Compare Hall*, 884 F.3d at 553 (equity did not require vacatur where the losing party was not subject to injunctive relief); *Staley*, 485 F.3d at 312 (equity allowed injunction to remain in place because the action mooting the case was only temporary). Ordinarily, a permanent injunction relating to a challenged law or regulation cannot continue after the law or regulation is removed. That is so because "parties have no power to require of the court continuing enforcement of rights [a] statute no longer gives." *System Federation No. 91 v. Wright*, 364 U.S. 642, 652 (1961); *see also Pennsylvania v. Wheeling & Belmont Bridge Co.*, 59 U.S. (18 How.) 421, 432 (1855) (explaining that after an ordinance "has been modified by the competent authority, . . . it is quite plain the decree of the court cannot be enforced"). These principles show that the public interest is impeded, rather than furthered, by ordering state officials not to exclude the Foundation from participation in a program that no longer exists. Indeed, we have previously said that an injunction is "meaningless" if "there remains no live controversy between the parties." *Fontenot v. McCraw*, 777 F.3d 741, 747 (5th Cir. 2015). And it goes without saying that it would pose serious federalism

No. 21-50469

concerns for a federal court to order state officials to continue enforcing a policy that the state agency has repealed. *See Arizonans for Official English*, 520 U.S. at 75.

Given the competing equitable considerations, we vacate only part of the district court's judgment. In light of the particular "equities of the case," *Staley*, 485 F.3d at 312, the permanent injunction disserves the public interest and must be vacated. But the district court's order and declaratory judgment further the public interest insofar as they might provide important guidance to future disputes. And these aspects of the judgment do not pose the same sort of federalism concern as does the permanent injunction. We therefore decline to vacate the order and declaratory judgment.

## IV

We are compelled to conclude that the State Preservation Board's repeal of the Capitol Exhibit Rule renders this case moot. Given that the case became moot while on appeal, we have examined the equities to determine whether and to what extent the judgment below should be vacated. The permanent injunction is VACATED. We otherwise decline to vacate the order and judgment. This case is REMANDED to the district court for consideration of Freedom from Religion Foundation's motions for attorney fees, and other proceedings consistent with this opinion, to the extent necessary.

# *United States Court of Appeals*
### FIFTH CIRCUIT
### OFFICE OF THE CLERK

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE,**
**Suite 115**
**NEW ORLEANS, LA 70130**

February 22, 2023

Mr. Philip Devlin
Western District of Texas, Austin
United States District Court
501 W. 5th Street
Austin, TX 78701-0000

      No. 21-50469   Freedom From Religion Fdn v. Abbott
               USDC No. 1:16-CV-233

Dear Mr. Devlin,

Enclosed is a copy of the judgment issued as the mandate and a
copy of the court's opinion.

                        Sincerely,

                        LYLE W. CAYCE, Clerk

                        By: _____
                        Lisa E. Ferrara, Deputy Clerk
                        504-310-7675

cc:
      Mr. Richard L. Bolton
      Mr. William Francis Cole
      Mr. Samuel Troxell Grover
      Ms. Lanora Christine Pettit
      Mr. Benjamin Walton