UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **FREEDOM FROM RELIGION FOUNDATION, INC.** § <br> Plaintiff, § <br> § <br> -vs- § <br> § <br> **GOVERNOR GREG ABBOTT** § <br> and § <br> **ROD WELSH**, Executive Director of the § <br> Texas State Preservation Board, in their § <br> official capacities, § <br> Defendants. § | CASE NO. 1:16-CV-00233-SS |

### PLAINTIFF'S COMBINED MOTION FOR ATTORNEYS' FEES AND BRIEF IN SUPPORT

Plaintiff, Freedom From Religion Foundation, Inc. ("FFRF"), moves the Court for an award of attorneys' fees and expenses pursuant to FED. R. CIV. P. 54(d)(2). FFRF's requested expenses include those itemized on its Bill of Costs previously filed with the court on May 18, 2021. (DKT 129.) The prior Bill of Costs is attached to this Motion as Exhibit 6.

FFRF requests a fee award pursuant to 42 U.S.C. § 1988, based on the Defendants' violation of 42 U.S.C. § 1983, i.e., the Defendants violated FFRF's First Amendment rights by engaging in viewpoint discrimination under color of state law. FFRF now seeks an award of attorneys' fees as a prevailing party.

### I.     INTRODUCTION

1.     FFRF filed suit against the Defendants, Governor Greg Abbott and John Sneed, the Executive Director of the Texas State Preservation Board, pursuant to 42 U.S.C. § 1983, for violation of FFRF's free speech rights in connection with the Defendants' removal and exclusion of FFRF's Bill of Rights exhibit from the Texas State Capitol exhibition area. (Rod Welsh subsequently substituted as Defendant upon succeeding Sneed as Executive Director of the Preservation Board.)

2. The precipitating event for this suit occurred in December of 2015 when the Defendants removed and excluded FFRF's Bill of Rights exhibit based on its viewpoint.

3. Even now, after more than seven years, the Defendants still refuse to concede to viewpoint neutrality, instead manufacturing mootness years after the fact of prolonged litigation.

4. In the end, however, FFRF has prevailed, overcoming the Defendants' resistance, but at considerable time and expense.

5. Exhibit 7 to FFRF's Motion is the civil docket for this case detailing the many hurdles that the Defendants have raised, including preliminary motion to dismiss; two summary judgment motions; discovery motions; two appeals to the Fifth Circuit; objections on remand to prospective relief based upon claimed mootness; a second appeal to the Fifth Circuit; and additional claims of mootness pending appeal.

6. The district court granted summary judgment in FFRF's favor on its First Amendment freedom of speech claim on October 13, 2017. (DKT #74.)  Since that time, the Defendants have made no substantive argument against that holding, arguing instead a variety of procedural and jurisdictional issues in their defense.

7. On June 19, 2018, however, the court entered a Final Judgment in favor of FFRF on its First Amendment freedom of speech claim, which included a declaration that the Defendants violated FFRF's First Amendment rights and engaged in viewpoint discrimination as a matter of law when FFRF's Bill of Rights exhibit was removed from the Texas Capitol building. (DKT #87.)

8. On appeal, the Defendants did not seek a reversal of the court's liability holding but instead objected to the retroactive verb tense of the district court's Final Judgment.

9. The Court of Appeals, on April 3, 2020, ruled that a live controversy still existed and remanded to the district court with direction to enter appropriate prospective relief in FFRF's favor.

10. The Defendants then, more than four years after this lawsuit was filed, took actions intended to create mootness so as to foreclose this court's compliance with the Court of Appeals' mandate to enter prospective relief.

11. This court concluded on May 5, 2021, however, that the pending case was not moot and entered Final Judgment in FFRF's favor that included prospective declaratory and injunctive relief. (DKT #127.)

12. The Defendants, thereafter, again appealed the Final Judgment issued by this court after the remand from the Fifth Circuit. (DKT #141.)

13. During the pendency of the second appeal, after oral argument, the Defendants fully repealed the Capitol Exhibit Rule, seeking again to moot FFRF's suit.

14. The Court of Appeals agreed that repeal of the Capitol Exhibit Rule mooted the matter, but the Court refused to vacate this court's order and declaratory judgment, declaring that the Defendants violated the First Amendment by excluding the Foundation's exhibit from a limited public forum which rulings by the court remain intact. (CT. APP. DKT 87-2.) The Court of Appeals specifically emphasized that its "holding does not preclude the Foundation from showing that it is entitled to attorney fees as the prevailing party under 42 U.S.C. § 1988, given that the Board repealed the Capitol Exhibit Rule in apparent response to the Foundation's lawsuit." (*Id.*)

15. FFRF is clearly a prevailing party pursuant to this court's Final Judgment of May 5, 2021. In addition, FFRF is a prevailing party by virtue of the Court of Appeals' decision

upholding the prior finding of liability and directing the district court on remand to enter prospective relief.

16. FFRF requests the court to award the fees requested herein, which fees are documented and justified by supporting declarations. FFRF's fees request is reasonable in the circumstances of this case in which the Defendants have steadfastly and persistently sought to evade the First Amendment proscriptions on viewpoint discrimination, only finally creating mootness after this court determined liability and awarded injunctive and declaratory prospective relief.

17. The Defendants' position regarding FFRF's Fee Application is not known. Counsel for FFRF, Rich Bolton, conferred with counsel for Defendants, Benjamin Walton, on April 4, 2023, after previously providing detailed current information about FFRF's fee request on March 18, 2023. Attorney Bolton followed up by e-mail on April 2, 2023, asking how Defendants' review of FFRF's fee information was progressing. Attorney Walton subsequently left a voice message for Attorney Bolton on April 3, 2023, after which Attorney Bolton and Attorney Walton talked on April 4, 2023.

18. Attorney Walton told Attorney Bolton that he was not authorized to respond substantively to FFRF's fee information. Attorney Bolton, in response, inquired as to whether the Defendants had concerns regarding the amount of fees documented, including billing rates and/or amounts of time billed. Attorney Walton stated that he was not authorized to answer that question. Attorney Bolton also asked whether the Defendants considered that FFRF is not entitled to any fee award as a matter of law. Again, Attorney Walton stated that he was not authorized to state the Defendants' position.

19. As a result of Attorney Bolton's conference with Defendants' counsel, FFRF is not able to identify any specific reason why this fee application could not be resolved by agreement.

## II. PREVAILING PARTY

20. The court may award attorney fees to a prevailing party in a suit under the Civil Rights Act. 42 U.S.C. §1988. The prevailing party is the party that succeeds on any significant issue in the litigation and the success provides some benefit that had been sought by the party. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

21. A plaintiff is considered a prevailing party if it gains a material alteration in the legal relationship between the parties that directly benefits the plaintiff. Prevailing parties, moreover, presumptively should be awarded fees, absent exceptional circumstances. *Hensley*, 461 U.S. at 429-30.

22. An injunction or declaratory judgment will usually satisfy the test for prevailing party status. *Rhodes v. Stewart*, 488 U.S. 1, 4 (1988); *Lefemine v. Wideman,* 568 S. Ct. 9,11 (2012) (*per curium*) (Supreme Court has "repeatedly held that an injunction or declaratory judgment, like a damages award, will usually satisfy that [prevailing party] test"); *Sanchez v. City of Austin,* 774 F.3d 873, 878 (5th Cir. 2014).

23. In this case, FFRF should be awarded attorney fees under 42 U.S.C. §1988 as the prevailing party because: (1) The court granted summary judgment in FFRF's favor on the First Amendment freedom of speech claim against Governor Abbott and Executive Director Walsh in their official capacities (DKT #74, pp. 10-13);[1] (2) the court entered judgment in favor of FFRF

---

[1] "In conclusion, because the ostensibly mocking tone of the FFRF exhibit is Defendants' sole stated reason for removing the exhibit from the Ground Floor Rotunda, the Court finds the Defendants have engaged in viewpoint discrimination as a matter of law. The Court therefore GRANTS Plaintiff's Motion for Partial Summary Judgment and DENIES Defendants' Second Motion for Summary Judgment with respect to FFRF's freedom of speech claim."

on its First Amendment freedom of speech claims; (3) the court issued a declaratory judgment that Defendants violated FFRF's First Amendment rights and engaged in viewpoint discrimination as a matter of law when the FFRF's exhibit was removed from the Texas State Capitol building (DKT #87); (4) the Fifth Circuit affirmed this court's liability holding and directed the court on remand to enter prospective relief in favor of FFRF; and (5) this court entered prospective declaratory and injunctive relief in favor of FFRF after remand.

24. Although the Fifth Circuit subsequently vacated this Court's injunctive relief on grounds of mootness, "a determination of mootness neither precludes nor is precluded by an award of attorneys' fees. The attorneys' fees question turns instead on a wholly independent consideration: whether plaintiff is a 'prevailing party.'" *Staley v. Harris County, Texas,* 485 F.3d 305, 314 (5th Cir. 2007). *See also Libertarian Party of Arkansas v. Martin*, 876 F.3d 948, 952 (8th Cir. 2017) (when a case has been rendered moot, a "prevailing party" is a party who obtained a favorable, material alteration in the legal relationship between the parties prior to the intervening act of mootness).

25. A defendant cannot moot an action to avoid the payment of plaintiffs' attorneys' fees when a district court grants relief based upon an unambiguous indication of success on the merits; instead, such a district court's action, coupled with a defendant's subsequent mooting of the case, is sufficient to establish prevailing party status. *Dearmore v. City of Garland*, 519 F.3d 517, 524 (5th Cir. 2008).

26. Vacatur does not vitiate prevailing party status. A party that has succeeded on any significant claim, "either *pendente lite* or at the conclusion of the litigation" is a prevailing party regardless of subsequent mootness. *Davis v. Abbott,* 781 F.3d 207, 214 (5th Cir. 2015), quoting *Texas State Teachers Association v. Garland Independent School District*, 49 U.S. 782, 791

(1989). The critical determinant is simply whether a party's success, even *pendente lite,* is marked by the court's "judicial *imprimatur*." *Davis,* 781 F.3d at 214, quoting *Buckhannon Board & Care Home Inc. v. West Virginia Department of Health and Human Resources*, 532 U.S. 598, 603 (2001).

27. Thus, the Fifth Circuit Court of Appeals applies a three-part test for evaluating prevailing-party status: (1) The plaintiff must achieve judicially-sanctioned relief; (2) the relief must materially alter the legal relationship between the parties; and (3) the relief must modify the defendant's behavior in a way that directly benefits the plaintiff at the time the relief is entered. *Davis,* 781 F.3d at 214, citing *Petteway v. Henry,* 738 F.3d 132, 137 (5th Cir. 2013).

28. Even a preliminary injunction followed by mootness, without final judgment, can potentially satisfy the prevailing party standard. In *Dearmore,* 519 F.3d 521, the Court of Appeals recognized that a judgment on the merits obviously has sufficient judicial *imprimatur* for purposes of prevailing party status., but even a merits-based preliminary injunction, coupled with subsequent mooting of an action, does not foreclose prevailing party status. *Id.* at 526. The present case, however, does not depend upon the uncertainties of a preliminary injunction. Here, this court entered a merits-based Final Judgment and Order with prospective injunctive and declaratory relief – with the full imprimatur of the court.

29. This court initially determined that the Defendants violated FFRF's First Amendment rights, which the Defendants did not challenge on the merits during a first appeal. The Court of Appeals, however, remanded to this court with directions to enter appropriate prospective relief. This court then entered judgment on the merits in favor of FFRF, including prospective injunctive and declaratory relief, which undeniably establishes FFRF's credentials as a prevailing party. The Defendants, nonetheless, again appealed this court's Final Judgment and Order.

30. While the Defendants' second appeal was pending, the Texas State Preservation Board repealed the Capitol Exhibit Rule in apparent response to FFRF's lawsuit. (CT. APP. DKT 87-2.) The Court of Appeals concluded that the Rule repeal finally and effectively mooted the pending case.

31. The Court of Appeals, however, refused to vacate the district court's declaratory relief, while vacating only the district court's injunctive relief.  The Court concluded that the district court's "order and declaratory judgment – declaring that the Defendants violated the First Amendment by excluding the Foundation's exhibit from a limited public forum – shall remain. And we [the Court] also note that our holding does not preclude the Foundation from showing that it is entitled to attorney fees as the prevailing party under 42 U.S.C. § 1988, given that the Board repealed the Capitol Exhibit Rule in apparent response to the Foundation's lawsuit." (CT. APP. DKT 87-2.)

32. A prevailing party may receive fees under § 1988 even if not victorious on every claim.  A civil rights plaintiff who obtains meaningful relief has corrected a violation of federal law and, in so doing, has vindicated Congress's statutory purpose . . . A court should compensate the plaintiff for the time his attorney reasonably spent on achieving the favorable outcome, even if the plaintiff failed to prevail on every contention." *Fox v. Vice*, 563 U.S. 826, 834 (2011) (citations and quotations omitted).  "Although attorneys should not be reimbursed for their work on claims that bore no relation to the grant of relief, where the district court determines that the successful and unsuccessful claims are inextricably intertwined and involve a common core of facts or are based on related legal theories, it is not an abuse of discretion for the court to award the entire fee." *Restivo v. Hesseman*, 846 F.3d 547, 592 (2d. Cir. 2017) (citation and quotations omitted).

33. In this case, all of FFRF's claims were inextricably intertwined in that they arose from the same facts, i.e., the arbitrary censorship of FFRF's Bill of Rights exhibit.

### III.   CALCULATION OF AWARD

34. FFRF seeks $474,829.75 as fair and reasonable attorneys' fees and related expenses, as documented, and explained in the Declarations of Richard Bolton, Samuel Grover, Patrick Elliott and Daniel Byrne, attached hereto as Exhibits 2 – 5, and which are fully incorporated herein by reference. Exhibit 1 is a summary itemization of requested fees by attorney.

35. When considering a request for attorneys' fees, auditing perfection is not required. The "essential goal of shifting fees is to do rough justice." *Cantu Services, Inc. v. Frazier*, Fed. Appx. 339, 341 (5th Cir. 2017). With that goal in mind, FFRF has sought to be reasonable and fair, including by making generous reductions as a matter of billing discretion.

36. FFRF notes at the outset of the court's fee calculation process that the end result in this case is essentially all that FFRF set out to obtain, i.e., a declaration and injunction against continued viewpoint discrimination in violation of the First Amendment. FFRF's success, therefore, is not measured by a large judgment for damages, but that does not diminish the importance of First Amendment free speech rights.

37. The loss of First Amendment rights *per se* constitutes irreparable harm, as the court recognized in *Opulent Life Church v. City of Holly Springs, Mississippi*, 697 F.3d 279, 295 (5th Cir. 2012). The Court of Appeals also has noted that a defendant "would need to present powerful evidence of harm" to counter the harm caused by First Amendment violations. *Id.* at 297. Finally, injunctions protecting First Amendment rights are deemed to be always in the public interest. *Id.* at 298. *See also Ingebretsen v. Jackson Public School District*, 88 F.3d 274, 280 (5th Cir. 1996)

(determining that because the statute challenged in that case was unconstitutional, "the public interest was not disserved by injunction preventing its implementation").

38. The significance of FFRF's vindication of First Amendment rights cannot be gainsaid. Here, the Defendants have not argued that they did not mean to engage in viewpoint discrimination. Instead, they have purported to defend viewpoint discrimination, just as they seek to perpetuate their right to continue exercising viewpoint discrimination in the future. Thus, FFRF's success in this case is not only significant in the abstract, but made most meaningful in view of the Defendants' obduracy.

39. The ultimate calculation of attorneys' fees involves a two-step process. First, the court calculates the lodestar amount by multiplying the number of hours reasonably spent on the case by an appropriate hourly rate, which is the market rate in the community for this work. *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013).

40. The number of hours reasonably spent are determined, in the first instance, from the attorneys' time records, as to which attorneys should exercise billing judgment. *Hensley*, 461 U.S. at 437. Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant. *Saizan v. Delta Concrete Products Company*, 448 F.3d 795, 799 (5th Cir. 2006).

41. The lodestar's reasonable hourly rate determination is based on the rate charged in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. *Blum v. Stenson*, 465 U.S. 886, 895-96 N.11 (1984); *Heidtman v. County of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999). The hourly rate must be adequate to attract competent counsel, "but the measure is not the rates which lions at the bar may command." *Leroy v. City of Houston*, 906 F.2d 1068, 1079 (5th Cir. 1990).

42. In the end, the fees calculation process is intended to arrive at a number that is sufficient to induce capable attorneys to undertake the representation of meritorious civil rights cases, and the lodestar method yields such a fee that is presumptively sufficient to achieve this objective. *Perdue v. Kenny A.*, 559 U.S. 542, 552-3 (2010).

43. Four attorneys have been involved to varying extents in this case on behalf of FFRF. Exhibit 1 to this motion identifies the four attorneys involved and the amount of fees associated with their work. Attorney Richard Bolton was lead counsel throughout this matter and Attorney Samuel Grover has been continuously and extensively involved since the initial application for FFRF's Bill of Rights exhibit at the Texas State Capitol. Attorney Grover also argued on behalf of FFRF in the Fifth Circuit.

44. Fees are also sought for Attorney Patrick Elliott, Senior Litigation Counsel at FFRF, who provided invaluable assistance and counsel throughout. Finally, fees are sought for work performed by Attorney Daniel Byrne, who provided local counsel services.

45. Declarations for each of these attorneys are included as Exhibits to this Motion. Each Declaration includes information about the individual attorneys' professional background and experience, rates charged for this matter and work performed. Each Declaration also includes detailed information showing itemized dates, services performed, and time spent performing services in this matter.

46. The Declarations in support of FFRF's fees request also explain the nature of the necessary work performed in this matter. They further document and explain the discounting done in the exercise of billing discretion.

47. Thus, Attorney Bolton has broken down services by reference to specific tasks, such as summary judgment briefing, etc. Attorney Bolton then also describes discounts that have

been made from total hours worked for various tasks, amounting to 94.9 hours for which no compensation is requested.

48. In addition, Attorney Bolton discounted 71 hours of travel time to $150 per hour, compared to the lodestar hourly rate of $425 per hour. Finally, with regard to expenses, Attorney Bolton has charged only for hotel and airline expenses. He has not otherwise charged for ground transportation or other incidentals related to travel, including food and beverage, as to which no charges are made. Attorney Bolton also has not included in his fee and expense request anything for Westlaw research, copying, or any other office-related expense. FFRF's expense request, in a word, is conservative.

49. Attorney Grover and Attorney Elliott too have documented and calculated their requested fees after taking substantial discounts and exclusions of time on a variety of tasks related to this case, that demonstrate the commitment to exercising billing discretion. (See Grover and Elliott Declarations, Exhibits 3 and 4.) Attorney Grover also has not included any travel expenses related to argument before the Fifth Circuit or any other expenses in his request, nor has Attorney Elliott at FFRF. (See Elliott Declaration, Exhibit 4.) A review of Attorney Byrne's billing also shows a markedly conservative approach to billing in this matter as local counsel. (See Byrne Declaration, Exhibit 5.)

50. The hourly amounts charged by the attorneys involved in this matter are all believed to be wholly consistent with the local market in Austin, Texas. Attorney Byrne, who practices in Austin, has explained the basis for his fee in his Declaration and the reasonableness of the fees billed by all of the lawyers involved in this matter. (Byrne Declaration, Exhibit 5.) Similarly, Attorneys Bolton, Grover and Elliott explain the basis for their hourly rates, including references to prior fee awards. Their fees range from $400 to $425 per hour, which rates are considered to

been made from total hours worked for various tasks, amounting to 94.9 hours for which no compensation is requested.

48. In addition, Attorney Bolton discounted 71 hours of travel time to $150 per hour, compared to the lodestar hourly rate of $425 per hour. Finally, with regard to expenses, Attorney Bolton has charged only for hotel and airline expenses. He has not otherwise charged for ground transportation or other incidentals related to travel, including food and beverage, as to which no charges are made. Attorney Bolton also has not included in his fee and expense request anything for Westlaw research, copying, or any other office-related expense. FFRF's expense request, in a word, is conservative.

49. Attorney Grover and Attorney Elliott too have documented and calculated their requested fees after taking substantial discounts and exclusions of time on a variety of tasks related to this case, that demonstrate the commitment to exercising billing discretion. (See Grover and Elliott Declarations, Exhibits 3 and 4.) Attorney Grover also has not included any travel expenses related to argument before the Fifth Circuit or any other expenses in his request, nor has Attorney Elliott at FFRF. (See Elliott Declaration, Exhibit 4.) A review of Attorney Byrne's billing also shows a markedly conservative approach to billing in this matter as local counsel. (See Byrne Declaration, Exhibit 5.)

50. The hourly amounts charged by the attorneys involved in this matter are all believed to be wholly consistent with the local market in Austin, Texas. Attorney Byrne, who practices in Austin, has explained the basis for his fee in his Declaration and the reasonableness of the fees billed by all of the lawyers involved in this matter. (Byrne Declaration, Exhibit 5.) Similarly, Attorneys Bolton, Grover and Elliott explain the basis for their hourly rates, including references to prior fee awards. Their fees range from $400 to $425 per hour, which rates are considered to

been made from total hours worked for various tasks, amounting to 94.9 hours for which no compensation is requested.

48. In addition, Attorney Bolton discounted 71 hours of travel time to $150 per hour, compared to the lodestar hourly rate of $425 per hour. Finally, with regard to expenses, Attorney Bolton has charged only for hotel and airline expenses. He has not otherwise charged for ground transportation or other incidentals related to travel, including food and beverage, as to which no charges are made. Attorney Bolton also has not included in his fee and expense request anything for Westlaw research, copying, or any other office-related expense. FFRF's expense request, in a word, is conservative.

49. Attorney Grover and Attorney Elliott too have documented and calculated their requested fees after taking substantial discounts and exclusions of time on a variety of tasks related to this case, that demonstrate the commitment to exercising billing discretion. (See Grover and Elliott Declarations, Exhibits 3 and 4.) Attorney Grover also has not included any travel expenses related to argument before the Fifth Circuit or any other expenses in his request, nor has Attorney Elliott at FFRF. (See Elliott Declaration, Exhibit 4.) A review of Attorney Byrne's billing also shows a markedly conservative approach to billing in this matter as local counsel. (See Byrne Declaration, Exhibit 5.)

50. The hourly amounts charged by the attorneys involved in this matter are all believed to be wholly consistent with the local market in Austin, Texas. Attorney Byrne, who practices in Austin, has explained the basis for his fee in his Declaration and the reasonableness of the fees billed by all of the lawyers involved in this matter. (Byrne Declaration, Exhibit 5.) Similarly, Attorneys Bolton, Grover and Elliott explain the basis for their hourly rates, including references to prior fee awards. Their fees range from $400 to $425 per hour, which rates are considered to

be below market rates for what these experienced attorneys could charge for similar work in Austin.

51. The amounts for which a fee award is requested are reasonable under the lodestar calculation method. As the court is aware, moreover, a strong presumption of reasonableness attaches to the lodestar amount. *Black*, 732 F.3d at 502.

52. The lodestar amount, nonetheless, may be adjusted upward or downward depending on consideration of a variety of factors identified in *Johnson v. Georgia Highway Express, Inc.*, 48 F.2d 714, 717-19 (5th Cir. 1974), abrogated on other grounds by *Blanchard v. Bergeron*, 49 U.S. 87 (1989). In this case FFRF does not request an upward adjustment of the lodestar amount, nor do any of the *Johnson* factors warrant any reduction of the lodestar amount. If anything, the experience and background of the attorneys involved could well justify an upward adjustment, including the quality of their representation throughout this protracted litigation and results obtained.

53. FFRF requests, therefore, that the court award fees and expenses as documented in the attached Declarations. These amounts are believed to be reasonable and fair for the work necessitated by this case in which FFRF has prevailed.

## IV.   REQUEST FOR RELIEF

FFRF is the prevailing party in this case and is therefore presumptively entitled to recover its reasonable attorneys' fees and expenses under 42 U.S.C. § 1988, as well as taxable costs itemized in FFRF's Bill of Costs. FFRF requests the Court to award attorneys' fees and expenses, as documented in supporting declarations, and which amounts are summarized in Exhibit 1 to this Motion.

Dated this 12th day of April, 2023.

Respectfully submitted,

BOARDMAN AND CLARK, LLP
1 S. Pinckney St., Suite 410
Madison, Wisconsin 53703-4256
Telephone:  608-257-9521

*/s/ Richard L. Bolton*
Richard L. Bolton
Wisconsin State Bar No. 1012552
Email:  rbolton@boardmanclark.com

Daniel H. Byrne
Texas State Bar No. 03565600
Email:  dbyrne@fbhf.com
Lessie G. Fitzpatrick
Texas State Bar No. 24012630
Email:  lfitzpatrick@fbhf.com
FRITZ, BYRNE, HEAD & FITZPATRICK, PLLC
221 West 6th Street, Suite 960
Austin, Texas   78701
Telephone:     (512) 476-2020
Facsimile:      (512) 477-5267

Sam Grover
Wisconsin State Bar No. 1096047
Email:  sgrover@ffrf.org
Patrick Elliott
Wisconsin State Bar No. 1074300
Email:  pelliott@ffrf.org
FREEDOM FROM RELIGION
FOUNDATION, INC.
P. O. Box 750
Madison, Wisconsin   53701
Telephone:  608-256-8900
Telecopier:  608-204-0422
ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF CONFERENCE

Counsel for FFRF, Rich Bolton, conferred with counsel for Defendants, Benjamin Walton, on April 4, 2023. Attorney Bolton previously had provided to Attorney Walton detailed updated information about FFRF's fee request on March 18, 2023. Attorney Bolton then inquired by e-mail on April 2, 2023, as to how Defendants' review of FFRF's fee information was progressing. Attorney Walton subsequently left a voice message for Attorney Bolton on April 3, 2023, after which Attorney Bolton and Attorney Walton talked on April 4, 2023.

Attorney Walton told Attorney Bolton that he was not authorized to respond substantively to FFRF's fee information. Attorney Bolton, in response, inquired as to whether the Defendants had concerns regarding the amount of fees documented, including billing rates and/or amounts of time billed. Attorney Walton stated that he was not authorized to answer that question. Attorney Bolton also asked whether the Defendants considered that FFRF is not entitled to any fee award as a matter of law. Again, Attorney Walton stated that he was not authorized to state the Defendants' position.

As a result of Attorney Bolton's conference with Defendants' counsel, FFRF is not able to identify any specific reason why the matter could not be resolved by agreement.

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing was filed electronically via the Court's CM/ECF system on this the 12th day of April, 20231, which will send notification to the following:

Benjamin S. Walton
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, TX 78711
Telephone: (512) 463-2120

Telecopier: (512) 320-0667
Email: Benjamin.Walton@oag.texas.gov

*/s/ Richard L. Bolton*
Richard L. Bolton

\\msnfs2\share\docs\WD\26318\34\A4862102.DOCX