## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| FREEDOM FROM RELIGION FOUNDATION, INC. | § § § | |
| Plaintiff, | § | |
| | § | |
| -vs- | § | CASE NO. 1:16-CV-00233-SS |
| | § | |
| GOVERNOR GREG ABBOTT | § | |
| and | § | |
| ROD WELSH, Executive Director of the | § | |
| Texas State Preservation Board, in their | § | |
| official capacities, | § | |
| Defendants. | § | |

### FREEDOM FROM RELIGION FOUNDATION INC.'S REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

### I.     INTRODUCTION.

Governor Greg Abbott and Rod Welsh, Executive Director of the Texas State Preservation Board (hereinafter collectively referred to as "Defendants"), disingenuously claim to have essentially won this First Amendment litigation. Thus, they claim that FFRF is not a prevailing party entitled to attorney fees. The district court, however, held that Defendants violated the Freedom From Religion Foundation's (hereinafter "FFRF") First Amendment rights, which Defendants have never disputed in two trips to the Fifth Circuit Court of Appeals. The Court of Appeals, moreover, ruled that FFRF was entitled to prospective relief, whereupon Judge Yeakel entered a final judgment in favor of FFRF granting declaratory and permanent injunctive relief. In the context of seminal values protected by the United States Constitution, FFRF clearly prevailed in its primary objective.

Defendants err in the reasoning of their opposition to FFRF's fee request. They purport to measure FFRF's success from the perspective of post-judgment mootness and vacatur, which only occurred after this court's final judgment granting prospective declaratory and permanent injunctive relief to FFRF. Prevailing party status correctly measured is from the time when a court

enters its final judgment or order. Final judgment that precedes mootness is sufficient without more to establish entitlement to a prevailing party fee award. In other words, the test applicable to final judgments ordering injunctive relief, as in the present case, is different than the standard applicable to preliminary injunctions for purposes of determining prevailing party status. Here, Defendants argue that the preliminary injunction standard should be applied to the final judgment entered in this case before either mootness or *vacatur*. The Defendants' argument is wrong.

The Defendants' flawed theme of limited success by FFRF, nonetheless, also pervades the Defendants' objection to the reasonableness of FFRF's fee request. As discussed in more detail below, all of FFRF's claims involved the same nucleus of facts and interrelationship to FFRF's First Amendment claim. The facts and legal theories all derive from the basic act of viewpoint discrimination by the Defendants. Thus, while the Defendants point to no specific time entries to which they object, their request for a 50% discount of all of FFRF's fees is wholly unjustified. The Defendants' bulk argument, moreover, ignores substantial prior discounting of FFRF's fees in its application for fees.

Finally, the Defendants disingenuously insinuate that this case has been over-litigated, without looking in the mirror for the cause. The Defendants have defended this case vigorously, including two appeals during seven years of litigation, which is their prerogative. Nonetheless, this court has held that the Defendants engaged in viewpoint discrimination by censoring FFRF's Capitol Exhibit, which holding the Defendants have not substantively contested. This court also granted FFRF prospective declaratory and permanent injunctive relief. FFRF's requested fees incurred to obtain and protect that relief were are reasonable and necessary when incurred. Post-judgment mootness and *vacatur* do not change the equation.

## II.     FFRF IS A PREVAILING PARTY.

### A.  Final Judgment for FFRF Preceded Mootness and *Vacatur*

Defendants argue incorrectly that FFRF is not a prevailing party based on *vacatur* of this court's permanent injunction. Defendants' argument is based upon an apparent misreading of the Fifth Circuit's decision remanding for consideration of attorneys' fees. Defendants' argument is also based upon a misapprehension of the applicable law. In the first place, the Court of the Appeals decided that mootness occurred during the pendency of appeal -- not prior to the district court's final judgment granting prospective declaratory and injunctive relief. In addition, Defendants incorrectly rely on the standard for determining prevailing party status that is applicable to preliminary injunctions, rather than the standard applicable to final judgments rendered prior to mootness, as in the present case.

Defendants initially rely on the false premise that mootness occurred before the district court's final judgment. Defendants incorrectly claim that "the action that mooted this case (the 2020 amendments closing the limited public forum for exhibits in the Texas capitol) occurred almost a year *before* this Court entered injunctive relief for plaintiff on May 5, 2021 (ECF 126). As a matter of pure chronology, the injunction in 2021 could not have caused the rule amendments of 2020." (Emphasis in original.)  (Defendants' Response to Plaintiff's Motion for Attorneys' Fees at 6.) No court, however, has ever ruled that the 2020 amendments mooted this case.

In fact, this court expressly rejected Defendants' argument that the amendment of rules mooted this case. The court carefully considered Defendants' argument before concluding that "the court agrees [with FFRF] that the case is not moot." (Record No. 126 at 5). The court further stated that "this court therefore concludes that the case is not moot and that the court has jurisdiction to decide the two remanded issues [from the Court of Appeals]." (*Id.* at 11.)

The Court of Appeals, for its part, also did not conclude that the amendment to rules in 2020 caused mootness in this case. Instead, the Court clearly stated that "we are compelled to conclude that the State Preservation Board's repeal of the Capitol Exhibit Rule renders this case moot. Given that the case became moot while on appeal, we have examined the equities to determine whether and to what extent the judgment below should be vacated." (Court of Appeals Decision at 21.) The Court also recognized, without disagreement, that "the district court rejected the State's [mootness] argument, concluding that, even under the amended Capitol Exhibit Rule, the Capitol was a limited public forum that, as before, the criteria for accepting an exhibit were not viewpoint neutral and that the free-speech claim was therefore not moot." (*Id.* at 9.)

The Court of Appeals further noted that following the close of briefing on appeal, the Preservation Board repealed the regulation altogether. Thus, "the regulation that once supported the Capitol Exhibit Rule, 13 Texas Administrative Code § 111.13, no longer exists." (*Id.* at 9-10.) Based on that repeal, the Court of Appeals concluded "that this case is moot because the Foundation's asserted injury was tied to the existence of the Capitol Exhibit Rule." (*Id.* at 12.) "We [Court of Appeals] are therefore forced to conclude that there is no longer a live controversy between the parties, given that the basis of the controversy, the Capitol Exhibit Rule, was repealed." (*Id.*)

The fact that mootness occurred during the pendency of appeal, after the district court's final judgment, is significant. As the Fifth Circuit held in *Murphy v. Fort Worth Independent School District*, 334 F.3d 470, 471 (5th Cir. 2003), a determination of mootness after the entry of a district court's judgment and prior to the completion of appellate review does not preclude an award of attorney's fees as a prevailing party. In *Murphy*, as in the present case, the plaintiff's claim only became moot after the entry of the district court's final judgment, in which case the

Court of Appeals concluded that "the plaintiff is clearly the prevailing party and is entitled under 42 U.S.C. § 1988 (2000) to a reasonable attorney's fee." *Id.*

Other courts also have consistently determined prevailing party status at the time a final judgment is rendered. *In National Black Police Association v. District of Columbia Board of Elections and Ethics*, 168 F.3d 525, 528 (D.C. Cir. 1999), for example, the Court of Appeals held that "the fact that the case was moot by the time of the appeal does not alter the fact that the injunction altered the legal relationship between the parties when it was issued." The Court further explained its decision:

> Plaintiffs were the prevailing parties in the litigation at bar.  The relief they ultimately won [injunctive] was specifically the relief they requested.  In *Farrar*, the Supreme Court stated that "plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit." *Farrar*, 506 U.S. at 109, 113 S.Ct. 566 (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 453, 103 S.Ct. 1933, 76 L. Ed. 2nd 40 (1983)).

> The inquiry focuses on whether "at the time of the judgment or settlement . . . the actual relief on the merits . . . materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Id.* at 111-12, 113 S.Ct. 566.  In this case, the district court properly found that the plaintiffs were prevailing parties because at the time judgment was entered, the injunction altered the legal relationship between the parties.

*Id. at 529.*

Similarly, in *Green Party of Tennessee v. Hargett,* 767 F.3d 533, 552, (6th Cir. 2014) (quoting *Diffenderfer v. Gomez-Colon,* 587 F.3d 445, 454 (1st Cir. 2009), the Court of Appeals held that "when plaintiffs clearly succeeded in obtaining the relief sought before the district court and an intervening event rendered the case moot on appeal, plaintiffs are still prevailing parties for the purposes of attorney's fees for the district court litigation."

The principle applicable to final judgments is consistent with the decisions of other courts across the country. The *Diffenderfer* decision, in particular, includes explanatory reasoning that is frequently cited: "When plaintiffs clearly succeeded in obtaining the relief sought before the district court and an intervening event rendered the case moot on appeal, plaintiffs are still prevailing parties for the purposes of attorney's fees for the district court litigation." 587 F.3d at 554. The Court reasoned as follows:

> Reversal on the merits deprives a plaintiff of "prevailing party" status because it repudiates the favorable change in the parties' legal relationship effectuated by the district court's judgment and holds that the plaintiff was never legally entitled to such relief. In contrast, in the mootness context, a "prevailing party" is a party who managed to obtain a favorable, material alteration in the legal relationship between the parties prior to the intervening act of mootness.

*Id.* at 453.

In the present case, Defendants misapply the controlling principles. They argue incorrectly that the district court's final judgment granting FFRF injunctive relief should not be considered because subsequently vacated due to mootness pending appeal. They argue without merit that mootness and *vacatur* should determine prevailing party status. That is not correct.

**B. The Standard Applied to Preliminary Injunctions does not Apply to Final Judgments.**

Defendants also argue incorrectly that a final judgment does not establish prevailing party status unless the judgment directly causes subsequent mootness. Defendants claim that "where injunctive relief is initially granted but later vacated due to mootness, the plaintiff who initially obtained the injunctive relief is *not* a 'prevailing party' *unless* it can show that the entry of the initial injunction directly caused the defendant to moot the case." (Defendants' Response to Motion for Attorney's Fees at 5.) Defendants cite *Dearmore v. City of Garland*, 519 F.3d 517, 524 (5th Cir. 2008), and *Amawi v. Paxton*, 48 F.4th 412, 416-17 (5th Cir. 2022), for supposed

6

supporting authority. They misread these decisions, however, without comprehending their limited applicability to preliminary injunctions rather than final judgments ordering permanent injunctive relief.

In *Dearmore*, 519 F.3d at 521, the Court of Appeals considered whether a plaintiff qualifies as a prevailing party when he obtains a preliminary injunction after the district court makes an unambiguous indication of probable success on the merits and the defendant subsequently moots the case before trial in response to the court's preliminary injunction order. The Court considered this issue as it relates to whether a party obtained a material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute. The uncertainty that the Court addressed, therefore, related solely to whether a preliminary injunction satisfied the material alteration requirement where subsequent mootness occurred before final judgment.

 By contrast, the Court recognized in Dearmore that an enforceable judgment on the merits does have sufficient judicial imprimatur to establish prevailing party status. *Dearmore,* 519 F.3d at 521, citing *Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources*, 532 U.S. 598, 605 (2001). The *Dearmore* decision, therefore, establishes a test applicable to preliminary injunctions, while acknowledging that final judgments ordering injunctive relief satisfy prevailing party requirements without more.

The decision in *Amawi*, 48 F.4th at 417, also is limited to preliminary injunctions, while again recognizing that final judgments on the merits are sufficient to establish prevailing party status. According to *Amawi*, the requirement that the mooting of a case must be caused by the district court's prior action is limited to preliminary injunctions, as in *Dearmore*.

Defendants' argument that *Dearmore* and *Amawi* apply to this case is misplaced. Here, the district court entered a permanent injunction as part of its final judgment on the merits. This court's

final judgment, therefore, satisfies the prevailing party requirements without any requirement that subsequent mootness be caused by the court's judgment on the merits.

Although causation is not required in this case involving a final judgment, it is nonetheless true that the subsequent mootness by Rule repeal in this case actually was caused by the district court's final judgment. The Court of Appeals implicitly recognized this when noting that the State Preservation Board "repealed the Capitol Exhibit Rule in apparent response to the Foundation's lawsuit." (Court of Appeals Opinion at 2.)

The Court of Appeals' decision in *Amawi*, 48 F.4th at 418-19, specifically recognizes that causation does not require inquiry into subjective intent. "Rather, such a showing could be accomplished in reference to purely objective metrics, for example, by establishing a compelling timeline, an outright admission, or the statutory language itself." Here, the timing of the repeal of the Capitol Exhibit Rule makes clear its response to the prior judgment of the district court in May of 2021. Only after that decision, and during the pendency of appeal, did the Preservation Board undertake to repeal the rule at issue in the litigation. Such strategic timing has often been noted in considering claims of mootness. *See Opulent Life Church v. City of Holly Springs,* 697 F.3d 279, 284-86 (5th Cir. 2012) (repeal of an ordinance the night before oral argument considered litigation posturing).

The language of repeal in this case itself evidences response to the district court's judgment. In explaining the proposed Rule repeal, the State Preservation Board stated that "the agency does not need the Rule in order to serve its intended purpose of providing for the display of government speech." (Supplemental Bolton Declaration, Ex. 5.) In the district court, Defendants argued unsuccessfully that Capitol exhibits constituted government speech not subject to the First Amendment. The reference to "government speech," therefore, in the subsequent Rule repeal

itself, evidences the intent to workaround the judgment entered by this court. No other reason explains the timing of the sudden Rule repeal.

By any metric, this court's final judgment enjoining Defendants "from excluding [Plaintiff's] Exhibit from display in the designated exhibit area of the Texas Capitol building and the Capitol extension" is sufficient to establish FFRF as a prevailing party. In particular, the court's injunctive relief, that preceded repeal of the Capitol Exhibit Rule, satisfies the elements of the Fifth Circuit's prevailing party test: (1) judicially sanctioned relief; (2) that materially alters the legal relationship between the parties, and (3) modifies the defendants' behavior in a way that directly benefits the plaintiff "at the time the relief is entered." *Veasey v. Abbott*, 13 F.4th 362, 368 (5th Cir. 2021).

### C.   FFRF's Success Was Not *De Minimus.*

FFRF's success, measured from the time of this court's final judgment, clearly was not purely technical or *de minimis*. In the case of First Amendment violations, in fact, injunctive relief is the norm, rather than the exception. As the Court of Appeals recognized in *Opulent Life Church,* 697 F.3d at 295, the loss of First Amendment rights *per se* constitutes irreparable harm. Thus, permanent injunctions protecting First Amendment freedoms are always in the public interest. *Id.* at 298. *See also Ingebretsen v. Jackson Public School District,* 88 F.3d 274, 280 (5th Cir. 1996).

This court's prospective declaratory relief also was meaningful at the time granted. The court declared "that Defendants violate the Foundation's First Amendment rights and engage in viewpoint discrimination as a matter of law when they exclude the Foundation's Exhibit, based on the perceived offensiveness of its message." (Dkt. 142.) Defendants argue that this relief, which the Court of Appeals did not vacate, is essentially meaningless in light of the subsequent repeal of the Capitol Exhibit Rule. Again, however, the significance of a party's success on the merits is

measured from the time final relief is granted for the purpose of determining prevailing party status. In this case, the court's declaratory relief, by itself, satisfied prevailing party requirements at the time of final judgment. If subsequent mootness and *vacatur* were to be the measure of success, then mootness would be the test for prevailing party status. That is not the law, but that is essentially Defendants' argument.

III.    **FFRF'S FEE REQUEST IS REASONABLE.**

A.    <u>**FFRF's Fees Should Not Be Reduced for Time Spent on Factually and Legally Related Claims.**</u>

Defendants argue without merit that FFRF's fees should be reduced by 50% for time spent on "unsuccessful" claims. In fact, however, the undifferentiated reduction that the Defendants request is not warranted because FFRF's fees were all incurred on factually and legally related claims seeking the same objective, which FFRF achieved by final judgment. In addition, the requested reduction has been adequately addressed by way of counsel's previous reduction of hours from FFRF's Fee Petition. For example, Attorney Bolton previously discounted 94 hours of time, which the Defendants do not acknowledge.

Unsuccessful claims should "be treated as if they had been raised in separate lawsuits," but only if unrelated to successful claims. *Fessler v. Porcelana Corona de Mexico, S.A. De C.V.*, 23 4th 408, 416 (5th Cir. 2022.) "When claims . . . share a 'common core of facts' or 'related legal theories,' a fee applicant may claim all hours reasonably necessary to litigate those issues." *Id.*, quoting *Hensley v. Eckerhart,* 461 U.S. 424, 430-435 (1983). In short, Plaintiffs who have won substantial relief should not have attorney's fees reduced simply because the court did not adopt each contention raised. *Abrams v. Baylor College of Medicine*, 805 F.2d 528, 336 n. 10 (5th Cir. 1986), citing *Hensley*, 461 U.S. at 440.

Here, all of the claims alleged in FFRF's Amended Complaint derive from a "common core of facts." All the claims, including First Amendment, Due Process, Equal Protection, and Establishment Clause, are based on facts related to the Defendants' removal of FFRF's Solstice exhibit in the Texas State Capitol. Development of the factual basis for FFRF's case, relevant to all claims, was a significant, predominating, and time-consuming activity performed in this case during the pleading, discovery and dispositive motion phase of the case. In addition, all of FFRF's claims involve related legal theories that sought the same relief, i.e., injunctive relief prohibiting the Defendants from excluding FFRF's exhibit from the Texas Capitol. (Amended Complaint at 21.)

Because all of FFRF's claims derive from a common core of facts and related legal theories, the different claims could not have been raised in separate lawsuits. The doctrine prohibiting claim-splitting explains this conclusion. A plaintiff is not allowed to split its causes of actions among multiple proceedings, advancing one part of its suit in one court and bringing another in a later suit:

> The rule against claim splitting prohibits a plaintiff from prosecuting its case piecemeal and requires that all claims arising out of a single wrong be presented in one action.  In a claim splitting case, the second suit will be barred if the claims involve the same parties and arise out of the same transaction or series of transactions as the first claim.
>
> *Ameritox, Ltd. v. Aegis Sciences Corp.*, 2009 WL 30587, *4 (N.D. Tex. 2009)

When considering whether the prohibition against claim-splitting applies, "the critical issue is whether the two actions were based on the same nucleus of operative facts. In this inquiry, we [courts] look to the factual predicate of the claims asserted, not the legal theories upon which the plaintiff relies." *See Eubanks v. F.D.I.C.,* 977 F.2d 166, 171 (5th Cir. 1992).

In the present case, FFRF's claims are all based on the same alleged wrongdoing and the different legal theories are variations of FFRF's overriding complaint that the Defendants wrongfully censored FFRF from displaying in the State Capitol. Because of this inextricable relationship between the claims, the Defendants' argument for a downward reduction of FFRF's fees for unsuccessful claims should be rejected.

The magnitude of the Defendants' requested adjustment, moreover, is grossly excessive, even if a downward adjustment were warranted. In the first place, FFRF's Fee Application already has been substantially discounted, including as described in the prior Declarations of Attorneys Bolton and Grover. These reductions adequately address the Defendants' objection.

The Defendants' requested adjustment also is excessive based upon the actual tasks performed by counsel. The Supplemental Declaration of Attorney Bolton describes the reality that the tasks performed predominantly involved the underlying factual development and issues related to viewpoint discrimination. Little time was spent on supposed unsuccessful claims.  Thus, the Defendants' generalized and undifferentiated adjustment request should be rejected as a matter of fact.

In the end, the Defendants' request for a 50% reduction cannot be justified because FFRF's different claims cannot be disentangled. This reality supports the conclusion that the claims are too related to be treated as separate line items for billing purposes. Moreover, when claims cannot be disentangled, the court's focus should shift to the results obtained. *Fessler* 23 F.4[th] at 16. Here, FFRF's primary objective was to obtain an injunction which relief was common to all of its claims. Ultimately, and prior to subsequent mootness, FFRF did obtain a final judgment, including a permanent injunction, which is the typical relief in First Amendment cases. In short, FFRF

obtained its overall objective, considering not just FFRF's First Amendment claim but all of FFRF's claims.

Finally, although no further downward adjustment is warranted, the court's attention is drawn to additional discounting described in Bolton's Supplemental Declaration for purposes of compromise. Based on adjustments to which FFRF has agreed, therefore, an updated Fee and Disbursement Summary and Adjusted Summary of Bolton's Adjusted Time are attached to Bolton's Supplemental Declaration as Exhibits 2 and 3.

### B.  Local Counsel Fees are Reasonable and Necessary

FFRF's local counsel in this matter, Attorney Dan Byrne, provided reasonable and necessary services related to this matter. Attorney Byrne's Declaration, previously submitted, establishes his qualifications beyond question. Attorney Bolton conferred with Attorney Byrne during the course of this matter on many occasions to discuss substantive and local practice issues. (Supplemental Bolton Declaration at ¶ 33.) In the context of this protracted 7-year litigation, moreover, Attorney Byrne's fees charged to this matter are reasonable and certainly not excessive.

In the interest of compromise, however, FFRF agrees to reduce the request for local counsel fees by 50%, i.e., to the amount of $12,913.00. This discount seems an afront to the valuable services and insights provided to FFRF by Attorney Byrne. This discount is deemed appropriate, nonetheless, in an effort to reach agreement where possible.

### C.  Travel Expense Was Reasonably Incurred.

The Defendants object to travel time by Attorney Bolton to attend hearings in this matter in Austin. In particular, the Defendants request that 44.5 hours of Attorney Bolton's time be disallowed for such travel, although Attorney Bolton billed this time at only $150 per hour. Again, however, in the interest of compromise, FFRF is agreeable to this requested disallowance, albeit

with a qualification. Defendants' objection to such travel time is premised on the assumption that local counsel would not have incurred such travel. On the other hand, Defendants conducted depositions of FFRF in Madison, Wisconsin, as to which depositions local counsel in Austin would have traveled. Travel to Madison and back to Austin, would approximate a trip to Austin and return to Madison, which trips approximated ten hours of time round trip. Thus, instead of a reduction 44.5 hours for travel, FFRF is agreeable to reduction of 34.5 hours at $150 per hour. This amounts to a $5,175 reduction.

On a related matter, the Defendants also object to hotel and air travel expenses incurred by Attorney Bolton for four trips to Austin. FFRF is agreeable to a reduction for such requested expenses, but again with the caveat that air travel and hotel expense would have been incurred by local counsel while attending depositions in Madison. The average of such costs per trip was approximately $890. Accordingly, the reduction for air and hotel expense requested by the Defendants should be $2,667, as to which FFRF agrees.

### D.   **FFRF is Entitled to Fees for Appeal Work**.

Defendants argue without authority that FFRF is not entitled to any fees for work related to the first appeal in this matter. Because the Court of Appeals vacated the retrospective remedy granted by the district court, the Defendants argue that they "were successful in that appeal, and Plaintiff is not entitled to any fees related to it." (Defendants' Response to Motion for Attorneys' Fees at 13.) In fact, however, the Defendants misread the Court of Appeals decision. The Court's mandate remanded the case to the district court with directions to consider FFRF's request for injunctive relief and to "enter appropriate prospective relief for FFRF." (Court of Appeals Decision at 17.) In getting to that result, the Court of Appeals identified the issues before the Court and the Court's conclusions as follows:

Appellants do not challenge the merits of the district court's finding that they [Texas Governor Greg Abbott and Texas State Preservation Board Executive Director, Rod Welsh] violated FFRF's First Amendment rights by engaging in viewpoint discrimination.  Rather they argue, based on principles of sovereign immunity, that the district court lacked jurisdiction to enter retrospective relief against them.  They further argue that there is no longer jurisdiction to enter prospective relief because the controversy is not ongoing.  FFRF cross-appeals the district court's failure to grant prospective injunctive relief and the district court's summary judgment dismissal of FFRF's unbridled discretion First Amendment claims against Governor Abbott and Mr. Welsh.

We find that the district court had jurisdiction to entertain this suit.  FFRF sought prospective relief, and there was, and still is, a live controversy between the parties.  However, the district court did not have jurisdiction to enter a retrospective declaratory judgment.  Therefore, we VACATE the judgment and REMAND to the district court to consider FFRF's request for injunctive relief and enter appropriate prospective relief for FFRF.

(Court of Appeals Decision at 2.)

Defendants' claim that they won the first appeal, based on the above reading of the Court of Appeals' Decision, is puzzling. As the Court of Appeals recognized, the Defendants argued that no prospective relief could be granted going forward, while FFRF requested the Court to remand for prospective injunctive relief. The Court of Appeals then concluded that a live case and controversy existed and that the district court should enter appropriate prospective relief in favor of FFRF, including possible injunctive relief. This result cannot credibly be described as a victory for the defense. The Defendants' argument, therefore, that FFRF is not entitled to fees for appeal is baseless: FFRF emerged from appeal with the upper hand.

The Defendants' underlying reasoning is unclear in any event. Clearly the appeal was related to FFRF's successful Free Speech claim. The appeal fees, therefore, were undeniably part of the fees incurred in furtherance of FFRF's First Amendment claim.  FFRF certainly had to participate in the appeal in order to preserve and defend the district court's holding that the

Defendants violated FFRF's First Amendment rights by engaging in viewpoint discrimination. FFRF was essentially required to incur appeal fees in order to hold its own -- which result FFRF obtained. Thus, fees incurred by FFRF for the first appeal should be allowed.

The Defendants also argue unpersuasively that fees should not allowed for the Defendants' second appeal after mootness occurred pending the appeal. The Rule repeal that ultimately caused mootness, however, only occurred after briefing and oral argument on the Defendants' second appeal. The issues that were briefed and argued on appeal did not relate to the subsequent Rule repeal. Instead, Defendants argued that the district court's final judgment granting FFRF prospective declaratory relief and permanent injunction relief should be vacated because of alleged mootness that occurred earlier when the Rules were amended in 2020. The district court, however, rejected this argument of earlier mootness, which the Defendants appealed.

The parties then briefed the issues raised on appeal, and argued these issues before the Fifth Circuit, all of which occurred prior to the subsequent Rule repeal that then triggered the Court's mootness conclusion. The Court of Appeals, however, did not disavow the district court's earlier ruling rejecting mootness, nor did the Court conclude that the district court's final judgment granting declaratory and injunctive relief was improper at the time rendered. Thus, the fees incurred in the Defendants' second appeal were incurred prior to mootness, and they relate to protecting the district court's favorable final judgment on FFRF's First Amendment claim.

The fees incurred by FFRF for the Defendants' second appeal were part and parcel of the fees related to FFRF's prevailing party status. Defendants again treat the issue of mootness pending appeal as being retroactive but established law does not countenance such strategic mootness to deprive a prevailing party of the fees properly incurred.

16

**E.**    <u>**Post-Remand Time Should Be Included as Recoverable Fees**</u>.

The Court of Appeals remanded to the district court after Defendants' first appeal with directions to enter appropriate prospective relief and to consider injunctive relief. While those issues were pending before the district court, the Defendants made amendments to the Capitol Exhibit Rule, which the Defendants argued to have mooted the district court's jurisdiction to order prospective relief, including injunctive relief. The district court, however, disagreed and concluded that the Rule amendments did not moot the case, whereupon the court entered final judgment in favor of FFRF, including prospective declaratory relief and permanent injunctive relief.

The Defendants now argue that the attorneys' fees incurred by FFRF on remand should not be allowed on the basis of mootness. Defendants argue that "per the Fifth Circuit, Defendants were correct that the case was moot, and that no injunctive relief was appropriate." (Defendants' Response to Motion for Attorneys' Fees at 13.) This statement again reflects that the Defendants do not comprehend the Court of Appeals' decision. The Court of Appeals did not conclude that case was moot at the time the district court rendered its final judgment. Instead, the Court of Appeals concluded that the case became moot pending appeal, but after briefing and argument in that Court. This distinction Defendants do not grasp.

The timing of mootness makes a difference. As discussed above, prevailing party status is determined at the time the district court rendered its final judgment. Subsequent mootness including *vacatur*, does not determine prevailing party status. In this case, FFRF's briefing on remand to the district court occurred prior to mootness, and the associated legal fees constituted reasonable and necessary advocacy to obtain the final judgment that the district court issued prior

17

to mootness. No court has held that this case was moot at the time of final judgment. Thus, FFRF's fees incurred upon remand should be allowed.

### F. **FFRF's Billing Rates Are Reasonable**.

The Defendants object without specificity to the billing rates for FFRF's attorneys. Two attorneys, Sam Grover and Patrick Elliott, have billed at $400 per hour. Lead counsel, Rich Bolton, has a billing rate of $425 per hour. Local counsel, Dan Byrne, has billed at rates beginning at $525 per hour and his current rate is $650 per hour. The Defendants object to all of these rates, while proposing a flat rate of $300 per hour for all attorney time for each attorney.

The rates included in FFRF's fee request are reasonable. The extensive experience and qualifications of each lawyer are detailed in their prior Declarations. Both Attorney Byrne and Attorney Bolton had more than 30 years of relevant professional experience at the time this suit began in 2017. They both have extensive and successful experience as litigators during their professional careers. As the Declaration of Attorney Byrne details, moreover, based on his personal knowledge and experience, the billing rates for all of the FFRF attorneys in this matter are reasonable in the Austin market, including the fees billed by Attorneys Byrne, Bolton, Grover and Elliott. (Byrne Declaration at 8.)

The Defendants' cursory justification for a $300 hourly rate is based on a level of generality that ignores the facts. The Defendants state that "the median hourly rate for the Austin-Round Rock Metropolitan Statistical Area in 2009 was $299." (Defendants' Response to Motion for Attorneys' Fees at 17.) They further state this court has previously found $300 per hour to be a reasonable rate for an 11-year Austin-area attorney in an ERISA case. (*Id.*) The Defendants do not explain, however, the basis for their belief that only "the median" rate is reasonable, when the median number is simply a midpoint within a range.

The Defendants' argument that only a median rate is reasonable implies that half of the lawyers in Austin are charging unreasonably high rates. This is not a logical conclusion, including because the median rate for all attorneys, in all specialties, regardless of level of experience, was not intended as a pronouncement of a single and exclusive reasonable rate. In fact, not all courts rely on the State Bar of Texas survey of lawyers' median hourly rates because they are "based on a very small segment of the Bar that self-selects to spend time responding to a survey" that is of limited help in determining a reasonable and customary hourly rate for experienced lawyers in a First Amendment case. *Monroe v. Houston Independent School District*, 2021 WL 5872944 at *6 (S.D. Tex., Houston Division 2021). In any event, the Defendants' argument that a median rate should be reflexively applied to attorneys with more than 30 years' experience, or with specialized areas of practice, is implausible.

The analysis of rate justification in the Declarations of Attorney Grover and Attorney Elliott is more useful than the Defendants' analysis. Attorneys Grover and Elliott include citations to specific cases from this district finding reasonable rates that are fully in line with their $400 per hour billing rates. They also note that it is unreasonable to not factor in any increase in billing rates during the course of 7 years of litigation. The Defendants essentially argue that $300 per hour was reasonable when this case began in February of 2016, and that this rate would not increase by 2023, as a matter of course.

The Defendants, moreover, argue without merit that this case has involved merely garden-variety legal issues readily dispatched. This ignores the specialty of Attorneys Grover and Elliott in the area of First Amendment/Establishment Clauses issues. Attorney Bolton also has more than 30 years of litigation experience in this niche area of the law. Furthermore, this particular case has included many nuanced issues beyond the norm of general practice. This case has involved issues

19

related to free speech; sovereign immunity; public forum analysis; government speech; the nuance of appropriate remedy involving government actors; mootness; the interplay between mootness and prevailing party status; and the interplay between prevailing party and *vacatur*. The challenges of the many issues in this case support the reasonableness of FFRF's billing rates.

Finally, a downward adjustment of FFRF's reasonable rates is not appropriate. The Defendants' argument to the contrary simply rehashes arguments already made. For instance, Defendants argue that "the appropriate hourly rate would warrant a downward departure to a rate of $300/hour under factor 5 of the *Johnson* factors." (Defendants' Response to Motion for Attorneys' Fees at 19.) The fifth *Johnson* factor relates to "the customary fee charged for those [legal services] in the relevant community." *Black v. SettlePou, P.C.*, 732 F.3d 492, 502, n. 7 (5th Cir. 2013). Here, this factor has already been considered in determining the appropriate lodestar rate. Thus, the Defendants' argument for a downward adjustment amounts to no more than a "do over". Similarly, the eighth *Johnson* factor considers the amount involved and the results obtained. In this case, the district court's final judgment including prospective declaratory relief and permanent injunctive relief, gave FFRF essentially the entirety of requested relief. In the context of the First Amendment, moreover, such relief is not *de minimus*.

The billing rates charged by FFRF's attorneys, in the final analysis, are reasonable and appropriate. Defendants' argument that only $300 per hour would be reasonable for each attorney ignores the marketplace realities of private practice.

## CONCLUSION

FFRF respectfully requests the court to grant its Motion for Attorneys' Fees in the adjusted amounts described herein.

Dated this 26th day of May, 2023.

20

Respectfully submitted,

BOARDMAN AND CLARK, LLP
1 S. Pinckney St., Suite 410
Madison, Wisconsin 53703-4256
Telephone:  608-257-9521

*/s/ Richard L. Bolton*
Richard L. Bolton
Wisconsin State Bar No. 1012552
Email:  rbolton@boardmanclark.com

Daniel H. Byrne
Texas State Bar No. 03565600
Email:  dbyrne@fbhf.com
Lessie G. Fitzpatrick
Texas State Bar No. 24012630
Email:  lfitzpatrick@fbhf.com
FRITZ, BYRNE, HEAD & FITZPATRICK, PLLC
221 West 6th Street, Suite 960
Austin, Texas  78701
Telephone:    (512) 476-2020
Facsimile:     (512) 477-5267

Sam Grover
Wisconsin State Bar No. 1096047
Email:  sgrover@ffrf.org
Patrick Elliott
Wisconsin State Bar No. 1074300
Email:  pelliott@ffrf.org
FREEDOM FROM RELIGION
FOUNDATION, INC.
P. O. Box 750
Madison, Wisconsin  53701
Telephone:  608-256-8900
Telecopier:  608-204-0422
ATTORNEYS FOR PLAINTIFF

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing was filed electronically via the Court's

CM/ECF system on this the 26th day of May, 2023, which will send notification to the following:

Benjamin S. Walton
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, TX 78711
Telephone:  (512) 463-2120
Telecopier:  (512) 320-0667
Email: Benjamin.Walton@oag.texas.gov


*/s/ Richard L. Bolton*
Richard L. Bolton

\\msnfs2\share\docs\WD\26318\34\A4904943.DOCX

22