## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **FREEDOM FROM RELIGION** | § | |
| **FOUNDATION, INC.** | § | |
| **Plaintiff,** | § | |
| | § | |
| **-vs-** | § | **CASE NO. 1-16: CV-00233** |
| | § | |
| **GOVERNOR GREG ABBOTT,** | § | |
| **And ROD WELSH, Executive Director** | § | |
| **of the Texas State Preservation Board,** | § | |
| **Defendants.** | § | |

## SUPPLEMENTAL DECLARATION OF RICHARD L. BOLTON

I, Richard L. Bolton, do hereby declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the following facts set forth below are true and correct to the best of my knowledge:

1.      I am lead counsel for the Freedom From Religion Foundation, Inc. ("FFRF") in the above-captioned matter.

2.      I have been counsel for FFRF for more than 30 years, including litigation counsel throughout the United States.

3.      I make this Supplemental Declaration in support of FFRF's Motion for Attorney's Fees as prevailing party in this matter.

4.       A constant theme underlying the Defendants' objection to FFRF's fee petition is that the significance of FFRF's success in this matter is outweighed by companion claims on which FFRF did not prevail.

5.     Thus, while FFRF prevailed on its First Amendment viewpoint discrimination claim, the defendants argue that the significance of such success was limited, almost to the point that the Defendants imply they prevailed in this litigation.

6.     Defendants are wrong as a matter of law, as discussed in FFRF's Reply in Support of Motion for Attorneys' Fees, while the perceptual optics of FFRF's success also belie the Defendants' claim of insignificance.

7.     Media coverage of this litigation has consistently emphasized FFRF's First Amendment success, including headlines such as: "Lawsuit Proceeds Against Gov. Gregg Abbott Over Mock Nativity Display;" "Judge Overturns Ban on Freedom From Religion Foundation's Secular Nativity Scene;" "Federal Judge: Abbott Was Wrong to Remove Mock Nativity Scene;" "Gov. Abbott Violated First Amendment In Censoring Solstice Display, Judge Rules;" "Judge: Gov. Abbott's Removal of Atheist Display at Capitol Violated Freedom of Speech;" and "Fifth Circuit Upholds Atheist Group's Right To Display Altered Nativity Scene." (True and correct copies of such media coverage are attached to this Supplemental Declaration as Exhibit 1.)

8.     By contrast, my search of the internet for coverage detailing the Defendants' alleged success on other claims could not find any such headline emphasis – or even mention.

9.     Thus, the Defendants' claim to victory is not borne out by any perception of success.

10.     The Defendants' argument that 50% of my time was spent on unsuccessful claims also is not accurate.

11.     All of the claims made in this matter arose from the Defendants' single act of viewpoint discrimination by removing FFRF's Solstice display from the Texas State Capitol.

12.     All of FFRF's legal claims were based on the same nucleus of facts and seek the same relief.

13.     In FFRF's Amended Complaint, FFRF sought "judgment against each Defendant enjoining the Defendants from excluding the Plaintiff's exhibit at issue from future display in public areas of the Texas State Capitol." (Amended Complaint at 20.)

14.     The district court ultimately granted FFRF final judgment that included the requested injunctive relief, which requested relief was the same for all of FFRF's pled claims.

15.     Injunctive relief was always the primary objective in this litigation.

16.     The Defendants correctly suggest, therefore, that lack of damages imposed against the Defendants is also indicative of FFRF's limited success from the merits.

17.     In First Amendment cases, injunctive relief is typically the objective, as indicated by FFRF's Amended Complaint, which only sought judgment "for nominal damages." (Amended Complaint at 21.)

18.     The Defendants also argue incorrectly that at least half of my time on this case was spent on issues as to which FFRF was unsuccessful.

19.     I have reviewed my time entries and briefing done in this matter, which has confirmed my personal recollection and knowledge that most of my time was not spent on unsuccessful issues.

20.     In the first place, all of the claims in this case related in the first instance to developing the common facts relating to the Defendants' removal of FFRF's Solstice Exhibit. This is reflected in the pleadings and briefing by the parties.

21.     In addition, issues related to public forum, government speech and viewpoint discrimination predominated, as was true for all of the attorneys involved in this case, including Attorneys Grover and Elliott.

22.     The Defendants' request for a 50% downward adjustment of all of my time in this matter is not warranted or reasonable. In fact, as detailed in my prior Declaration, I already discounted my time for pleadings and dispositive motion practice by approximately 28%, i.e., I reduced 228 hours to 165 hours.

23.     Defendants do not take into account in their calculations this prior downward adjustment; they propose a further 50% reduction of my already reduced hours for pleadings and dispositive motion practice. Thus, based on the Defendants' requested reduction of such time to 82.5 hours, the total reduction from actual time clocked would be approximately 65%.

24.     I can state most assuredly that 65% of my time was not dedicated to unsuccessful claims.

25.     I also disagree with the Defendants' request to allow no fees for time spent on the Defendants' first appeal, as for the reasons described in our Reply. In particular, Defendants claim to have prevailed in that appeal is not true.

26.     The Defendants also claim that time spent on the Defendants' second appeal should not be allowed because of the Defendants' Rule repeal during the pendency of the appeal.

27.     In fact, the briefing and oral argument for the second appeal, all relating to this court's final judgment, was completed prior to the subsequent mootness caused by the Rule repeal.

28.     Defendants' objection to time spent upon remand to this court after the first appeal also is unwarranted.

29.     My post-remand time involved argument and advocacy necessary in order to obtain the final judgment granted by the district court for prospective declaratory relief and permanent injunctive relief which occurred prior to subsequent mootness that occurred during pendency of the second appeal.

30.     I must also mention that time related to discovery was obviously all related to FFRF's First Amendment claim, as all claims involved the same nucleus of facts involving the removal of FFRF's exhibit from the State Capitol.

31.     The fee reductions requested by the Defendants, in the final analysis, are not warranted or fair.

32.     In the interest of compromise, however, I am willing to reduce FFRF's fee request on my behalf by an additional 5% to be deducted from my original recorded time, i.e., an additional 31 hours. This downward reduction amounts to a dollar reduction of $13,175.00.

33.     In addition, FFRF agrees to reduce local counsel fees by 50%, resulting in the amount of $12,913.00, although the help and advice provided by Attorney Byrne was invaluable to us.

34.     Finally, FFRF agrees to a reduction of travel time by 33 hours multiplied by $150 for a total of $4,950.00, as discussed in out Reply.

35.     In additional, FFRF agrees to reduce its travel expense by the amount of $2,970.00.

36.     An Adjusted Summary of Attorney Bolton's Time and Expenses Requested by Fee Petition is attached to this Declaration as Exhibit 2.

37.     An Adjusted FFRF v. Abbott Fee and Disbursement Summary also is attached to this Declaration as Exhibit 3.

38.     Finally, it should be noted that the Rule repeal during Defendants' second appeal, which ultimately caused post-judgment mootness, was clearly a response to this court's prior final judgment granting declaratory and injunctive relief to FFRF, in my opinion.

39.     Defendants' Notice to the Court of Appeals of the Rule repeal, after oral argument, indicates such causal relationship, as does the Publication of Rule Change, which indicates indicate an attempt to workaround the "government speech" issues that permeate this case (Exhibits 4 and 5 are true and correct copies of the Defendants' Notice of Rule repeal and the Publication of Proposed Rule Change.)

40.     In the final analysis, I emphasize that the substantial fees incurred by FFRF in this case were reasonable, and necessitated in large measure in responding to the Defendants' efforts to avoid accountability for their adjudicated viewpoint discrimination against FFRF. This was the Defendants' prerogative, but FFRF should not bear the cost of that strategy.

Dated this 26th day of May, 2023.

Richard L. Bolton

\\msnfs2\share\docs\WD\26318\34\A4900204.DOCX

  ☰ MENU

**DONATE**   Latest Paxton Updates   Articles of Impeachment   How Impeachment Works   ⋮

# Lawsuit proceeds against Gov. Greg Abbott over mock nativity display

A lawsuit is moving forward against Gov. Greg Abbott over his order to remove a satirical nativity scene from the Texas Capitol last year.

BY **PATRICK SVITEK**   DEC. 21, 2016   2 PM CENTRAL

| | | | COPY LINK |



Winter Solstice scene on display in the Capitol. It was ordered removed after Gov. Greg Abbott objected to it. 📷
Courtesy State Rep. Charlie Geren

EXHIBIT
1

A lawsuit is moving forward against Gov. Greg Abbott over his order to remove a satirical nativity scene from the Texas Capitol last year.

A federal judge ruled Tuesday that the Freedom From Religion Foundation, the Wisconsin-based group behind the exhibit, raised valid questions about free speech rights when it sued Abbott earlier this year. Abbott had asked the state Preservation Board to get rid of the exhibit, which advocated for the separation of church and state.

The preservation board had initially approved the display, which featured a cardboard cutout of the nation's founding fathers and the Statue of Liberty looking down at the Bill of Rights in a manger. Abbott, writing to the preservation board once the exhibit had gone up, denounced it as a "juvenile parody" intended to offend Christians.

U.S. District Judge Sam Sparks wrote Tuesday that the lawsuit should proceed because Abbott's order may have been based on the fact he simply disagreed with the viewpoint the exhibit was expressing. Groups are allowed to display exhibits in certain parts of the Capitol as long as they have a "public purpose," according to state rules.

The Texas Tribune thanks its sponsors. **Become one**.

Abbott's office said Wednesday it was pleased Sparks did not require the state to put the exhibit back on display. "Governor Abbott remains confident that the Constitution does not require Texas to display this intentionally disrespectful exhibit," Abbott spokesman John Wittman said in a statement.

Texas Republicans like Abbott are no strangers to these kinds of dust-ups around the holidays. Attorney General Ken Paxton recently took the Killeen school district to court over the removal of a Christmas-themed cartoon poster.

**Read more:**

- A "winter solstice" display by the Freedom From Religion Foundation was ordered removed from the Texas Capitol after Gov. Greg Abbott called it a "juvenile parody."

- Texas Attorney General Ken Paxton has come to the defense of a Christmas-themed Peanuts poster at a Texas public school. This isn't the first time elected officials have fought over Christmas; in fact, it's something of a holiday tradition.

## Quality journalism doesn't come free

Perhaps it goes without saying — but producing quality journalism isn't cheap. At a time when newsroom resources and revenue across the country are declining, The Texas Tribune remains committed to sustaining our mission: creating a more engaged and informed Texas with every story we cover, every event we convene and every newsletter we send. As a nonprofit newsroom, we rely on members to help keep our stories free and our events open to the public. Do you value our journalism? Show us with your support.

**YES, I'LL DONATE TODAY**

---



### Patrick Svitek

POLITICAL REPORTER

psvitek@texastribune.org

@PatrickSvitek

🐦 (https://twitter.com/WReligionNews)   f (https://www.facebook.com/worldreligionnews)   𝓟 (https://www.pinterest.com/wreligionnews/)

⚛ **World Religion News**

(https://www.worldreligionnews.com/)



## Judge Overturns Ban on Freedom From Religion Foundation Secular Nativity Scene

By **C Barnett** -- 22 Jun 2018 --



Texas Governor Greg Abbott's Decision To Remove The Display Has Been Nulled

A United States District Judge ruled on June 19 in favor of Freedom From Religion Foundation (FFRF) against Greg Abbott, the Governor of Texas. Judge Sam
🐦 (https://twitter.com/WReligionNews)   𝐟 (https://www.facebook.com/worldreligionnews)   𝒫 (https://www.pinterest.com/wreligionnews/)
Sparks ruled that Governor Abbott violated free speech rights of the FFRF when he ordered the removal of the winter solstice and Bill of Rights Nativity from the
state capitol.

Judge Overturns Ban on Freedom From Religion Foundation Secular Nativity Scene[/tweetthis]

The FFRF is a national body with approximately 33,000 non-religious members. In Texas, the organization counts 1,300 individuals.

The controversy began in 2015. FFRF had been approved to display a secular version of the Nativity scene. The display was visually similar to the traditional representation of the birth of Christ. However, Jesus was replaced by The Bill of Rights, and the Three Wise Men were George Washington, Benjamin Franklin, and Thomas Jefferson. The Statue of Liberty played Mary. The display carried a sign celebrating the winter solstice, the adoption of the Bill of Rights, and the importance of separating church and state.

While FFRF's display was legal, Governor Abbott ordered its removal. He alleged the installation did not promote morals and deliberately mocked Christianity.

Judge Sparks ruled that Governor Abbott violated the First Amendment rights of FFRF. Annie Laurie Gaylor, the Co-President of FFRF, expressed happiness with this ruling. She said the decision represented a victory for non-believing citizens' rights and free speech.

For FFRF, this ruling solidified a previous legal victory on the issue. The first ruling was in October 2017. The two judgments were needed to rule against Governor Abbott as both an individual and as an official.

### Resources

- US Courts (http://www.uscourts.gov/about-federal-courts/educational-resources/about-educational-outreach/activity-resources/what-does)
- Time (http://time.com/5103677/church-state-separation-religious-freedom/)

Follow the Conversation on Twitter (https://twitter.com/search?q=freedom%20from%20religion%20foundation&src=typd)

abbott (https://www.worldreligionnews.com/tag/abbott/)   Christian (https://www.worldreligionnews.com/tag/christian/)

Freedom From Religion Foundation (https://www.worldreligionnews.com/tag/freedom-from-religion-foundation/)   Texas (https://www.worldreligionnews.com/tag/texas/)

## RELATED NEWS   ‹ ›

**Reflections on Holy Saturday by Pope Benedic...**
🕐 22 Apr 2023    💬 0

**World Religions of Christianity and Scientolo...**
🕐 14 Feb 2023    💬 0

**Religion and Science (https://www.worldreligi...**
🕐 26 Jan 2023    💬 0

**Please Forgive Responsibly (https://www.worldreligi...**
🕐 12 Jan 2023    💬 0

**A Scholar's Analys Religion...**
🕐 22 Dec 2022

## SEARCH

Search articles here ...    🔍

🔘 TOP

  MENU

DONATE    2023 Legislative Session    School Chaplains    Property Taxes    Economic Incenti

# Federal judge: Abbott was wrong to remove mock Nativity scene

A federal judge ruled Gov. Greg Abbott violated a group's freedom of speech by removing a mock Nativity scene from the Texas Capitol two years ago.

BY **ABBY LIVINGSTON**    OCT. 14, 2017    5 PM CENTRAL

COPY LINK



Winter Solstice scene on display in the Capitol. It was ordered removed after Gov. Greg Abbott objected to it.
Courtesy State Rep. Charlie Geren

A federal judge ruled against Texas Gov. Greg Abbott's decision two years ago to remove a mock Nativity display that advocated the separation of church and state from the Texas Capitol.

U.S. District Judge Sam Sparks ruled late Friday that Abbott "violated [the Freedom From Religion Foundation's] clearly established First Amendment right to be free from viewpoint discrimination in a limited public forum."

It all started in late 2015 when the Freedom From Religion Foundation placed a "winter solstice" display in the Capitol basement. The exhibit featured a cardboard cutout of the nation's founding fathers and the Statue of Liberty looking down at the Bill of Rights in a manger.

Abbott ordered its removal, calling it a "juvenile parody" and writing that the "Constitution does not require Texas to allow displays in its Capitol that violate general standards of decency and intentionally disrespect the beliefs and values of many of our fellow Texans."

The Texas Tribune thanks its sponsors. **Become one.**

Abbott took the action in his role as the chairman of the State Preservation Board, the body tasked with preserving and maintaining the grounds of the Texas Capitol and several surrounding state landmarks.  The board had previously approved the display. The governor could not immediately be reached to comment on the decision.

FFRF posted the decision on its website.

"We'd rather keep divisive religious — and irreligious — views out of state capitols," said FFRF co-President Annie Laurie Gaylor. "But if the government creates public forums, and permits Christian nativities in them, there must be room at the inn for the rest of us."

## Quality journalism doesn't come free

Perhaps it goes without saying — but producing quality journalism isn't cheap. At a time when newsroom resources and revenue across the country are declining, The Texas Tribune remains committed to sustaining our mission: creating a more engaged and informed Texas with every story we cover, every event we convene and every newsletter we send. As a nonprofit newsroom, we rely on members to help keep our stories free and our events open to the public. Do you value our journalism? Show us with your support.

**YES, I'LL DONATE TODAY**

### Abby Livingston

WASHINGTON BUREAU CHIEF

**READ MORE**

SAN ANTONIO NEWS

# Gov. Abbott Violated First Amendment in Censoring Solstice Display, Judge Rules

By Alex Zielinski on Tue, Oct 17, 2017 at 3:59 pm

**SEND A NEWS TIP**

   



*Screenshot via Spectrum News*

Gov. Abbott speaking in an Austin Church during the "National Day of Prayer."

Gov. Greg Abbott violated the Constitution when he removed a display celebrating the separation of church and state from the Texas Capitol in December 2015, according to a Friday ruling by U.S. District Judge Sam Sparks.

The display in question mimicked a classic nativity scene, but instead of wise men, three of the country's founding fathers and the Statue of Liberty peered down at the Bill of Rights, tucked snugly into a manger. It had been set up by the Freedom From Religion Foundation, an atheist group focused on keeping religion out of politics — one of Texas Republican's favorite things to meddle with. Next to the display, a sign read: "Happy Winter Solstice. At this season of the Winter Solstice we honor reason and the Bill of Rights (adopted December 15, 1791). Keep state and church separate."

This thoroughly pissed off the Roman Catholic governor.

SUPPORT US

Advertisement: 🔇✕



Metiri Group is

66°

AUSTIN  >  | MAY 22, 2023

LOG IN

## Judge: Gov. Abbott's removal of atheist display at Capitol violated freedom of speech

BY

AUSTIN, Texas - A "winter solstice" display by the Freedom from Religion Foundation is back in the spotlight.

In December 2015, Governor Greg Abbott removed it from the Capitol citing a mocking tone against Christianity, but a federal judge ruled that in doing so, the governor violated their freedom of speech.

"What the court says the governor was doing here was discriminating based on viewpoint," said Sam Grover with the Freedom from Religion Foundation. "They

66°

AUSTIN   >   I   MAY 22, 2023                                                                                              LOG IN

holding the Bill of Rights.

The organization, which advocates for the separation of church and state, had permission by the State Preservation Board to leave it up for five days, but Abbott ordered it to be taken down after four.

In response, the FFRF filed a lawsuit against the governor.

"The law is very clear on free speech issues, which is why we actually sued Governor Abbott in his individual capacity as well, so we were expecting to win this case," said Grover.

However, some agreed with the governor, and found its presence in the Capitol offensive.

"When it comes to the Nativity scene, that's a really important symbol for Christians, and for it to be mocked, and really mocked using the Founding Fathers, the Founding Fathers would not have been for that," said Nicole Hudgens with Texas Values.

On Sunday, Abbott tweeted that the court's decision would be appealed.

The Freedom from Religion Foundation isn't concerned.

"FFRF has every right to equal access to the Texas Capital, and this is an open and shut case, so if he wants to waste tax payer money on this, that's his choice," Grover said.

**YOU MIGHT ALSO LIKE**

PRICE DROP          PRICE DROP    PRICE D



# Fifth Circuit Upholds Atheist Group's Right to Display Altered Nativity Scene

*The Fifth Circuit sided late Friday with an atheist group that sued Texas after the state removed its nativity scene promoting the separation of church and state.*

<u>DAVID LEE</u> / April 3, 2020

(CN) – The Fifth Circuit sided late Friday with an atheist group that sued Texas after the state removed its nativity scene promoting the separation of church and state.

Organized at the state Capitol, the scene had depicted the Statue of Liberty and three Founding Fathers standing and kneeling around a copy of the Bill of Rights inside of a manger instead of a baby Jesus. A banner there stated: "Happy Winter Solstice / At this Season of the Winter Solstice, We Honor Reason and the Bill of Rights (adopted December 15, 2791 / Keep State & Church Separate / On Behalf of Texas Members of the Freedom From Religion Foundation."

After the scene was removed in 2015, the Freedom From Religion Foundation sued Republican Governor Greg Abbott and Rod Welsh, executive director of the Texas State Preservation Board, filed suit in 2016.

Abbott said the scene was inappropriate because it was "subjecting an image held sacred by millions of Texans to the Foundation's tasteless sarcasm does nothing to promote the morals and the general welfare" and "promotes ignorance and falsehood insofar as it suggests that George Washington, Benjamin Franklin, and Thomas Jefferson worshipped (or would worship) the Bill of Rights in the place of Jesus."

The organization applied for another exhibit the next year, but was rejected by the board for "purposefully mock[ing] Christians and Christianity by crudely satirizing one of the most sacred symbols of the Christian faith."

In 2018, a trial judge ruled that the group's First Amendment rights were violated. A three-judge panel with the Fifth Circuit in New Orleans unanimously affirmed.

U.S. Circuit Judge Stephen Higginson, an Obama appointee, wrote for the court that the trial court has jurisdiction to provide relief for future conduct regarding the nativity scene and that there is still a live controversy.

"However, the district court did not have jurisdiction to enter a retrospective declaratory judgment," the 17-page opinion states. "Therefore, we vacate the judgment and remand to the district court the consider FFRF's request for injunctive relief and enter appropriate prospective relief for FFRF."

Higginson said that when considering entering relief for past conduct, a court needs to look at "the substance rather than the form" of the relief requested.

"The backwards-looking, past-tense declaratory judgement issued by the district court is 'tantamount to an award of damages for a past violation of law, even though styled as something else," the opinion states. "While it is true that the declaratory judgment could have some future effect by clarifying the contours of the First Amendment and deterring similar actions by the state, 'compensatory or deterrence interests are insufficient to overcome the dictates of the Eleventh Amendment.'"

The judge notes that defendants have not retracted earlier statements to the plaintiff that any future applications for a similar nativity scene will be denied, hence the controversy with future conduct.

Attorney General Ken Paxton's office could not be reached for comment after office hours Friday evening.

The Freedom From Religion Foundation said it is "highly gratified" with the court's ruling.

Annie Laurie Gaylro, co-president of the group, said in a statement Friday evening that "free speech – even for the atheists Abbott reviles – is alive and well in Texas, despite the governor's attempts to malign, censor and exclude nonbelievers."

Higginson was joined on the panel by U.S. Circuit Judges W. Eugene Davis, a Reagan appointee, and James Graves Jr., an Obama appointee.

Follow @davejourna

## Read the Top 8

*Sign up for the Top 8, a roundup of the day's top stories delivered directly to your inbox Monday through Friday.*

| enter your e-mail address | Submit |

### Additional Reads

 **The Second Circuit and the First Amendment**
April 25, 2023

 **Texas asks Fifth Circuit to nix fees awarded to opponents of pro-Israel law**
April 4, 2022

 **San Antonio claims immunity from suit over Chick-fil-A rejection**
October 28, 2021

 **Civil rights groups challenge Texas' recently passed voting restrictions bill**
September 3, 2021

ADVERTISEMENT

AMENDED FFRF vs. ABBOTT FEE AND DISBURSEMENT SUMMARY

| | |
|---|---|
| Richard L. Bolton Fees | $217,978.00 |
| Samuel Grover Fees | $187,666.67 |
| Patrick Elliott Fees | $25,033.33 |
| Dan Byrne Fees | $12,913.00 |
| Disbursements | $7585.75 |
| TOTAL | $438,263.75 |

EXHIBIT
2

## AMENDED SUMMARY OF ATTORNEY BOLTON'S ADJUSTED TIME
## REQUESTED BY FEE PETITION

**TOTALS**

1.  Attorney Bolton Time:

    500 Hours ($425 per hour)                                     $212,478.00*

2.  37 Hours of Travel Time ($150 per hour)              $    5,500.00


    TOTAL                                                                 $217,978.00

*Attorney Bolton's non travel time has been reduced 125 hours.





### KEN PAXTON
ATTORNEY GENERAL OF TEXAS

LANORA C. PETTIT                                          (512) 463-2127
Principal Deputy Solicitor General                Lanora.Pettit@oag.texas.gov

April 7, 2022

**Via CM/ECF**

Lyle W. Cayce, Clerk
United States Court of Appeals for the Fifth Circuit

    **Re:   No. 21-50469, *Freedom from Religion Foundation v. Abbott***

Dear Mr. Cayce:

    Pursuant to Federal Rule of Appellate Procedure 28(j), I write to notify the panel in the above-captioned case that the Texas State Preservation Board has formally repealed the Capitol Exhibit Rule, Texas Administrative Code § 111.13. *See* Tex. Sec'y of State, *Texas Register*, https://tinyurl.com/59zjb76m (last accessed April 7, 2022). As I mentioned during oral argument on March 7, 2022, this repeal was proposed following the close of briefing in this case. It has now been adopted by the Board by unanimous vote and without a single public comment. The repeal will be published in the April 15, 2022, issue of the *Texas Register* and will take effect on April 20, 2022. *Id.*

    The July 2020 amendments to the Capitol Exhibit Rule closed the Texas Capitol grounds to private speech by adopting any exhibit approved for display as government speech. *E.g.,* Blue Br. 21-23, Gray Br. 3-11. But even Plaintiff has acknowledged that the full repeal of section 111.13 closes the forum to which it has sought access. Red Br. 28-29. Consequently, FFRF's prospective Free Speech Clause claim seeking equal access to the Texas Capitol grounds is now indisputably moot, and the district court's order awarding FFRF injunctive relief should be vacated under the principles announced in *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39-40 (1950).



EXHIBIT
4

Page 2

Respectfully submitted.

/s/ Lanora C. Pettit

Lanora C. Pettit
Principal Deputy Solicitor General

cc: All counsel of record (via CM/ECF)

with the authority to make rules and regulations for its government and that of its officers and committees, and §444.024, which authorizes the Commission to award grants.

No other statutes, articles, or codes are affected by this proposal.

*§35.1.   A Guide to Programs and Services.*

The Commission adopts by reference a Guide to Programs and Services (revised December 2021 [September 2016]). This document is published by and available from the Texas Commission on the Arts, P.O. Box 13406, Austin, Texas 78711. This document is also available online at www.arts.texas.gov [www.arts.state.tx.us].

The agency certifies that legal counsel has reviewed the proposal and found it to be within the state agency's legal authority to adopt.

Filed with the Office of the Secretary of State on December 16, 2021.

TRD-202105113
Gary Gibbs
Executive Director
Texas Commission on the Arts
Earliest possible date of adoption: January 30, 2022
For further information, please call: (512) 936-6570

◆          ◆          ◆

# PART 7.   STATE PRESERVATION BOARD

## CHAPTER 111.   RULES AND REGULATIONS OF THE BOARD

### 13 TAC §111.13

1. INTRODUCTION: The State Preservation Board (SPB) proposes the repeal of 13 TAC §111.13, concerning exhibitions in the Capitol and Capitol Extension. Section 111.13 sets forth a process for members of the public to formally request their representatives display exhibits in designated indoor spaces, subject to the approval of the SPB. The rule was amended June 26, 2020, *(Texas Register,* (45 TexReg 4843)) in an effort to clarify the process and promote educational exhibits that would be meaningful to all Texans and Capitol visitors.

 The SPB proposes repeal of 13 TAC §111.13 because the agency does not need the rule in order to serve its intended purpose of providing for the display of government speech on the Capitol grounds that educates, informs, and unites.

2. Fiscal Note: Ms. Cindy Provine, Chief Financial Officer, has determined for each year of the first five years the proposed repeal is in effect, there will be no adverse fiscal impact to state or local governments because of this proposal. There will be no measurable effect on local employment or the local economy because of the proposal. Therefore, a local employment impact statement under Government Code §2001.022 is not required.

3. Public Benefit/Cost Note: Ms. Provine has also determined that for each year of the first five years the proposal repeal is in effect, the public benefit will be increased efficiency in government activities and reduction in litigation. She has further determined that there will be no economic cost to any member of the public or any other public or private entity.

Government Code §2001.0045 requires a state agency to offset any costs associated with a proposed rule by (1) repealing a rule imposing a total cost that is equal to or greater than that of the proposed rule; or (2) amending a rule to decrease the total costs imposed by an amount that is equal to or greater than the cost of thee proposed rule. As described above, the SPB has determined that the proposed repeal with not impose any cost on anyone, and so §2001.0045 does not apply.

4. Government Growth Impact Statement: Government Code §2001.0221 requires that a state agency prepare a government growth impact statement that reasonably describes what effects a proposed rule may have during the first five years it is in effect. The SPB has determined that the proposed repeal will not create or eliminate a government program, and will not require an increase or decrease in fees paid to the agency. Implementation of the proposal will not require the creation or elimination of employee positions and will not require an increase or decrease in further legislative appropriations to the agency. The proposal does repeal an existing procedural rule regarding voluntary conduct, but it does not create a new prescriptive or proscriptive regulation, or expand, limit, or repeal such a regulation. Though the public's ability to seek the display of exhibits in the Capitol through this program will be eliminated, the regulation was not prescriptive. Thus, the number of individuals whose conduct is subject to the rule's applicability is neither increased nor decreased by the proposal, and the proposal has no impact on the state's economy.

5. Economic Impact Statement and Regulatory Flexibility Analysis: The SPB has determined the proposed rule will not have an economic effect on small businesses, micro businesses, or rural communities. Therefore, an economic impact statement and regulatory flexibility analysis are not required under Government Code §2006.002(c).

6. Takings impact assessment: The SPB has determined that this proposal affects no private real property interests and does not restrict or limit an owner's right to property that would exist in the absence of government action and, therefore, does not constitute a taking or require a takings impact assessment under Government Code §2007.043.

7. Request for Public Comment: Written comments on the proposed change may be directed to SPBAdmin via email at SPBAdmin@tspb.texas.gov , with the words rule comment on the subject line, or mail, State Preservation Board, ATTN: Leslie Pawelka, P.O. Box 13286, Austin, Texas, 78711. A request for public hearing must be in writing and sent separately from any written comments. Comments will be accepted for 30 days after date of publication in the *Texas Register.*

Statutory Authority and Sections Affected. The repeal is proposed pursuant to Texas Government Code §443.007, which authorizes the Board to adopt rules concerning the buildings, their contents, and their grounds; and Texas Government Code §443.018, which authorizes the Board to adopt rules that regulate the actions of visitors in the Capitol or on the grounds of the Capitol.

No other statutes, articles or codes are affected by the proposed repeal.

*§111.13.   Exhibitions in the Capitol and Capitol Extension.*

The agency certifies that legal counsel has reviewed the proposal and found it to be within the state agency's legal authority to adopt.



Filed with the Office of the Secretary of State on December 15, 2021.

TRD-202105083
Rod Welsh
Executive Director
State Preservation Board
Earliest possible date of adoption: January 30, 2022
For further information, please call: (512) 463-4180

♦          ♦          ♦

## 13 TAC §111.45

The State Preservation Board proposes amendments to 13 TAC §111.45, Sick Leave Pool, retitling it Employee Leave Pools and adding new §111.45(b). The proposed new subsection is necessary to implement House Bill (HB) 2063, 87th Leg., R.S. (2021), which created a state employee family leave pool by the addition of new Subchapter A-1 to Chapter 661. The additional proposed amendments are necessary to update the existing rule relating to the sick leave pool for consistency with the proposed new subsection.

SUMMARY. The purpose of the state employee family leave pool is to provide eligible state employees more flexibility in bonding with and caring for children during a child's first year following birth, adoption, or foster placement and for caring for a seriously ill family member or the employee. The pool must allow employees to voluntarily transfer sick or vacation leave earned by the employee to the pool and allow employees to apply for leave time under the pool. Government Code, §661.022(c) requires the governing body of a state agency to adopt rules and prescribe procedures relating to the operation of the pool. Requirements and procedures regarding employee contribution to the pool, use of time in the pool, and withdrawal from the pool are detailed in Government Code, §§662.023 - 661.025. New §111.45(b) states the purpose of the state employee family leave pool, designates the human resources manager or designee as administrator of the pool, establishes that the procedures relating to the operation of the pool will be published in the agency's Employee handbook, and states the operation of the pool will be consistent with Government Code, Chapter 661, Subchapter A-1 (relating to State Employee Family Leave Pool). Amendments to §111.45 are nonsubstantive, providing both employee leave pools in the same location.

FISCAL NOTE. Cynthia Provine, Chief Financial Officer, has determined that for each of the first five years the proposed amendments are in effect, there will not be a fiscal impact on state or local government as a result of enforcing or administering the amendments and new rule, as proposed.

PUBLIC BENEFIT/COST NOTE. Ms. Provine has also determined that for the first five-year period the amendments and new rule are in effect, the public benefit will be consistency and clarity in the agency's sick leave pool and state employee family leave pool rules.

ECONOMIC COSTS TO PERSONS AND IMPACT ON LOCAL EMPLOYMENT. There are no anticipated economic costs to persons who are required to comply with the amendments and new rule, as proposed. There is no effect on local economy for the first five years that the proposed amendments and new rule are in effect; therefore, no local employment impact statement is required under Government Code, §2001.022 and 2001.024(a)(6).

ENVIRONMENTAL IMPACT STATEMENT. The SPB has determined that the proposed amendments and new rule do not require an environmental impact analysis because the amendments and new rule are not major environmental rules under the Government Code, §2001.0225.

COSTS TO REGULATED PERSONS. The proposed amendments and new rule do not impose a cost on regulated persons, including another state agency, a special district, or a local government and, therefore, are not subject to Government Code, §2001.0045. ECONOMIC IMPACT STATEMENT AND REGULATORY FLEXIBILITY ANALYSIS FOR SMALL BUSINESSES, MICROBUSINESSES, AND RURAL COMMUNITIES. Ms. Provine has also determined that there will be no impact on rural communities, small businesses, or micro-businesses as a result of implementing these amendments and new rule and therefore no regulatory flexibility analysis, as specified in Government Code, §2006.002, is required.

GOVERNMENT GROWTH IMPACT STATEMENT. During the first five years that the proposed amendments and new rule would be in effect, the proposed amendments and new rule: will not create or eliminate a government program; will not result in the addition or reduction of employees; will not require an increase or decrease in future legislative appropriations; will not lead to an increase or decrease in fees paid to a state agency; will create a new regulation as required by HB 2063 and Government Code, §661.022(c); will not repeal existing regulations; and will not result in an increase or decrease in the number of individuals subject to the rule. During the first five years that the amendments and new rule would be in effect, the proposed amendments will not positively or adversely affect the Texas economy.

TAKINGS IMPACT ASSESSMENT. No private real property interests are affected by this proposal and the proposal does not restrict or limit an owner's right to his or her property that would otherwise exist in the absence of government action and, therefore, does not constitute a taking under Government Code, §2007.043.

REQUEST FOR PUBLIC COMMENT. Written comments on the proposed amendments and new rule may be directed to SPBAdmin via email at SPBAdmin@tspb.texas.gov, with the words rule comment on the subject line; or mail, State Preservation Board, ATTN: Leslie Pawelka, P.O. Box 13286, Austin, Texas 78711. A request for public hearing must be in writing and sent separately from any written comments. Comments will be accepted for 30 days after date of publication in the *Texas Register*.

STATUTORY AUTHORITY. The amendments and new rule are proposed under Government Code, §661.022(c), as added by HB 2063, which requires state agencies to adopt rules relating to the operation of the agency family leave pool, and Government Code, §661.002(c), which requires state agencies to adopt rules relating to the operation of the agency sick leave pool.

The proposed amendment affects Government Code, Chapter 661.

*§111.45.   Employee [Sick] Leave Pools [Pool].*

(a)   Sick Leave Pool. A sick leave pool is established according to requirements and conditions of Tex. Gov. Code, Chapter 661 to provide for the alleviation of hardship caused to an employee and the employee's family if a catastrophic illness or injury forces the employee to exhaust all leave time earned by that employee and to lose compensation from the state.