IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **FREEDOM FROM RELIGION FOUNDATION, INC.,** | § § § | |
| v. | § § | 1:16-CV-00233-DII-DH |
| **GOVERNOR GREG ABBOTT AND ROD WELSH, EXECUTIVE DIRECTOR OF THE TEXAS STATE PRESERVATION BOARD, IN THEIR OFFICIAL CAPACITIES.** | § § § § § § § § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO: THE HONORABLE ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

Before the Court is Plaintiff Freedom From Religion Foundation, Inc.'s (FFRF) Motion for Attorney's Fees and Costs, Dkt. 152. After reviewing these filings, the relevant case law, and the parties' responses, the undersigned recommends granting the motion.

## I. BACKGROUND

"This case concerns the Texas State Preservation Board—an often unnoticed state agency charged with preserving and maintaining the Texas Capitol and its grounds." *Freedom From Religion Found., Inc. v. Abbott*, 58 F.4th 824, 827 (5th Cir. 2023) (*FFRF II*). "In 1987, the Board issued a regulation known as the Capitol Exhibit Rule. Under that rule, members of the public could submit an exhibit for display at the Capitol, provided the submission met certain undemanding requirements and be

1

sponsored by a qualifying state official." *Id.* Specifically, each exhibit had to serve a "public purpose," defined as "'[t]he promotion of the public health, education, safety, morals, general welfare, security, and prosperity of all inhabitants or residents within the state.'" *Freedom From Religion Found. v. Abbott*, 955 F.3d 417, 421 (5th Cir. 2020) *(FFRF I)* (quoting Tex. Admin. Code § 111.13).

The underlying dispute involved a "Bill of Rights nativity exhibit" that FFRF displayed in the Texas Capitol Building from December 18, 2015, to December 22, 2015. Dkt. 126, at 2. "The Exhibit featured Benjamin Franklin, Thomas Jefferson, George Washington, and the Statue of Liberty gathered around a manger containing the Bill of Rights." *Id.* The day before the exhibit was to be taken down, Governor Greg Abbott sent a letter to John Sneed, then Executive Director of the State Preservation Board, urging him to "remove the display from the Capitol immediately." *Id.* at 2-3. The Board removed the Exhibit the same day and later denied an application for an identical exhibit to be displayed in the Capitol. *Id.* at 3.

On February 25, 2016, FFRF sued Governor Abbott and Sneed in their individual and official capacities, alleging: (1) a free-speech claim under the First Amendment; (2) an equal-protection claim under the Fourteenth Amendment; (3) a claim under the Establishment Clause of the First Amendment; (4) a claim of unbridled discretion under the First Amendment; and (5) a due-process claim under the Fourteenth Amendment. Dkt. 1; Dkt. 126, at 3. The Court dismissed all FFRF's claims except for a freedom-of-speech claim and an Establishment Clause claim. Dkt. 38, at 24. On renewed motions for summary judgment, the Court issued an order

dismissing the Establishment Clause claim against Governor Abbott in his individual capacity as barred by qualified immunity. Dkt. 74, at 19-20. For timing reasons, the parties also stipulated to a voluntary dismissal of FFRF's freedom-of-speech claim against Governor Abbott in his individual capacity. Dkts. 85, 86.

That left only one claim—FFRF's free-speech claim against Defendants in their official capacities only. The Court issued a declaratory judgment for FFRF on that claim, declaring "that Defendants violated FFRF's First Amendment rights and engaged in viewpoint discrimination as a matter of law when FFRF's exhibit was removed from the Texas Capitol building." Dkt. 87, at 2.

Defendants appealed the Court's declaratory judgment on FFRF's free-speech claim, Dkt. 92, and FFRF cross-appealed the Court's dismissal of its unbridled-discretion claim, Dkt. 94. The circuit court first held that the this Court had jurisdiction to enter prospective relief under the *Ex Parte Young* exception to sovereign immunity. *FFRF I*, 955 F.3d at 424. The circuit court also held that "[t]he district court did not, however, have jurisdiction to award FFRF purely retrospective relief." *Id.* at 425. The circuit court reasoned that "[t]he backwards-looking, past-tense declaratory judgment entered by the district court is 'tantamount to an award of damages for a past violation of law,'" and therefore was prohibited by sovereign immunity. *Id.* (quoting *Papasan v. Allain*, 478 U.S. 265, 278 (1986)). Accordingly, the circuit court vacated the judgment and remanded for this Court to enter appropriate prospective relief for FFRF. *Id.* at 426. The circuit court also reversed the Court's dismissal of FFRF's First Amendment unbridled-discretion claims, concluding that

the Court failed to appropriately consider whether Texas Administrative Code § 111.13 provided neutral criteria sufficient to prevent viewpoint-based censorship. *Id.* at 429.

Intervening amendments then added a new wrinkle to the dispute. After the circuit court remanded the case, the Board published the final amendments to the Rule at issue, which took effect on July 20, 2020. According to the preamble to the Revised Rule, the amendments "are designed to make clear that all future exhibits in the exhibit areas of the Capitol and Capitol Extension will be adopted as government speech." 45 Tex. Reg. 3406 (2020), adopted by 45 Tex. Reg. 4968, 4968 (2020) (State Press. Bd., Exhibitions in the Capitol and Capitol Extension).

On remand, Defendants argued that the Revised Rule rendered this case moot. The Court disagreed, concluding that the State "cannot *ipse dixit* change the First Amendment status of the Capitol exhibit area." Dkt. 126, at 5. Addressing the issue on remand from the circuit court, this Court granted FFRF's request for injunctive relief and enjoined Defendants from excluding FFRF's Exhibit from display in the designated exhibit area of the Texas Capitol Building. *Id.* at 12. The Court also granted prospective declaratory relief that Defendants violate FFRF's First Amendment rights and engage in viewpoint discrimination as a matter of law when they exclude FFRF's Exhibit based on the perceived offensiveness of its message. *Id.* at 13. Finally, the Court determined that the public-purpose requirement of the Rule contained sufficient criteria to avoid viewpoint-based discrimination and granted Defendants summary judgment on FFRF's unbridled-discretion claims. *Id.* at 16.

Defendants appealed again, arguing that the amended rule mooted the case. During the pendency of that appeal, the Texas Legislature repealed the Rule entirely. *FFRF II*, 58 F.4th at 828 ("Finally, last year, the Board repealed the Rule altogether."). The circuit court held that the repeal of the Rule mooted the case, reasoning that "[b]ecause [FFRF's] injury is premised on exclusion from its message in a public forum, and because the public forum no longer exists, the permanent injunctive relief ordered by the district court cannot remain." *Id*. But the circuit court provided an important caveat: "the order and declaratory judgement—declaring that the Defendants violate the First Amendment by excluding [FFRF's] exhibit from a limited public forum—shall remain." *Id.*

## II. LEGAL STANDARDS

An award of attorney's fees is entrusted to the "sound discretion" of the district court. *Tex. Com. Bank Nat'l Ass'n v. Cap. Bancshares, Inc.*, 907 F.2d 1571, 1575 (5th Cir. 1990). Even so, "[i]t remains important … for the district court to provide a concise but clear explanation of its reasons for the fee award." *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 329 (5th Cir. 1995) (emphasis omitted).

In a civil rights case like FFRF's, "the court, in its discretion, may allow the prevailing party … a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). The Fifth Circuit uses a two-step process to calculate recoverable attorneys' fees. *Heidtman v. Cnty. of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999). First, courts use the lodestar method to calculate an appropriate fee award by multiplying the number of hours reasonably spent on the case by an appropriate hourly rate in the

community for such work. *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006). The party seeking fees is "charged with the burden of showing the reasonableness of the hours billed and, therefore, [is] also charged with proving that [its attorney(s)] exercised billing judgment." *Id.* "The court should exclude all time that is excessive, duplicative, or inadequately documented [and] [t]he hours surviving this vetting process are those reasonably expended in litigation." *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). While plaintiff's counsel need not record in great detail how each minute of their time was expended, they should identify the general subject matter of their time expenditures. *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983).

After calculating the lodestar, the court may decrease or enhance the amount based on the relative weights of the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989). The Fifth Circuit has instructed that "of the *Johnson* factors, the court should give special heed to the time and labor involved, the customary fee, the amount involved and the result obtained, and the experience, reputation and ability of counsel." *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998).

### III.  DISCUSSION

FFRF seeks $456,741.75 as fair and reasonable attorneys' fees and related expenses. Dkt. 161, at 20.[1] Defendants respond that this amount is unwarranted for four reasons. First, Defendants argue that FFRF is not a "prevailing party" under 42 U.S.C. § 1988(b). Dkt. 155, at 4. Second, Defendants argue that FFRF's fee should be reduced: (a) to account for hours spent on causes of action for which it obtained no relief; (b) to eliminate hours billed by local counsel; (c) to eliminate time and expenses incurred by retaining out-of-state counsel. *Id.* at 9-16. Third, Defendants argue that the hourly rates charged by FFRF should be reduced to $300 an hour to reflect Austin-area attorney rates. *Id.* at 16-18 Finally, Defendants argue for a downward departure under the *Johnson* factors. *Id.* at 18-19.

### A.  Prevailing Party Status Under 42 U.S.C. § 1988(b)

The chief dispute is whether FFRF is a "prevailing party" under 42 U.S.C. § 1988(b). FFRF argues that it is a prevailing party because: "(1) The court granted summary judgment in FFRF's favor on the First Amendment freedom of speech claim against Governor Abbott and Executive Director Walsh in their official capacities; (2) the court entered judgment in favor of FFRF on its First Amendment freedom of speech claims; (3) the court issued a declaratory judgment that Defendants violated

---

[1] In its original motion, FFRF sought $474,829.75. Dkt. 152, at 9. However, in response to arguments made in Defendants' opposition, FFRF voluntarily reduced portions of its requested fees and expenses. *See* Dkts. 160, at 13-14; 161, at 20-21. Specifically, FFRF stated that it "agrees to reduce the request for local counsel fees by 50%, i.e., to the amount of $12,913.00," Dkt 152, at 13, and that it "is agreeable to a reduction of 34.5 hours at $150 an hour," *id.* at 14. Those reductions amount to $18,088 collectively, resulting in a fee request of $456,741.75.

FFRF's First Amendment rights and engaged in viewpoint discrimination …; (4) the Fifth Circuit affirmed this court's liability holding and directed the court on remand to enter prospective relief in favor of FFRF; and (5) this court entered prospective declaratory and injunctive relief in favor of FFRF after remand." Dkt. 152, at 5-6. Defendants provide two counterarguments.

First, Defendants argue that "[t]he vacated injunction in this case does not render [FFRF] a 'prevailing party'" because "[w]here injunctive relief is initially granted but later vacated due to mootness, the plaintiff who initially obtained the injunctive relief is not a 'prevailing party' unless it can show that the entry of the initial injunction directly caused the defendant to moot the case." Dkt. 155, at 5 (citing *Dearmore v. City of Garland*, 519 F.3d 517, 524 (5th Cir. 2008)). FFRF responds that this argument incorrectly relies "on the standard for determining prevailing party status that is applicable to preliminary injunctions, rather than the standard applicable to final judgments rendered prior to mootness, as in the present case." Dkt. 160, at 3.

Under Fifth Circuit law, a finding of mootness does not prevent holding that a plaintiff is a "prevailing party" and is therefore entitled to attorneys' fees. In *Murphy v. Fort Worth Independent School District*, a high school student successfully argued to the district court that his expulsion violated his procedural-due-process rights and was awarded injunctive relief. 334 F.3d 470, 470-71 (5th Cir. 2003). During the pendency of that appeal, the student graduated high school, mooting the case. *Id.* at 471. The Fifth Circuit vacated the district court's judgment and injunction, but still

8

ordered defendant to pay attorney's fees, finding that "[t]he plaintiff is clearly the prevailing party and is entitled under 42 U.S.C. § 1988 (2000) to a reasonable attorney's fee." *Id.*; *see also Doe v. Marshall*, 622 F.2d 118, 120 (5th Cir. 1980) ("Thus, a determination of mootness neither precludes nor is precluded by an award of attorneys' fees. The attorneys' fees question turns instead on a wholly independent consideration: whether plaintiff is a 'prevailing party.'").

Other courts have held similarly. *See, e.g.*, *Green Party of Tenn. v. Hargett*, 767 F.3d 533, 553 (6th Cir. 2014) ("The plaintiffs have not been stripped of their prevailing party status by the legislature's decision to amend the relevant statutes[.]"); *Diffenderfer v. Gomez-Colon*, 587 F.3d 445, 454 (1st Cir. 2009) ("When plaintiffs clearly succeeded in obtaining the relief sought before the district court and an intervening event rendered the case moot on appeal, plaintiffs are still 'prevailing parties' for the purposes of attorneys' fees for the district court litigation."); *Nat'l Black Police Ass'n v. D.C. Bd. of Elections & Ethics*, 168 F.3d 525, 529 (D.C. Cir. 1999) (holding that vacatur on the basis of mootness did not prevent a finding that plaintiffs were prevailing parties entitled to attorneys' fees); *Dahlem by Dahlem v. Bd. of Educ. of Denver Pub. Sch.*, 901 F.2d 1508, 1512 (10th Cir. 1990) ("[A] party which achieves the objective of its suit by means of an injunction issued by the district court is a prevailing party in that court, notwithstanding the fact that the case becomes moot, through no acquiescence by the defendant, while the order is on appeal.").

The cases cited by Defendants are inapt because they are limited to the preliminary-injunction context. *See Amawi v. Paxton*, 48 F.4th 412, 416 (5th Cir.

9

2022) ("Prevailing party status does not attend achievement of a *preliminary injunction* that is reversed, dissolved, or otherwise undone by the final decision in the same case.") (cleaned up) (emphasis added) (quoting *Sole v. Wyner*, 551 U.S. 74, 83 (2007)); *Dearmore v. City of Garland*, 519 F.3d 517, 521 (5th Cir. 2008) ("This appeal presents an issue of first impression in this Circuit: Whether a plaintiff qualifies as a 'prevailing party' under § 1988(b) when he obtains a *preliminary injunction* … and the defendant subsequently moots the case[.]") (emphasis added). That distinction is significant because, while a judgment requires a finding of success on the merits, the award of a preliminary injunction requires only a showing of *substantial likelihood* of success on the merits. *City of El Cenizo, Texas v. Texas*, 890 F.3d 164, 176 (5th Cir. 2018). Unlike the plaintiffs in *Amawi* and *Dearmore*, FFRF obtained a *permanent* injunction.

Accordingly, the undersigned finds that FFRF's status as a "prevailing party" under § 1988(b) was not altered by the Fifth Circuit's mooting of certain issues on appeal. The award of attorneys' fees should not be denied on that basis.

Defendants next argue that FFRF's declaratory judgment on a single cause of action does not render it a "prevailing party." In the Fifth Circuit, there are three requirements that must be satisfied for a plaintiff to establish prevailing party status: "(1) the plaintiff must achieve judicially-sanctioned relief, (2) the relief must materially alter the legal relationship between the parties, and (3) the relief must modify the defendant's behavior in a way that directly benefits the plaintiff at the time the relief is entered." *Veasey v. Abbott*, 13 F.4th 362, 368 (5th Cir. 2021) (quoting

10

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 604 (2001)).

Defendants contend that FFRF's declaratory relief fails the second and third requirements. As for the second, Defendants argue that the declaratory judgment does not "materially alter the legal relationship between the parties" because the closing of the Capitol to private exhibits means that Defendants cannot discriminate against FFRF again. Dkt. 155, at 7. But that is simply a rehashing of Defendants' mootness argument. Were mootness enough to prevent prevailing party status, then the Fifth Circuit's holdings in *Murphy* and *Doe* would have been different. The same is true for Defendants' argument that "the declaratory judgment will not modify any possible behavior" because "there is no longer any factual scenario where Defendants could evaluate or decide whether to permit an exhibit submitted by Plaintiff." *Id.* Again, that argument is derivative of the rejected mootness argument. Indeed, the Fifth Circuit noted that its "holding does not preclude [FFRF] from showing that it is entitled to attorney fees as the prevailing party under 42 U.S.C. § 1988." *FFRF II*, 58 F.4th at 828. Accordingly, the undersigned finds that FFRF should be awarded "prevailing party" status.

### B. Calculation of Hours Worked

The parties next dispute the amount of fees that should be awarded to FFRF. Courts in the Fifth Circuit use the lodestar method to calculate attorney's fees. Under that method, "[t]he lodestar is calculated by multiplying the number of hours an attorney reasonably spent on the case by an appropriate hourly rate, which is the

market rate in the community for this work." *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013). "There is a strong presumption of the reasonableness of the lodestar amount." *Id.* "However, after calculating the lodestar, a district court may enhance or decrease the amount of attorney's fees based on 'the relative weights of the twelve factors set forth in *Johnson*." *Id.* (internal quotation marks omitted). "The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011).

The number of hours reasonably spent are determined, in the first instance, from the attorney's time records, as to which attorneys should exercise billing judgment. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant. *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006). The lodestar's reasonable hourly rate determination is based on the rate charged in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. *Blum v. Stenson*, 465 U.S. 886, 892 n.5 (1984). A "reasonable" fee is one "that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010).

Defendants first argue that FFRF is "not entitled to recover for the time and effort spent litigating the numerous other claims for which it obtained no relief." Dkt. 155, at 10; *see Fox*, 563 U.S. at 834 ("The fee award, of course, should not reimburse the plaintiff for work performed on claims that bore no relation to the grant of relief:

12

Such work cannot be deemed to have been expended in pursuit of the ultimate result achieved.") (internal quotation marks omitted). Defendants contend that a 50% reduction in fees is warranted to account for FFRF's unsuccessful causes of action, such as its equal protection claim under the Fourteenth Amendment.

FFRF disagrees. It contends that its fees "were all incurred on factually and legally related claims seeking the same objective, which FFRF achieved by final judgment." Dkt 160, at 10. Where a "plaintiff's claims for relief … involve a common core of facts or [are] based on related legal theories," "[s]uch a lawsuit cannot be viewed as a series of discrete claims." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983); *see also Abrams v. Baylor Coll. of Med.*, 805 F.2d 528, 536 n.10 (5th Cir. 1986) ("The plaintiffs have substantially prevailed in this litigation and they are, therefore, entitled to all hours reasonably expended on the lawsuit—including those hours devoted to unsuccessful but related contentions.").

The challenge in this case is how to disentangle FFRF's work on its successful claims from its unsuccessful ones. As Defendants acknowledge, "it is difficult to neatly parse out which hours should be allocated to various causes of action in any given case." Dkt. 155, at 11. Where, as here, "a plaintiff's claims cannot be disentangled, the district court's focus should shift to the results obtained and update the lodestar accordingly." *Fessler v. Porcelana Corona De Mexico, S.A. DE C.V.*, 23 F.4th 408, 416 (5th Cir. 2022). Accordingly, the undersigned will consider the results FFRF obtained.

It is true that FFRF failed to obtain relief on most of its claims, such as its equal protection claim and its unbridled discretion claim. Nevertheless, FFRF obtained a judgment on the merits that Defendants violated its First Amendment rights. That is a meaningful and substantial success, particularly given this dispute's arduous appeal and remand process. Accordingly, the undersigned finds that Defendants' proposed 50% reduction in fees is too harsh a remedy. Still, a reduction is needed to account for FFRF's time spent on unsuccessful claims and legal theories. Accordingly, the undersigned finds that a 25% reduction to the total number of hours billed is adequate to reflect FFRF's mixed success.[2]

Defendants also argue that FFRF is not entitled to recover for most of its work related to the appeals in this case. Dkt 155, at 13. They claim that "[t]he first opinion from the Fifth Circuit agreed with Defendants that the initial judgment entered by this Court was barred by sovereign immunity. Thus, Defendants were successful in that appeal, and Plaintiff is not entitled to any fees related to it." *Id.* FFRF responds that the Fifth Circuit's opinion "cannot credibly be described as a victory for the defense." Dkt. 160, at 15. FFRF says that the circuit court determined that a live case and controversy existed and that this Court, on remand, should enter appropriate

---

[2] Rather than applying a percent reduction, FFRF refers the Court to its various write-offs of time, arguing that the exercise of billing discretion should account for, or at least cancel out, any time spent on unsuccessful claims. Dkt. 160, at 13. But FFRF is under an obligation to exercise sound billing discretion whether it prevailed on all of its claims, or as here, just some of them. *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006) ("Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant."). The undersigned therefore concludes that a 25% reduction in fees is not duplicative of FFRF's various write-offs.

prospective relief in favor of FFRF, including possible injunctive relief. *Id.* As for the second appeal, Defendants argue that because "[t]he panel completely vacated the injunction but left the declaratory judgment intact," FFRF "would be entitled to no more than half of its fees related to that appeal." Dkt. 155, at 13.

The undersigned finds that its previously recommended 25% reduction in fees is sufficient to account for FFRF's mixed success on appeal. On the first appeal, the circuit court determined that this Court did not have jurisdiction to enter a retrospective declaratory judgment. *FFRF I*, 955 F.3d at 425-26. But the circuit court also remanded for the Court to enter appropriate prospective relief for FFRF and reversed the Court's grant of summary judgment to Defendants. That mixed result is adequately accounted for by a 25% reduction in fees. Similarly, during the second appeal, despite holding that the case was moot, the circuit court nevertheless left the declaratory judgment for FFRF intact. That mixed result is likewise adequately accounted for by a 25% reduction in fees.

Defendants next argue that FFRF is not entitled to recover for hours billed by local counsel, because the services rendered by local counsel were not necessary and reasonable. Dkt. 155, at 14; *see Stone v. City of Wichita Falls*, 668 F.2d 233, 234 (5th Cir. 1982) ("The basic principle that the prevailing party is due only compensation for 'reasonable attorney's fee(s),' necessarily implies an evaluation both of the necessity of rendering those services for which a fee is sought and of the reasonableness of the amount requested.") (citation omitted). Defendants claim that because two of FFRF's other attorneys are personally admitted to the Western

15

District of Texas, FFRF did not need local counsel in this case. Dkt. 155, at 15 (citing Dkts. 152-3 ¶ 4; 152-4, ¶4).

In response, FFRF argues that hiring local counsel was reasonable and necessary for this litigation. "In the interest of compromise, however, FFRF agrees to reduce the request for local counsel fees by 50%." Dkt. 161, at 13. The undersigned finds that FFRF's proposed 50% reduction in fees adequately addresses any concerns raised by Defendants as to local counsel. Accordingly, the undersigned recommends that FFRF's attorneys' fees not be reduced further on this basis.

Relatedly, Defendants argue that FFRF is not entitled to recover for increased time and expenses incurred by retaining out-of-state counsel. Defendants therefore request that FFRF's fee request be reduced by 44.5 hours, the time one attorney incurred in traveling between Wisconsin and Texas for this case. Dkt. 155, at 15-16. FFRF argues that because Defendants conducted depositions of FFRF in Madison, Wisconsin, travel time would have been required regardless of whether local counsel was retained. Dkt. 160, at 13-14. Accordingly, FFRF offers to reduce its hours by 34.5, with the remaining 10 hours left in place to reflect that unavoidable travel time. *Id.* The undersigned finds that this compromise adequately addresses any concerns expressed by Defendants. FFRF's fees should not be reduced further on that basis.

### C. Hourly Rate

Next, Defendants argue that FFRF's requested hourly rates are too high and should be reduced. Four attorneys' rates are at issue:

- Sam Grover, $400 per hour. Associate counsel, engaged in the practice of law for 11 years, with 10 years of First Amendment litigation experience.

- Patrick Elliott, $400 per hour. Senior counsel, engaged in the practice of law for 14 years, with 13 years of First Amendment litigation experience.

- Rich Bolton, $425 per hour. Lead counsel, engaged in the practice of law for 39 years, with 30 years of First Amendment litigation experience.

- Dan Byrne, between $525 and $650 per hour. Local counsel, engaged in the practice of law for 40 years, senior partner at Fritz Bryne, PLLC.

Defendants object to these rates, proposing a flat fee of $300 per hour for all attorney time. Defendants base this number on the State Bar of Texas's 2019 Income and Hourly Rates, which places the median hourly rate for the Austin-Round Rock Metropolitan Statistical Area in 2019 at $299. Dkt. 160, at 16-17.

The undersigned finds that Sam Grover, Patrick Elliott, and Rich Bolton's requested hourly rates are reasonable and appropriate. Specifically, the undersigned rejects Defendants' argument that FFRF's rates are too high simply because they are above the median rate charged by lawyers in Austin. That surface-level analysis overlooks several important factors, such as the specialized experience of the attorneys at issue. Here, each FFRF attorney has over a decade of specialized experience in First Amendment law, justifying a slight premium over the median rate provided by Defendants. Indeed, accepting Defendants' argument would lead to the absurd conclusion that roughly half of all attorneys in Austin charge unreasonably high rates. As discussed above, FFRF has already volunteered to reduce Mr. Byrne's

17

fee request by 50%. Dkt. 161, at 13. This is sufficient to address Defendants' concerns regarding his rate. Accordingly, the undersigned finds that no further reduction is needed.

### D.   Downward Departure Under the *Johnson* Factors

In the alternative, Defendants request a downward departure under the *Johnson* factors. Dkt. 155, at 18-19. Specifically, Defendants request a downward departure under factor 5, "the customary fee charged for those services in the relevant community" and factor 8, "the amount involved and the results obtained." *Johnson*, 488 F.2d at 718.

The undersigned recommends against a downward departure. First, factor 5 does not warrant a downward departure. Defendants have done nothing to show that the relevant comparators—Austin attorneys with over a decade of First Amendment litigation experience—charge less than FFRF's proposed rates. For the reasons explained above, the undersigned does not find that FFRF's proposed fees are higher than the customary fee charged for legal services in Austin.

Factor 8 also does not warrant a downward departure. FFRF obtained a judgment on the merits that Defendants violated its First Amendment rights. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). The undersigned finds that a reduction based on factor 8 is not warranted.

## IV. RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that the Court grant FFRF's Motion for Attorneys' Fees, Dkt. 152, and award FFRF, to recover from Defendants, $342,556.31 in attorneys' fees[3] and $3,957.36 in costs.

## V. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

---

[3] FFRF's requested $456,741.75, reduced by 25% to account for mixed success.

**SIGNED** on November 27, 2023.

_____
DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE