## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **FREEDOM FROM RELIGION** | § | |
| **FOUNDATION, INC.,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **NO. 1:16-CV-00233-DII-DH** |
| | § | |
| | § | |
| **GOVERNOR GREG ABBOTT AND** | § | |
| **ROD WELSH, EXECUTIVE** | § | |
| **DIRECTOR OF THE TEXAS STATE** | § | |
| **PRESERVATION BOARD, IN** | § | |
| **THEIR OFFICIAL CAPACITIES,** | § | |
| *Defendants.* | § | |

---

### BRIEF IN SUPPORT
### OF MOTION TO SATISFY JUDGMENT

---

## I.     INTRODUCTION.

The Defendants, Governor Greg Abbott and Director Rod Welsh, incorrectly maintain that this court's award of attorneys' fees to the Freedom From Religion Foundation ("FFRF"), pursuant to 42 U.S.C. § 1988, is not payable without a line-item appropriation by the Texas Legislature signed by the Defendant Abbott. The Defendants misapprehend their obligation to comply with federal law. A state's limitation on the satisfaction of judgments does not control when a federal interest in a remedy exists, as with § 1988 civil rights fees. Here, the Defendants' obligation to satisfy the judgment

against them for attorneys' fees under § 1988 is not a matter of choice or convenience, including as to the State of Texas vis-à-vis official capacity judgments. As a threshold matter, moreover, the Defendants misread the actual restriction on their obligation to satisfy the FFRF judgment from state assets. In any event, FFRF is entitled to an order from the court requiring the Defendants, including the State, to satisfy within 21 days FFRF's judgment for attorneys' fees under § 1988.

## II.    STATEMENTS OF FACTS.

FFRF commenced this action in 2016 alleging violations of the First Amendment by the Defendants while acting under color of law, contrary to 42 U.S.C. § 1983. (Bolton Dec., ¶ 2.) The Defendants have vigorously contested this matter at every turn, including two appeals to the Fifth Circuit Court of Appeals. (Bolton Dec., ¶ 3.) In the end, FFRF prevailed on its First Amendment claim based on the Defendants' acts of viewpoint discrimination. (Bolton Dec., ¶ 4.) As a result, this Court granted judgment on January 12, 2024, to FFRF for attorney fees, pursuant to 42 U.S.C. § 1988, in the amount of $342,556.31, and costs of $3,957.36. (Bolton Dec., ¶ 5 and Ex. 1.) The Defendants did not appeal the judgment for fees and costs and the time for appeal has passed. (Bolton Dec., ¶ 6.)

Shortly after the appeal deadline, counsel for FFRF inquired of the Defendants' counsel regarding payment of the outstanding final judgment for fees and costs. (Bolton Dec., ¶ 7 and Ex. 2 at1.) Counsel for the Defendants eventually responded by claiming that judgments in excess of $250,000 cannot be paid unless specifically funded in an appropriations bill signed by the Governor, who is one of the Defendants in this action.

(Bolton Dec., ¶ 8 and Ex.2 at 5 and 7.) Counsel for the Defendants have directed FFRF's counsel to § 16.04 of the 2023 General Appropriations Act, which prescribes requirements for the payment of judgments from 2023 appropriations. (Bolton Dec., ¶ 9 and Ex. 3.)

The next appropriation bill in Texas is not scheduled for consideration until after January of 2025. (Bolton Dec., ¶ 10.) Based on recent past experience, the next appropriation bill is likely to be submitted to the Governor in June of 2025; the 2023 General Appropriations Act continues until August 31, 2025. (Bolton Dec., ¶ 11 and Ex. 4.)

The process prescribed by. § 16.04 for paying judgments does not require the Texas Legislature to include in the next appropriation bill an amount necessary to satisfy FFRF's judgment, nor does the procedure require that the Governor agree to such an appropriation without veto. (Bolton Dec., ¶ 12 and Ex.3.) In fact, as an example of such uncertainty, the Texas Legislature refused in 2023 to appropriate funds for a $3,300,000 settlement made by the State in a whistleblower case against Attorney General Paxton. (Bolton Dec., ¶ 13 and Ex. 5.) In the present case, Governor Abbott has not responded to FFRF's inquiry as to whether or not he would veto an appropriation to satisfy FFRF's judgment. (Bolton Dec., ¶ 15 and Ex. 2 at 10.)

At a minimum, the Defendants refuse to now satisfy FFRF's Judgment for at least another 17 months -- and there is no certainty that any such appropriation ever will be made. (Bolton Dec., ¶ 15.) Further mystery clouds the Defendants' intentions as Governor Abbott has not answered whether he would sign any appropriation that might

3

be made. (Bolton Dec., ¶ 15.) In any event, Texas has sufficient funds and assets to pay FFRF's Judgment, including from unbudgeted funds totaling more than $18 billion projected in unspent money at the end of the current two-year budget cycle. (Bolton Dec., ¶ 16 and Ex. 6.)

The fees included in the Judgment entered against the Defendants were first incurred beginning in December of 2015, more than 8 years ago. (Bolton Dec., ¶ 17.)

## III.   THE DEFENDANTS MISREAD THE RESTRICTIONS ON THEIR AUTHORITY TO SATISFY THE FFRF JUDGMENT UNDER TEXAS LAW.

The Defendants unpersuasively rely on § 16.04 of the 2023 General Appropriations Act, especially subsection (b)(3), as the basis for not paying FFRF's judgment for § 1988 fees. More specifically, the Defendants contend that judgments in excess of $250,000 cannot be satisfied without a line-item appropriation authorizing the use of such money for the payment of FFRF's judgment. The Defendants misread § 16.04 in this respect.

Section 16.04, Judgments and Settlements, states as follows:

**Section 16.04. Judgments and Settlements.**

(a)     The monies appropriated by this Act, including appropriations made in Article X of the Act, may not be expended for payment of a judgment or a settlement prosecuted by or defended by the Attorney General and obtained against the State or a state agency, except:

(1)     pursuant to this section; or

(2)     where it is specifically provided in an item of appropriation that the funds appropriated or expenditures authorized may be used for the payment of judgments or settlements.

(b)     State agencies appropriated monies by this Act may expend monies appropriated elsewhere in this Act for the purposes of paying settlements and judgments against the state for causes brought in a federal court or a court in this state under specific statutory authority. Payments made pursuant to this subsection are subject to the following processes and limitations:

    (1)     monies are to be paid out by the Comptroller on vouchers drawn by the agency settling the lawsuit or paying the judgment, subject to the approval of the Governor and of the Attorney General according to Subsection (d);

    (2)     for purposes of this subsection, "judgment" means a judgment order rendered in a federal court or a court in this state for which an appeal or rehearing, or application therefore, is not pending and for which the time limitations for appeal or rehearing have expired;

    (3)     the payment of a settlement or judgment may not exceed $250,000;

    (4)     the payment of a settlement or judgment may not exceed one percent of the total amount of monies (not including federal funds) appropriated by this Act for expenditure by that agency for that fiscal year.

    (5)     the payment of the settlement or judgment would not cause the total amount of settlement and judgment payments made by the payer agency for that fiscal year to exceed 10 percent of the total amount of monies available for expenditure by that agency for that fiscal year; and

    (6)     the payment of a settlement or judgment may be made only with a complete release from any and all related claims and causes against the State, and in the case of a judgment, the payment may be made only in full satisfaction of that judgment.

Section 16.04 does not restrict the use of all State assets for the satisfaction of

judgments, contrary to the Defendants' reading. Instead, § 16.04(a) only limits the

expenditure of "monies appropriated by this Act." Subsection (b) similarly is limited to monies appropriated in the 2023 General Appropriations Act. Section 16.04 does not otherwise limit the use of state resources and assets to satisfy judgments, including judgments in excess of $250,000.

The State has sufficient resources to satisfy the FFRF judgment without use of 2023 appropriations. In fact, Texas Comptroller Glenn Hegar reported an estimated budget surplus for the 2024-25 fiscal year of $18 billion. This unbudgeted surplus, moreover, obviously is not the full extent of the State's assets.

The State's complete book of assets is relevant to satisfying FFRF's judgment against the Defendants in their official capacities. In *Echols v. Parker*, 909 F.2d 795, 801 (5th Cir. 1990), the Fifth Circuit Court of Appeals concluded that a state is liable for a § 1988 attorneys fees award entered against a state official in his or her official capacity. Relying upon *Hutto v. Finney*, 437 U.S. 678, 693-94 (1978), the Court held that because fee awards are "payable by the states when their officials are sued in their official capacities," and such fees may be assessed to the state. *Id.* at 799. Thus, Texas is liable in this case for the § 1988 attorneys' fees awarded to FFRF under the *Hutto* doctrine because the fees were awarded against the Defendants in their official capacities. *Id.* at 800. *See also*, *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985) (judgment against a public servant "in his official capacity" imposes liability on the entity that he or she represents).

Quite apart from the 2023 General Appropriations Act, therefore, the Defendants and the State of Texas are liable to satisfy the FFRF judgment. Section 16.04 of the Act does not prohibit immediate satisfaction of FFRF's judgment from non-appropriated

funds. The Defendants purport to play a long game by requiring an uncertain appropriation that would not become effective until September 1, 2025, at the earliest. The Defendants are wrong in their reading of § 16.04, and they are wrong as to their responsibilities imposed by the supremacy of federal law.

## IV.    FEDERAL ENFORCEMENT OF SECTION 1988 FEE AWARDS OVERRIDES INCONSISTENT STATE RESTRICTIONS.

The federal interest in the remedy provided by § 1988 of the Civil Rights Attorney Fees Award Act of 1976 energizes federal courts to exercise enforcement authority that supersedes conflicting state restrictions. If § 1604 of the 2023 General Appropriations Act is construed to condition the satisfaction of FFRF's fee award on the unfettered discretion of the Legislature and the Defendant-Governor, then this court's exercise of enforcement authority takes priority over any conflicting state laws. This is a recognized exception to the general rule that the enforcement of federal judgments must accord with the procedure of the state where the court is located. See F.R.C.P. 69(a)(1).

The exception for enforcement of § 1988 fees is based on the federal interest in the remedy provided for civil rights violations of § 1983. This principle is recognized in *Freeman Decorating Company v. Encuentro Las Americas Trade Corp.*, 352 Fed. Appx. 921, 923 (5th Cir. 2009):

> This court has held that when there is a federal interest in the remedy, we may trump a state's anti-seizure provision and enforce a money judgment against a public entity. *See Specialty Healthcare Management, Inc. v. St. Mary Parish Hospital*, 220 F.3d. 650, 653 (5th Cir. 2000). For example, this court has recognized that in a civil rights action, such as an action filed pursuant to 42 U.S.C. § 1988, there is a federal interest in the remedy sufficient to trump a state's anti-seizure

> provision. E*.g, Bowman v. City of New Orleans*, 914 F.2d 711
> (5th 1990); *Gates v. Collier*, 616 F.2d 1268 (5th Cir. 1980);
> *Gary W. v. Louisiana*, 622 F.2d 805 (5th Cir. 1980). This
> court has also recognized a sufficient federal interest when a
> state makes abundantly clear that it will never satisfy the
> judgment. *See Gates, 616 F.2d at1271-72.*

As *Freeman* makes clear, refusal to pay is a discrete and distinct alternative to the civil rights exception for§ 1988 judgments. F*reeman* treated the recalcitrance of a municipality as a federal interest distinct from the § 1988 federal interest in remedy, which civil rights standard was not applicable to the state contract therein at issue.

In the civil rights context, the provenance of the rule is well established that § 1988 fee awards are independently enforceable despite contrary state law. In *Specialty Healthcare Management, Inc. v. St. Mary Parish Hospital*, 220 F.3d 650, 653-54 (5th Cir. 2000), for example, the Court stated as follows:

> Nevertheless, federal interests sometimes trump the substance
> of a state's antiseizure provision by means other than Rule
> 69(a). For example, in civil rights cases, this circuit has held
> that it is within the scope of federal power to command state
> officials to pay judgments from state funds, such as
> judgments for attorneys fees under 42 U.S.C. § 1983, despite
> the existence of state antiseizure provisions, even though a
> writ of execution is not issued. One justification for this result
> is that Congress, under its sec. 5 powers of the Fourteenth
> Amendment, chose to enact legislation to permit all
> successful civil rights litigants to recover attorney fees; thus,
> there is a federal interest in the monetary remedy.

In contrast to § 1988 awards, however, the Court concluded in *Specialty Healthcare* that the Federal Arbitration Act does not implicate a sufficient federal interest in remedy. *Id.* at 654-55.

Federal court enforcement of judgments, however, is a foregone conclusion where a recognized federal interest in remedy exists. Thus, in *Leroy v. City of Houston*, 906 F.2d 1068, 1085 (5th Cir. 1990), the Court recognized that the proper way to enforce a money judgment against a government body is by mandamus or Rule 70. The Court noted that "we [the Court] have held that under Rule 70 a federal court may enforce a money judgment against the state or local government by ordering the defendant to pay it. *Gates.*"

In *Collins v. Thomas*, 649 F.2d 1203, 1206 (5th Cir. 1981), the Court addressed essentially the same issue as in the present case with the same result:

> In *Gates v. Collier*, 616 F.2d 1268 (5th Cir. 1980), rehearing granted on other grounds, 636 F.2d 942 (1981), the State of Mississippi raised essentially the same arguments posed to this Court by Dallas County. Mississippi appealed a § 1988 award to the prevailing plaintiffs in litigation involving the State prison system. Noting that a Mississippi statute prohibited the satisfaction of judgments against the State in the absence of legislative authorization, Mississippi prison officials resisted payment of the § 1988 award on the ground that a federal district court had no authority to order state officials to make payment in violation of the State's statutory disbursement scheme. Writing for this Court, Judge Hill held that "it is now beyond dispute that a federal district court has the authority to order that attorney fees be paid out of the state's treasury." 616 F.2d at 1271.
>
> The district court's authority to award attorney's fees is established by § 1988 which is a Congressional enactment pursuant to Section 5 of the Fourteenth Amendment. To the extent that § 1988's authorization of district court orders awarding attorney's fees conflicts with Texas' restrictions on the execution of judgments against counties, the federal statute must prevail over state law. U.S. Const. Art. VI, cl. 2. Fed. R. Civ. P 69(a) specifies that state execution procedures are to be followed except that any statute of the United States

governs to the extent that it is applicable. Fed. R. Civ. P 70
provides further authorization for the district court's order
requiring Dallas County to pay the § 1988 award.

In *Gates v. Collier*, 616 F.2d 1268, 1271 (5th Cir. 1980), the Court similarly

stated:

> Congress has declared that states and their officials who
> violate federal civil rights laws must reimburse the successful
> plaintiff for costs incurred in seeking redress. To strike down
> the order in this case because it conflicts with the laws of
> Mississippi would be no different than reversing a bare
> judgment for attorneys' fees. In either case, we would be
> allowing the state, by legislative action, to recloak itself with
> the Eleventh Amendment Immunity which Congress has
> chosen to remove. Such a result would be contrary to the
> command of the Supremacy Clause of the United States
> Constitution.

In *Bowman v. City of New Orleans*, 914 F.2d 711, 713 (5ᵗʰ Cir. 1990), the Court

once again recognized the authority of district courts to order enforcement of fee awards:

> The City attempts to distinguish today's case from those we
> have cited above on the ground that, in those, the State
> expressed an unwillingness to comply with the judgment,
> whereas here the City of New Orleans "continually
> recognized its obligation to pay."
>
> While it is admirable that the City willingly recognized its
> obligation, it would have been better for all concerned had it
> also willingly met that obligation. That it did not gave rise to
> the need for the district court to require it to do so. The court
> acted properly in doing so. There was no abuse of discretion
> here.

In the district court in *Bowman v. City of New Orleans*, 747 F.Supp. 344 (E.D. LA

1989), later affirmed by the Fifth Circuit, the court also carefully explained its authority

to order defendants to satisfy a judgment assessing attorney's fees pursuant to § 1988:

10

The city steadfastly maintains that federal courts are powerless to authorize the judgment creditor to execute a judgment against property or funds belonging to the state of Louisiana or its political subdivisions unless the governing body of the state or municipality has appropriated the funds to satisfy the judgment. This argument rests on the premise that federal courts may not enforce collection procedures that contravene restrictions established by state law. Vital to the City's position is its interpretation of Federal Rules of Civil Procedure 69 and interpretation which the court determines to be misguided.

The City places great weight on the language "proceedings on and in aid of execution shall be accordance with the practice and procedure of the state in which the district court is held." Consequently, it argues that the substantive provisions [of Louisiana law] exempt public property from seizure and require that money judgments against the state or any political subdivision be satisfied only from specially appropriated funds. Case law emanating from the federal Fifth Circuit unquestionably contradicts the City's position.

The Fifth Circuit has had more than one occasion to visit this issue but has thus far addressed it only *in dicta*. In *Gates v. Collier*, 616 F.2d 1268 (5th Cir. 1980), the court confronted a similar situation involving a Mississippi law that required Legislative appropriation of funds to satisfy money judgments rendered against the state. As in the instant case, the judgment sought to be enforced in *Gates* awarded attorneys' fees pursuant to 42 U.S.C. § 1988 . . . On appeal, the Fifth Circuit upheld the district court's order. The Fifth Circuit determined that the district court "acted well within its authority to ensure compliance with its lawful orders." 616 F.2d at 1270, noting that if statutory authority were needed for the district court's actions, such authority may be found in Federal Rule of Civil Procedure 70.

*Id.* at 347. Finally, the court concluded that "the decision in *Gates* appears to rely not on any specific authority but rather on the court's general authority to enforce its judgments." *Id.*

Likewise, in *Powell v. Hill*, 2008 WL 4933983 at *2 (W.D. LA 2008), the court

recognized its authority to award § 1988 fees despite contrary state law restrictions:

> State court limits and procedures on collection of judgments
> have posed no obstacle to the enforcement of judgments
> under civil rights statutes. See *Gary W. v. State of Louisiana*,
> 622 F.2d 804 (5th Cir. 1980) (federal court could order state
> official to pay judgment from state funds even though state
> constitution prohibited payment of judgment against the state
> except from funds appropriated by legislature.)

In *Williams v. McKeithen*, 495 F.Supp. 707, 710-11 (M.D. LA 1980), the court

actually anticipated *a priori* and rejected arguments against enforcement of § 1988 fee

awards by the court:

> Although the defendants have not yet objected to the payment
> of these fees out of state funds on the ground that the
> Louisiana constitution prohibits the payment of judgments
> against the state except from funds appropriated for that
> purpose by the legislature, the Fifth Circuit Court of Appeals
> has recently ruled that such a defense is without merit. *Gary
> W. v. State of Louisiana, supra.* The Court, in the *Gary W.*
> case, concluded its opinion by stating that "an order directing
> the responsible state official to satisfy the judgment out of
> state funds is the only reasonable way to ensure compliance
> with a valid federal judgment. *Gary W. v. State of Louisiana,
> supra* at p. 807.

The district court opinion in *Gary W. v. State of Louisiana*, 441 F.Supp. 1121

(E.D. LA 1977), later affirmed by the Fifth Circuit, includes one of the most thorough

and influential considerations of whether § 1988 constitutes a remedy that represents a

federal interest superseding state collection procedures. The court concluded that § 1983

"is the supreme law of the land, and it is the duty of the court to enforce that law and to

order the judgment satisfied." *Id.* at 1123. The court further stated that "the issue here is

not one of judicial confrontation with the state. It is one of implementation of a

Congressional mandate." *Id.* at 1125. The court also stated as follows:

> Although Congress has spoken clearly, the state defendants in
> effect contend that a judgment against a state pursuant to the
> statutory command is merely hortatory and the state may elect
> not to satisfy it. But the statutes of the Congress and the
> judgments of the federal courts enforcing them are not
> precatory. They are, as the Constitution declares, the supreme
> law of the land.

*Id.* at 1125.

The court also applied the *Freeman Decorating* analysis in *Benson v. Regional*

*Transit Authority,* 2015 WL 5321685, *2 (E.D. LA 2015), noting the federal interest in

remedy standard, which is distinct from the recalcitrance standard applied in diversity

cases:

> Absent the appropriation of funds, the U.S. Court of Appeals
> for the Fifth Circuit has held that "when there is a federal
> interest in the remedy [the federal courts] may trump a state's
> anti-seizure provision and enforce a money judgment against
> a public entity." [*Freeman Decorating*]. Accordingly, even
> when no federal statute explicitly authorizes enforcement
> procedures different from the procedures used by a state, a
> federal court may nonetheless be permitted to use such
> procedures if the case invokes a federal interest.
>
> A federal interest is sometimes obvious, such as in civil rights
> actions. e.g., *Bowman v. City of New Orleans,* 914 F.2d 711
> (5th Cir. 1990) (permitting the enforcement of a money
> judgment against the City under 42 U.S.C. § 1988; *Gates v.
> Collier,* 616 F.2d 1268 (5th Cir. 1980) (same). The Fifth
> Circuit has also recognized, however, that a federal interest
> can exist even in a diversity suit under certain circumstances.
> In *Freeman*, for example, the Fifth Circuit recognized a
> sufficient federal interest "when a state makes abundantly
> clear that it will never satisfy the judgment." 352 F.App.'x at
> 923 (citing *Gates*, 616 F.2d at 271).

13

In *Parkcrest Builders, LLC v. Housing Authority of New Orleans,* 2018 WL 6267285, at *2 (E.D. LA 2018), the court also noted the federal interest in remedy long-recognized in § 1988 awards:

> However, state law is not dispositive of a federal court's decision whether to grant a writ of execution. *See Gates v. Collier,* 616 F.2d 1268, 1271 (5th Cir. 1980). There is an exception to the general rule: "when there is a federal interest in the remedy the federal courts may trump a state's anti-seizure provision and enforce a money judgment against a public entity." *Benson Regional Transit Authority,* 2015 WL 5321685 at *2 (E.D. LA Sept. 2015) (quoting *Freeman,* 352 F.App.'x at 923). For remedies of some actions, such as an action to enforce civil rights, a federal interest is obvious. *Bowman v. City of New Orleans*, 914 F.2d 711 (5th Cir. 1990).
>
> In a diversity action like this one however, no federal interest is immediately apparent. *See Benson,* 2015 WL 5321685 at *2. Nevertheless, a federal interest may develop if a subdivision of the state proves sufficiently resistant to paying a judgment. *Gates,* 616 F.2d at 1271 (5th Cir. 1980). "Federal courts are not reduced to issuing judgments against state officers and hoping for compliance." *Id. quoting Hutto v. Finney,* 437 U.S. 678, 690 (1978)). "Where a state expresses its unwillingness to comply with a valid judgment of a federal district court, the court may use any of the weapons generally at its disposal to ensure compliance." *Id.*

*Id.* at *2.

Applying the above principles to the present case, the federal interest in the remedy provided by § 1988 clearly provides a basis for this court to order the Defendants and the State of Texas to satisfy the judgment outstanding against the

Defendants in their official capacities. This court's authority to enforce its judgments in civil rights cases, including as to fees awarded pursuant to § 1988, undeniably overrides the restrictions and limitations of § 16.04 of the General Appropriations Act of 2023. The court should, accordingly, order the Defendants, including the State, to satisfy the FFRF judgment within 21 days.

## V. FFRF IS ENTITLED TO ADDITIONAL ATTORNEY FEES RELATED TO ENFORCEMENT OF JUDGMENT.

FFRF appropriately also seeks attorneys' fees and costs to compensate for the present motion to enforce the court's January 12, 2024, judgment. As in *Gary. W*., 441 F. Supp. at 1127-28, the Defendants here effectively denied FFRF's right to attorneys' fees through delay and uncertainty, rather than appeal, i.e., by resort to § 16.04 of the 2023 General Appropriations Act. The cost of overcoming the Defendants' refusal to satisfy the judgment against them, like the cost of defending an appeal successfully, is rightly compensable under § 1988. *Id.* FFRF, accordingly, requests that the court award such fees ancillary to this Motion. (*See* also *Gary W. v. State of Louisiana*, 622 F.2d at 807, allowing attorney's fees for work performed on appeal of the district court's order to satisfy judgment.)

## CONCLUSION.

For all of the above reasons, FFRF requests the court to order the Defendants, and including the State of Texas, to satisfy this court's judgment for attorneys' fees, pursuant to § 1988, within 21 days after entry of the court's order. In addition, FFRF requests the court to award additional attorneys' fees and costs associated with this motion to enforce.

15

Respectfully submitted this 14th day of March, 2024.

*/electronically signed by Richard L. Bolton/*
Richard L. Bolton
BOARDMAN AND CLARK, LLP
1 S. Pinckney St., Suite 410
Madison, Wisconsin 53703-4256
Telephone: 608-257-9521
Telecopier: 608-283-1709
Wisconsin State Bar No. 1012552
Email: rbolton@boardmanclark.com

Samuel T. Grover
Wisconsin State Bar No. 1096047
Email: sgrover@ffrf.org
Patrick Elliott
Wisconsin State Bar No. 1074300
Email: pelliott@ffrf.org
FREEDOM FROM RELIGION
FOUNDATION, INC.
P. O. Box 750
Madison, Wisconsin 53701
Telephone: 608-256-8900
Telecopier: 608-204-0422

Daniel H. Byrne
Texas State Bar No. 03565600
Email: dbyrne@fbhf.com
Lessie G. Fitzpatrick
Texas State Bar No. 24012630
Email: lfitzpatrick@fbhf.com
FRITZ, BYRNE, HEAD & FITZPATRICK,
LLC
221 West 6th Street, Suite 960
Austin, Texas 78701
Telephone: (512) 476-2020
Facsimile: (512) 477-5267

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was filed electronically via the Court's CM/ECF system on this the 14 day of March, 2024, which will send notification to the following:

> Benjamin S. Walton
> Office of the Attorney General
> P.O. Box 12548, Capitol Station
> Austin, TX 78701
> Telephone: (512) 463-2798
> Telecopier: (512) 320-0667
> Email: Benjamin.walton@oag.texas.gov

*/electronically signed by Richard L. Bolton/*
Richard L. Bolton
BOARDMAN AND CLARK, LLP