## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **FREEDOM FROM RELIGION** | § | |
| **FOUNDATION, INC.,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **NO. 1:16-CV-00233-DII-DH** |
| | § | |
| | § | |
| **GOVERNOR GREG ABBOTT AND** | § | |
| **ROD WELSH, EXECUTIVE** | § | |
| **DIRECTOR OF THE TEXAS STATE** | § | |
| **PRESERVATION BOARD, IN** | § | |
| **THEIR OFFICIAL CAPACITIES,** | § | |
| *Defendants.* | § | |

## DECLARATION OF RICHARD L. BOLTON IN SUPPORT
## ORDER TO PAY AND BRIEF IN SUPPORT

I, Richard L. Bolton, do hereby declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the following facts set forth below are true and correct to the best of my knowledge:

1.      I am one of the attorneys representing the Plaintiff, Freedom From Religion Foundation, Inc. ("FFRF") in the above-captioned matter.

2.      FFRF commenced this action in 2016 alleging violations of the First Amendment by the Defendants while acting under color of law, pursuant to 42 U.S.C. § 1983.

3.      The Defendants have vigorously contested this matter at every turn, including two appeals to the Fifth Circuit Court of Appeals.

4.    In the end, FFRF prevailed on its First Amendment claim based on the Defendants' acts of viewpoint discrimination.

5.    As a result, this Court granted judgment on January 11, 2024, to FFRF for attorney fees, pursuant to 42 U.S.C. § 1988, in the amount of $342,556.31, and costs of $3,957.36. (Exhibit 1.)

6.    The Defendants did not appeal the judgment for fees and costs and the time for appeal has passed.

7.    Shortly after the appeal deadline, counsel for FFRF inquired of the Defendants' counsel regarding payment of the outstanding final judgment for fees and costs. (Exhibit 2 at 1.)

8.    Counsel for the Defendants have advised that payments of judgments against Texas State actors in excess of $250,000 cannot be paid unless funded in an appropriation bill signed by the Governor, who is one of the Defendants in this action. (Exhibit 2 at 5 and 7.)

9.    Counsel for the Defendants have directed FFRF's counsel to sec. 16.04 of the 2023 General Appropriations Act, which prescribes the necessary requirements for payment of judgments. (Exhibit 3.)

10.    The next appropriation bill in Texas is not scheduled for consideration until after January of 2025.

11.    Based on recent past experience, the next appropriation bill is likely to be submitted to the Governor in June of 2025; the 2023 General Appropriation Act continues until August 31, 2025. (Exhibit 4.)

12.    The prescribed process for paying judgments such as that of FFRF's, moreover, does not mandate that the Texas Legislature will include in the next appropriation bill an amount

to satisfy FFRF's judgment, nor does the procedure require that the Governor agree to such an appropriation without veto.

13.     In fact, as an example of such uncertainty, the Texas Legislature refused in 2023 to appropriate funds for a $3,300,000 settlement made by the State in a whistleblower case against the Attorney General. (Exhibit 5.)

14.     At a minimum, therefore, the Defendants refuse to satisfy the Judgment against them for at least another 17 months -- and there is no certainty that any such appropriation will be made at all.

15.     Further uncertainty permeates the Defendants' intentions as Counsel for the Defendants has refused, when asked by FFRF counsel, to provide an answer to the question of Governor Abbott will or will not veto any appropriation that might be made. (Exhibit 2 at 10.)

16.     In any event, Texas has sufficient funds to pay the Judgment with unbudgeted funds, including more than $18 billion projected in unspent money at the end of the current two-year budget cycle. (Exhibit 6.)

17.     The fees included in the Judgment entered against the Defendants were first incurred beginning in December of 2015, more than 8 years ago.

18.     FFRF, accordingly, now seeks the immediate enforcement of its judgment by order of this court.

Dated this 14th day of March, 2024.

Richard L. Bolton

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| FREEDOM FROM RELIGION FOUNDATION, INC., | § § § | |
| Plaintiff, | § § | |
| v. | § § | 1:16-CV-233-DII |
| GOVERNOR GREG ABBOTT and ROD WELSH, *Executive Director of The Texas State Preservation Board, In Their Official Capacities*, | § § § § | |
| Defendants. | § § | |

## AMENDED FINAL JUDGMENT

On this date, the Court adopted United States Magistrate Judge Dustin Howell's report and recommendation concerning Plaintiff Freedom from Religion Foundation, Inc.'s ("FFRF") Motion for Attorney's Fees and Costs, (Dkt. 152). (R. & R., Dkt. 162). The Court granted the motion for attorney's fees.

In light of the Fifth Circuit's opinion, (Dkt. 142), in which the Fifth Circuit vacated this Court's previous entry of permanent injunctive relief and otherwise affirmed this Court's order (including its entry of declaratory relief), the Court enters final judgment in favor of FFRF only as to its request for declaratory relief.

**IT IS ORDERED** that FFRF shall recover from Defendants $342,556.31 in attorneys' fees[1] and $3,957.36 in costs.



---

[1] FFRF's requested $456,741.75, reduced by 25% to account for mixed success.

1

**IT IS FURTHER ORDERED** that this case is **CLOSED.**

**SIGNED** on January 12, 2024.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

**Richard L. Bolton**

| | |
|---|---|
| **From:** | Benjamin Walton <Benjamin.Walton@oag.texas.gov> |
| **Sent:** | Tuesday, February 13, 2024 3:15 PM |
| **To:** | Richard L. Bolton |
| **Cc:** | Jennifer Holt |
| **Subject:** | RE: FFRF Law Suit |

Hi Rich,

I have actually been looking into those logistics already, and I hope to have some sort of details soon, or at least a starting place, for both of our benefit as we figure out how to process this judgment.

Thanks,
Ben


**From:** Richard L. Bolton <rbolton@boardmanclark.com>
**Sent:** Tuesday, February 13, 2024 9:43 AM
**To:** Benjamin Walton <Benjamin.Walton@oag.texas.gov>
**Subject:** FFRF Law Suit

Good Morning Ben: It appears that neither of us has appealed latest decision by the court.   What would be the timeline for us to get the fees judgment money? Rich


# BoardmanClark

**RICHARD L. BOLTON**
ATTORNEY

DIRECT +1 608-283-1789            BOARDMAN & CLARK LLP
PHONE +1 608-257-9521            1 S PINCKNEY ST STE 410
FAX 608-283-1709                      PO BOX 927
RBOLTON@BOARDMANCLARK.COM            MADISON, WI 53701-0927
BOARDMANCLARK.COM

This is a transmission from the law firm of Boardman & Clark LLP and may contain information which is privileged, confidential, and protected by the attorney-client and/or attorney work product privileges. If you are not the addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this transmission in error, please destroy it and notify us immediately via email at rbolton@boardmanclark.com or via telephone at (608) 257-9521. The sender does not accept liability for any errors or omissions in the contents of this message which arise as a result of e-mail transmission.*****



EXHIBIT
2

**Richard L. Bolton**

| | |
|---|---|
| **From:** | Benjamin Walton <Benjamin.Walton@oag.texas.gov> |
| **Sent:** | Thursday, February 15, 2024 9:25 AM |
| **To:** | Richard L. Bolton |
| **Cc:** | Jennifer Holt |
| **Subject:** | RE: FFRF Law Suit |

Thanks, Rich.  I'll let you know once I have more info.

Ben

**From:** Richard L. Bolton <rbolton@boardmanclark.com>
**Sent:** Thursday, February 15, 2024 8:12 AM
**To:** Benjamin Walton <Benjamin.Walton@oag.texas.gov>
**Cc:** Jennifer Holt <Jennifer.Holt@oag.texas.gov>
**Subject:** RE: FFRF Law Suit

Ben: Let me know if you need anything from us.  The money should be paid to the Boardman & Clark Client Trust Account. Rich

# BoardmanClark

**RICHARD L. BOLTON**
ATTORNEY

DIRECT +1 608-283-1789
PHONE +1 608-257-9521
FAX 608-283-1709
RBOLTON@BOARDMANCLARK.COM
BOARDMANCLARK.COM

BOARDMAN & CLARK LLP
1 S PINCKNEY ST STE 410
PO BOX 927
MADISON, WI 53701-0927

This is a transmission from the law firm of Boardman & Clark LLP and may contain information which is privileged, confidential, and protected by the attorney-client and/or attorney work product privileges. If you are not the addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this transmission in error, please destroy it and notify us immediately via email at rbolton@boardmanclark.com or via telephone at (608) 257-9521. The sender does not accept liability for any errors or omissions in the contents of this message which arise as a result of e-mail transmission.*****

**From:** Benjamin Walton <Benjamin.Walton@oag.texas.gov>
**Sent:** Tuesday, February 13, 2024 3:15 PM
**To:** Richard L. Bolton <rbolton@boardmanclark.com>
**Cc:** Jennifer Holt <Jennifer.Holt@oag.texas.gov>
**Subject:** RE: FFRF Law Suit

Hi Rich,

I have actually been looking into those logistics already, and I hope to have some sort of details soon, or at least a starting place, for both of our benefit as we figure out how to process this judgment.

Thanks,
Ben

**From:** Richard L. Bolton <rbolton@boardmanclark.com>
**Sent:** Tuesday, February 13, 2024 9:43 AM
**To:** Benjamin Walton <Benjamin.Walton@oag.texas.gov>
**Subject:** FFRF Law Suit

Good Morning Ben: It appears that neither of us has appealed latest decision by the court.   What would be the timeline for us to get the fees judgment money? Rich


# **BoardmanClark**

## **RICHARD L. BOLTON**
ATTORNEY

| | |
|---|---|
| DIRECT +1 608-283-1789 | BOARDMAN & CLARK LLP |
| PHONE +1 608-257-9521 | 1 S PINCKNEY ST STE 410 |
| FAX 608-283-1709 | PO BOX 927 |
| RBOLTON@BOARDMANCLARK.COM | MADISON, WI 53701-0927 |
| BOARDMANCLARK.COM | |

This is a transmission from the law firm of Boardman & Clark LLP and may contain information which is privileged, confidential, and protected by the attorney-client and/or attorney work product privileges. If you are not the addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this transmission in error, please destroy it and notify us immediately via email at rbolton@boardmanclark.com or via telephone at (608) 257-9521. The sender does not accept liability for any errors or omissions in the contents of this message which arise as a result of e-mail transmission.*****

**Richard L. Bolton**

| | |
|---|---|
| **From:** | Benjamin Walton <Benjamin.Walton@oag.texas.gov> |
| **Sent:** | Tuesday, February 20, 2024 9:29 AM |
| **To:** | Richard L. Bolton |
| **Cc:** | Jennifer Holt |
| **Subject:** | RE: FFRF |

Hi Rich,

Some. I made it through to someone in the Comptroller's office who could help provide some information. Now I am gathering some of the details that will determine how we have to proceed. I hope to be in touch soon.

Thanks,
Ben

**From:** Richard L. Bolton <rbolton@boardmanclark.com>
**Sent:** Monday, February 19, 2024 3:07 PM
**To:** Benjamin Walton <Benjamin.Walton@oag.texas.gov>
**Subject:** FFRF

Hi Ben: Any progress at your end? Rich

# BoardmanClark

**RICHARD L. BOLTON**
ATTORNEY

DIRECT +1 608-283-1789
PHONE +1 608-257-9521
FAX 608-283-1709
RBOLTON@BOARDMANCLARK.COM
BOARDMANCLARK.COM

BOARDMAN & CLARK LLP
1 S PINCKNEY ST STE 410
PO BOX 927
MADISON, WI 53701-0927

This is a transmission from the law firm of Boardman & Clark LLP and may contain information which is privileged, confidential, and protected by the attorney-client and/or attorney work product privileges. If you are not the addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this transmission in error, please destroy it and notify us immediately via email at rbolton@boardmanclark.com or via telephone at (608) 257-9521. The sender does not accept liability for any errors or omissions in the contents of this message which arise as a result of e-mail transmission.*****

## Richard L. Bolton

| | |
|---|---|
| **From:** | Benjamin Walton <Benjamin.Walton@oag.texas.gov> |
| **Sent:** | Monday, February 26, 2024 12:09 PM |
| **To:** | Richard L. Bolton |
| **Cc:** | Jennifer Holt |
| **Subject:** | RE: FFRF |

Rich,

Thanks for your patience as I had to consult with multiple folks about how to process this. It looks like this judgment (approx. $350,000) will be placed on the miscellaneous claims bill for approval during the upcoming legislative session (beginning in January 2025). For more context, please see Section 16.04 (at IX-78) of the General Appropriations Act, especially subsection (b)(3): https://capitol.texas.gov/tlodocs/88R/billtext/pdf/HB00001F.pdf. The paperwork for getting larger judgments onto the miscellaneous claims bill for the upcoming legislative session is not due until close to the end of the calendar year, but I plan to get it all submitted well before the deadline.

Thanks,
Ben

**Benjamin S. Walton**
Assistant Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
512.463.0447 (Direct)
512.320.0667 (Fax)
Benjamin.Walton@oag.texas.gov

**From:** Benjamin Walton
**Sent:** Tuesday, February 20, 2024 9:29 AM
**To:** Richard L. Bolton <rbolton@boardmanclark.com>
**Cc:** Jennifer Holt <Jennifer.Holt@oag.texas.gov>
**Subject:** RE: FFRF

Hi Rich,

Some. I made it through to someone in the Comptroller's office who could help provide some information. Now I am gathering some of the details that will determine how we have to proceed. I hope to be in touch soon.

Thanks,
Ben

**From:** Richard L. Bolton <rbolton@boardmanclark.com>
**Sent:** Monday, February 19, 2024 3:07 PM
**To:** Benjamin Walton <Benjamin.Walton@oag.texas.gov>
**Subject:** FFRF

Hi Ben: Any progress at your end? Rich

# BoardmanClark

**RICHARD L. BOLTON**
ATTORNEY

DIRECT +1 608-283-1789
PHONE +1 608-257-9521
FAX 608-283-1709
RBOLTON@BOARDMANCLARK.COM
BOARDMANCLARK.COM

BOARDMAN & CLARK LLP
1 S PINCKNEY ST STE 410
PO BOX 927
MADISON, WI 53701-0927

This is a transmission from the law firm of Boardman & Clark LLP and may contain information which is privileged, confidential, and protected by the attorney-client and/or attorney work product privileges. If you are not the addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this transmission in error, please destroy it and notify us immediately via email at rbolton@boardmanclark.com or via telephone at (608) 257-9521. The sender does not accept liability for any errors or omissions in the contents of this message which arise as a result of e-mail transmission.*****

## Richard L. Bolton

**From:** Benjamin Walton <Benjamin.Walton@oag.texas.gov>
**Sent:** Friday, March 01, 2024 3:10 PM
**To:** Richard L. Bolton
**Cc:** Jennifer Holt
**Subject:** RE: FFRF

Rich,

As indicated below, the Legislature (in the General Appropriations Act) has prescribed the Miscellaneous Claims bill for processing/paying judgments over $250,000.

Thanks,
Ben

**From:** Richard L. Bolton <rbolton@boardmanclark.com>
**Sent:** Tuesday, February 27, 2024 3:58 PM
**To:** Benjamin Walton <Benjamin.Walton@oag.texas.gov>
**Cc:** Jennifer Holt <Jennifer.Holt@oag.texas.gov>
**Subject:** RE: FFRF

Thanks for the updateBben. For clarification, do I understand that large Judgements above $250,000 cannot and will not be paid unless the Legislature funds it in an Appropriation Bill? Rich

# BoardmanClark

## RICHARD L. BOLTON
ATTORNEY

DIRECT +1 608-283-1789
PHONE +1 608-257-9521
FAX 608-283-1709
RBOLTON@BOARDMANCLARK.COM
BOARDMANCLARK.COM

BOARDMAN & CLARK LLP
1 S PINCKNEY ST STE 410
PO BOX 927
MADISON, WI 53701-0927

This is a transmission from the law firm of Boardman & Clark LLP and may contain information which is privileged, confidential, and protected by the attorney-client and/or attorney work product privileges. If you are not the addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this transmission in error, please destroy it and notify us immediately via email at rbolton@boardmanclark.com or via telephone at (608) 257-9521. The sender does not accept liability for any errors or omissions in the contents of this message which arise as a result of e-mail transmission.*****

**From:** Benjamin Walton <Benjamin.Walton@oag.texas.gov>
**Sent:** Monday, February 26, 2024 12:09 PM
**To:** Richard L. Bolton <rbolton@boardmanclark.com>
**Cc:** Jennifer Holt <Jennifer.Holt@oag.texas.gov>
**Subject:** RE: FFRF

Rich,

Thanks for your patience as I had to consult with multiple folks about how to process this. It looks like this judgment (approx. $350,000) will be placed on the miscellaneous claims bill for approval during the upcoming legislative session

(beginning in January 2025). For more context, please see Section 16.04 (at IX-78) of the General Appropriations Act, especially subsection (b)(3): https://capitol.texas.gov/tlodocs/88R/billtext/pdf/HB00001F.pdf. The paperwork for getting larger judgments onto the miscellaneous claims bill for the upcoming legislative session is not due until close to the end of the calendar year, but I plan to get it all submitted well before the deadline.

Thanks,
Ben

**Benjamin S. Walton**
Assistant Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
512.463.0447 (Direct)
512.320.0667 (Fax)
Benjamin.Walton@oag.texas.gov

**From:** Benjamin Walton
**Sent:** Tuesday, February 20, 2024 9:29 AM
**To:** Richard L. Bolton <rbolton@boardmanclark.com>
**Cc:** Jennifer Holt <Jennifer.Holt@oag.texas.gov>
**Subject:** RE: FFRF

Hi Rich,

Some. I made it through to someone in the Comptroller's office who could help provide some information. Now I am gathering some of the details that will determine how we have to proceed. I hope to be in touch soon.

Thanks,
Ben

**From:** Richard L. Bolton <rbolton@boardmanclark.com>
**Sent:** Monday, February 19, 2024 3:07 PM
**To:** Benjamin Walton <Benjamin.Walton@oag.texas.gov>
**Subject:** FFRF

Hi Ben: Any progress at your end? Rich

# BoardmanClark

**RICHARD L. BOLTON**
ATTORNEY

DIRECT +1 608-283-1789
PHONE +1 608-257-9521
FAX 608-283-1709
RBOLTON@BOARDMANCLARK.COM
BOARDMANCLARK.COM

BOARDMAN & CLARK LLP
1 S PINCKNEY ST STE 410
PO BOX 927
MADISON, WI 53701-0927

This is a transmission from the law firm of Boardman & Clark LLP and may contain information which is privileged, confidential, and protected by the attorney-client and/or attorney work

product privileges. If you are not the addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this transmission in error, please destroy it and notify us immediately via email at rbolton@boardmanclark.com or via telephone at (608) 257-9521. The sender does not accept liability for any errors or omissions in the contents of this message which arise as a result of e-mail transmission.*****

**Richard L. Bolton**

**From:**       Richard L. Bolton
**Sent:**        Monday, March 04, 2024 2:51 PM
**To:**          Benjamin Walton
**Subject:**     Re: FFRF

*No Response - RLB- 3-13-24*

Ben: I assume you cannot speak for the Legislature, but is the Governor comitted to signing such an appropriation for this Judgment without a line item veto? Rich
Sent from my iPhone

On Mar 1, 2024, at 3:10 PM, Benjamin Walton <Benjamin.Walton@oag.texas.gov> wrote:

Rich,

As indicated below, the Legislature (in the General Appropriations Act) has prescribed the Miscellaneous Claims bill for processing/paying judgments over $250,000.

Thanks,
Ben

**From:** Richard L. Bolton <rbolton@boardmanclark.com>
**Sent:** Tuesday, February 27, 2024 3:58 PM
**To:** Benjamin Walton <Benjamin.Walton@oag.texas.gov>
**Cc:** Jennifer Holt <Jennifer.Holt@oag.texas.gov>
**Subject:** RE: FFRF

Thanks for the updateBben. For clarification, do I understand that large Judgements above $250,000 cannot and will not be paid unless the Legislature funds it in an Appropriation Bill? Rich

<image001.gif>

**RICHARD L. BOLTON**
ATTORNEY

DIRECT +1 608-283-1789          BOARDMAN & CLARK LLP
PHONE +1 608-257-9521           1 S PINCKNEY ST STE 410
FAX 608-283-1709                PO BOX 927
RBOLTON@BOARDMANCLARK.COM       MADISON, WI 53701-0927
BOARDMANCLARK.COM

This is a transmission from the law firm of Boardman & Clark LLP and may contain information which is privileged, confidential, and protected by the attorney-client and/or attorney work product privileges. If you are not the addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this transmission in error, please destroy it and notify us immediately via email at rbolton@boardmanclark.com or via telephone at (608) 257-9521. The sender does not accept liability for any errors or omissions in the contents of this message which arise as a result of e-mail transmission.*****

**From:** Benjamin Walton <Benjamin.Walton@oag.texas.gov>
**Sent:** Monday, February 26, 2024 12:09 PM
**To:** Richard L. Bolton <rbolton@boardmanclark.com>

**Cc:** Jennifer Holt <Jennifer.Holt@oag.texas.gov>
**Subject:** RE: FFRF

Rich,

Thanks for your patience as I had to consult with multiple folks about how to process this. It looks like this judgment (approx. $350,000) will be placed on the miscellaneous claims bill for approval during the upcoming legislative session (beginning in January 2025). For more context, please see Section 16.04 (at IX-78) of the General Appropriations Act, especially subsection (b)(3):
https://capitol.texas.gov/tlodocs/88R/billtext/pdf/HB00001F.pdf. The paperwork for getting larger judgments onto the miscellaneous claims bill for the upcoming legislative session is not due until close to the end of the calendar year, but I plan to get it all submitted well before the deadline.

Thanks,
Ben

**Benjamin S. Walton**
Assistant Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
512.463.0447 (Direct)
512.320.0667 (Fax)
Benjamin.Walton@oag.texas.gov


**From:** Benjamin Walton
**Sent:** Tuesday, February 20, 2024 9:29 AM
**To:** Richard L. Bolton <rbolton@boardmanclark.com>
**Cc:** Jennifer Holt <Jennifer.Holt@oag.texas.gov>
**Subject:** RE: FFRF

Hi Rich,

Some. I made it through to someone in the Comptroller's office who could help provide some information. Now I am gathering some of the details that will determine how we have to proceed. I hope to be in touch soon.

Thanks,
Ben


**From:** Richard L. Bolton <rbolton@boardmanclark.com>
**Sent:** Monday, February 19, 2024 3:07 PM
**To:** Benjamin Walton <Benjamin.Walton@oag.texas.gov>
**Subject:** FFRF

Hi Ben: Any progress at your end? Rich

**RICHARD L. BOLTON**
ATTORNEY

DIRECT +1 608-283-1789
PHONE +1 608-257-9521
FAX 608-283-1709
RBOLTON@BOARDMANCLARK.COM
BOARDMANCLARK.COM

BOARDMAN & CLARK LLP
1 S PINCKNEY ST STE 410
PO BOX 927
MADISON, WI 53701-0927

This is a transmission from the law firm of Boardman & Clark LLP and may contain information which is privileged, confidential, and protected by the attorney-client and/or attorney work product privileges. If you are not the addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this transmission in error, please destroy it and notify us immediately via email at rbolton@boardmanclark.com or via telephone at (608) 257-9521. The sender does not accept liability for any errors or omissions in the contents of this message which arise as a result of e-mail transmission.*****

## AN ACT

appropriating money for the support of the Judicial, Executive, and Legislative Branches of the State government, for the construction of State buildings, and for State aid to public junior colleges, for the period beginning September 1, 2023 and ending August 31, 2025; authorizing and prescribing conditions, limitations, rules, and procedures for allocating and expending the appropriated funds; and declaring an emergency.

### BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

### ARTICLE I

### GENERAL GOVERNMENT

Sec. 1. The several sums of money herein specified, or so much thereby as may be necessary, are appropriated out of any funds in the State Treasury not otherwise appropriated, or out of special funds as indicated, for the support, maintenance, or improvement of the designated agencies of general government.

### COMMISSION ON THE ARTS

|  | For the Years Ending | |
|---|---|---|
|  | August 31, 2024 | August 31, 2025 |
| **Method of Financing:** | | |
| General Revenue Fund | $ 14,309,718 | $ 14,319,358 |
| Federal Funds | $ 1,213,800 | $ 1,213,800 |
| Other Funds | | |
| Appropriated Receipts | $ 152,000 | $ 152,000 |
| License Plate Trust Fund Account No. 0802, estimated | 100,000 | 100,000 |
| Subtotal, Other Funds | $ 252,000 | $ 252,000 |
| **Total, Method of Financing** | $ 15,775,518 | $ 15,785,158 |

**This bill pattern represents an estimated 100% of this agency's estimated total available funds for the biennium.**

| | | |
|---|---|---|
| **Number of Full-Time-Equivalents (FTE):** | 14.0 | 14.0 |
| **Schedule of Exempt Positions:** | | |
| Executive Director, Group 3 | $134,775 | $139,623 |

**Items of Appropriation:**
**A. Goal:** ARTS AND CULTURAL GRANTS
Provide and Support Arts and Cultural Grants.

| | | |
|---|---|---|
| **A.1.1. Strategy:** ARTS ORGANIZATION GRANTS | $ 5,564,505 | $ 5,564,505 |
| **A.1.2. Strategy:** ARTS EDUCATION GRANTS | 710,787 | 710,787 |
| **A.1.3. Strategy:** CULTURAL TOURISM GRANTS | 8,170,000 | 8,170,000 |
| **A.1.4. Strategy:** DIRECT ADMINISTRATION OF GRANTS | 748,180 | 722,213 |
| **Total, Goal A:** ARTS AND CULTURAL GRANTS | $ 15,193,472 | $ 15,167,505 |

**B. Goal:** INDIRECT ADMINISTRATION

| | | |
|---|---|---|
| **B.1.1. Strategy:** CENTRAL ADMINISTRATION | $ 401,880 | $ 393,745 |
| **B.1.2. Strategy:** INFORMATION RESOURCES | 133,602 | 129,274 |
| **Total, Goal B:** INDIRECT ADMINISTRATION | $ 535,482 | $ 523,019 |

**C. Goal:** SALARY ADJUSTMENTS

| | | |
|---|---|---|
| **C.1.1. Strategy:** SALARY ADJUSTMENTS | $ 46,564 | $ 94,634 |
| **Grand Total, COMMISSION ON THE ARTS** | $ 15,775,518 | $ 15,785,158 |



EXHIBIT
3

**LEGAL REPRESENTATION AND JUDGMENTS PROVISIONS**
(Continued)

(2) under which recoveries from more than one entity are contemplated and the expected
amount of each recovery and the actual amount of each recovery does not exceed
$100,000.

**Sec. 16.03. Proceeds of Litigation.**

(a) Unless otherwise specifically authorized by the legislature, any litigation or matter that could
have resulted in litigation that results in settlement, court order, or other arrangement providing
revenues or financial benefits to a state governmental entity or the State of Texas shall be
structured to require the entire amount due to be paid to the state Treasury in accordance with
Government Code, Sec. 404.097.

(b) None of the money paid to a state governmental entity because of a settlement of litigation or
other arrangement providing revenues or financial benefits because of an incident that could
reasonably result in a claim or litigation may be expended by any state government entity
unless the Legislative Budget Board is notified in writing by the Attorney General regarding the
terms of the settlement or other arrangement and the Legislative Budget Board is notified in
writing by the state governmental entity receiving the money regarding the plans for the use of
the money. The written notice must be delivered to the Legislative Budget Board as soon as
practicable, but no later than the 20th calendar day of the month following the first to occur of:

(1) receipt of the money or other benefit; or

(2) approval of the settlement or arrangement by a court.

(c) This section does not apply to a settlement of litigation, court order resulting from litigation, or
other arrangement providing revenues or financial benefits because of litigation:

(1) for a state governmental entity in relation to the entity's actions as a receiver, special
deputy receiver, liquidator, or liquidating agent in connection with the administration of
the assets of an insolvent entity, including actions under Insurance Code, Chapter 443, or
Finance Code, Chapters 36, 66, 96, or 126; or

(2) under which recovery to the state governmental entity does not exceed $500,000.

(d) For purposes of this section, "state governmental entity" means a board, commission,
department, office, or other agency in the executive branch of state government created under
the constitution or a statute, including an institution of higher education.

**Sec. 16.04. Judgments and Settlements.**

(a) The monies appropriated by this Act, including appropriations made in Article X of the Act,
may not be expended for payment of a judgment or settlement prosecuted by or defended by the
Attorney General and obtained against the State or a state agency, except:

(1) pursuant to this section; or

(2) where it is specifically provided in an item of appropriation that the monies appropriated
or expenditures authorized may be used for the payment of judgments or settlements.

(b) State agencies appropriated monies by this Act may expend monies appropriated elsewhere in
this Act for the purposes of paying settlements and judgments against the state for causes
brought in a federal court or a court in this state under specific statutory authority. Payments
made pursuant to this subsection are subject to the following processes and limitations:

(1) monies are to be paid out by the Comptroller on vouchers drawn by the agency settling the
lawsuit or paying the judgment, subject to the approval of the Governor and of the
Attorney General according to Subsection (d);

(2) for purposes of this subsection, "judgment" means a judgment order rendered in a federal
court or a court in this state for which an appeal or rehearing, or application therefore, is
not pending and for which the time limitations for appeal or rehearing have expired;

(3) the payment of a settlement or judgment may not exceed $250,000;

**EXHIBIT**

**4**

**LEGAL REPRESENTATION AND JUDGMENTS PROVISIONS**
(Continued)

(4) the payment of a settlement or judgment may not exceed one percent of the total amount of monies (not including federal funds) appropriated by this Act for expenditure by that agency for that fiscal year;

(5) the payment of the settlement or judgment would not cause the total amount of settlement and judgment payments made by the payer agency for that fiscal year to exceed 10 percent of the total amount of monies available for expenditure by that agency for that fiscal year; and

(6) the payment of a settlement or judgment may be made only with a complete release from any and all related claims and causes against the State, and in the case of a judgment, the payment may be made only in full satisfaction of that judgment.

(c) (1) A state agency shall report a claim for property damage to the Attorney General not later than the second business day after the date the agency receives the claim.

(2) A state agency shall prepare a voucher for payment of a claim not later than the 10th business day after the date an agreement to settle the claim has been reached.

(d) Payment of all judgments and settlements prosecuted by or defended by the Attorney General is subject to approval of the Attorney General as to form, content, and amount, and certification by the Attorney General that payment of the judgment or settlement is a legally enforceable obligation of the State. This subsection applies equally to monies appropriated for expenditure through the state Treasury, as well as monies appropriated for expenditure from monies held in local banks.

(e) The Attorney General shall report to the Legislative Budget Board and the Governor not less than monthly, a listing of all settlements and judgments of more than $5,000 submitted to the Comptroller for payment. The document delivered to the Legislative Budget Board and Governor by the Attorney General must contain only information that may be published on the internet, by a newspaper, or published by other means and shall contain at least the following information unless all or part of the information may not be disclosed to the public under state or federal law or by court order:

(1) a summary of the cause of action;

(2) a summary of the terms of the settlement;

(3) the style of the case;

(4) the name and business address of each attorney representing the opposing litigants at the time of the settlement;

(5) the amount of the judgment or settlement;

(6) the fund or account from which payment was or should be made;

(7) the statutory citation for the appropriation or other authority to be made;

(8) specific statutes granting waiver of sovereign immunity or legislative resolution granting litigant permission to sue;

(9) the date of judgment or settlement; and

(10) other information as the Legislative Budget Board may request and in the form requested by the Legislative Budget Board.

(f) The Teacher Retirement System (TRS) shall confer with the Legislative Budget Board before approving any settlement sought by TRS with its outside legal counsel contracted in fiscal year 2023 and fiscal year 2024 for healthcare related claims and litigation.

(g) The State Auditor may verify compliance with this section for all monies appropriated in this Act, including monies that are retained and expended from accounts held outside the state Treasury and that are not subject to reimbursement through funds held in the state Treasury. On

**LEGAL REPRESENTATION AND JUDGMENTS PROVISIONS**
(Continued)

verification that an agency has not obtained the Attorney General's approval prior to payment of a judgment or settlement, the State Auditor may certify that fact to the Comptroller. The Comptroller may withhold all appropriations for administrative expenses for the involved agency until the Legislative Audit Committee notifies the Comptroller that the agency's non-compliance has been reviewed and necessary recommendations or changes have been made.

**Sec. 16.05. Professional Legal Services.**

(a) It is the intent of the Legislature that in providing professional legal services to officials and entities of the legislative branch of state government using money appropriated by this Act, the Attorney General shall abide by the official's or entity's decisions concerning the objectives and general methods of representation and whether to accept or reject an offer of settlement of a matter. If circumstances prevent the Attorney General from abiding by the official's or entity's decisions, the official or entity may expend from General Revenue Funds appropriated to the Legislature in Article X of this Act amounts necessary to pay for professional legal services, including legal advice, assistance, and representation.

(b) To the extent this section conflicts with another provision of this Act, this section prevails.

Part 17.                      **MISCELLANEOUS PROVISIONS**

**Sec. 17.01. Contingency Rider.** It is the intent of the Legislature that appropriations made in this Act be expended only for purposes and programs specifically funded in the Act, and contingency appropriations made for legislation adopted by the Eighty-eighth Legislature are the primary source of funding for implementation of that legislation. No state agency or institution is required to significantly reallocate or redistribute monies appropriated in this Act to provide funding for programs or legislation adopted by the Eighty-eighth Legislature for which there is not specific appropriation or contingency provision identified in this Act.

**Sec. 17.02. Limitation on Substitution of General Obligation Bond Funded Projects.** Following initial Legislative Budget Board approval of projects for which monies are appropriated to an agency elsewhere in this Act or monies are appropriated to Texas Public Finance Authority (TPFA) for payment of debt service on outstanding Proposition 4 and Proposition 8 bonds, an agency may substitute projects for those approved by submitting a written request for project substitution to the Legislative Budget Board, with a copy to TPFA. The request shall be considered to be approved unless the Legislative Budget Board issues a written disapproval within 30 business days of the date on which the staff of the Legislative Budget Board concludes its review of the proposal to expend the monies and forwards its review to the Chair of the House Appropriations Committee, Chair of the Senate Finance Committee, Speaker of the House, and Lieutenant Governor.

**Sec. 17.03. Payroll Contribution for Group Health Insurance.**

(a) Notwithstanding any other provision of this Act, out of appropriations made elsewhere in this Act to state agencies and institutions of higher education for the state fiscal biennium beginning September 1, 2023, each agency and institution of higher education shall contribute to the Employees Retirement System's Group Benefits Program in an amount equal to 1.0 percent of the total base wages and salaries for each benefits eligible employee of a state agency or institution of higher education during the state fiscal biennium beginning September 1, 2023.

(b) For purposes of this section "state agencies and institutions of higher education" does not include components within the University of Texas and Texas A&M Systems.

(c) State agencies and institutions of higher education shall contribute pursuant to this section to the Employees Retirement System to increase state funding for group health coverage by the value of the 1.0 percent contribution, estimated to be $154,704,446 in All Funds for state agencies and $89,542,883 in All Funds for institutions of higher education for the 2024-25 biennium.

(d) The calculation of base salary for purposes of the reductions made under this section excludes longevity pay, hazardous duty pay, benefit replacement pay, overtime pay, and other payments that are not part of the base salary of the employee.

PAXTON IMPEACHMENT TRIAL

# Now that Attorney General Ken Paxton is acquitted, what happens with the whistleblower settlement?

The catalyst for the impeachment was a request from the Attorney General's Office to lawmakers to pay out a settlement with whistleblowers.



Author: Isabella Basco
Published: 6:59 PM CDT September 18, 2023
Updated: 6:59 PM CDT September 18, 2023



AUSTIN, Texas — The impeachment of Texas Attorney General Ken Paxton all started with an ask.

EXHIBIT

5

"Earlier this year, Mr. Paxton came to the Legislature seeking $3.3 million in taxpayer money to settle a whistleblower lawsuit," impeachment chair and Texas State Rep. Andrew Murr said. "This is why we are here."

The Attorney General's Office agreed to pay $3.3 million to settle a lawsuit with four former employees who reported Paxton to the FBI and were later fired. But that money had to come from the Texas Legislature, launching the House investigation into the whistleblower report. Texas lawmakers ended the session without giving the Attorney General's Office the money.

Now that Paxton's impeachment trial is over and he is acquitted, there are questions about the settlement.

"Where that's going to come from and how those people are going to get paid is a different story. Or he could try to pull a 'Godfather' and then say, 'My offer is this, nothing,'" said Brian Smith, a political science professor at St. Edward's University. "I'm thinking right now, Paxton is probably going to use his own funds, not the State's. He wants to put this behind him. I'm sure right now, he's raising tons of money; he's been using the trial kind of as a fundraiser."

**After Paxton acquittal, Lt. Gov. Dan Patrick blasts House on impeachment process**

**Who is Sen. Robert Nichols? Republican broke party lines during impeachment vote for Attorney General Ken Paxton**

Law experts say Paxton probably still wants to settle. Austin attorney Brad Vinson said that's because the odds are not in Paxton's favor.

"So the venue for that lawsuit would be Travis County, meaning that if there's not a settlement agreement that's been reached, then the case would proceed into a potential jury trial in Travis County. Which I think we could all probably agree would not be favorable for Mr. Paxton," Vinson said.

Vinson thinks it is in everyone's best interest to pay it off as soon as possible.

"I think he would continue to skirt that and wave the flag and say, 'Look, I was found not guilty on all these counts. So government, you figure out how to pay this up or it could cost you more.' Right? And that's the danger to the House, right? The bigger danger to the House is what if we don't pay the settlement agreement? What if it goes to trial and what did we lose?" Vinson said. "So it is definitely a sticky situation."

KVUE has reached out to the Attorney General's Office about the status of the settlement, but we have not heard back.



**TEXAS POLITICS**

# Texas will have an $18.6B surplus and avoid a recession, comptroller projects

By Karen Brooks Harper, The Texas Tribune

Friday, October 6, 2023





EXHIBIT

6

"The Texas economy has outperformed the national economy, and the economic outlook included with this revenue estimate does not assume a recession in Texas," state Comptroller Glenn Hegar said.

"The Texas economy has outperformed the national economy, and the economic outlook included with this revenue estimate does not assume a recession in Texas," state Comptroller Glenn Hegar said.

AUSTIN, Texas -- Texas is likely to avoid an anticipated recession and, on the contrary, is projected to have more than $18 billion in unspent money at the end of this two-year budget cycle, thanks to an unexpected increase in state revenue in recent months, Comptroller Glenn Hegar said Thursday.

"Despite sharply higher interest rates, household budgets stressed by inflation

WATCH LIVE

economy has continued to grow," Hegar said in his Certified Revenue Estimate, updating how much money lawmakers will have to spend. "Meanwhile, the Texas economy has outperformed the national economy, and the economic outlook included with this revenue estimate does not assume a recession in Texas."

The news comes days before lawmakers are set to enter a special session fight that is expected to be over public school funding, teacher pay raises, school vouchers, and potentially other issues that have sought Republican Gov. Greg Abbott's interest recently.

"The Texas economy has outperformed the national economy, and the economic outlook included with this revenue estimate does not assume a recession in Texas," state Comptroller Glenn Hegar said.

The updated comptroller's report raises the amount of revenue available over the 2024-25 cycle from $188.2 billion - what lawmakers assumed they would have available to spend when they passed the budget in May - to $194.6 billion.

It also predicts that the state's rainy day fund, known as the Economic Stabilization Fund, will have a balance of $23.8 billion.

The new estimate projects an increase of 24.8% in available spending in this budget over the 2022-23 cycle that ended in September.

Lawmakers in May passed a $321.3 billion budget for the cycle that ends in September 2025. They meet again to pass a new budget in January 2025 for the following two-year cycle. At the beginning of this year, lawmakers entered their regular legislative session with a historic $32.7 billion surplus.

A number of constitutional amendments that will be decided by voters will ultimately determine how much money is left in state coffers at the end of the two-year cycle, including a $1.5 billion effort to expand broadband, a $1 billion Texas Water Fund to pay for infrastructure and potentially a homestead exemption if lawmakers agree on a

In November, voters will decide on several programs, including propert

"The Texas economy has outperformed the national economy, and the economic outlook included with this revenue estimate does uot assume a recession in Texas," state Comptroller Glenn Hegar said.

institutions and other big-ticket items.

Even if all are approved, the state was already expected to have at least a $10 billion surplus going into the next two-year cycle in 2025, a number Hegar nearly doubled in his projection on Thursday.

During the regular session this year, lawmakers approved $4.5 billion in new spending for schools to use for programs like teacher pay raises, but it was tied to highly-divisive legislation that would have created a voucher program letting some parents use that money for private school tuition.

The teacher pay raises proposal died when the voucher program died, but lawmakers have a chance to revive them both next week. Abbott has promised at least two special sessions to let them come to a deal, and then said he will push his pro-voucher position in next year's primaries if a program isn't passed.

Hegar hinted at such a rosy economic outlook for Texas last month at The Texas Tribune Festival, saying that an increase in collections from insurance claims - for which insurance providers are taxed by the state - would bring an unexpected jump in revenue for this cycle.

Meanwhile, public education in Texas is reaching a financial crossroads, with lawmakers heading into one of the n over how much money to give publi teachers and how much private-sch

"The Texas economy has outperformed the national economy, and the economic outlook included with this revenue estimate does not assume a recession in Texas," state Comptroller Glenn Hegar said.

"We need to take advantage (and) invest in public education," Hegar said in his Sept. 22 interview about the revenue increase. "We need to invest in our teachers. We need to invest in those that are front line, that are educating the future workforce."

On Thursday, Hegar stopped short of saying lawmakers should spend the additional $6.5 billion in available funds on teachers or public schools or vouchers. He generally stays away from policy-driven budget fights.

But he did, again, note the timing, saying that his new estimate "also serves as an estimate of available revenue for the third called session expected to begin Oct. 9."

Houston Democratic Rep. Armando Walle, a House budget writer, urged that lawmakers consider adding more funding to the education system now that lawmakers are flush with extra spending power.

"With our state's abysmal per-pupil spending and lagging educator salaries, we have an opportunity here to put Texas kids first and give our public schools the resources they need to thrive," Wall constituents' hard-earned tax dollar families, and a waste of a tremendou of this state."

"The Texas economy has outperformed the national economy, and the economic outlook included with this revenue estimate does not assume a recession in Texas," state Comptroller Glenn Hegar said.

In his Thursday estimate, Hegar stipulated, as he did last month and as he did in January, that the forecast is conservative based on potential disruptions to the economy in the future. It's a warning he frequently makes to lawmakers who advocate spending most or all of the surplus.

"In view of the significant risks to the economic outlook, revenue is estimated conservatively for the 2024-25 biennium," Hegar said. "It may well turn out that robust economic growth, and consequently revenue growth, will continue unabated. But it would not be prudent to simply assume that will be the case."

**The Texas Tribune is a nonprofit, nonpartisan media organization that informs Texans - and engages with them - about public policy, politics, government and statewide issues.**

Report A Correction Or Typo

# Related Topics

| POLITICS | TEXAS | AUSTIN | TEXAS POLITICS | TEXAS NEWS |

| ECONOMY | GREG ABBOTT | MOI

**FROM THE WEB**

**California Heart Surgeon Begs Amer**



"The Texas economy has outperformed the national economy, and the economic outlook included with this revenue estimate does not assume a recession in Texas," state Comptroller Glenn Hegar said.