IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| FREEDOM FROM RELIGION FOUNDATION, INC., § § § | | |
| Plaintiff, § | | |
| § | | |
| v. § | 1:16-CV-233-RP | |
| § | | |
| GOVERNOR GREG ABBOTT and ROD WELSH, *Executive Director of The Texas State Preservation Board, In Their Official Capacities*, § § § § | | |
| § | | |
| Defendants. § | | |

## ORDER

Before the Court is Plaintiff Freedom from Religion Foundation, Inc.'s ("FFRF") Motion for Order to Satisfy Judgment, (Dkt. 171), and Brief in Support, (Dkt. 170). Defendants Greg Abbott ("Governor Abbott"), in his official capacity as Governor, and Rod Welsh ("Welsh"), in his official capacity as Executive Director of the Texas State Preservation Board (the "Preservation Board") (collectively, "Defendants") filed a response in opposition, (Dkt. 172), and FFRF filed a reply, (Dkt. 173). After reviewing the briefing, the record, and the relevant law, the Court will grant the motion.

## I. BACKGROUND

This civil rights case stems from a Bill of Rights nativity exhibit (the "Exhibit") that FFRF displayed in the Texas Capitol from December 18 to December 22, 2015 pursuant to the Texas Capitol Exhibit Rule (the "Rule"), which provides guidance for exhibitions at the Texas Capitol. (Order, Dkt. 126, at 2). "The Exhibit featured Benjamin Franklin, Thomas Jefferson, George Washington, and the Statue of Liberty gathered around a manger containing the Bill of Rights." (*Id.*). The Preservation Board removed the Exhibit on December 22, 2015. (*Id.* at 3). The Preservation Board later denied an application to display an identical exhibit in the Capitol. (*Id.*). On February 25,

1

2016, FFRF brought five claims under the United States Constitution against Governor Abbott and John Sneed ("Sneed"), then the Executive Director of the Texas State Preservation Board,[1] in both their individual and official capacities: (1) a free speech claim under the First Amendment; (2) an equal protection claim under the Fourteenth Amendment; (3) a claim under the Establishment Clause of the First Amendment; (4) an unbridled discretion claim under the First Amendment; and (5) a due process claim under the Fourteenth Amendment. (Compl., Dkt. 1; *see also* Dkt. 126, at 3).

On December 20, 2016, the Court ruled on the parties' cross-motions for summary judgment, ultimately dismissing three claims, leaving two claims remaining: the free speech claim and the Establishment Clause claim. (Order, Dkt. 38, at 24). After considering the parties' renewed cross-motions for summary judgment, on October 13, 2017, the Court dismissed the Establishment Clause claim against Governor Abbott in his individual capacity as barred by qualified immunity. (Order, Dkt. 74, at 19–20). The Court also granted summary judgment for FFRF on its free speech claim against Defendants in their official capacities and found that there was a genuine issue of material fact as to the Establishment Clause claim. (*Id.* at 24). Accordingly, only the Establishment Clause claim against Defendants in their official capacities and the free speech claim against Governor Abbott in his individual capacity remained. (*Id.*). In May 2018, the parties stipulated to a voluntary dismissal of FFRF's free speech claim against Governor Abbott in his individual capacity. (Dkt. 85; *see also* Order, Dkt. 86). On June 19, 2018, the Court issued a declaratory judgment for FFRF on its free speech claim against Defendants in their official capacities only, declaring "that Defendants violated FFRF's First Amendment rights and engaged in viewpoint discrimination as a matter of law when FFRF's exhibit was removed from the Texas Capitol building." (Order, Dkt. 87, at 2).

---

[1] On April 28, 2017, Welsh was substituted for Sneed in this action.

Defendants appealed the Court's declaratory judgment on FFRF's free speech claim, (Dkt. 92), and FFRF cross-appealed the Court's dismissal of its unbridled discretion claim, (Dkt. 94). The Fifth Circuit Court of Appeals vacated the judgment and remanded for this Court to enter purely prospective (not retrospective) relief for FFRF under the *Ex Parte Young* exception to sovereign immunity. *Freedom From Religion Found. v. Abbott*, 955 F.3d 417, 424–26 (5th Cir. 2020) (*FFRF I*). The Fifth Circuit also reversed the dismissal of FFRF's First Amendment unbridled discretion claims. *Id.* at 429.

The Preservation Board then published final amendments to the Rule (the "Revised Rule"), which took effect on July 20, 2020. 45 Tex. Reg. 3406 (2020), *adopted by* 45 Tex. Reg. 4968, 4968 (2020) (State Press. Bd., Exhibitions in the Capitol and Capitol Extension). Defendants then argued that the Revised Rule rendered this case moot. (Def. Briefs, Dkts. 111, 115, 124). The Court disagreed, granting FFRF's request for injunctive relief and enjoining Defendants from excluding FFRF's Exhibit from display in the designated exhibit area of the Capitol. (Order, Dkt. 126, at 12). The Court also granted prospective declaratory relief that Defendants violate FFRF's First Amendment rights and engage in viewpoint discrimination as a matter of law when they exclude FFRF's Exhibit based on the perceived offensiveness of its message. (*Id.* at 13). Finally, the Court granted Defendants summary judgment on FFRF's unbridled discretion claims. (*Id.* at 16).

Defendants appealed again, re-urging their argument that the Revised Rule mooted the case. (Dkt. 131). During the pendency of the second appeal, the Texas Legislature repealed the (Revised) Rule entirely. *Freedom From Religion Found., Inc. v. Abbott*, 58 F.4th 824, 828 (5th Cir. 2023) (*FFRF II*) ("Finally, last year, the Board repealed the Rule altogether."). The Fifth Circuit found that the repeal of the Rule mooted the case and vacated the permanent injunctive relief. *Id.* However, the Fifth Circuit held that "the order and declaratory judgment—declaring that the Defendants violate the First Amendment by excluding [FFRF's] exhibit from a limited public forum—shall remain." *Id.*

3

FFRF then moved for attorney's fees and costs. (Dkt. 152). On January 12, 2024, the Court adopted United States Magistrate Judge Dustin Howell's report and recommendation concerning FFRF's motion. (R. & R., Dkt. 162). The Court granted FFRF's motion and awarded FFRF $342,556.31 in attorney's fees and $3,957.36 in costs from Defendants pursuant to 42 U.S.C. § 1988(b). (Order, Dkt. 167; *see also* Am. Final Judg., Dkt. 168). On March 14, 2024, FFRF filed the instant Motion for Order to Satisfy Judgment, (Dkt. 171), and Brief in Support, (Dkt. 170). FFRF asks the Court to compel Defendants and the State of Texas to satisfy the Amended Final Judgment, (Dkt. 168), within 21 days, as well as to award it the attorney's fees and costs incurred in preparing this motion. (Mot, Dkt. 171). Defendants filed a response in opposition, (Dkt. 172), and FFRF filed a reply, (Dkt. 173).

## II. LEGAL STANDARD

Rule 69(a) of the Federal Rules of Civil Procedure governs the process for enforcing a money judgment:

> A money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies.

Fed. R. Civ. P. 69(a)(1). "'Rule 69(a) permits a judgment creditor to use any method of execution consistent with the practice and procedure of the state in which the district court sits. However, a judgment creditor generally may not avail itself of methods of enforcement that are not available pursuant to state law.'" *Benson v. Reg'l Transit Auth.*, No. CIV.A. 05-2777, 2015 WL 5321685, at *1 (E.D. La. Sept. 10, 2015) (quoting *City of New Orleans v. Mun. Admin. Servs., Inc.*, No. 02–0130, 2004 WL 2496202, at *2–3 (E.D. La. Nov. 5, 2004)). "Nevertheless, federal interests sometimes trump the substance of a state's antiseizure provision by means other than Rule 69(a)." *Specialty Healthcare Mgmt., Inc. v. St. Mary Par. Hosp.*, 220 F.3d 650, 653 (5th Cir. 2000). When there is a federal interest, a

federal court may trump a state's anti-seizure provision and enforce a money judgment against a public entity. *See Specialty Healthcare*, 220 F.3d at 653. Accordingly, even when no federal statute explicitly authorizes enforcement procedures different from the procedures used by a state, a federal court may nonetheless be permitted to use such procedures if the case invokes a federal interest. A federal interest is obvious in civil rights actions. *E.g., Bowman v. City of New Orleans*, 914 F.2d 711 (5th Cir. 1990) (permitting the enforcement of a money judgment against the City under 42 U.S.C. § 1988); *Gates v. Collier*, 616 F.2d 1268 (5th Cir. 1980) (same).

### III. DISCUSSION

#### A. Satisfaction of the Judgment

First, the Court finds that FFRF has demonstrated that a federal interest is implicated that permits this Court to trump the anti-seizure provision. "'Federal courts are not reduced to issuing (judgments) against state officers and hoping for compliance.'" *Gates*, 616 F.2d at 1271 (quoting *Hutto v. Finney*, 437 U.S. 678, 690 (1978)). Rather, "in civil rights cases, [the Fifth Circuit] has held that it is within the scope of federal power to command state officials to pay judgments from state funds . . . despite the existence of state antiseizure provisions, even though a writ of execution is not issued." *Specialty Healthcare*, 220 F.3d at 653.[2] In this case, the Court awarded FFRF $342,556.31 in attorney's fees and $3,957.36 in costs from Defendants pursuant to 42 U.S.C. § 1988(b). (Order, Dkt. 167; *see also* Am. Final Judg., Dkt. 168). Defendants have indicated that they will not pay the judgment until it is placed "on a 'miscellaneous claims' bill submitted to the Texas Legislature as part of [the next] regular session," (Resp., Dkt. 172, at 3), which will not occur until late 2025, (Mot.,

---

[2] "One justification for this result is that Congress under its section 5 powers of the Fourteenth Amendment chose to enact legislation to permit all successful civil rights litigants to recover attorney fees; thus, there is a federal interest in the monetary remedy." *Specialty Healthcare*, 220 F.3d at 653–54; *see also Collins v. Thomas*, 649 F.2d 1203, 1206 (5th Cir. 1981) ("The district court's authority to award attorney's fees is established by § 1988 which is a Congressional enactment pursuant to Section 5 of the Fourteenth Amendment."). In other words, otherwise, Texas's state law would be permitted to thwart this Court's federal mandate to enforce judgments for civil rights violations.

Dkt. 170, at 3; *see also* Dkt. 170-1, at 10). "To the extent that § 1988's authorization of district court orders awarding attorney's fees conflicts with Texas'[s] restrictions on the execution of judgments against counties, the federal statute must prevail over state law." *Collins*, 649 F.2d at 1206 (citing U.S. Const. Art. VI, cl. 2); *see also Gates*, 616 F.2d at 1271 (*Hutto*, 437 U.S. 678, "made it clear that, by exercising its power under Section 5, Congress successfully abrogated the States' Eleventh Amendment immunity.").

Accordingly, the Court finds that it has the constitutional authority to compel Defendants to pay the judgment rendered against them. Next, the Court must decide whether this step is warranted. In other words, the Court must consider whether Defendants will not be willing or able to ever satisfy the judgment before it will allow execution of the judgment to proceed. FFRF argues that Defendants are attempting to hide behind Section 16.04 of the Texas General Appropriations Act. (Mot., Dkt. 170, at 4). In response, Defendants argue that they "are following the normal course for obtaining payment of the judgment in this case," which requires the Texas Legislature to approve judgments exceeding $250,000 through "a 'miscellaneous claims' bill submitted to the Texas Legislature as part of each regular session." (Resp., Dkt. 172, at 2–3). FFRF replies that "Defendants admit that they have no intention to pay the FFRF judgment at any time earlier than possibly September 1, 2025, plus 6-8 weeks after notice is given to the Comptroller." (Reply, Dkt. 173, at 5). FFRF urges the Court to find that "the federal interest in the remedy provided by § 1988 clearly provides a basis for this court to order the Defendants and the State of Texas to satisfy the judgment outstanding." (Mot., Dkt. 170, at 14; Reply, Dkt. 173, at 5–6).

The Court agrees with FFRF. While the motion to satisfy comes only a few months after the Court entered Amended Final Judgment, (Am. Final Judg., Dkt. 168), Defendants have indicated that they are not going to pay the judgment until September 2025, at the earliest. Defendants urge that they are not being recalcitrant, but rather, that they are merely taking the only course of action

6

they are allowed under state law. The Court agrees with FFRF that a promise to submit the judgment to the Texas Legislature during the next session provides little relief now to FFRF for Defendants' violation of FFRF's federal civil rights. *See Bowman*, 914 F.2d at 713 ("While it is admirable that the [Defendant] willingly *recognized* its obligation [to pay a constitutional judgment], it would have been better for all concerned had it also willingly *met* that obligation. That it did not gave rise to the need for the district court to require it to do so. The court acted properly in so doing."). The Court finds that it is empowered to compel execution of the judgment. Given that Defendants maintain that they lack the ability to disburse these funds prior to the end of next year, it appears to the Court that "an order directing the responsible state official to satisfy the judgment out of state funds is the only reasonable way to ensure compliance with a valid federal judgment." *Gary W. v. State of La.*, 622 F.2d 804, 807 (5th Cir. 1980). While the Court acknowledges that execution of the judgment is a drastic step, the Court believes that this step is warranted to ensure that FFRF timely recovers for Defendants' federal civil rights violation. Texas "may not successfully hide behind state procedural shields to avoid the consequences of a valid district court judgment effectuating an appropriate § 1988 award." *Collins*, 649 F.2d at 1206. Accordingly, the Court will grant the motion to satisfy the judgment.

### B. FFRF's Request for Attorney's Fees

An award of attorney's fees under Section 1988 "is uniquely separable from the cause of action to be proved at trial." *White v. New Hampshire Dep't of Employment Sec.*, 455 U.S. 445, 452 (1982) (citing *Hutto*, 437 U.S. at 695 n.24). So, too, is "[a] motion to correct or supplement the amount of a § 1988 attorney's fee award." *Id.* An award of attorney's fees is entrusted to the "sound discretion" of the district court. *Tex. Com. Bank Nat'l Ass'n v. Cap. Bancshares, Inc.*, 907 F.2d 1571, 1575 (5th Cir. 1990). Since "the purpose of [Section 1988 is] to ensure effective enforcement of the civil rights laws," *Gates*, 616 F.2d at 1275, the Court finds that an award of FFRF's attorney's fees expended on

the preparation of the motion to satisfy is appropriate. Accordingly, the Court finds that FFRF is entitled to attorney's fees and costs if FFRF submits a timely declaration of fees and costs within seven (7) days of this order.

## IV. CONCLUSION

Accordingly, **IT IS ORDERED** that FFRF's motion to satisfy, (Dkt. 171), is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants shall make a full and complete payment of $342,556.31 in attorney's fees and $3,957.36 in costs to FFRF **on or before** sixty-one (61) days of the date of this order, **August 5, 2024**.[3]

**IT IS FURTHER ORDERED** that FFRF is entitled to attorney's fees and costs if FFRF submits a timely declaration of fees and costs **on or before** seven (7) days of the date of this order, **June 12, 2024**. **IT IS FURTHER ORDERED** that Defendants shall make a full and complete payment of this additional amount **on or before August 5, 2024**.

**SIGNED** on June 5, 2024.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

---

[3] Defendants note that "the Comptroller requires approximately six to eight weeks to process payments after receiving proper notice." (Resp., Dkt. 172, at 3 n.1).

8